JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

EQUAL RIGHTS CENTER  1100'

**DEFENDANTS**

POST PROPERTIES, INC.
POST APARTMENT HOMES, L.P.
POST GP HOLDINGS, INC.

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  11001
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Sheila J. Carpenter
1025 Thomas Jefferson St. NW
Suite 400 East
Washington, DC 20007-5208
202-965-8165

CASE NUMBER  1:06CV01991

JUDGE: Richard J. Leon

DECK TYPE: TRO/Preliminary Injunction

DATE STAMP: 11/21/2006

JURY ACTION

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- O 1 U.S. Government Plaintiff
- ⊙ 3 Federal Question (U.S. Government Not a Party)
- O 2 U.S. Government Defendant
- O 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | O 1 | O 1 | Incorporated or Principal Place of Business in This State | O 4 | O 4 |
| Citizen of Another State | O 2 | O 2 | Incorporated and Principal Place of Business in Another State | O 5 | O 5 |
| Citizen or Subject of a Foreign Country | O 3 | O 3 | Foreign Nation | O 6 | O 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

| O A. Antitrust | O B. Personal Injury/ Malpractice | O C. Administrative Agency Review | ⊙ D. Temporary Restraining Order/Preliminary Injunction |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| O E. General Civil (Other) | OR | O F. Pro Se General Civil |
|---|---|---|

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ **530 Habeas Corpus-General** <br> ☐ **510 Motion/Vacate Sentence** | ☐ **442 Civil Rights-Employment** <br> (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) <br><br> *(If pro se, select this deck)* | ☐ **895 Freedom of Information Act** <br> ☐ **890 Other Statutory Actions** (if Privacy Act) <br><br> *(If pro se, select this deck)* | ☐ **152 Recovery of Defaulted Student Loans** (excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ **710 Fair Labor Standards Act** <br> ☐ **720 Labor/Mgmt. Relations** <br> ☐ **730 Labor/Mgmt. Reporting & Disclosure Act** <br> ☐ **740 Labor Railway Act** <br> ☐ **790 Other Labor Litigation** <br> ☐ **791 Empl. Ret. Inc. Security Act** | ☐ **441 Voting (if not Voting Rights Act)** <br> ☒ **443 Housing/Accommodations** <br> ☐ **444 Welfare** <br> ☐ **440 Other Civil Rights** <br> ☐ **445 American w/Disabilities-Employment** <br> ☐ **446 Americans w/Disabilities-Other** | ☐ **110 Insurance** <br> ☐ **120 Marine** <br> ☐ **130 Miller Act** <br> ☐ **140 Negotiable Instrument** <br> ☐ **150 Recovery of Overpayment & Enforcement of Judgment** <br> ☐ **153 Recovery of Overpayment of Veteran's Benefits** <br> ☐ **160 Stockholder's Suits** <br> ☐ **190 Other Contracts** <br> ☐ **195 Contract Product Liability** <br> ☐ **196 Franchise** | ☐ **441 Civil Rights-Voting** (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

42 U.S.C. Sections 3601-3619 and 42 U.S.C. Section 12181 disability discrimination in multifamily housing

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ [ TBD ]   Check YES only if demanded in complaint

JURY DEMAND:   YES ☒   NO ☐

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE  11/21/06   SIGNATURE OF ATTORNEY OF RECORD  _____

---

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
### Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

**FILED**

NOV **2 1** 2006

**NANCY MAYER WHITTINGTON, CLERK**
**U.S. DISTRICT COURT**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **EQUAL RIGHTS CENTER**<br>A not-for-profit corporation,<br>11 Dupont Circle NW, Suite 400<br>Washington, DC 20036<br><br>        Plaintiff,<br><br>    vs.<br><br>**POST PROPERTIES, INC.**<br>A Georgia real estate investment trust<br>4401 Northside Parkway,<br>Suite 800<br>Atlanta, Georgia 30327<br><br>**POST GP HOLDINGS, INC.**<br>A Georgia corporation<br>4401 Northside Parkway<br>Suite 800<br>Atlanta, GA 30327<br><br>and<br><br>**POST APARTMENT HOMES, L.P.**<br>A Georgia limited partnership<br>4401 Northside Parkway,<br>Suite 800<br>Atlanta, Georgia 30327<br><br>        Defendants. | **JURY TRIAL DEMANDED**<br><br>Case No.<br><br>CASE NUMBER 1:06CV01991<br><br>JUDGE: Richard J. Leon<br><br>DECK TYPE: TRO/Preliminary Injunction<br><br>DATE STAMP: 11/21/2006 |

JURY ACTION

## COMPLAINT FOR INJUNCTIVE AND
## DECLARATORY RELIEF, AND FOR DAMAGES

1

1.     Plaintiff, the Equal Rights Center (the "ERC"), for its Complaint against Post Properties, Inc. ("POST PROPERTIES"), POST GP Holdings, Inc., and Post Apartment Homes, L.P. (collectively "POST"), alleges and states as follows:

2.     This action is brought by the ERC, by and through its counsel, under the Fair Housing Act, Title VIII of the Civil Rights Act of 1968 (the "Fair Housing Act" or "FHA") as amended by the Fair Housing Amendments Act of 1988 (the "FHAA"), 42 U.S.C. §§ 3601-3619, and the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12181, to enjoin and remedy ongoing and systematic violations of these civil rights laws by Post in the design, construction and/or operation of covered multifamily dwellings, including residential complexes in the District of Columbia, Virginia, Colorado, Florida, Georgia, New York, North Carolina and Texas. The ERC seeks to redress the civil rights violations at properties POST has designed, constructed, owned and/or managed. POST's actions have excluded, and are continuing to exclude, persons with disabilities from access to POST properties.

3.     Pursuant to the FHA, every multifamily housing building containing four (4) or more units, and built for first occupancy after March 13, 1991, is subject to the design and construction requirements of the FHA ("covered multifamily dwellings"). The FHA requires all ground floor units, and all units on any floor serviced by an elevator in a covered multifamily dwelling ("covered units"), as well as "public use and common use areas" associated with covered units, to contain certain features of minimum accessibility and adaptable design, including:

> a.     public-use and common-use areas that are readily accessible to, and usable by, individuals with handicaps;
>
> b.     doors into and within covered units that are sufficiently wide to allow passage by persons who use wheelchairs;
>
> c.     an accessible route into and through the dwelling;

2

d.  light switches, electrical outlets, thermostats and other environmental controls in accessible locations;

e.  reinforcements in bathroom walls that allow for the later installation of grab-bars; and

f.  usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.

4.  Pursuant to the ADA, public-use facilities, such as rental and leasing offices at apartment complexes, parking lots, sidewalks and restrooms, built for first use after January 26, 1993, are subject to design and construction requirements that enable the full and equal enjoyment of the services, facilities, privileges and accommodations of a place of public accommodation by persons with disabilities.

5.  The United States Congress has made clear that enforcement of these civil-rights laws is necessary to protect people with disabilities from the "devastating" impact of housing discrimination, including the "architectural barriers" erected by developers who fail to construct dwellings and public accommodations accessible and adaptable to people with disabilities. *See* U.S. House of Rep. Report on the FHAA, H.R. Rep. No. 100-711 (1988). Congress declared that such barriers, even if not the product of invidious intent, "can be just as devastating as intentional discrimination." H.R. Rep. No. 100-711 at 25 (1988).

6.  As described herein, POST has engaged in a continuous pattern and practice of discrimination against persons with disabilities in violation of both the FHA and the ADA by designing, constructing and operating covered multifamily dwellings, and the common-use and public-use areas associated with those covered dwellings, in such a manner as to deny persons with disabilities access to, and the use of, these facilities as required under these federal civil rights laws.

## PARTIES

7.    The ERC is a non-profit membership corporation with its principal place of business at

11 Dupont Circle, NW, Suite 400, Washington, DC, 20036.  The ERC was founded in 1999 by a

group of interdenominational clergy and community leaders to provide a multifaceted approach

to civil rights issues, and to create an open society where equal opportunity for all is assured.

Since its formation, the ERC has continuously sought to advance its mission through education,

counseling, advocacy, enforcement, and referral services to aid protected individuals by

apprising them of their civil rights and preserving those rights.  Moreover, the Equal Rights

Center represents the interests of its approximately 150 individual public members, many of

whom are persons with disabilities who have a direct interest in protecting the rights of persons

with disabilities.

8.    POST PROPERTIES is a real estate investment trust organized under the laws of

the State of Georgia, with its principal executive offices located at 4401 Northside Parkway,

Suite 800, Atlanta, Georgia  30327.  It develops, redevelops, acquires and manages covered

multifamily housing dwellings located across the United States.  POST PROPERTIES maintains

a publicly accessible website available at http://www.postproperties.com, and, as a publicly

traded entity, is required to disclose information relating to its business operations on a periodic

basis.

9.    Post Apartment Homes, L.P., is a Georgia limited partnership owned and

controlled by POST PROPERTIES.  On information and belief, POST PROPERTIES' property

ownership and business operations are conducted, directly or indirectly, through this limited

4

partnership. Post GP Holdings, Inc. is a wholly-owned and controlled subsidiary of POST PROPERTIES and which acts as a mere instrumentality of POST PROPERTIES. Post GP Holdings, Inc. is the sole general partner of Post Apartment Homes, L.P.

10.     On information and belief, POST, through ownership and control of certain other entities, owns, has developed, designed and constructed, and manages additional multifamily housing complexes, the identity and location of which are not yet known to the ERC.

11.     Through ownership, control, supervision, building, development, operation and/or management, POST has been involved in the design and construction of scores of covered multifamily housing complexes in the District of Columbia, Virginia, Colorado, Florida, Georgia, New York, North Carolina and Texas. POST publicly represents that it is associated with each of these covered multifamily housing complexes. The ERC has identified, through on-site inspection, POST publications, or other public records, POST units and complexes that are subject to the FHA and the ADA. For purposes of this Complaint, all POST units and properties, currently known to the ERC, subject to the FHA and/or the ADA are referred to as the "Subject Properties." Attached at Addendum A to this Complaint is a list of Subject Properties identified to date.

12.     As a result of POST's wrongful conduct complained of herein, the ERC has been damaged by the frustration of its mission, and by having to divert significant resources that the ERC would have otherwise used to provide counseling, outreach, education and referral services. Instead, the ERC has devoted substantial resources to identifying, investigating and counteracting POST's discriminatory policies and practices. Moreover, as a result of POST's

wrongful conduct, the ERC's public members, many of whom are persons with disabilities, have been injured.

## JURISDICTION AND VENUE

13.     This Court may exercise subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1332, and 42 U.S.C. §§ 3613(a) and 12188. Further, this Court may exercise personal jurisdiction over the Defendants.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the Defendants may be found in this District, a substantial part of the events and omissions giving rise to the claims herein occurred in this District, and at least one of the Subject Properties that are the subject of this action is located in this District.

## FACTUAL AND LEGAL BACKGROUND

15.     As a result of its activities, the ERC became aware that a large number of new multifamily housing complexes were being constructed in the greater Washington, D.C. area that did not include the required elements of accessible design.

16.     The ERC visited a number of POST properties and discovered FHA and ADA violations in the design and construction of those properties.

17.     As a result of the discovery of these violations by POST, ERC diverted resources, including funding and staff members' time, from other activities in order to conduct further investigation and testing of POST properties so as to ascertain the extent of the FHA and ADA violations by POST.

18.     In 2005 and 2006, the ERC tested twenty-seven (27) of the Subject Properties in the District of Columbia and the States of Virginia, Colorado, Florida, Georgia, North Carolina,

6

New York and Texas (the "Tested Properties"). The Tested Properties are indicated on

Addendum A with an asterisk.

19.     The Tested Properties are subject to the design and construction requirements set

forth in 42 U.S.C. § 3604(f)(3)(C) of the FHA and the applicable regulations because the

properties include "covered multifamily dwellings" within the meaning of the FHA, 42 U.S.C. §

3604(f)(7)(A), and were built for first occupancy after March 13, 1991.

20.     Similarly, twenty-six (26) of the twenty-seven (27) Tested Properties were

constructed for first occupancy or remodeled after January 26, 1993, and are subject to the

prohibition on discrimination in 42 U.S.C. §12182(a) of the ADA, and to the design and

construction requirements of 42 U.S.C. § 12183(a)(1) of the ADA and the applicable regulations.

Each Tested Property has rental and leasing offices, and facilities and accommodations

appurtenant to the offices, including parking, sidewalks and restrooms, which constitute "public

accommodations" within the meaning of the ADA, 42 U.S.C. § 12181(7).

21.     The ERC identified at least one FHA or ADA violation, and in most cases

multiple violations, at each of the Tested Properties. The frequency and similarity of these

violations demonstrate that POST has engaged in a pervasive pattern and practice of designing

and constructing apartment properties in violation of FHA and ADA accessibility design

requirements. The ERC anticipates that further investigation and discovery will identify

additional FHA and ADA violations at the Tested Properties.

22.     By way of example, covered dwelling units in the Tested Properties subject to

FHA design and construction requirements exhibited, with varying frequency by complex, the

following violations:

    a.     doors in units that are not sufficiently wide so as to allow passage into
           kitchens, bathrooms, bedrooms and other areas in the units by persons
           using wheelchairs;

7

    b.     units that do not provide an accessible route into and through the unit, including access to patios, balconies and other outside areas;

    c.     bathrooms that do not have sufficient clear floor space so as to allow a person in a wheelchair to maneuver about the space;

    d.     kitchens that do not have sufficient clear floor space so as to allow a person in a wheelchair to maneuver about the space;

    e.     light switches, electrical outlets, thermostats and other environmental controls that are not located in accessible locations; and

    f.     bathroom walls that are not reinforced to allow for the installation of grab bars.

23.     Many of the Tested Properties also violate FHA accessibility requirements because the common areas used by residents were not designed and constructed in such manner that they are readily accessible to, and usable by, persons with disabilities.

24.     By way of example, some of the violations in the common areas of the Tested Properties include the following:

    a.     lack of accessible routes into and through common use and public use areas, including a lack of accessible routes to patios, balconies and other outside facilities;

    b.     environmental controls and electrical switches alarms placed at heights that make them inaccessible to persons in wheelchairs;

    c.     lack of curb cuts, or obstructed curb cuts;

    d.     inaccessible ramp routes; and

    e.     a lack of designated accessible parking spaces.

25.     Many of the Tested Properties also violate the accessibility requirements of the ADA, 42 U.S.C. §§ 12182(a)-12183(a)(1), and the applicable regulations, as well as the FHA,

because the rental and leasing offices, including facilities and accommodations appurtenant to the offices that are areas of public use, are not readily accessible to, and usable by, persons with disabilities.

26.    By way of example, public use area violations include the following:

    a.    rental offices located up stairs, or served by inaccessible ramp routes;

    b.    a lack of reserved and accessible parking; and

    c.    a lack of accessible routes from the parking area to the rental and leasing offices, and/or accessible entrances to the office.

27.    The following specific examples are illustrative of POST's pattern and practice of FHA and ADA violations:

## Post Massachusetts Avenue

28.    POST's Massachusetts Avenue Apartments in Washington, D.C., is a covered multifamily housing complex that consists of 296 units in a high-rise building serviced by elevators that was completed in 2002. The ERC observed the following violations at the Massachusetts Avenue Apartments:

    a.    kitchen clearance is inadequate to allow a person in a wheelchair to maneuver about the space; and

    b.    environmental controls are placed at heights that make them inaccessible to a person in a wheelchair.

9

## Post Carlyle

29.    POST's Carlyle Apartments in Alexandria, Virginia is a covered multifamily housing complex that consists of 350 apartment units and 145 condominium units in an elevator building that was completed in 2006. The ERC observed the following violations at the Carlyle Apartments:

  a.    Steps and thresholds at public use areas act as a barrier to a person in a wheelchair;

  b.    bathroom clearance is insufficient to allow a person in a wheelchair to maneuver about the space;

  c.    kitchen clearance is inadequate to allow a person in a wheelchair to maneuver about the space;

  d.    environmental controls are placed at heights that make them inaccessible to a person in a wheelchair.

## Post Pentagon Row

30.    POST's Pentagon Row Apartments in Arlington, Virginia, is a covered multifamily housing complex that consists of 504 units in a high-rise building serviced by elevators that was completed in 2001. The ERC observed the following violations at the Pentagon Row Apartments:

  a.    bathroom obstacles act as a barrier preventing a person in a wheelchair from maneuvering about the space; and

  b.    kitchen clearance is inadequate to allow a person in a wheelchair to maneuver about the space.

### Post Gateway Place

31.     POST's Gateway Place Apartments in Charlotte, North Carolina, is a covered multifamily housing complex that consists of 436 units in high-rise buildings serviced by elevators that were completed in 2000, and 2002.  The ERC observed the following violations at the Gateway Place Apartments:

      a.    kitchen clearance is inadequate to allow a person in a wheelchair to maneuver about the space; and

      b.    environmental controls are placed at heights that make them inaccessible to a person in a wheelchair.

### Post Heights/Gallery

32.     POST's Heights/Gallery Apartments in Dallas, Texas, is a covered multifamily housing complex that consists of 408 units in high-rise buildings serviced by elevators that was completed in 1999.  The ERC observed the following violations at the Heights/Gallery Apartments:

      a.    doorways in the units are too narrow to allow passage by a person in a wheelchair;

      b.    bathroom clearance is insufficient to allow a person in a wheelchair to maneuver about the space;

      c.    kitchen clearance is inadequate to allow a person in a wheelchair to maneuver about the space;

      d.    environmental controls are placed at heights that make them inaccessible to a person in a wheelchair; and

      e.    no designated parking for persons with handicaps.

## Post Lindbergh

33.    POST's Lindbergh Apartments in Atlanta, Georgia, is a covered multifamily housing complex that consists of 396 garden-style units that was completed in 1998. The ERC observed the following violations at the Lindbergh Apartments:

a.    lack of an accessible route to first floor units;

b.    interior thresholds of such a height as to act as a barrier to a person in a wheelchair;

c.    doorways in the units are too narrow to allow passage by a person in a wheelchair;

d.    bathroom clearance is insufficient to allow a person in a wheelchair to maneuver about the space; and

e.    environmental controls are placed at heights that make them inaccessible to a person in a wheelchair.

## Post Gardens

34.    POST's Post Gardens in Atlanta, Georgia, is a covered multifamily housing complex that consists of 396 garden-style units serviced by elevators that was completed in 1998. The ERC observed the following violations at Post Gardens:

a.    doorways in the units are too narrow to allow passage by a person in a wheelchair;

b.    bathroom clearance is insufficient to allow a person in a wheelchair to maneuver about the space;

c.    kitchen clearance is inadequate to allow a person in a wheelchair to maneuver about the space; and

d.    environmental controls are placed at heights that make them inaccessible to a person in a wheelchair.

**Post Abbey**

35.    POST's Abbey Apartments in Dallas, Texas, is a covered multifamily housing complex that consists of 34 units in a high-rise building serviced by elevators that was completed in 1996. The ERC observed the following violations at the Abbey Apartments:

a.    steps to main entrance act as a barrier to a person in a wheelchair;

b.    no reserved accessible parking;

c.    doorways in the units are too narrow to allow passage by a person in a wheelchair;

d.    bathroom clearance is insufficient to allow a person in a wheelchair to maneuver about the space; and

e.    kitchen clearance is inadequate to allow a person using a wheelchair to maneuver about the space.

**Post Rocky Point**

36.    POST's Rocky Point Apartments in Tampa, Florida, is a covered multifamily housing complex that consists of 916 garden-style units that was completed in 1995. The ERC observed the following violations at the Rocky Point Apartments:

a.    inaccessible routes to ground floor units;

b.    bathroom clearance is insufficient to allow a person in a wheelchair to maneuver about the space;

c.    kitchen clearance is inadequate to allow a person in a wheelchair to maneuver about the space; and

d.    environmental controls and electrical outlets are placed at heights that make them inaccessible to a person in a wheelchair.

**Post Vintage**

37.    POST's Vintage Apartments in Dallas, Texas, is a covered multifamily housing complex that consists of 161 garden-style units that was completed in 1993.  The ERC observed the following violations at the Vintage Apartments:

      a.    inaccessible routes to ground floor units, and common use areas;

      b.    doorways in the units are too narrow to allow passage by a person in a wheelchair;

      c.    bathroom clearance is insufficient to allow a person in a wheelchair to maneuver about the space;

      d.    kitchen clearance is inadequate to allow a person in a wheelchair to maneuver about the space; and

      e.    electrical outlets are placed at heights that make them inaccessible to a person in a wheelchair.

**Pattern and Practice Among Subject Properties**

38.    Upon information and belief, POST participated in, supervised, controlled and/or approved the design and construction of each of the Subject Properties.  Moreover, upon information and belief, POST owns, manages and/or operates each of the Subject Properties.

39.    The Subject Properties share relevant common elements of design, as evidenced by floor plans published by POST.  Common design elements among the Tested Properties and untested Subject Properties range from the use of common bathroom or kitchen designs, to virtually identical floor plans in numerous complexes.  By way of example:

      a.    Six (6) Tested Properties—Uptown Square, Uptown Place, Stratford, Collier Hills, Forest, and Lenox Park—share common design elements in the bathrooms of their units, and with the bathrooms of 12 of the untested Subject Properties.  Each of these properties utilizes a common bathroom design that makes the depth

14

of the room equal to the length of the bathtub, and arranges the bathtub, the toilet, and the lavatory in sequence along a single wall. This common design results in inadequate distances between facilities in these bathrooms making them inaccessible to persons in wheelchairs.

b.     Five (5) Tested Properties—Peachtree Hills, Glen, Abbey Corners, and Harbour Place—share common design elements in the bathrooms of their units, and with the bathrooms of 10 of the untested Subject Properties.

c.     The Oglethorpe and Park at Phillips Place, each a Tested Property, share common design elements in the bathrooms of their units, and with the bathrooms of units at two of the untested Subject Properties.

d.     Four (4) Tested Properties—Stratford, Corners, Gardens and Hyde Park—share common design elements in the kitchens of their units, and with the kitchens of ten (10) of the untested Subject Properties. These "galley" kitchens do not allow sufficient clearances so as to allow a person in a wheelchair to maneuver about and use the facilities.

e.     Four (4) Tested Properties—Harbour Place, Abbey, Ballentyne, and Gallery—share common design elements in the kitchens of some of their units, and with the kitchens of five (5) of the untested Subject Properties. These "U-shaped" kitchens do not allow sufficient clearances so as to allow a person in a wheelchair to maneuver about and use the facilities.

f.     Four (4) Tested Properties—Ballentyne, Harbour Place, Abbey and Gallery—share common design elements in the kitchens some of their units, and with the kitchens of four (4) of the untested Subject Properties. These "L-shaped" kitchens with islands do not allow sufficient clearances so as to allow a person in a wheelchair to maneuver about and use the facilities.

40.    On information and belief and as demonstrated by: (a) the pervasiveness and similarity of the FHA and ADA violations at the Tested Properties, and (b) the common elements of design at Tested Properties and untested Subject Properties, POST's continuing pattern and practice of design and construction have resulted in violations at each of the Subject Properties. POST's violations are continuing, ongoing and demonstrate a pervasive pattern and practice of systematic and continuous FHA and ADA violations over several years. POST has repeatedly and continually failed to design and construct covered multifamily dwellings, including their public and common use areas, in accordance with the requirements of 42 U.S.C. § 3604(f)(3)(C), 42 U.S.C. § 12183(a)(1), and the applicable regulations.

41.    Some of the Subject Properties that constitute part of POST's pattern and practice of designing and constructing inaccessible multifamily dwellings have been completed within two years of the filing of this Complaint.

42.    In carrying out the aforementioned actions, POST acted intentionally and willfully, and with callous and reckless disregard of the FHA and ADA, as well as the rights of persons with disabilities to accessible housing.

## INJURY TO PLAINTIFF

43.    As a result of POST's actions described above, the ERC has been directly and substantially injured in that it has been frustrated in its mission to eradicate discrimination in housing, and in carrying out the programs and services that it provides, including encouraging integrated living patterns, educating the public about fair housing rights and requirements, educating and working with industry groups on fair housing compliance, providing counseling services to persons either looking for housing or affected by discriminatory housing practices, and eliminating discriminatory housing practices.

44.    POST's continuing discriminatory practices also have forced the ERC to divert significant and scarce resources to identify, investigate, and counteract POST's discriminatory practices, and such practices have frustrated the ERC's other efforts against discrimination, causing the ERC to suffer a concrete and demonstrable injury.

45.    In addition to and independent of the injuries stated above in Paragraphs 43 and 44, as a result of POST's wrongful conduct complained of herein, the ERC's individual public members, many of whom are disabled persons living within the proximity of one or more Subject Properties, have been damaged by POST's denial of access to its dwelling units, common-use areas, and public-use areas.

46.    Until remedied, POST's unlawful, discriminatory actions will continue to injure the ERC by, *inter alia*:

> a.    interfering with efforts and programs intended to bring about equality of opportunity in housing;
>
> b.    requiring the commitment of scarce resources, including substantial staff time and funding, to investigate and counteract POST's discriminatory conduct, thus diverting those resources from the ERC's other activities and services, such as education, outreach, and counseling;
>
> c.    frustrating its mission and purpose of promoting the equal availability of housing to all persons without regard to any protected category, including disability; and
>
> d.    injuring the rights and interests of the ERC's individual public members who have disabilities.

17

## FIRST CLAIM FOR RELIEF
### (FHA Violations)

47.    Plaintiff adopts and realleges the allegations in paragraphs 1-46.

48.    The Subject Properties are comprised of approximately sixty (60) apartment complexes, and contain more than twenty-one thousand (21,000) individual housing units.

49.    Each of the Subject Properties is a covered multifamily dwelling subject to the FHA. At the Subject Properties, each of the ground-floor units in all buildings, and all units in buildings on floors serviced by an elevator, is a "covered unit" within the meaning of the FHA. Each "covered unit" at the Subject Properties, and the public and common use areas at the Subject Properties, is subject to the design and construction requirements of the FHA, 42 U.S.C. § 3604(f)(3)(C).

50.    The ERC tested twenty-seven (27) of the Subject Properties and found numerous violations of the FHA, 42 U.S.C. § 3604(f)(3)(C) at virtually every property.

51.    On information and belief, based on the violations identified in the Tested Properties, and POST's pattern of incorporating common design elements in the design and construction of its "covered units," FHA violations are present in each of the Subject Properties. In some instances, POST utilized the same (or virtually the same) floor plans or "foot prints" in the design and construction of hundreds, if not thousands, of the "covered units" at the Subject Properties.

52.    On information and belief, POST repeatedly and continually has failed to design and construct the Subject Properties so that, among other things:

        a.    public-use and common-use areas are readily accessible to, and usable by, individuals with handicaps;

        b.    doors into and within covered units are sufficiently wide to allow passage by persons with handicaps who use wheelchairs;

    c.     covered units contain the following features of adaptive design:

         1)     an accessible route into and through the dwelling;

         2)     usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space;

         3)     light switches, electrical outlets, thermostats and other environmental controls in accessible locations; and

         4)     reinforcements in bathroom walls that allow for the installation of grab-bars.

53.    Through the actions and inactions describe above, POST has:

    a.     discriminated in the sale or rental of, otherwise made unavailable, or denied dwellings to persons because of their handicaps in violation of the FHA, 42 U.S.C. § 3604(f)(1);

    b.     discriminated against persons because of their handicaps in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with the rental of a dwelling, in violation of the FHA, 42 U.S.C. § 3604(f)(2); and

    c.     failed to design and construct dwellings in compliance with the requirements mandated by the FHA, 42 U.S.C. § 3604(f)(3), and the applicable regulations.

54.    The actions complained of constitute a continuing pattern and practice of repeated and continuing FHA violations in that POST has engaged in a systematic and consistent discriminatory pattern and practice of designing and constructing covered multifamily dwellings in violation of FHA requirements.

55.    POST's conduct has been intentional, willful and taken in disregard for the rights of others.

56.     As a result of POST's wrongful conduct, the ERC, both in its own right, and as a representative of its individual members with disabilities, has been injured by a discriminatory housing practice and is, therefore, an "aggrieved person," as defined by the FHA, 42 U.S.C. 3602(i)(1).

57.     Based on its past and ongoing practices, POST is continuing with its practices of designing and constructing covered multifamily dwellings, and common use and public use areas that are in violation of the FHA. Pursuant to Section 3613(a)(1) of the FHA, the ERC is entitled to temporary and permanent injunctive relief, enjoining POST, its officers, directors, employees, agents, successors, assigns and all other persons in active concert or participation with any of them from constructing -- including the acquisition of any building or construction permits, or certificates of occupancy -- any covered multifamily housing and common areas that fail to fully comply with the FHA and the applicable regulations.

58.     On information and belief, as part of its on-going business plans, POST anticipates, or is in the process of selling, certain of its apartment facilities, including covered units. By way of example, **POST** has publicly reported that: "During [the past several years] the Company has been a net seller of apartment assets in an effort to harvest value and recycle capital through the sale of non-core assets." POST Form 10-Q for quarter ended June 30, 2006. Further, "as of September 30, 2006, the Company had three apartment communities, containing 826 units, and one condominium conversion community, originally containing 127 units classified as held for sale." POST Form 10-Q for quarter ended September 30, 2006.

59.     To the extent that such sales continue, the ERC is irreparably harmed, and this Court's ability to render a meaningful judgment after a trial of this matter is frustrated. As a result, this Court may, and should, order temporary injunctive relief prohibiting the sale by POST of any apartment or condominium complex containing a covered unit, or any individual

covered unit, until the entry of final relief herein, including such retrofit alteration to covered units as may be ordered by the Court.

## SECOND CLAIM FOR RELIEF
### (ADA Violations)

60.     Plaintiff adopts and realleges the allegations in paragraphs 1-58.

61.     The rental and leasing offices at the Subject Properties, and the features and accommodations appurtenant to these offices, are sales or rental establishments, the operations of which affect commerce, and are "public accommodations" as defined by 42 U.S.C. § 12181(7).

62.     The rental and leasing offices, and the facilities and accommodations appurtenant to the public use of these rental offices, including the parking, sidewalks and restrooms at the offices of the Subject Properties designed and constructed for first use after January 26, 1993, are subject to the prohibition on discrimination contained in 42 U.S.C. § 12182(a), and are subject to the design and construction requirements of 42 U.S.C. § 12183(a)(1).

63.     The ERC has found ADA violations at many of the Tested Properties.

64.     On information and belief, based on the results at the Tested Properties, POST has failed to design and construct certain Subject Properties' rental and leasing offices, and the appurtenant parking, sidewalks and restrooms at those offices, in such a manner that the facilities are readily accessible to, and usable by, individuals with disabilities.

65.     The actions of POST, as described herein, constitute:

        a.      discrimination against individuals with disabilities in the full and equal enjoyment of the services, facilities, privileges and accommodations of a

21

place of public accommodation, in violation of the ADA, 42 U.S.C. §
12182(a); and

b.    a failure to design and construct or remodel public accommodations in
compliance with the requirements of the ADA, 42 U.S.C. § 12183(a)(1)
and (2), and the applicable regulations.

66.    The actions complained of constitute a pattern and practice of repeated and
continuing violations of the ADA in that POST has engaged in a systematic and consistent
discriminatory practice of designing and constructing the rental offices and the appurtenant
parking, sidewalks and restrooms at those rental offices in violation of the requirements of the
ADA, and the applicable regulations.

67.    The actions of POST complained of here have the effect of denying the ERC's
disabled individual public members, as well as that segment of the general public with
disabilities, access to the rental offices and the appurtenant parking, sidewalks and restrooms at
those rental offices at the Subject Properties.

68.    The ERC is an "aggrieved person" and this Court is entitled to grant such relief as
it considers appropriate pursuant to 42 U.S.C. § 12188(b)(2)(B), including temporary and
permanent injunctive relief and damages, as a result of POST's wrongful conduct.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the Equal Rights Center, respectfully prays that this Court grant
it judgment in its favor and against POST as follows:

22

A.     Declaring, pursuant to 28 U.S.C. §§ 2201, that POST's practices and actions, as alleged herein, violate the FHA, the ADA, and the applicable regulations;

B.     Enjoining POST, its officers, directors, employees, agents, successors, assigns, and all other persons in active concert or participation with any of them, both temporarily during the pendency of this action, and permanently from:

    1.     constructing, including the acquisition of any building or construction permits, or certificates of occupancy, any covered multifamily housing and/or common areas that, in any way, fail to comply with the FHA and the applicable regulations;

    2.     selling any apartment or condominium complex containing a covered unit, or any individual covered dwelling unit, until the entry of final relief herein, or until the completion of such retro-fit alteration to covered units as may be ordered by the Court;

    3.     failing or refusing to bring the covered dwelling units and the public use and common use areas at the Subject Properties into immediate compliance with the requirements of 42 U.S.C. § 3604(f)(3)(C), and the applicable regulations;

    4.     failing or refusing to bring the public use and common use areas at the Subject Properties into immediate compliance with the requirements of 42 U.S.C. §§ 12182-83, and the applicable regulations; and

    5.     failing or refusing to design and construct any covered multifamily dwellings in the future in compliance with the FHA, the ADA, and the applicable regulations.

C.     Awarding such damages as would fully compensate the ERC for the injuries incurred as a result of POST's discriminatory housing practices and conduct;

D.      Awarding such punitive damages against POST as are proper under the law;

E.      Awarding the ERC its costs and attorneys' fees incurred herein; and

F.      Awarding the ERC such other relief as this Court deems just and proper.

Dated: November 21, 2006           Respectfully Submitted,

Sheila J. Carpenter (DC Bar #935742)
sjc@jordenusa.com
Jorden Burt LLP
1025 Thomas Jefferson Street, N.W.
Suite 400 East
Washington, D.C.  20007
Tel:  (202) 965-8165
Fax: (202) 965-8104

and

Isabelle M. Thabault (D.C. Bar #318931)
Isabelle_Thabault@washlaw.org
Donald L. Kahl (DC Bar # 489472)
Don_Kahl@washlaw.org
Washington Lawyers' Committee
For Civil Rights and Urban Affairs
11 Dupont Circle, NW
Suite 400
Washington, D.C.  20036
Tel:  (202) 319-1000
Fax:  (202) 319-1010

Attorneys for Plaintiff
Equal Rights Center

**Addendum A To Complaint:**
**"POST Subject Properties"**
**"*" Designates "Tested Properties"**

**Arizona**

Roosevelt Square  403 units
121 W. Portland, Phoenix, AZ  85003

**Colorado:**

*Uptown Square  696 units
1950 Pennsylvania Street Denver, CO 80203

**District of Columbia:**

*Massachusetts Avenue  269 units
1499 Massachusetts Ave., NW, Washington, DC  20005

**Florida:**

*Hyde Park  389 units
502 S. Fremont Avenue Tampa, FL 33606

*Harbour Place 578 units
800 Harbour Post Drive Tampa, FL 33602

Harbour Place City Homes 206 units

Hyde Park Walk
800 So. Dakota Ave. Tampa, FL 33606

Parkside  245 units
425 E. Central Blvd. Orlando, FL 32801

*Rocky Point  916 units
3101 N Rocky Point Dr E Tampa, FL 33607

**Georgia:**

The Vinings  403 units
3385 Atlanta Rd SE Smyrna, GA 30080

*Brookhaven  735 units
2829 Caldwell Road Atlanta, GA 30319

**06 1991**

**FILED**

NOV 2 1 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

\*Peachtree  300 units
350 Peachtree Hills Ave NE Atlanta, GA 30305

Renaissance  342 units
400 Central Park Place Atlanta, GA 30308

Oak  182 units
1570 Sheridan Rd NE Atlanta, GA 30324

Crossing  354 units
4777 Ashford Dunwoody Rd Atlanta, GA 30338

\*Lenox Park  206 units
100 Lenox Park Cir NE Atlanta, GA 30319

Crest  410 units
50 Adams Lake Blvd. Atlanta, GA 30339

Dunwoody  530 units
7150 W Peachtree Dunwoody Rd NE Atlanta, GA 30328

\*Collier Hills  396 units
914 Collier Rd NW Atlanta, GA 30318

\*Oglethorpe  250 units
3070 Ashford Dunwoody Rd NE Atlanta, GA 30319

\*Lindbergh  396 units
485 Lindbergh Place NE Atlanta, GA 30324

\*Gardens  397 units
1020 Lenox Park Blvd NE Atlanta, GA 30319

\*Glen  314 units
4120 Peachtree Rd NE Atlanta, GA 30319

Ridge  434 units
3505 Windy Ridge Pkwy SE Atlanta, GA 30339

Riverside  527 units
4403 Northside Pkwy Atlanta, GA 30327

Briarcliff  688 units
500 Briarvista Way Atlanta, GA 30329

*Stratford  250 units
3400 Stratford Road Atlanta, GA 30326

Parkside  188 units
250 10th Street, NE Atlanta, GA 30309

Spring  452 units
3375 Spring Hill Parkway SE Smyrna, GA 30080

Biltmore  276 units
855 West Peachtree St. Atlanta, GA 30308

River (n/k/a River West Condominiums)

**New York:**

Luminaria  138 units
385 First Avenue New York, NY 10010

Toscona  199 units
389 East 89th Street New York, NY 10128

**North Carolina:**

*Ballantyne  319 units
14205 Ballantyne Lake Rd Charlotte, NC 28277

Gateway Place  436 units
120 N. Cedar St, Suite 735 Charlotte, NC 28202

*Park at Phillips Place  402 units
4835 Cameron Valley Pky Charlotte, NC 28210

*Uptown Place  227 units
305 N. Graham Street Charlotte, NC 28202

**Texas:**

*Worthington  332 units
2808 McKinney Ave. Dallas, TX 75204

*Vintage  161 units
2800 Cole Ave/2828 La Clede  Dallas, TX 75204

Uptown Village  496 units
2121 Routh Street Dallas, TX 75201

*Abbey  34 units
2525 Worthington/2808 McKinney Ave Dallas, TX 75204

Vineyard  116 units
3310 Cole Ave/3304 Cole Ave Dallas, TX 75204

*Square  218 units
2828 LaClede Dallas, TX 75204

*Heights  368 units
3015 State Street Dallas, TX 75204

Addison Circle  1334 units
5009 Addison Circle Addison, TX 75001

Rice Lofts  308 units
909 Texas Street Houston, TX 77002

*Gallery  34 units
3006 Woodside Street Dallas, TX 75204

Midtown Square  529 units
302 Gray Avenue Houston, TX 77002

Wilson Building  143 units
1623 Main Street Dallas, TX 75201

Legacy  384 units
5741 Martin Road Plano, TX 75024

Mercer Square Condos  85 units
McKinney Ave., Dallas

Rice Lofts
909 Texas Street, Houston, TX 77002

Cole's Corner  186 units
3304 Cole Avenue, Suite 169 Dallas, TX 75204

West Avenue Lofts
300 West Ave
Austin, TX 78701

**Virginia:**

*Carlyle  205 apts + 145 condos
520 Carlyle Street Alexandria, VA 22314

*Corners  336 units
5804 Post Corners Trail, Centreville, VA 20120

*Forest  364 units
12101 Pine Forest Circle Fairfax, VA 22030

*Pentagon Row  504 units
1201 South Joyce Street, Suite C-1 Arlington, VA 22202

*Tyson's Corner  499 units
1526 Lincoln Circle, McLean, VA 22102