## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **EQUAL RIGHTS CENTER,** | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) |
| **POST PROPERTIES, INC.** *et al.,* | )   **Case No. 1:06CV01991** |
| | )   Judge Richard Leon |
| Defendants. | ) |
| | ) |

## MEMORANDUM OF POINTS AND AUTHORITIES OF
## PLAINTIFF EQUAL RIGHTS CENTER IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS

Sheila J. Carpenter
DC Bar #935742
sjc@jordenusa.com
Jorden Burt LLP
1025 Thomas Jefferson St. N.W.
Suite 400 East
Washington, D.C.  20007
Tel:  (202) 965-8165
Fax: (202) 965-8104

Donald L. Kahl
DC Bar # 489472
Don_Kahl@washlaw.org
Washington Lawyers'
Committee for Civil Rights
and Urban Affairs
11 Dupont Circle, NW
Suite 400
Washington, D.C.  20036
Tel:  (202) 319-1000
Fax:  (202) 319-1010

Attorneys for Plaintiff
Equal Rights Center

March 2, 2007

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

STATEMENT OF FACTS ...............................................................................................3

ARGUMENT ....................................................................................................................6

I.      STANDARD OF REVIEW ...................................................................................6

II.     THE ERC HAS PROPERLY ALLEGED STANDING UNDER
        THE FHA AND THE ADA. ................................................................................7

        A.      The ERC Has Standing Under the FHA. ..............................................7

                1.      Prudential Standing Limitations Do Not Apply to the
                        ERC's FHA Claims. ...................................................................8

                2.      THE ERC Has Article III Standing to Proceed With Its
                        FHA Claims. ...............................................................................8

                        a.      Article III Standing is Available to Organizations
                                Such as the ERC. ..........................................................8

                        b.      The ERC Has Adequately Alleged Injury In Fact
                                For Purposes of Article III Standing. ..........................9

                3.      The Geographic Location of the Subject Properties Is Legally
                        Irrelevant To The Issue of Standing. .......................................11

                4.      Whether All Subject Properties Have Actually Been Tested Is
                        Legally Irrelevant to the Issue of Standing. .............................13

                5.      The "Unfinished" Condominiums are Properly Part of
                        this Lawsuit. .............................................................................14

        B.      The ERC Has Standing Under the ADA. ............................................14

III.    POST'S STATUTE OF LIMITATIONS ARGUMENT FAILS. ....................15

        A.      The Continuing Violation Doctrine Applies to the ERC's
                Allegations of Post's Pattern and Practice of Violating the FHA. ......16

        B.      The Continuing Violations Theory Remains Fully Applicable to
                FHA Cases Post-*Morgan*. ..................................................................21

CONCLUSION ..............................................................................................................23

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Abigail Alliance for Better Access to Developmental Drugs v. Eschenbach*,
    469 F.3d 129 (D.C. Cir. 2006) ........................................................................10

*Baltimore Neighborhoods, Inc. v. Rommel Builders, Inc.*, 40 F. Supp. 2d 700
    (D. Md. 1999) ..................................................................................................18

*Communities Against Runway Expansion, Inc. v. Fed. Aviation Admin.*, 355 F.3d 678
    (D.C. Cir. 2004) ................................................................................................12

*Conley v. Gibson*, 355 U.S. 41 (1957) .....................................................................7

*Eastern Paralyzed Veterans Ass'n v. Lazarus-Burman Assocs.*, 133 F. Supp. 2d 203
    (E.D.N.Y. 2001) ...............................................................................................20

*Fair Employment Council of Greater Washington, Inc. v. BMC Mktg. Corp.*,
    28 F.3d 1268 (D.C. Cir. 1994) ..........................................................................10

*Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91 (1979) ....................................8, 12

*Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224 (6th Cir. 2003) ..............................12

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1983) ........................................ passim

*Independent Living Res. v. Oregon Arena Corp.*, 982 F. Supp. 698 (D. Or. 1997) .....................15

*Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37 (2d Cir. 1997) ........................15

*Memphis Ctr. for Indep. Living v. Makowsky Constr. Co.*, No. 01-2069 D/Pha,
    slip op. (W.D. Tenn. 2003) ...............................................................................19

*Montana Fair Hous., Inc. v. Am. Capital Dev., Inc.*, 81 F. Supp. 2d 1057 (D. Mont. 1999) .18, 20

*Moseke v. Miller & Smith, Inc.*, 202 F. Supp. 2d 492 (E.D. Va. 2002) .............................. passim

*MX Group, Inc. v. City of Covington*, 293 F.3d 326 (6th Cir. 2002) ...........................................15

*Nat'l Fair Hous. Alliance, Inc. v. Prudential Ins. Co.*, 208 F. Supp. 2d 46 (D.D.C. 2002) . passim

*Nat'l Fair Hous. Alliance, Inc. v. Prudential Ins. Co.*, 219 F. Supp. 2d 104 (D.D.C. 2002)       22

*National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ...................................21, 22, 23

*Silver State Fair Hous. Counsel Inc. v. ERGS, Inc.*, 362 F. Supp. 2d 1218
    (D. Nev. 2005) ...........................................................................................18, 19, 22

*Spann v. Colonial Vill., Inc.*, 899 F.2d 24 (D.C. Cir. 1990) ......................................................9, 10

*Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111 (D.C. Cir. 2000) .................................................6

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ........................................................................7

*Trafficante v. Metro. Life Ins. Co.*, 490 U.S. 205 (1972) ...........................................................8, 9

*Wallace v. Chicago Hous. Auth.*, 321 F. Supp. 2d 968 (N.D. Ill. 2004)                                      22

**Statutes**                                                                                          **Page(s)**

Fair Housing Act, 42 U.S.C. §§ 3601-3619 (2006)............................................................. passim

American with Disabilities Act, 42 U.S.C. §§ 12181 (2006) ...........................................5, 14, 15

Judiciary and Judicial Procedure, Federal Question, 28 U.S.C. §1331 ..........................................6

**Legislative Material**                                                                               **Page(s)**

H.R. Rep. No. 100-711 (1988) ..............................................................................................2, 18

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **EQUAL RIGHTS CENTER** ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | |
| ) | |
| **POST PROPERTIES, INC.** *et al.* ) | **Case No. 1:06CV01991** |
| ) | Judge Richard Leon |
| Defendants. ) | |
| ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES OF
PLAINTIFF EQUAL RIGHTS CENTER IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS**

Defendants Post Properties, Inc., Post GP Holdings, Inc. and Post Apartment Homes L.P. (collectively "Post") have filed a "Motion to Dismiss or in the Alternative for Partial Summary Judgment." Defendants' Motion is not accompanied by the Statement of Material Facts as to Which There is No Genuine Issue required by LCvR 7(h). For this reason alone, this Court should treat the motion exclusively as a Motion to Dismiss. Plaintiff the Equal Rights Center (the "ERC"), by its attorneys, opposes Defendants' Motion to Dismiss and in support thereof submits this Memorandum of Points and Authorities, the accompanying Declaration of Sheila J. Carpenter, and a proposed order denying the Motion.

**INTRODUCTION**

One of the biggest obstacles to equal opportunity that persons with disabilities face is a lack of accessible housing, particularly in multi-family housing complexes in metropolitan areas. Recognizing that barriers to accessibility effectively make housing unavailable to persons with disabilities, federal civil rights law mandates certain minimal aspects of

accessibility in multi-family housing to prevent discrimination against persons with disabilities. *See* House Rep., p. 25, 1988 U.S.C.C.A.N. at 2186 ("A person using a wheelchair is just as effectively excluded from the opportunity to live in a particular dwelling by the lack of access into a unit and by too narrow doorways as by a posted sign saying 'No Handicapped People Allowed.'"  Post has systematically ignored the law for over a decade and a half.  In its Memorandum in Support ("Mem."), Post complains about the "breadth" of the ERC's Complaint in this action.[1]  Post's perception that the Complaint is broad is correct. It is so due to the breadth of Post's pattern and practice of violating of the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 , 42 U.S.C. §§ 3601-3619, (the "Fair Housing Act" or "FHA") and the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12181.  These statutes received wide publicity when they were passed.  Moreover, Post was well aware of these laws.  For example, Post's 10-K for the year ending December 31, 1998, filed with the Securities and Exchange Commission identified the FHA as a risk to Post's business.  *See* **http:/ /www.sec.gov/Archives/edgar/data/903127/0000950144-99-002704.txt.**

Post has now been called to account for its pattern and practice of ignoring these statutes and the rights of the disabled.  The ERC has extensively investigated and documented its claims against Post.  The allegations of the ERC's Complaint, which must be taken as true at this early stage of this matter, clearly and concisely plead both the legal and

---

[1] Post's Motion to Dismiss does not attempt to refute the ERC's substantive allegations. Instead, Post attempts to sidestep its legal obligations by attacking the ERC's standing to bring its claims, and by claiming a purported statute of limitations bar.  Post improperly asks the Court to make factual findings at the initial pleading stage – before any discovery – that certain individual properties are outside the scope of the FHA and ADA, based on Post's conclusory, undocumented assertions regarding when the properties were built and who built them.

factual bases for the ERC's claims.  These claims fall squarely within the requirements of the controlling case law.  There is thus no theory upon which dismissal is proper here.[2]

Post submits an affidavit in support of its argument that some of its properties should be excluded from the lawsuit.  The affidavit is conclusory and unsupported by any admissible documentary evidence.  Prior to responding to such factual arguments, the ERC is entitled to discovery to test the conclusions stated by the affidavit.  Rule 56(f) of the Federal Rules of Civil Procedure provides that when one party does not have the information necessary to draft contradictory affidavits, the court can order discovery.  As demonstrated in the Declaration of Sheila J. Carpenter filed herewith, such discovery is needed before the ERC should be required to respond to any summary judgment motion.

## STATEMENT OF FACTS

The allegations of the Complaint, which must be taken as true for purposes of the Motion, may be summarized as follows:

The ERC is a non-profit membership corporation; its mission is to provide a multifaceted approach to civil rights issues, and to create an open society where equal opportunity for all is assured.  The ERC has continuously sought to advance its mission through education, counseling, advocacy, enforcement, and referral services to aid protected individuals by apprising them of their civil rights and preserving those rights.  (Complaint ¶7)

---

[2] The ERC agrees that any property designed and constructed before March 13, 1991 is not covered by the statutes and the ERC endeavored not to include any such properties in the lawsuit.  Para. 3 of Ms. Boone's Affidavit, which is unsupported by any documentation, indicates that there are some properties or "phases" of properties included in the suit which were designed and constructed before March 13, 1991.  Discovery will have to reveal which properties, if any, were completed and occupied prior to March 13, 1991.

Through ownership, control, supervision, building, development, operation and/or management, Post has been involved in the design and construction of scores of multifamily housing complexes covered by the FHA and ADA in the District of Columbia, Virginia, Colorado, Florida, Georgia, New York, North Carolina and Texas.  (Complaint ¶11)

Violations of the FHA and ADA at certain Post complexes were brought to the ERC's attention.  As a result, the ERC tested many Post complexes.  The ERC identified at least one FHA or ADA violation, and in most cases multiple violations, at each of the Tested Properties.  The frequency and similarity of these violations demonstrate that Post has engaged in a pervasive pattern and practice of designing and constructing apartment properties in violation of FHA and ADA accessibility design requirements.  The ERC anticipates that further investigation and discovery will identify additional FHA and ADA violations at the Tested Properties.  (Complaint ¶¶15-17, 21)

By way of example, covered dwelling units in the Tested Properties subject to FHA design and construction requirements exhibited, with varying frequency by complex, the following violations:

a.    doors in units that are not sufficiently wide so as to allow passage into kitchens, bathrooms, bedrooms and other areas in the units by persons using wheelchairs;

b.    units that do not provide an accessible route into and through the unit, including access to patios, balconies and other outside areas;

c.    bathrooms that do not have sufficient clear floor space so as to allow a person in a wheelchair to maneuver about the space;

d.    kitchens that do not have sufficient clear floor space so as to allow a person in a wheelchair to maneuver about the space;

     e.     light switches, electrical outlets, thermostats and other environmental controls that are not located in accessible locations; and

     f.     bathroom walls that are not reinforced to allow for the installation of grab bars.

Many of the Tested Properties also violate FHA accessibility requirements because the common areas used by residents were not designed and constructed in such manner that they are readily accessible to, and usable by, persons with disabilities.  (Complaint ¶¶22-23)

The Complaint, at ¶¶28-37, gives numerous examples of Post's failure to design and construct multi-family housing in accord with the law.  More important, the Complaint alleges at ¶40:

> [A]s demonstrated by: (a) the pervasiveness and similarity of the FHA and ADA violations at the Tested Properties, and (b) the common elements of design at Tested Properties and untested Subject Properties, Post's continuing pattern and practice of design and construction have resulted in violations at each of the Subject Properties.  Post's violations are continuing, ongoing and demonstrate a pervasive pattern and practice of systematic and continuous FHA and ADA violations over several years.  Post has repeatedly and continually failed to design and construct covered multifamily dwellings, including their public and common use areas, in accordance with the requirements of 42 U.S.C. § 3604(f)(3)(C), 42 U.S.C. § 12183(a)(1), and the applicable regulations.

The Complaint goes on to allege in ¶41 that "[s]ome of the Subject Properties that constitute part of Post's pattern and practice of designing and constructing inaccessible multifamily dwellings have been completed within two years of the filing of this Complaint."

As a result of Post's actions described above, the ERC has been directly and substantially injured in that it has been frustrated in its mission to eradicate discrimination in housing, and in carrying out the programs and services that it provides, including encouraging integrated living patterns, educating the public about fair housing rights and

requirements, educating and working with industry groups on fair housing compliance, providing counseling services to persons either looking for housing or affected by discriminatory housing practices, and eliminating discriminatory housing practices.  Post's continuing discriminatory practices also have forced the ERC to divert significant and scarce resources to identify, investigate, and counteract Post's discriminatory practices, and such practices have frustrated the ERC's other efforts against discrimination, causing the ERC to suffer a concrete and demonstrable injury.  Also, the ERC's individual public members, many of whom are disabled persons living within the proximity of one or more Subject Properties, have been damaged by Post's denial of access to its dwelling units, common-use areas, and public-use areas.  (Complaint ¶¶12, 43-45)

The Complaint seeks declaratory relief, injunctive relief, compensatory and punitive damages, attorneys' fees and costs.

## ARGUMENT

### I.      STANDARD OF REVIEW

In passing on a motion to dismiss, the allegations of the complaint should be accepted as true and the plaintiff is entitled to benefit of all inferences that can be drawn from these facts.  *Nat'l Fair Hous. Alliance, Inc. v. Prudential Ins. Co.* ("*Prudential*"), 208 F. Supp. 2d 46, 52 (D.D.C. 2002) A plaintiff's factual allegations must be presumed true, and a plaintiff must be given every favorable inference that may be drawn from the allegations of fact. *Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1113 (D.C. Cir. 2000)  A "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief." [3]

*Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

This standard "relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of [allegedly] unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). Thus, to survive a Rule 12(b)(6) motion to dismiss, a plaintiff need not plead facts beyond those that would "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* (citation omitted). Under these standards, the ERC has more than adequately pled the basis of its organizational standing to pursue its FHA and ADA claims.

## II.    THE ERC HAS PROPERLY ALLEGED STANDING UNDER THE FHA AND THE ADA.

Based on the allegations of the Complaint, Post's claims for dismissal premised on the ERC's standing must fail.

### A.    The ERC Has Standing Under the FHA.

The ERC is a civil rights organization whose mission is "to provide a multifaceted approach to civil rights issues, and to create an open society where equal opportunity for all is assured." Complaint ¶ 7. Since being founded in 1999, "the ERC has continuously sought to advance its mission through education, counseling, advocacy, enforcement, and referral services to aid protected individuals by apprising them of their civil rights and preserving those rights." *Id.* The ERC has alleged that Post has engaged in a continuing pattern and practice of designing and constructing scores of multifamily housing complexes in eight states and the District of Columbia that do not include the elements of accessible or adaptable

---

[3] Post's claim of lack of subject matter jurisdiction (Mem. at 4) is puzzling. The ERC's claims arise under the federal civil rights laws—clearly a matter within this Court's subject matter jurisdiction. *See* 28 U.S.C. § 1331.

design required by the FHA.  (*See, e.g.,* Complaint ¶¶ 6, 18, 21-40)  The ERC has alleged

that it has been directly and substantially injured by this pattern and practice of systematic

violations which have frustrated the ERC's mission to eradicate discrimination in housing;

frustrated the ERC's ability to carry out the programs and services that it provides; and

caused the ERC to divert significant and scarce resources to identify, investigate, and

counteract Post's discriminatory practices.  *See* Complaint ¶¶ 43, 44.  These allegations,

which must be accepted as true for the purposes of Post's Motion, clearly establish that the

ERC has standing, as an organization, to sue under the FHA.

### 1.      Prudential Standing Limitations Do Not Apply to the ERC's FHA Claims.

In allowing suits by "aggrieved person[s]" under the FHA, 42 U.S.C. § 3613,

Congress evidenced an intent to define standing for purposes of the Act as broadly as is

permitted by Article III of the Constitution, thereby depriving courts of the authority to create

prudential barriers to standing in FHA suits.  *See Havens Realty Corp. v. Coleman*, 455 U.S.

363, 372 (1982); *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972).  "Thus the

sole requirement for standing to sue under [the FHA] is the Art. III minima of injury in fact:

that, *i.e.,* the plaintiff must allege that as a result of the defendant's actions he has suffered 'a

distinct and palpable injury.'"  *Havens*, 455 U.S. at 372 (quoting *Warth v. Seldin*, 422 U.S.

490, 501 (1975)).  *See Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 102-09 (1979).

### 2.      The ERC Has Article III Standing To Proceed With Its FHA Claims.

#### a.      Article III Standing is Available to Organizations Such as the ERC.

In *Havens*, the Supreme Court made clear that Article III standing to challenge FHA

violations is available to organizations such as the ERC.  *Havens*, 455 U.S. at 378-79 ("In

determining whether [an organization] has standing under the Fair Housing Act, we conduct the same inquiry as in the case of an individual:  Has the plaintiff 'alleged such a personal stake in the outcome of the controversy' as to warrant invocation of federal-court jurisdiction'?"  (*quoting Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 561 (1977))).  Under the FHA, Congress intended "to define standing as broadly as is permitted." *Trafficante*, 409 U.S. at 208-09.  Because the Attorney General and HUD have limited FHA enforcement resources, suits by private attorneys general, such as the ERC, are "the main generating force" in vindicating the goals and policy of the FHA.[4]  *Id*. at 209, 211.

### b.    The ERC Has Adequately Alleged Injury In Fact For Purposes Of Article III Standing.

In *Havens*, the Supreme Court made clear that the only prerequisite for standing under the FHA is a demonstration of the injury in fact required by Article III.  *Havens*, 455 U.S. at 372.  Specifically, the *Havens* Court found injury in fact, and thus, standing where the plaintiff organization alleged: (1) diversion of resources to identify and counteract defendant's unlawful practices, causing impairment of the organization's ability to provide counseling and referral services; and (2) frustration of mission.  *See id*. at 378-79.

In this Circuit, in *Spann v. Colonial Vill., Inc.*, 899 F.2d 24 (D.C. Cir. 1990), the Court also ruled in favor of the ERC's position here, holding that the plaintiff organizations demonstrated sufficient standing by alleging that the defendants' discriminatory practices forced the organizations "to broaden the scope of their efforts in order to reach all forms of

---

[4] Congress has explicitly recognized and supported the invaluable enforcement role of fair housing organizations like the ERC in achieving broad compliance with the FHA.  *See* Housing & Cmty. Dev. Act of 1992, Pub. L. No 102-550 § 905(a)(9), 106 Stat. 3672, 3869 (1992) ("[T]he proven efficacy of private nonprofit fair housing enforcement organizations and community-based efforts makes support for these organizations a necessary component of the fair housing enforcement system.").

discriminatory housing practices" and that "increased education and counseling" undertaken by the plaintiff organizations in connection with such efforts constituted expenditures sufficiently tangible to satisfy Article III's injury-in-fact requirement. *Id.*, 899 F.2d at 28-29. The court compared the *Spann* plaintiffs' allegations concerning standing with the allegations in *Havens* and concluded that the organizational plaintiffs had standing.  *Id.*, 899 F.2d at 29. Here the ERC's allegations mirror those in *Havens.*  The ERC specifically alleges that Post's actions have frustrated the ERC's mission and impeded its ability to carry out its educational and counseling programs and services, forced it to divert scarce resources to the detriment of its other activities and interfered with its efforts and programs intended to bring about equality of opportunity in housing.  *See* Complaint ¶¶ 43, 44, 46.  Such allegations are exactly of the type courts have held sufficient for finding Article III standing of organizational plaintiffs.  *See Havens*, 455 U.S. at 378-79.  Numerous decisions, many of which Post cites in its Memo, echo the *Havens* holding.  *See, e.g.*, *Spann*, 899 F.2d at 28; *Nat'l Fair Hous. Alliance, Inc.*, 208 F. Supp. 2d at 53 (denying defendant's motion to dismiss; "Here, the Fair Housing Group plaintiffs have clearly alleged injury to their programs and activities.  The organizations provide counseling and referral services, as did [the organization] in *Havens* . . . . The complaint alleges in detail that these services, as well as plaintiffs' education programs, are burdened and harmed by the conduct of defendants."). *Abigail Alliance for Better Access to Developmental Drugs v. Eschenbach*, 469 F.3d 129, 133 (D.C. Cir. 2006) (holding that public interest organization "has met th[e] [Haven's] threshold by alleging that it actively engages in 'counseling, referral, advocacy, and educational services'"); *Fair Empl. Council of Greater Washington, Inc. v. BMC Mktg. Corp*., 28 F.3d 1268, 1276 (D.C. Cir. 1994) (finding allegations of interference with

community outreach, public education, counseling, and research efforts and programs sufficient for standing)  The ERC's Complaint contains the averments of a non-profit civil rights organization dedicated to identifying, challenging, and eliminating discrimination in housing, employment, public accommodations, and government services through education, research, testing, counseling, enforcement, and advocacy, not those of an organization Post mischaracterizes as merely a "litigious advocacy group" whose injuries are "self-inflicted." Mem. at 9, 12.

When ruling on a motion to dismiss for lack of standing, general factual allegations of injury resulting from a defendant's conduct will require that the motion be denied.  *See e.g., Moseke v. Miller & Smith, Inc.*, 202 F. Supp. 2d 492, 500 n.9 (E.D.Va. 2002) ("The instant motion is a motion to dismiss, not one for summary judgment.  Even courts that have applied a stricter reading of *Havens*' standing requirement have found that allegations that simply track *Havens*' allegations of injury are sufficient to withstand a motion to dismiss.").  The ERC specifically alleges that Post's actions have frustrated its mission and its ability to carry out its educational and counseling programs and services; forced it to divert scarce resources to the detriment of its non-enforcement activities; and interfered with its efforts and programs intended to bring about equality of opportunity in housing.  *See* Complaint ¶¶ 43, 44, 46. Therefore, at this stage of the litigation, nothing more is required of the ERC to establish standing and Post's Motion must be denied.

3.    **The Geographic Location of the Subject Properties Is Legally Irrelevant to the Issue Of Standing.**

In its Motion, Post baselessly argues that the mere fact that the ERC's headquarters is in Washington, D.C. somehow precludes the ERC from having standing to assert FHA and

ADA violations existing at Post properties outside of the Washington, D.C. area.  Mem. at 18.  This contention is without factual or legal foundation.

Nothing in the Complaint suggests that the ERC's mission or activities are confined to the Washington, D.C. area.  In fact, the Complaint describes the ERC's mission without geographic limitation: "The ERC was founded in 1999 by a group of interdenominational clergy and community leaders to provide a multifaceted approach to civil rights issues, and to create an open society where equal opportunity for all is assured."  Complaint ¶ 7.  The mission statement that is prominently displayed on the ERC's website (www.equalrightscenter.org) is similarly broad in scope: "The Equal Rights Center is a non-profit civil rights organization dedicated to identifying, challenging, and eliminating discrimination in housing, employment, public accommodations, and government services through education, research, testing, counseling, enforcement, and advocacy."  In connection with this action alone, the ERC has, to the detriment of its other activities and programs, expended its resources and the time of its personnel, on testing 27 Post properties, some in the greater D.C. metropolitan area, and some located in the states of Colorado, Florida, Georgia, North Carolina, New York, and Texas.  Complaint ¶ 18.

Post offers no legal authority for the proposition that an organization can only have standing to seek redress for injuries arising from discriminatory housing practices located near its headquarters.  The cases that Post does cite in support of its argument are easily distinguishable and inapplicable to this action.  In both *Gladstone Realtors v. Vill. of Bellwood*, *supra*), and *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224 (2003), plaintiffs were individuals who claimed discriminatory injuries germane to a particular neighborhood, requiring the courts to determine whether the plaintiffs were in fact members of the affected

communities. Similarly, *Communities Against Runway Expansion, Inc. v. Fed. Aviation Admin.*, 355 F.3d 678 (2004), is a case in which an organization sought and was found to have *representational* standing based upon anticipated injuries to its local members—not the organizational standing alleged by the ERC here. The plaintiffs in these cases are to be contrasted with an organizational plaintiff such as the ERC, with no limits on its geographic scope, and which has sustained direct injuries to its mission, services, and programs irrespective of geographic proximity to the Subject Properties.

4.    **Whether All Subject Properties Have Actually Been Tested Is Legally Irrelevant to the Issue of Standing.**

Post also attempts to draw a meaningless distinction between properties "visited or tested" by the ERC and those which have not yet been visited or tested, arguing, again without legal authority, that the ERC cannot assert FHA or ADA claims with respect to the latter. Mem. at 21-22. This argument does not relate to standing at all. As demonstrated above, the ERC has properly alleged the Article III case or controversy required to give it standing to bring its claims. The scope of those claims will be the subject of discovery and proof at trial.

In its Complaint, the ERC has alleged that it tested 27 of approximately 60 Subject Properties (approximately 45%) and found FHA and/or ADA violations at *every* property tested. Complaint ¶¶ 18, 21, 48. Additionally, the ERC has alleged the existence of FHA and/or ADA violations at untested properties based upon (a) the pervasiveness and similarity of the FHA and ADA violations at the Tested Properties, and (b) the common elements of design existing at both Tested Properties and untested Subject Properties. Complaint ¶¶ 39, 40, 51. These allegations are sufficient, at the motion to dismiss stage, to meet the threshold for pleading standing under *Havens*. *See Moseke*, 202 F. Supp. 2d 492 (holding that the ERC

had pled sufficient standing under the FHA to withstand a motion to dismiss, despite visiting and testing certain properties only after filing its complaint).

5.      The "Unfinished" Condominiums are Properly
            Part of this Lawsuit.

Post argues that the ERC's claims with respect to Mercer Square Condominiums and Carlyle are not ripe for judicial review because Ms. Boone's Affidavit states that they are not yet fully constructed. **What Post does not tell the Court is that Post is busy selling these condominiums nonetheless.** Post's website demonstrates that Post is actively seeking buyers for both the Mercer Square Condominiums and the Carlyle Square Condominium. *See* screen prints from www.postproperties.com and www.pnhoffman.com, Exhibit A to the Carpenter Declaration. In other words, as is often done with condominiums, Post is selling condos to the public in advance of their completion, but based on design and construction that lack compliance with the FHA. Once a unit is sold to a third party, this Court may lose its ability to order retrofitting in order to comply with the FHA. *See* 42 U.S.C. § 3613(d). If Post's arguments on the "unfinished" condominiums are accepted, there is never a time when the Court can invoke the full remedies of the FHA since by the time they are finished, many condominiums are sold to third parties. Such a result would be, of course, directly contrary to the "broad remedial purposes" of the FHA.

B.      The ERC Has Standing Under The ADA.

The ERC has pled the requisite facts to support its standing to challenge Post's discriminatory practices under the ADA. For the reasons stated above in connection with FHA standing, the ERC has alleged the requisite injury in fact to establish Article III standing. However, Post argues that the ERC must also meet prudential standing requirements in order to assert a claim Title III of the ADA, 42 U.S.C. § 12181, *et seq.*

(prohibiting discrimination on the basis of disability with respect to places of public

accommodation and commercial facilities). There are cases on both sides of this issue, and

there is no controlling authority in this Circuit. However, those cases supporting the ERC's

ADA standing here represent the better rule of law for the reasons noted below.

In *Independent Living Resources v. Oregon Arena Corp.*, 982 F. Supp. 698, 760-61

(D.Or. 1997), the court applied *Havens* and its progeny, without considering prudential

limitations, in determining that a non-profit organization had standing to bring an action

under Title III of the ADA to redress inadequate wheelchair accessibility in a sports arena.

This analysis is also consistent with the analyses applied to claims arising under

Titles I and II of the ADA and with the broad remedial purposes of the Act. *See* 42 U.S.C. §

12101(b); *MX Group, Inc. v. City of Covington*, 293 F.3d 326, 335 (6th Cir. 2002);

*Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37, 47 (2d Cir. 1997) (overruled

on other grounds by *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 171 n.7 (2d Cir. 2001)).

Given these holdings, Post's desire to place additional restrictions on civil rights plaintiffs in

order to avoid its liability for years of discrimination against people with disabilities should

be rejected.

## III.    Post's Statute of Limitations Argument Fails.

Post attempts to avoid the consequences of their continuing pattern and practice of

designing and constructing apartment homes in violation of the FHA's accessibility

provisions by claiming that the statute of limitations has expired with respect to all buildings

constructed on or before November 21, 2004. *See* Mem. at 25.[5] In support of their

---

[5] This Opposition focuses on the applicability of the statute of limitations to only those
properties that were certified for occupancy on or before November 21, 2004. Post's Motion

argument, defendants primarily rely on *Moseke v. Miller & Smith, Inc.*, *supra*, for the proposition that, contrary to Supreme Court and other district court authority, FHA design and construction claims are somehow exempt from the continuing violation doctrine.  Not only is Post's argument contrary to an extensive body of case law, but it misreads *Moseke* itself.

> **A.     The Continuing Violation Doctrine Applies to the ERC's**
> **Allegations of Post's Pattern and Practice of Violating the FHA.**

Under the FHA, "[a]n aggrieved person may commence a civil action in an appropriate United States district court or State court not later than **2 years after the occurrence or the *termination*** of an alleged discriminatory housing practice."  42 U.S.C. §3613(a)(1)(A) (emphasis supplied).  Post attempts to avoid its liability by arguing that the statute begins to run individually for each FHA-covered property at the time certificates of occupancy are issued to such properties.  *See* Mem. at 26-27.  Specifically, Post argues that the FHA claims are barred as to all but two of the disputed Post properties (one in Virginia and one in North Carolina) because certificates of occupancy were issued for every other relevant property over two years before this Complaint was filed.  This argument ignores the fact that the Complaint specifically and repeatedly alleges that each of Post's individual FHA violations, including those that occurred before and after November 21, 2004, occurred as part of Post's continuing pattern and practice of discriminatory conduct in the design and construction of the disputed apartment complexes.  The Complaint alleges:

> POST has engaged in a continuous pattern and practice of discrimination against person with disabilities in violation of both the FHA and the ADA by designing, constructing and operating covered multifamily dwellings, and the common-use and public-use areas associated with those covered dwellings, in

---

does not question the fact that the statute of limitations has not expired for the ERC's claims related to properties certified for occupancy after November 21, 2004.

> such a manner as to deny persons with disabilities access to, and the use of, these facilities as required under these federal civil rights laws.
>
> . . . .
>
> The frequency and similarity of these violations demonstrate the POST has engaged in a pervasive pattern and practice of designing and constructing apartment properties in violation of FHA and ADA accessibility design requirements.
>
> . . . .
>
> The following specific examples [of covered dwelling unit, common area and public use violations] are illustrative of POST's pattern and practice of FHA and ADA violations.
>
> . . . .
>
> POST's violations are continuing, ongoing and demonstrate a pervasive pattern and practice of systematic and continuous FHA and ADA violations over several years.

*See* Complaint, ¶¶ 6, 21, 27, 40.  The Complaint also alleges that "[t]he Subject Properties share relevant common elements of design," and proceeds to list examples of these common elements.  *See id.* at ¶ 39.  The plain language of the statute, case law, and applicable legislative history all counsel that these statements sufficiently allege a continuing violation as to all of the disputed properties designed and constructed after March 13, 1991, regardless of when they were certified for occupancy.

The Supreme Court in *Havens Realty Corp. v. Coleman*, *supr*a, unanimously held that the "continuing violation" doctrine applies to the FHA for limitations purposes, stating in part:

> A "continuing violation" of the Fair Housing Act should be treated differently from one discrete act of discrimination.  Statutes of limitations . . . are intended to keep stale claims out of the courts. . . .  Where the challenged violation is a continuing one, the staleness concern disappears.  Petitioner's wooden application of [the limitations section], which ignores the continuing nature of the alleged violation, only undermines the broad remedial intent of Congress embodied in the act. . .  **Where a plaintiff, pursuant to the FHA, challenges not just an incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within the [limitations period] of the last asserted occurrence of that practice.**

*Id.*, 455 U.S. at 380-81 (emphasis added). Under the *Havens* rationale, the continuing violations doctrine renders FHA claims timely as long as "the last asserted occurrence of [the discriminatory] practice" falls within the limitations period.[6] *Id.*

Further, Defendants' Motion is entirely silent as to Congress's intent in adopting the FHA's limitations provision. In 1988, when Congress amended the FHA to its current form, it expressly adopted language for the statute of limitations provision that was in accordance with the Supreme Court's application of the continuing violation doctrine to FHA claims. The amendment added language to clarify that a party can bring a claim within two years after the cessation of any ongoing discriminatory housing practice and can obtain relief for earlier FHA acts that are part of that same unlawful and discriminatory practice. *See* H.R. Rep. No. 100-711, at 33, *reprinted in* 1988 U.S.C.C.A.N. at 2173, 2194 (limitations period runs "from the time the alleged discrimination **occurred** or **terminated**," and "[t]he latter term is intended to reaffirm the concept of **continuing violations**, under which the statute of limitations is measured from the **date of the last asserted occurrence of the unlawful practice**") (emphasis added) (citing *Havens*, 455 U.S. at 380-81).

Courts in several jurisdictions have properly followed both *Havens* and Congressional intent in applying the continuing violation theory to FHA design and construction actions. *See Silver State Fair Hous. Counsel Inc. v. ERGS, Inc.*, 362 F. Supp. 2d 1218 (D. Nev. 2005); *Montana Fair Hous., Inc. v. Am. Capital Dev., Inc.*, 81 F. Supp. 2d 1057, 1063 (D. Mont. 1999); *Baltimore Neighborhoods, Inc. v. Rommel Builders, Inc*., 40 F. Supp. 2d 700 (D. Md. 1999).

---

[6] Contrary to Defendants' insinuation that the continuing violation doctrine does not apply to "design and construction" claims, *Havens* did not restrict the application of the doctrine to a limited subset of FHA claims. Rather, under *Havens*, the doctrine applies to the FHA in its entirety.

In cases where, like here, the "continuing violation" alleged is a pattern and practice of continuously building non-compliant properties, courts have allowed claims regarding "older" properties to proceed, if the defendant completed some of the allegedly non-compliant properties within two years of the filing of the complaint—a fact which Post concedes here. Mem. at 28. In *Silver State*, the court held that "the design and construction of multiple FHA-violating housing developments continuing into the limitations period can indeed constitute such a [continuing violation]," which can "ensnare discriminatory occurrences that took place outside of the two-year statute of limitations." *Silver State,* 362 F. Supp. 2d at 1221-22. The court therefore held that the plaintiff's claim was timely even as to a complex that the defendant had constructed five years before the filing of the action, because the defendant also had constructed a non-compliant development within the two-year limitations period. *Id.* Similarly, in *Memphis Ctr. For Indep. Living v. Makowsky Constr. Co.,* No. 01-2069 D/Pha, slip op. (W.D. Tenn. 2003) (copy attached to Carpenter Declaration as Ex. B), the court concluded that a complaint alleging a pattern of violations in the design and construction of three apartment complexes was timely even though the defendant completed two complexes more than two years before the plaintiff filed its complaint because the defendant had constructed the most recent complex within the limitations period. *See id.* Here, because the ERC likewise has alleged, and Post has acknowledged, that some of the Subject Properties were completed within the limitations period, the ERC's claims are timely even as to the Subject Properties that Post claims were completed before the limitations period.

This Court has previously agreed as well. Examining a materially identical situation on a defendant's motion for reconsideration, this Court in *National Fair Hous. Alliance, Inc.,*

*supra,* rejected the defendant's statute of limitations argument because the plaintiffs had

"adequately pled the existence of continuing violations":

> As the D.C. Circuit has "repeatedly held, courts should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint." Indeed, the Supreme Court has recently explained that the notice pleading standard set forth in Fed. R. Civ. P. 8 "relies on liberal discovery and summary judgment motions to define disputed facts and issues . . .." At this stage in the proceedings, individual plaintiffs have adequately pled the existence of continuing violations. The Court will entertain any challenges by defendants to the viability of the continuing violations doctrine for purposes of the statute of limitations after the development of a factual record.

*Id.* at 105 (citing *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) and *Browning v. Clinton*, 292 F. 3d 235, 242 (D.C. Cir. 2002)).[7]

Finally, contrary to Post's argument, the *Moseke* court also recognized the applicability of the *Havens* continuing violation doctrine to an FHA action involving design and construction discrimination. *See Moseke*, 202 F. Supp. 2d at 505. In *Moseke*, the defendant asserted a statute of limitations defense on the grounds that the three complexes at issue were completed outside the limitations period. *See id.* at 501-02. While the Court upheld the defense, it did so only *after* confirming that the continuing violations doctrine applies to such FHA claims. *See id.* at 503-06. Critically, the *Moseke* court determined that the claims were time-barred since the plaintiff had not alleged any new violation constituting a repeated discriminatory act of design and construction within the two years preceding the lawsuit. *See id.* at 507 (distinguishing *Havens* and *Baltimore Neighborhoods* and noting that "[n]owhere in their Complaint do plaintiffs allege that defendants have 'done' or 'performed'

---

[7] Moreover, some courts have also held that the statute of limitations does not begin to run until the violations are cured, and thus, the ongoing discrimination terminated. *See Montana Fair Hous., Inc. v. American Capital Dev., Inc.,* 81 F. Supp. 2d 1057, 1063 (D. Mont. 1999); *E. Paralyzed Veterans Ass'n v. Lazarus-Burman Assocs.,* 133 F. Supp 2d 203, 213 (E.D.N.Y. 2001).

a discriminatory act within the two years preceding the filing of their Complaint," and "[t]here is no allegation that Defendants have repeated some discriminatory act of design and construction within the statutory period"). *Id.* at 507-08. In this case, however, there can be no dispute that the ERC's Complaint is rife with such allegations. *See* Complaint, ¶¶ 6, 21, 27, 39-40. Therefore, the court's holding in *Moseke* is clearly distinguishable from the facts alleged in the case at hand, and provides no support for Post's argument.

### B. The Continuing Violations Theory Remains Fully Applicable to FHA Cases Post-Morgan.

Post relies heavily on the Supreme Court's decision in *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), to suggest that the "continuing violations" doctrine embraced by the Supreme Court in *Havens* is no longer viable, and is not applicable to the facts at hand. *See* Mem. at 32-35. Such suggestions are without merit.

First, the Supreme Court in *Morgan* did not examine the continuing violation doctrine under the FHA at all. Rather, it reviewed that doctrine under an entirely different statute (*i.e.,* Title VII). In *Morgan*, based on the differing statutory language of Title VII, and a body of employment case law unrelated to the FHA, the Court ultimately limited the continuing violation doctrine in employment matters to claims alleging hostile work environments. *See id.* at 122. **The Court expressly recognized the narrowness of its holding**: "We have no occasion here to consider the timely filing question with respect to 'pattern-or-practice' claims brought by private litigants as none are at issue here." *Id.* at 115, n.9. The Court could not have been clearer on this point. *Morgan* did not decide whether "pattern or practice" cases were the subject of the continuing violation doctrine even under Title VII, much less under the FHA. Accordingly, any argument that *Morgan* compels a re-analysis or alteration of *Havens* is plainly erroneous.

- 21 -

Second, and perhaps more significantly, there is nothing in *Morgan* that suggests the Court even considered – let alone intended – to overrule or modify the decision in *Havens*. To the contrary, the *Havens* decision is **not mentioned anywhere** in the entire *Morgan* opinion.  Indeed, over four years after *Morgan,* courts continue to apply the *Havens* continuing violation theory to FHA cases.  Some have specifically addressed the co-existence of *Morgan* and *Havens*.  In *Wallace v. Chicago Hous. Auth.*, 321 F. Supp. 2d 968 (N.D. Ill. 2004), the court had initially applied *Morgan* to an FHA claim, but reversed itself on reconsideration stating:

> [W]e find that both *Havens* and *Morgan* inform our analysis of whether acts that occurred prior to the two-year limitations period are actionable as part of an alleged pattern or practice of conduct in violation of the FHA.
>
> * * *
>
> The amended text of the FHA coupled with the Supreme Court's holding in *Havens* demonstrates that where a plaintiff properly alleges a pattern of conduct that violates the FHA, acts that occur prior to the limitations period are actionable as long as they are part of the alleged pattern.  *The* Morgan *decision does not contradict this finding; rather, it recognizes that prior acts may be timely under the continuing-violations theory where the asserted claim necessarily arises from a pattern of unlawful conduct*.

*Id*. at 972-73 (citing *Morgan*, 536 U.S. at 117) (emphasis added).  The court in *Wallace* determined that the plaintiff had pled sufficient "pattern and practice" claims so as to withstand a motion to dismiss.  *Id.*  S*ee also Nat'l Fair Hous. Alliance, Inc. v. Prudential Ins. Co.*, 219 F. Supp. 2d 104, 105 (D.D.C. 2002) (ruling that *Morgan* did not undermine applying the continuing violations doctrine to the plaintiffs' FHA claims because "plaintiffs' allegations are more akin to a hostile environmental claim than one resting on a discrete discriminatory act"); *Silver State*, 362 F. Supp. 2d at 1221.

Finally, Post relies on *Morgan* for the proposition that the ERC cannot establish a continuing violation because it merely alleges fifty "discrete" instances of FHA violations, which cannot be aggregated. *See* Mem., at 32. While the ERC does allege the existence of at least fifty complexes where FHA and ADA violations exist, the ERC's allegations are anything but a claim that these violations are "discrete." To the contrary, the ERC alleges both specifically and repeatedly that Post's actions are part of a continuous pattern and practice of discrimination. *See* Complaint ¶¶ 6, 21, 39-40. As the FHA limitations provision makes clear, the acts that constitute the pattern of discrimination are actionable either in their own right (so long as they occurred within the limitations period) or as part of a pattern and practice of misconduct, provided that the **practice** did not terminate more than two years prior to the filing of the lawsuit. Therefore, while Post prefers to describe the violations as "discrete acts," Post offers no factual evidence in support of that assertion and, more importantly, no such support exists in the ERC's Complaint – the only relevant document at this stage of the litigation.

For these reasons, Post's statute of limitations argument must be rejected.

## CONCLUSION

Based on the foregoing, Post's Motion to Dismiss should be denied. Should the Court find that any portion of Post's Motion has merit, the ERC respectfully requests permission to replead.

Dated: March 2, 2007                          Respectfully submitted,

                                              *Sheila J. Carpenter*
                                              Sheila J. Carpenter
                                              DC Bar #935742
                                              sjc@jordenusa.com
                                              Jorden Burt LLP
                                              1025 Thomas Jefferson St. N.W.

Suite 400 East
Washington, D.C.  20007
Tel:  (202) 965-8165
Fax: (202) 965-8104

*Donald L. Kahl*
Donald L. Kahl
DC Bar # 489472
Don_Kahl@washlaw.org
Washington Lawyers'
Committee for Civil Rights
and Urban Affairs
11 Dupont Circle, NW
Suite 400
Washington, D.C.  20036
Tel:  (202) 319-1000
Fax:  (202) 319-1010

Attorneys for Plaintiff
Equal Rights Center

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of March, 2007, a copy of the foregoing **Opposition and attachments thereto** were filed via the electronic case filing system of the United States District Court for the District of Columbia and accordingly, that the Court will send notice of this filing electronically to:  Christopher Hanback at christopher.hanback@hklaw.com, Alan I. Baron at alan.baron@hklaw.com, and Rafe Petersen at rafe.petersen@hklaw.com, counsel for defendants.

*Sheila J. Carpenter*
Sheila J. Carpenter

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**THE EQUAL RIGHTS CENTER**,

          Plaintiff,

     v.

**POST PROPERTIES, INC.**, *et al.*,

          Defendants.

**Case No.: 1:06-cv-01991**
Judge Richard Leon

## DECLARATION OF SHEILA J. CARPENTER IN SUPPORT OF
## THE EQUAL RIGHTS CENTER'S OPPOSITION TO THE POST DEFENDANTS'
## MOTION TO DISMISS, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

I, Sheila J. Carpenter, affirm the following to be true:

1.    I am a duly licensed attorney at law, admitted to the Bars of Maryland and the District of Columbia.  I am a partner in the law firm of Jorden Burt LLP in Washington D.C.

2.    Jorden Burt represents The Equal Rights Center ("ERC") in this action against Defendants Post Properties, Inc., Post GP Holdings, Inc. and Post Apartment Homes L.P. (collectively "Post").  I am one of the attorneys primarily responsible for representing the ERC in this litigation.

3.    I offer this affidavit in support of the ERC's Opposition to Post's Motion to Dismiss, or, in the Alternative, For Summary Judgment (the "Motion").

4.    This affidavit addresses only the factual assertions in Post's Motion and in the accompanying Affidavit of Dayna Boone ("Boone Affidavit") that relate to Post's statute of limitations argument and that relate to Post's other arguments regarding when individual properties at issue ("Subject Properties") were built.

Declaration of Sheila J. Carpenter

ERC v. Post Properties
Case no. 1:06-cv-01991

5.   Attached as Exhibit A is a true and correct copy of printed pages from Post's website – www.postproperties.com – and a related website regarding two of the individual properties that Post addresses in its Motion.

6.   Attached as Exhibit B is a true and correct copy of an unpublished case cited in the accompanying Memorandum of Points and Authorities, *Memphis Center for Independent Living v. Makowsky Construction Co.,* Case No. 01-2069 D/Pha (W.D. Tenn. 2003).

7.   The parties have not conducted any discovery in this case to date.  The parties have not engaged in any written discovery, such as exchanging interrogatories and requests for production of documents, and thus the parties have not engaged in document production. Further, the parties have not conducted any fact or expert depositions, and they have not conducted any third-party discovery.

8.   If the Court were to consider, at this initial pleading stage, the Boone Affidavit and thereby convert Post's Motion into one for summary judgment, the ERC would need discovery to present an opposition to the Motion, including, but not necessarily limited to, the following types of discovery:

♦   Production of materials by Post that relate to the design and construction of the Subject Properties, including, without limitation, Post's policies and practices related to design and construction, and its construction manuals, blueprints, floor plans, and specifications;

♦   Production of materials by Post, including, without limitation, certificates of occupancy, that relate to the time of completion of all buildings at the various Subject Properties that Post seeks to have dismissed based on when they allegedly were completed;

♦   Production of materials by Post that relate to the manner in which Post acquired an interest in Subject Properties that it allegedly did not design or construct, including, without limitation, purchase and sale contracts, closing documents, and other documents relating to when Post purchased the properties,

the parties from whom it purchased the properties, the terms of the acquisition; the stage of completion of the complex at the time of acquisition, and Post's true level of involvement in the design and construction process.

♦   Depositions of Post employees, former employees, and third party witnesses, regarding the design and construction of the Subject Properties (including various inspectors, review boards, and other third parties who had access to and reviewed Post's plans before and during the design and construction of Subject Properties);

♦   Depositions of Post's experts, if any, on the design and construction of the Subject Properties.

8.   The above discovery would be needed to determine just when the apartment complexes were designed and built, who owned them at the time, and the extent of the violations in each complex.

9.   I declare under penalty of perjury that the foregoing is true and correct.

*/s/ Sheila J. Carpenter*
Sheila J. Carpenter

# EXHIBIT A

**Mercer Square Condominium Homes**
2900 McKinney Avenue
Dallas, TX 75204

SALES CENTER NOW OPEN! Mercer Square features 85 condominium homes in a sleek, contemporary four-story building in Uptown Dallas. Exterior features include expansive glass and balconies with masonry and stucco details. Mercer Square has great access to the city's Uptown district with its shopping, entertainment, arts, and a true urban neighborhood. The building features a pool and deck on the second floor, controlled-access entry, exposed spiral ductwork, granite countertops, hardwood and stained concrete floors, stainless steel appliances, and luxurious spa baths.
www.mercersq.com
Contact: Al Coker & Associates
214.443.9300 or email al@alcoker.com

**The Condominiums at Carlyle Square**
520 Carlyle Street
Alexandria, VA 22314
Historic elegance and hip urban finishes in Virginia's oldest historic neighborhood -- ready for Fall 2007. The Condominiums at Carlyle Square will feature one bedroom, two bedroom and loft units, concrete ceilings, exposed spiral ductwork, hardwood flooring and balconies overlooking lush gardens... and located just 3 blocks from the Metro.

www.phhoffman.com [sic]
Contact: PN Hoffman
703.684.1005

> *See http://www.postproperties.com/condos/viewcondoofferings.aspx.*
> (viewed 2/22/07)

PN Hoffman's website says:


520 John Carlyle Street
Alexandria, VA 22314
Directions MAPQUEST

**The Condominiums At Carlyle Square**
**NOW SELLING!**

**Call for current sales incentives:**
**703.684.1005**

**Property Description:**

Post Properties and PN Hoffman have partnered together in this distinguished new development. The outstanding location of Carlyle Alexandria is just 4

**SALES OFFICE NOW ON SITE**

<u>Sales Office Address:</u>
501 Holland Lane
Alexandria, VA 22314
<u>Directions</u> MAPQUEST
Phone: (703)684-1005
Fax: (703)684-1099

<u>Sales Office Hours:</u>
Monday - Friday: 10am - 4pm
Saturday: 11am -4pm
Sunday: 1-4pm
DTallman@pnhoffman.com

minutes to Old Town's waterfront, minutes from 495 and a short distance to both the King Street Metro stop (blue and yellow lines) and Amtrak. Carlyle Square will feature magnificent interiors and beautifully landscaped grounds.

**NOW SELLING FINAL PHASE!**

**Anticipated delivery Late Spring 2007**
**Starting in the mid $300,000's**

*See* http://www.pnhoffman.com/properties/carlylesquare/about.asp.  (viewed 2/22/07)

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

D 27 .......... D.C.

03 JUL 24 PH 4: 51

ROBERT R. DI TROLIO
CLERK, U.S. DIST. CT.
W.D. OF TN. MEMPHIS

| | |
|---|---|
| MEMPHIS CENTER FOR INDEPENDENT LIVING, )<br><br>Plaintiff, )<br><br>v. )<br><br>MAKOWSKY CONSTRUCTION COMPANY, INC., et al., )<br><br>Defendants, )<br><br>and )<br><br>UNITED STATES OF AMERICA, )<br><br>Plaintiff-Intervenor, )<br><br>v. )<br><br>MAKOWSKY CONSTRUCTION COMPANY, INC., et al., )<br><br>Defendants. ) | Case No.: 01-2069 D/Pha |

**ORDER DENYING DEFENDANTS PENN INVESTORS, INC.; JAN REALTY, INC.; BELZ/SOUTH BLUFFS, INC.; MAKOWSKY RINGEL GREENBERG, LLC; MRB-STONEBRIDGE, LP; AND MRB-WINDYKE, LP'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Before the Court is the motion of Defendants Penn Investors, Inc.; Jan Realty, Inc.;

Belz/South Bluffs, Inc.; Makowsky Ringel Greenberg, LLC; MRB-Stonebridge, LP; and MRB-

Windyke, LP, ("Defendants") for partial summary judgment. Defendants assert that Plaintiff

Memphis Center for Independent Living ("MCIL")'s claim for failure to design and construct

apartment complexes that are accessible to and useable by persons with physical disabilities, brought

pursuant to the Fair Housing Amendments Act ("FHAA"), 42 U.S.C. § 3604 et seq., was not brought within the two-year statute of limitation. Plaintiff maintains that although two of the three apartment complexes were designed and constructed more than two years before the commencement of the instant action, its claim was timely filed based on the continuing violations / pattern and practice exception. The Court has jurisdiction pursuant to 28 U.S.C. § 1331. For the following reasons, the Court denies Defendants' motion for partial summary judgment.

## I.    BACKGROUND AND PROCEDURAL FACTS

Defendants are the owner/developers of three apartment complexes: Eton Square, Champion Hills at Windyke ("Windyke"), and Champion Hills at Stonebridge ("Stonebridge"). Eton Square was built in one phase. The Certificate of Occupancy for Eton Square was issued on July 24, 1996. Eton Square L.P. owns Eton Square. Windyke was built in two phases. The Certificate of Occupancy for phases one and two of Windyke was issued on July 3, 1998, and January 7, 1998, respectively. MRB-Windyke, LP, owns Windyke. Stonebridge was also built in two separate phases. The Certificate of Occupancy for phases one and two of Stonebridge was on October 23, 1998, and September 23, 1999, respectively. MRB-Stonebridge, LP, owns Stonebridge. A Certificate of Occupancy, which is issued by the local building authority, indicates that construction is complete and the building is capable of being occupied.

Plaintiff asserts that the design of the three complexes are essentially the same. The same floor unit plans were used at all three complexes. Archeon, with Jack Schaffer acting as the principal architect, served as the architectural design company for all three complexes. Makowsky and Ringel were the owner/developers of all three properties. Likewise, Makowsky Construction Company built all of the complexes.

2

MCIL initiated that instant action on January 25, 2001, alleging that Defendants failed to design and construct the three apartment complexes in compliance with 42 U.S.C. § 3604(f)(3)(C). In October 2001, the United States of America joined as a plaintiff/intervenor in the action.

On March 27, 2003, Defendants filed a motion for partial summary judgment. Defendants assert that the only portion of Plaintiff's claim that is not barred by the statute of limitations is the part based on phase two of Stonebridge, which received its Certificate of Occupancy on September 23, 1999. Plaintiff MCIL argues that Defendants conduct in the building and design of the complexes is a continuing violation and exhibits a pattern or practice of discrimination.

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment may be granted if no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are those facts which are defined by substantive law and are necessary in order to apply the law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the non-moving party. Id.

In evaluating a motion for summary judgment, the evidence, facts, and any inferences must be viewed in a light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed.2d 538 (1986); Walbourn v. Erie County Care Facility, 150 F. 3d 584, 588 (6th Cir. 1998). Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed.

R. Civ. P. 56(e). Summary judgment is appropriate when "the record taken as a whole could not lead

a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co., 475 U.S. at

587.

### III.    ANALYSIS

Defendants assert that Plaintiff's action is barred by 42 U.S.C. § 3613(a), which provides that

a civil action must be commenced "not later than 2 years after the occurrence or the termination of

an alleged discriminatory housing practice." Plaintiff MCIL argues in part that the instant action is

not time-barred because 1) Defendants' actions constitute a pattern and practice of discrimination

in violation of the FHA, and 2) the violations at the complexes constitute continuing violations.

In Havens Realty Corporation v. Coleman, 455 U.S. 363, 102 S.Ct. 1114, 71 L. Ed. 2d 214

(1982), the Court held that when "a plaintiff, pursuant to the Fair Housing Act, challenges not just

one incident of conduct violative of the Act, but an unlawful practice that continues into the

limitations period, the complaint is timely [if] it is filed within [two-years] of the last asserted

occurrence of that practice." Id. at 380-81. The United States Court of Appeals for the Sixth Circuit

further has held that there are two categories of continuing violations. See Tenenbaum v. Caldera,

45 Fed. Appx. 416 (6th Cir. 2002) (unpublished). The first category, known as the serial violations

doctrine, arises when there is "a series of continuous and sufficiently related discriminatory acts, and

at least one of those acts occurred within the statutory period." Id. at 418; see also Haithcock v.

Frank, 958 F.2d 671 (6th Cir. 1992).[1] Acts which are the present effect of past discrimination do not

_____

[1]The Tenenbaum Court noted that the United States Supreme Court limited the use of the
serial violations doctrine in National Railroad Passenger Corporation v. Morgan, 536 U.S. 101,
122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002). The Court determined, however, that the United
States Supreme Court in Havens Realty Corporation affirmed the application of the serial
violations doctrine to pattern or practice cases brought pursuant to the FHA. Caldera, 45 Fed.

4

trigger a continuing violations exception. <u>Id.</u> at 419; <u>see also</u> <u>Dixon v. Anderson</u>, 928 F.2d 212, 216 (6th Cir. 1991). The second category is implicated when "there exists a long standing and demonstrable policy of discrimination." <u>Id.</u>; <u>see also</u> <u>Alexander v. Local 496, Laborers' Int'l Union</u>, 177 F.3d 394 (6th Cir. 1999).[2] "The preponderance of the evidence must establish that some form of intentional discrimination against the class of which plaintiff was a member was the company's standing [sic] operating procedure." <u>EEOC v. Penton Indus. Publishiing Co.</u>, 851 F.2d 835, 838 (6th Cir. 1988).

A three-part inquiry is utilized to determine whether a continuing violation exists. <u>Tolbert v. Ohio</u>, 172 F.3d 934, 940 (6th Cir.1999). "First, the defendant's wrongful conduct must continue after the precipitating event that began the pattern . . . . Second, injury to the plaintiff must continue to accrue after that event. Finally, further injury to the plaintiff[] must have been avoidable if the defendant[] had at any time ceased [its] wrongful conduct." <u>Id.</u> In <u>LRL Properties v. Portage Metro Housing Authority</u>, 55 F.3d 1097 (6th Cir. 1995), the Court noted that courts have been reluctant to apply the continuing violations doctrine outside of the context of Title VII discrimination cases. <u>Id.</u> at 1106. In <u>Paschal v. Flagstar Bank, FSB</u>, 295 F.3d 565 (6th Cir. 2002), however, the Court applied the continuing violations doctrine to a case brought pursuant to the FHA. Likewise, other court have

---

Appx. at 419, n. 2.

[2]Plaintiff argues in part that its claim was timely filed because Defendants allegedly engaged in a pattern or practice of discrimination. Defendants reply that Plaintiff cannot bring a pattern or practice claim pursuant to the FHA because only the Attorney General of the United States may initiate such lawsuits pursuant to 42 U.S.C. § 3614. The Court need not address this argument given that Plaintiff is not asserting a claim for pattern or practice discrimination. Instead, Plaintiff is arguing that its FHA claim brought pursuant to 42 U.S.C. § 3604 is not barred based on the continuing violations exception which the Sixth Circuit has classified into two categories. The second category of the continuing violations exception contemplates a pattern or practice of discrimination.

applied the continuing violations doctrine to FHA claims. See, e.g., Spann v. Colonial Village, Inc.,

899 F.2d 24 (D.C. Cir. 1990); Eastern Paralyzed Veterans Ass'n, Inc. v. Lazarus-Burman Assoc.,

133 F. Supp. 2d 203 (E.D.N.Y. 2001); Montana Fair Housing, Inc. v. Am.Capital Dev., Inc., 81 F.

Supp. 2d 1057 (D. Mont 1999).

The Court finds that Plaintiff has sufficiently established that Defendants engaged in a pattern

or practice of alleged discrimination when designing and constructing the three apartment

complexes. With respect to the three-part inquiry, the Court finds that the design and construction

of Eton began the pattern of alleged discrimination. Thereafter, Windyke and Stonebridge were

designed and constructed allegedly using a similar design as Eton, the same architect, and the same

construction company. Injury to Plaintiff, i.e., alleged inaccessibility to the properties, accrued each

time a phase was completed that allegedly failed to comply with FHA requirements. Finally, if

Defendants had, as Plaintiff alleges, designed and constructed Windyke and Stonebridge in

compliance with the FHA and remedied the alleged non-compliance at Eton, Plaintiff would have

suffered no further injury. Thus, Plaintiff has satisfied the three-part inquiry used to determine

whether application of the continuing violations doctrine is appropriate.[3]

Moreover, Plaintiff has established beyond a preponderance of the evidence that Defendant's

alleged standard operating procedure included a policy of intentional discrimination against disabled

individuals. In a memorandum dated December 9, 1997, written by Jack Schaffer, and addressed

---

[3]Defendant asserts that Plaintiff has not suffered an injury because no individual has been harmed who lives at the complexes nor have there been any complaints by individuals about inaccessibility. The Court finds this argument unavailing. Organizations may maintain claims for violation of the FHA. See Havens Realty Corporation, 455 U.S. 363 (1982). Furthermore, an injury suffered may be actual or *threatened*. Heights Cmty. Congress v. Hilltop Realty, Inc., 774 F.2d 135 (6th Cir. 1985).

to Jerry Makowsky, Mr. Schaffer indicated that he did not believe that the three complexes met the FHA guidelines. Mr. Schaffer further questioned whether the design and drawings should be revised. Assuming that the complexes were not in compliance with the FHA guidelines, this memorandum indicates that Defendants were aware of such non-compliance and chose to proceed with the construction anyway. The Court finds that this evidences a demonstrable policy of discrimination. The Court concludes therefore that Plaintiff's claim is not barred by the statute of limitations based on the second category of the continuing violations exception. Accordingly, Defendants' motion for partial summary judgment is denied.

## IV.    CONCLUSION

For the reasons stated herein, the Court finds that Plaintiff's FHAA claim is not barred by the statute of limitations. Accordingly, the Court denies Defendants' motion for partial summary judgment.

IT IS SO ORDERED this 24 day of July 2003.

BERNICE BOUIE DONALD
UNITED STATES DISTRICT JUDGE

7

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**THE EQUAL RIGHTS CENTER**,

              Plaintiff,

      v.

**POST PROPERTIES, INC.**, *et al.*,

              Defendants.

**Case No.: 1:06-cv-01991**
Judge Richard Leon

---

**ORDER DENYING MOTION TO DISMISS**

The Court has reviewed the Complaint in this action, Defendants' Motion to Dismiss, Plaintiff's Opposition and Defendants' Reply.  The Court finds that Plaintiff has adequately pled standing and further finds that Plaintiff has adequately pled a continuing violation of the Fair Housing Act, Title VIII of the Civil Rights Act of 1968  as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601-3619, and the Americans with Disabilities Act, 42 U.S.C. §§ 12181.  Therefore it is this ___ day of _____, 2007

      **ORDERED** that the Motion to Dismiss is **DENIED**.

                                   _____
                                    Richard Leon
                                  United States District Judge

Copies to:

Christopher B. Hanback, Esquire
Alan I. Baron, Esquire
Rafe Petersen, Esquire
Holland & Knight
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington DC 20006

Sheila J. Carpenter, Esquire
Jorden Burt LLP
1025 Thomas Jefferson St. N.W.
Suite 400 East
Washington, D.C.  20007

Donald L. Kahl, Esquire
Washington Lawyers' Committee for
Civil Rights and Urban Affairs
11 Dupont Circle, NW
Suite 400
Washington, D.C.  20036