## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EQUAL RIGHTS CENTER )
)
Plaintiff, )
)
vs. )          Case. No. 1:06CV01991
)          Judge Richard J. Leon
POST PROPERTIES, INC. )
POST GP HOLDINGS, INC. )
POST APARTMENT HOMES, L.P. )
)
Defendants. )

## DEFENDANTS' RESPONSE IN OPPOSITION TO
## PLAINTIFF'S MOTION TO STRIKE AFFIDAVIT OF DAYNA BOONE

Defendants Post Properties, Inc., Post GP Holdings, Inc., and Post Apartment Homes,

L.P. (collectively "Post") by undersigned counsel hereby file this Response in Opposition to

Plaintiff's Motion to Strike Affidavit of Dayna Boone. Plaintiff's Motion to Strike is merely a

smoke screen filed to distract the Court from the true issues raised in Post's Motion to

Dismiss—Plaintiff's lack of standing and Plaintiff's attempt to avoid the two-year statute of

limitations which governs this action.[1]

### ARGUMENT

Dayna Boone's affidavit, which was filed in support of Post's alternative Motion for

Partial Summary Judgment clearly meets the requirements of Fed. R. Civ. P. 56(e) and the

Federal Rules of Evidence. The information set forth in the affidavit is based on review of the

certificates of occupancy for Post's properties, which are admissible under the business records

---

[1] Of course, Plaintiff's attempt to strike Ms. Boone's affidavit does nothing to bolster Plaintiff's complete lack of facts necessary to support their argument that they have standing to undertake a suit of this nature and scope. The bare allegations of Plaintiff's Complaint do not establish standing.

exception to hearsay. *See* Fed. R. Evid. 803(6). Ms. Boone is the custodian for the certificates of occupancy at Post and has set forth the reasons why such business records meet the hearsay exception. Further, the certificates of occupancy were not attached to the affidavit due to the fact that they are voluminous under Fed. R. Evid. 1006, and therefore may be summarized. Post will make the certificates of occupancy available to Plaintiffs in accordance with Rule 1006.

I.    **The Certificates of Occupancy Upon Which Dayna Boone's Affidavit Is Based Are Admissible Under the Business Records Exception To Hearsay.**

As is required by Fed. R. Civ. P. 56(e), the facts set forth in Ms. Boone's affidavit are admissible under the business records exception to hearsay. The business records exception is as follows:

> A memorandum, report, record, or data compilation, in any form, or acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness . . . unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

Fed. R. Evid. 803(6).

Ms. Boone states that she has personal knowledge of the facts set forth in her affidavit and could testify to the same. *See* Affidavit of Dayna Boone at ¶ 1. The affidavit clearly sets forth the basis of her knowledge as custodian of such records as follows:

> I am the Director, Real Estate Legal Services for Post Properties, Inc., *et al* ("Post"). My regular duties include safekeeping of certificates of occupancy. I have reviewed certificates of occupancy and other business records kept in the ordinary course of business of Post to determine to the dates that construction was completed at each of the "Subject Properties" as set forth in Addendum A to the Complaint filed by the Equal Rights Center.

*See* Affidavit of Dayna Boone at ¶ 2.

The business records upon which Ms. Boone's affidavit is based are data or reports made by a person with knowledge of the event (the issuance of a certificate of occupancy), and kept in the course of regularly conducted business activity by Post. Ms. Boone is the custodian of such business records and reviewed them by virtue of her position at Post.[2]

The requirement that a business record be "made by a person with knowledge" of the facts, Fed. R. Evid. 803(6), does not require that Ms. Boone (the custodian of the record) be the person who actually makes the record. The "person with knowledge" element of the business records exception requires only that the person offering the document (i.e. the custodian) be able to explain and be familiar with the system and operations of the recordkeeping such that the person can confirm that the requirements of Rule 803(6) are met. *See United States v. Box*, 50 F.3d 345, 356 (5th Cir. 1995) (holding that records were admissible when employee "could recognize records, knew that they were from his office" and "testified to the other requirements of the business records"); *see also Rapheaely Int'l Inc. v. Waterman S.S. Corp.*, 972 F.2d 498, 503 (2d Cir. 1992) (holding that certificates of inspection were admissible even though employee had no personal knowledge of the making of the records because employee was familiar with the "operations and signatories of the inspection certificates" and could testify that "certificates were made in regular course of . . . business activity"); *United States v. Franks*, 939 F.2d 600, 602 (8th Cir. 1991) (holding that custodian of records need not have personal knowledge regarding the creation of the record as long as the custodian demonstrates that the record was prepared and kept in the course of regularly conducted business activity). As the custodian, Ms. Boone has met these requirements.

---

[2] It is also worth noting that under Fed. R. Evid. 602, a witness may testify concerning knowledge gained from review of business records without "personal knowledge" of such records. *Bryant v. Farmers Ins. Exchange*, 432 F. 3d 1114, 1123 (10th Cir. 2005).

The fact that the certificates of occupancy were not actually created by Ms. Boone does not mean that her affidavit can be struck for a lack of "personal knowledge" surrounding when the buildings were designed and constructed. The certificates of occupancy provide the basis of the information relevant to that issue but they do not have to have been created by Post for Ms. Boone's affidavit to be admissible. Records "can be admitted as business records of an entity, even when that entity was not the maker of those records, so long as the other requirements of 803(6) are met and the circumstances indicate the records are trustworthy." *United States v. Childs*, 5 F.3d 1328, 1333 (9th Cir. 1993); *see also Untied States v. Dixon*, 132 F.3d 192, 197 (5th Cir. 1997) (holding that the person attesting to the authenticity of the records "need not have been the preparer of the record nor must he [or she] personally attest to the accuracy of the information contained in the records"). For example, in *Childs*, the court found that certificates of title for automobiles were admissible as the business records of an automobile dealership even though the certificates were not actually made by the dealers. *Id.* The court reasoned that "[a]lthough these [certificates] were furnished originally from other sources, [a dealership employee] testified that they were kept in the regular course of the dealership's business" and "in effect [the certificates] were integrated into the records of the dealership." *Id.* The court also focused on the fact that the dealership used the certificates and relied upon them in keeping track of its cars as well as had an interest in the accuracy of the certificates. *Id.* Accordingly, when records are made by one entity but kept in the regular course of business by a second entity, they are in effect "integrated" into that second entity's business records. *Childs*, 5 F.3d at 1333.

This case is substantially similar to *Childs*: the certificates of occupancy for Post's properties are admissible as business records even though Post did not actually make the

certificates. Each certificate is a public record recorded or filed by the local government or jurisdiction in which the property is located.[3] Like the dealership in *Childs*, Post keeps these certificates of occupancy in its own regular course of business. *See* Affidavit of Dayna Boone ¶ 2. In effect, the certificates of occupancy have been integrated into the records of Post. Additionally, like the dealership in *Childs*, Post relies upon the certificates of occupancy and has an interest in their accuracy. Thus, the certificates of occupancy are admissible under the business records exception to hearsay.

**II.    Dayna Boone Has Personal Knowledge Of The Contents Of The Certificates Of Occupancy Upon Which Her Affidavit Is Based.**

Ms. Boone is not required to have personal knowledge of the exact facts surrounding when Post's properties were actually designed and constructed. *See Franks*, 939 F.2d at 602 (holding that "a contrary rule, requiring the testimony of the person who prepared the records, would eviscerate the business records exception"). Ms. Boone is only required to have personal knowledge of the content of the certificates of occupancy and Post's recordkeeping systems and operations for those certificates of occupancy. Ms. Boone's affidavit explicitly states that she has reviewed the certificates of occupancy. *See* Affidavit of Dayna Boone ¶ 2. Thus, Ms. Boone has established that she has personal knowledge of the contents of the certificates of occupancy, which she gained by virtue of reviewing them pursuant to her position as Director, Real Estate Legal Services for Post.

Ms. Boone's affidavit summarizes information gained from review of the certificates of occupancy—which provide information concerning whether or not a Subject Property was designed and constructed for first occupancy prior to March 13, 1991 (relevant to the effective

---

[3] Hence, certificates of occupancy would also be considered to fall within the public records exception to the hearsay rule. Fed. R. Evid. 803(8).

date of the FHA) or to November 21, 2004 (relevant to the statute of limitations).  *See* Affidavit

of Dayna Boone at ¶¶ 3, 5.  Plaintiff argues that Ms. Boone has no personal knowledge of the

facts surrounding this design and construction based on a comparison of Ms. Boone's affidavit

with information Post supplied to the Securities and Exchange Commission ("S.E.C.").  *See* Pl.

Motion to Strike ¶ 4.  Yet, the courts have held that issuance of a certificate of occupancy is the

best indicator of the date of completion.  *See e.g., United States v. Taigen & Sons. Inc.,* 303 F.

Supp. 2d 1129, 1144(D. Idaho 2003).  Moreover, Ms. Boone's affidavit is in accordance with

instructions in The Department of Housing and Urban Development's Fair Housing Act

("FHA") Design Manual [Revised April 1998] for determining the date "for first occupancy"

under the FHA.  The FHA Design Manual states, "[f]or projects consisting of several buildings

which are constructed in phases spanning the March 13, 1991 date, first occupancy will be

determined on a building by building basis." FHA Design Manual at 12, attached as Ex. A; *see*

*also* U.S. Dep't of Housing & Urban Dev., Supplement to Notices of Fair Housing Accessibility

Guidelines at 5 (June 28, 1994), attached as Ex. B.  Accordingly, Ms. Boone's affidavit breaks

the named Subject Properties into buildings or phases.

Furthermore, Ms. Boone's affidavit as to buildings constructed prior to March 13, 1991,

complies with the FHA Design Manual's instruction that converted buildings, i.e., buildings that

were previously used for nonresidential purposes such as warehouses, office buildings or

schools, are not covered under the FHA.  FHA Design Manual at 11, attached as Ex. C.  Thus,

the comparison to Post's S.E.C. submissions is irrelevant.

**III.    The Certificates Of Occupancy Upon Which Dayna Boone's Affidavit Relies Are**
**Voluminous And Will Be Made Available to Plaintiff In Accordance With Fed. R.**
**Evid. 1006.**

Dayna Boone's affidavit refers to certificates of occupancy, which were voluminous and

thus not attached to the affidavit.[4] Under Fed. R. Evid. 1006, "[t]he content of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation." A summary in an affidavit in support of a motion for partial summary judgment is "appropriate and adequate" where the records or documents referred to are voluminous. *See Independent Petrochemical Corp., v. Aetna Cas. & Surety Co.*, 654 F.Supp. 1334 (D.D.C. 1986) (holding that the summarization of insurance policies and underlying complaints in pharmaceutical products liability case was appropriate given the number of underlying claims). Thus, in accordance with Fed. R. Evid. 1006, Post will make copies of the certificates of occupancy "available for examination or copying or both . . . at a reasonable time and place."

## CONCLUSION

Based on the foregoing, Post respectfully requests that Plaintiff's Motion to Strike Affidavit of Dayna Boone be Denied.

Respectfully submitted,

HOLLAND & KNIGHT, LLP

    /s/ Christopher B. Hanback
Christopher B. Hanback (Bar # 232579)
Alan I. Baron (Bar. # 340273)
Rafe Petersen (Bar # 465542)
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C. 20006
(202) 955 3000 Phone
(202) 955 5564 Fax
E-mail: christopher.hanback@hklaw.com
E-mail: alan.baron@hklaw.com
E-mail: rafe.petersen.com
*Counsel for Post Properties, Inc., et al.*

---

[4] The certificates of occupancy for the Subject Properties fill approximately 12 three-inch binders.

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Response in Opposition to Plaintiff's Motion to Strike was served by electronic filing this 27th day of March, 2007, on the following:

> Sheila Jane Carpenter, Esq.
> Jorden Burt LLP
> 1025 Thomas Jefferson Street, NW
> Suite 400 East
> Washington, DC 20007
>
> Donald Lee Kahl, Esq.
> Washington Lawyers' Committee for Civil Rights & Urban Affairs
> 11 Dupont Circle, NW
> Suite 400
> Washington, DC 20036

/s/ Christopher B. Hanback
Christopher B. Hanback

# Exhibit A

# FAIR HOUSING ACT
# DESIGN MANUAL



A MANUAL TO ASSIST
DESIGNERS AND BUILDERS
MEETING THE
ACCESSIBILITY REQUIREMENTS
OF THE FAIR HOUSING ACT

designed and developed by

**Barrier Free Environments, Inc.**
**Raleigh, North Carolina**

for

**The U.S. Department of Housing**
**and Urban Development**
**Office of Fair Housing and Equal Opportunity**
**and the Office of Housing**
**Contract # 15903**

**August 1996**
**Revised April 1998**

## CREDITS

| | |
|---|---|
| Project Director | **Ronald L. Mace, FAIA** |
| Project Manager | **Leslie C. Young** |
| Technical Assistance | **Cheryl Kent, FHEO, HUD** |
| Authorship | **Leslie C. Young**<br>**Ronald L. Mace**<br>**Geoff Sifrin** |
| Architectural Design and Conceptual Illustration | **Ronald L. Mace**<br>**Leslie C. Young**<br>**Rex J. Pace**<br>**Geoff Sifrin** |
| Graphic Design | **Christopher A. B. McLachlan** |
| Illustration | **Rex J. Pace**<br>**Mark Pace** |
| Photography | **Kelly Houk**<br>**Leslie C. Young** |
| *Acknowledgements* | Creation of this design manual involved the close cooperation of many people. Among them are the reviewers and technical staff at the Department of Housing and Urban Development, including Cheryl Kent, Judy Keeler, Merle Morrow, Alan Rothman, Nelson Carbonell, and Gail Williamson.<br><br>Special appreciation to the Barrier Free Environments, Inc. staff who contributed to this publication, including Leslie Young, Rex Pace, and Ron Mace. Special thanks also to Geoff Sifrin in South Africa and Lucy Harber.<br><br>Every attempt was made with this project to provide a concise and easy-to-follow guide on the construction requirements of the Fair Housing Act. Our hope is that the construction and disability communities to whom this manual is directed will be able to use and benefit from our efforts. |

# FIRST OCCUPANCY AFTER MARCH 13, 1991

The Fair Housing Act does not require any renovations to existing buildings. Its design requirements apply to new construction only – to covered multifamily dwellings that are built for first occupancy after March 13, 1991. First occupancy is defined as "a building that has never before been used for any purpose." See also "Definitions Used in the Guidelines," page 16.

A building is not subject to the design requirements of the Fair Housing Act if:

1. it was occupied on or before March 13, 1991,

    **– or –**

2. the last building permit or renewal thereof was issued by a state, county, or local government on or before June 15, 1990.

For a building to be considered occupied, the following criteria must be met:

1. a certificate of occupancy must have been issued,

    **– and –**

2. at least one dwelling unit actually must be occupied.

    a. For a building containing **rental units**, this means that a resident has signed a lease and taken possession of a unit. The resident must have the legal right to occupy the premises, but need not have physically moved in yet.

    b. For a building containing **for-sale units**, this means that a new owner has completed settlement and taken possession of a unit. The new owner must have the legal right to occupy the premises, but need not have physically moved in yet.

A certificate of occupancy, or the fact that units are being offered for sale but not yet sold, would not be an acceptable means of establishing occupancy. For a project consisting of several buildings which are constructed in phases spanning the March 13, 1991 date, first occupancy will be determined on a building-by-building basis.

# Exhibit B

**U.S. Department of Housing and Urban Development**
Office of the Assistant Secretary for
Fair Housing and Equal Opportunity



---

# Supplement to Notice of Fair Housing Accessibility Guidelines: Questions and Answers about the Guidelines

---

**24 CFR Ch.I**

**Appendix IV to Subchapter A—**

*Note: This is a reprint of the Supplement to Notice of Fair Housing Accessibility Guidelines: Questions and Answers About the Guidelines published in the Federal Register on June 28, 1994, Vol. 59, No. 123, pages 33362-33368.*

one side of the building and the second story can be accessed on grade on the other side of the building, do the dwelling units on both the first and second stories have to be made accessible?

**A.** Yes. By defining "ground floor" to be any floor of a building with an accessible entrance on an accessible route, the Fair Housing Act regulations recognize that certain buildings, based on the site and the design plan, have more than one story which can be accessed at or near grade. In such cases, if more than one story can be designed to have an accessible entrance on an accessible route, then all such stories should be so designed. Each story becomes a ground floor and the dwelling units on that story must meet the accessibility requirements of the Act. (See the discussion on this issue in Question 12 of this document.)

### 7. Continuing Care Facilities

**Q.** Do the new construction requirements of the Fair Housing Act apply to continuing care facilities which incorporate housing, health care and other types of services?

**A.** The new construction requirements of the Fair Housing Act would apply to continuing care facilities if the facility includes at least one building with four or more dwelling units. Whether a facility is a "dwelling" under the Act depends on whether the facility is to be used as a residence for more than a brief period of time. As a result, the operation of each continuing care facility must be examined on a case-by-case basis to determine whether it contains dwellings. Factors that the Department will consider in making such an examination include, but are not limited to: (1) the length of time persons stay in the project; (2) whether policies are in effect at the project that are designed and intended to encourage or discourage occupants from forming an expectation and intent to continue to occupy space at the project; and (3) the nature of the services provided by or at the project.

### 8. Evidence of First Occupancy

**Q.** The Fair Housing Act applies to covered multifamily dwellings built for first occupancy after March 13, 1991. What is acceptable evidence of "first occupancy"?

**A.** The determination of first occupancy is made on a building by building basis. The Fair Housing Act regulations provide that "covered multifamily dwellings shall be deemed to be designed and constructed for first occupancy on or before March 13, 1991 (and therefore exempt from the Act's accessibility requirements) if they are occupied by that date or if the last building permit or renewal thereof for the covered multifamily dwellings is issued by a State, county or local government on or before June 15, 1990."

For buildings that did not obtain the final building permit on or before June 15, 1990, proof of the date of first occupancy consists of (1) a certificate of occupancy, and (2) a showing that at least one dwelling unit in the building actually was occupied by March 13, 1991. For example, a tenant has signed a lease and has taken possession of a unit. The tenant need not have moved into the unit, but the tenant must have taken possession so that, if desired, he or she could have moved into the building by March 13, 1991. For dwelling units that were for sale, this means that the new owner had completed settlement and taken possession of the dwelling unit by March 13, 1991. Once again, the new owner need not have moved in, but the owner must have been in possession of the unit and able to move in, if desired, on or before March 13, 1991. A certificate of occupancy alone would not be an acceptable means of establishing first occupancy, and units offered for sale, but not sold, would not meet the test for first occupancy.

### 9. Converted Buildings

**Q.** If a building was used previously for a nonresidential purpose, such as a ware-

**Exhibit C**

# Fair Housing Act Design Manual



A Manual to Assist Designers and Builders in Meeting the Accessibility Requirements of the Fair Housing Act

designed and developed by
**Barrier Free Environments, Inc.**
**Raleigh, North Carolina**

for

**The U.S. Department of Housing**
**and Urban Development**
**Office of Fair Housing and Equal Opportunity**
**and the Office of Housing**
**Contract # 15903**

**August 1996**
**Revised April 1998**

## CREDITS

| | |
|---|---|
| Project Director | **Ronald L. Mace, FAIA** |
| Project Manager | **Leslie C. Young** |
| Technical Assistance | **Cheryl Kent, FHEO, HUD** |
| Authorship | **Leslie C. Young**<br>**Ronald L. Mace**<br>**Geoff Sifrin** |
| Architectural Design<br>and Conceptual Illustration | **Ronald L. Mace**<br>**Leslie C. Young**<br>**Rex J. Pace**<br>**Geoff Sifrin** |
| Graphic Design | **Christopher A. B. McLachlan** |
| Illustration | **Rex J. Pace**<br>**Mark Pace** |
| Photography | **Kelly Houk**<br>**Leslie C. Young** |

*Acknowledgements*

Creation of this design manual involved the close cooperation of many people. Among them are the reviewers and technical staff at the Department of Housing and Urban Development, including Cheryl Kent, Judy Keeler, Merle Morrow, Alan Rothman, Nelson Carbonell, and Gail Williamson.

Special appreciation to the Barrier Free Environments, Inc. staff who contributed to this publication, including Leslie Young, Rex Pace, and Ron Mace. Special thanks also to Geoff Sifrin in South Africa and Lucy Harber.

Every attempt was made with this project to provide a concise and easy-to-follow guide on the construction requirements of the Fair Housing Act. Our hope is that the construction and disability communities to whom this manual is directed will be able to use and benefit from our efforts.

## INTRODUCTION

### Building Conversions

If a building was used previously for a nonresidential purpose, such as a warehouse, office building, or school, and is being converted to multifamily housing, the conversion is not covered. The Fair Housing Act only applies to covered buildings for first occupancy after March 13, 1991. The regulations define "first occupancy" as "a building that has never before been used for any purpose." See page 12 for additional discussion of "first occupancy."

### New Construction Behind Old Facade

In cases where the facade of a building is preserved, but the interior of the building, including all structural portions of floors and ceilings is removed, and a new building is constructed behind the old facade, the building is considered a new building for the purposes of the Fair Housing Act. Thus, it is covered and must comply with the Guidelines.

### Additions to Existing Buildings

When an addition is built as an extension to an existing building, the addition of four or more units is regarded as a new building and must meet the design requirements of the Guidelines. If any new public and common use spaces are added, they are required to be accessible. If, for example, an apartment wing is added to an existing hotel, the apartments are covered by the Fair Housing Act.

### Housing for Older Persons Is Covered

Housing built specifically for older persons is exempt from complying with the Fair Housing Act's prohibition against discrimination based on familial status (see 24 CFR 100.303 and 100.304). However, such housing is still subject to the Fair Housing Act's other requirements, including the design requirements for accessibility.



**New Construction Behind
Old Facade Is Covered**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| EQUAL RIGHTS CENTER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case. No. 1:06CV01991 |
| | ) | Judge Richard J. Leon |
| POST PROPERTIES, INC. | ) | |
| POST GP HOLDINGS, INC. | ) | |
| POST APARTMENT HOMES, L.P. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### ORDER

UPON CONSIDERATION OF Plaintiff's Motion to Strike Affidavit of Dayna Boone,

and any opposition thereto, it is by the United States District Court for the District of Columbia,

this _____ day of _____ 2007, hereby

ORDERED that Plaintiff's Motion to Strike is DENIED.

<br>

_____
**JUDGE RICHARD J. LEON**

<br><br>

Copies provided to:

Sheila Jane Carpenter, Esq.
Jorden Burt LLP
1025 Thomas Jefferson Street, NW
Suite 400 East
Washington, DC 20007

Donald Lee Kahl, Esq.
Washington Lawyers' Committee for Civil Rights & Urban Affairs
11 Dupont Circle, NW
Suite 400
Washington, DC 20036

Christopher B. Hanback, Esq.
Holland & Knight LLP
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C. 20006