**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| **EQUAL RIGHTS CENTER,** | ) | |
| | ) | **Case No. 1:06CV01991** |
| | ) | |
| Plaintiff, | ) | **Judge Richard Leon** |
| | ) | |
| vs. | ) | |
| | ) | |
| **POST PROPERTIES, INC.** *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DECLARATION OF PETER A. STRATTON

1.     My name is Peter Stratton.  I am over the age of 18 years and am competent
to testify to the facts stated herein.  I am an accessibility consultant who specializes in
design and construction regulatory compliance.  A copy of my curriculum vitae is
attached.

2.     I have reviewed several of the ERC's Accessibility Report Forms from its
visits to various properties identified by the ERC in its Complaint against Post Properties.
Specifically, I have reviewed the report forms for the following properties:

- Post Carlyle Square

- Post Ballentyne

- Post Gateway Place

- Post Gallery

- Post Gardens

- Post Abbey

- Post Rocky Point

- Post Vintage

3.    The measurements recorded in the ERC testing reports at the above named

properties reveal numerous, and serious, violations of the FHA.

4.    There are several HUD-approved "safe harbors" for FHA compliance.  They

include the following:

a.  HUD Fair Housing Accessibility Guidelines published on March 6, 1991
    and the Supplemental Notice to Fair Housing Accessibility Guidelines:
    Questions and Answers about the Guidelines, published on June 28, 1994.

b.  HUD Fair Housing Act Design Manual

c.  ANSI A117.1 (1986), used with the Fair Housing Act, HUD's regulations,
    and the Guidelines.

d.  CABO/ANSI A117.1 (1992), used with the Fair Housing Act, HUD's
    regulations, and the Guidelines.

e.  ICC/ANSI A117.1 (1998), used with the Fair Housing Act, HUD's
    regulations, and the Guidelines.

f.  Code Requirements for Housing Accessibility 2000 (CRHA).

g.  International Building Code 2000 as amended by the 2001 Supplement to
    the International Codes.

h.  International Building Code 2003.

5.    The Fair Housing Act Accessibility Guidelines as well as other recognized

accessibility standards, have common criteria.  While there are some variations,

commonality among the standards is the norm.  For example, under the Fair Housing Act

Accessibility Guidelines, user passage doors within dwelling units are required to provide

a clear width of at least 32 inches, nominal.[1]  This same criterion applies to ICC/ANSI

---

[1] When accessibility standards refer to clear width at doors, the width referred to is the size of the opening
for passage when the door is open at 90 degrees.  For example, to have an opening of about 32 inches, the

A117.1 Type B dwelling units, which are intended to be consistent with the intent of the technical requirements of the FHA.  If doors within dwelling units which are meant for user passage provide a clear width which is narrower than 32 inches, nominal, a person who uses a wheelchair may be unable to negotiate through the door opening, or have difficulty doing so including scraping their hands on the narrow door frame while trying to manually operate a wheelchair to get through the doorway.  Additionally, people who use other mobility aides, such as walkers, may require wider doors for easy maneuverability.  The recognized standards also set forth minimum clearance requirements for kitchens and bathrooms so that a person who uses a wheelchair can enter the room, maneuver about the space and use the appliances or fixtures.  For example, in bathrooms, clearance of at least 48 inches by 56 inches or 48 inches by 66 inches, depending on the approach, is required to be positioned at the toilet; a 30 inch by 48 inch clear floor space is required to be positioned at the sink and shower.  In kitchens which are galley shaped, no less than 40 inches is required between opposing elements.  For U-shaped kitchens, all accessibility standards require either at least a 60 inch diameter turning space within the room (when a sink or range or cooktop is positioned at the base of the "U" and knee clearance below is not provided) or at least 60 inches between opposing elements to allow a person who uses a wheelchair to maneuver about the space and use the appliances.  These standards are the minimum consistently required by accessibility standards.

6.    I have reviewed the information provided in the ERC testing reports for the above-referenced properties and compared this data with the requirements of the Fair

---

door needs to be about 34 inches.  The word "nominal" means there is a slight tolerance for deviation; when the word "actual" is used, that means the measurement must be exactly as specified in the standard (or larger).

Housing Act Accessibility Guidelines, ANSI, and other recognized standards. Based on this review, it is clear to me that each of the properties has elements of design and construction that are in violation of the FHA.

7.      I have reviewed the testing report for the Condominiums at Carlyle Square in Alexandria, Virginia. There are a number of violations evident from the test report. For example, the door into the common area bathroom is indicated to be 24". Recognized accessibility standards require doors meant for user passage within common areas to provide a clear width of no less than 32 inches, actual (32-inches, nominal, applies to doors meant for user passage within dwelling units, as opposed to the 32-inch minimum, actual, required for doors which are a part of the accessible route in common areas, such as this common area bathroom door). A 24-inch door provides less than 32 inches of clear width. In addition, the dimension perpendicular to the back wall at the toilet is indicated as 45 inches, which is less than the minimum of 56 inches required; the mounting height of the mirror is indicated at between 52.5 inches to 71.5 inches, which is above the maximum mounting height of 40 inches, measured to the bottom of the reflective surface; a clear floor space of no less than 30 inches by 48 inches is not provided within the room, beyond the door swing so that a person can enter and close the door; maneuvering clearance required to be provided perpendicular to the door, on the pull side, is less than the minimum of 60 inches required; the toilet is positioned away from the wall, which is not permitted in common areas; a 60 inch diameter turning circle or T-shaped turn cannot be positioned within the room, as required, and grab bars are not installed, as required in common area bathrooms.

8.    The testing report for Post Ballentyne in Charlotte, North Carolina shows violations of the FHA.  For example, the door to the walk-in closet is indicated at 28½ inches, which provides a clear width of less than 32 inches, nominal, required for user passage doors in units; a 60-inch diameter turning circle cannot be positioned in a unit kitchen, which is required when there is a range or cooktop a the base of the "U."

9.    The testing report for Post Gateway Place in Charlotte, North Carolina shows violations of the FHA.  For example, the space between the refrigerator and the opposing countertop in the kitchen measures 31.5 inches, which is less than the required minimum of 40 inches under the Guidelines and other recognized standards.  In addition, environmental controls in the living room are at 58.5 inches.  While the Fair Housing Act Accessibility Guidelines require a maximum reach of no higher than 48 inches in units, where there is a parallel approach, up to 54 inches is permitted by other standards.  Environmental controls located at a height of 58.5 inches violate all recognized standards.

10.    The testing report for Post Gallery in Dallas, Texas shows violations of the FHA.  For example, the report indicates that steps are provided at the entry which violates the requirement for an accessible building entrance connected by an accessible route to covered units; the door into the unit bathroom is indicated at 26 inches and the door into the powder room is indicated at 26½ inches; these doors provide less than the minimum required 32 inches, nominal; toilet fixture clearance along the back wall at the toilet of 36 inches is less than the 48 inch minimum.

11.    The testing report for Post Gardens in Atlanta, Georgia shows violations of the FHA.  For example, in a unit, the width of user passage doors is indicated at 28 inches in the Sunroom and 30 and 22 inches at the two doors to the bathroom.  The clear width

provided by these doors is less than the minimum 32 inches nominal required for user

passage doors in dwelling units; the height of environmental controls is indicated at 60

inches in the living and den in a unit which is well above the maximum high reach

permitted in units by the Guidelines, *i.e.,* 48 inches, and well above the maximum high

reach permitted by other recognized standards, *i.e.,* 54 inches when a side approach is

provided.

12.    The testing report for Post Abbey in Dallas, Texas shows violations of the

FHA.  For example, the bathroom door in a unit is indicated at 22 inches, which provides

a clear width of less than 32 inches, nominal, required for user passage doors in units;

toilet fixture clearance along the back wall at the toilet is less than 48 inches minimum at

34.5 inches.

13.    The testing report for Post Rocky Point in Tampa, Florida shows violations

of the FHA.  For example, environmental controls are indicated at 62 inches, which is

well above the maximum high reach permitted in units by the Guidelines, i.e., 48 inches,

and well above the maximum high reach permitted by other recognized criteria, i.e., 54

inches when a side approach is provided; less than 60 inches are provided between the

refrigerator and the opposing countertop in a unit at 56½ inches; cane-detectable barriers

are not provided below open stairs in common areas, which violates headroom criteria.

14.    The testing report for Post Vintage in Dallas, Texas shows violations of the

FHA.  For example, a user passage dwelling unit bathroom door is indicated at 23 inches

and a patio door is indicated at 28 inches; both doors provide less than the minimum 32

inches of clear width, nominal, required; there is less than 40 inches minimum between

opposing elements in a unit kitchen at 31½ and 33½ inches (this clearance of less than 36

inches also violates the minimum width for accessible routes required to be provided throughout the apartment); cane-detectable barriers are not provided below open stairs in common areas, which violates headroom criteria.

I declare under penalty of perjury that the foregoing is true and correct.


Executed on May 4, 2007

/s/ Peter A. Stratton
Peter A. Stratton



**Steven Winter Associates, Inc.**
Building Systems Consultants

50 Washington Street
Norwalk, CT 06854
Tel: 203-857-0200 Fax: 203-852-0741

1112 16th Street, NW, Suite 240
Washington, DC  20036
Tel: 202-628-6100 Fax: 202-393-5043

Peter A. Stratton is a Senior Associate with Steven Winter Associates, Inc., where he manages accessibility compliance consulting services provided to large-scale public and private clients, including the Housing Authority of Baltimore City, one of the top-ten largest housing authorities in the US, for which he certifies compliance with federal mandates for accessibility pursuant to its Consent Decree with the US Department of Justice. Stratton provides litigative consulting to attorneys representing the plaintiff on cases filed against real estate developers for nationwide Fair Housing violations. Among others, Stratton has provided accessibility compliance consulting for the US Department of Justice, Washington, DC and the US Department of Housing and Urban Development. He is the author of *A Basic Guide to Fair Housing Accessibility – Everything Architects and Builders Need to Know about the Fair Housing Act Accessibility Guidelines*, published by John Wiley & Sons, Inc., June 2001. Stratton is currently an adjunct instructor at the New York Institute of Technology, New York, NY where he teaches three courses on accessibility which he created and developed.

## Project Samples

- **Fair Housing Design and Construction Compliance**
  **Client: Washington Lawyers Committee, Washington, DC,**
Provides litigative consulting on Fair Housing design and construction compliance on the first case filed in the US against a top-five Real Estate Investment Trust for nationwide FHA violations. Managed nationwide large-scale property assessments conducted in 18 states, reviewed and approved inspection reports, negotiated with defendant's expert on remediation and property alterations, consulted with counsel on discovery and alterations agreements, developed criteria for remediation, and approved final alteration plans.

- **Fair Housing Act, Section 504, & ADA Compliance**
  **Client: Housing Authority of Baltimore City, Baltimore, MD**
  **Client: Wicomico County Housing Authority, Salisbury, MD**
  **Client: Bridgeport Housing Authority, Bridgeport, CT**
Provides Section 504, FHA, and ADA compliance consulting pursuant to the requirements of a Voluntary Compliance Agreement with HUD (Wicomico County, MD and Bridgeport, CT) and a Consent Decree with DOJ (Baltimore, MD). Conducts  large-scale property assessments and plan reviews, certifies compliance with the FHA, Section 504, and Title II of the ADA pursuant to the requirements of the VCA or Consent Decree, develops remediation and compliance plans, develops criteria, provide technical assistance, liaison between client and HUD or DOJ, negotiates remediation efforts with DOJ or HUD, trains staff, contractors, and other stakeholders.

- **Section 504, & ADA Compliance; Design**
  **Client: Bridgeport Housing Authority, Bridgeport, CT**
Manages design of complete inventory of dwelling units, common areas, and sites in housing and non-housing facilities renovated to achieve full compliance with UFAS pursuant to the requirements of the Authority's Voluntary Compliance Agreement with HUD.

- **Fair Housing, Section 504, & ADA Compliance**
  **Client: Norwalk Housing Authority, Norwalk, CT**
Conducted property assessments to identify violations of Section 504, and Title II of the ADA. Prepared violations report. Will serve NHA in and advisory capacity during the UFAS renovation process.

# Peter A. Stratton
**Senior Associate**

## Area of Expertise
Accessibility Compliance - Design and Construction

## Sample of Published Works
*Built-In Mistakes*
UNITS Magazine, April 2007

*Party-Walls*, ongoing series of articles, 2007, 2006, 2005

Expert Interview: *FHA Compliance – What You Need to Know*
Commercial Builder Architect Magazine, March 2006

*Assessment Tools for Accessibility*
GSA's Whole Building Design Guide, 2004, 2005

*Accessibility Notice: PIH 2003-26*
Legal guidance on federal requirements for housing accessibility for HUD's Office of Native American Programs, April 2003

*A Basic Guide to Fair Housing Accessibility: Everything Architects and Builders Need to Know About Fair Housing Act Accessibility Guidelines*
John Wiley & Sons, Inc., June 2001

*Federal Requirements for Accessibility*
Residential Architect, November/December 2001

*Universal Design: An All-Inclusive Approach*
The Construction Specifier, February 2001

## Recent Training Conducted
Accessible Public Housing: ADA Title II and Section 504
Housing Authority of Baltimore City, 2007, 2006, 2005, 2004

Accessible Public Housing: ADA Title II, 504, and FHA
Bridgeport, CT,
Technical training 2007, 2006
General training for housing managers 2007, 2006

Fair Housing – Design and Construction Compliance
Accessibility Requirements of the Conn Code.
American Institute of Architects, CT Chapter
New Haven, CT November, 2006

Fair Housing Compliance Training for Housing Managers and Maintenance Staff
Baltimore, MD 2006, 2005

Onsite FHA Training: The Inspection Process
Nationwide FHA inspections, 2005

Section 504: Accessible Housing in Indian Country
Nationwide series of accessibility workshops for HUD's Office of Native American Programs (ONAP), 2002-2003

## Associations/Memberships
- Fair Housing Association of Connecticut (FHAct)
- National Association of Home Builders, 50+ Housing Council
- International Code Council
- National Apartment Association (NAA)
- New Jersey Apartment Association (NJAA)



**Steven Winter Associates, Inc.**
Building Systems Consultants

## Project Samples Continued

■ **Fair Housing, Section 504, ADA, and Building Code Compliance**
**Client Sample: Lessard Architectural Group, Washington, DC
and Hord Copland Macht, Baltimore, MD**

Provides on-going compliance consulting plan review services. Conducts design development plan reviews, prepares violations reports, provides technical assistance, and assesses revised designs for compliance.

■ **Fair Housing Design and Construction Compliance**
**Client: Cappelli Enterprises, Valhalla, NY**

Assessed design development phase of high-end luxury residential buildings, including Trump Tower, New Rochelle, NY. Identified design violations of federal Fair Housing law and building code requirements for accessible design and construction. Provided recommendations for design remediation.

■ **3rd Party Compliance Inspection**
**Client: Meridian Terrace, Carteret, NJ**

Provided 3rd party compliance consulting services for NJ residential real estate developer. Managed the inspection of accessibility modifications made by developer in response to a violations report conducted by HUD.

■ **Policy Development**
**Client: HUD/Senator Jack Reed, Rhode Island**

Invited by HUD to provide comment on H.R. 2353, Inclusive Home Design Act of 2003, a bill before the 108th Congress that sought to require that all newly constructed, federally assisted, single-family houses and town houses meet minimum standards of Visit-ability for persons with disabilities.

■ **Fair Housing Compliance**
**Client: US Department of Housing and Urban Development (HUD)**

Developed a 255-question survey instrument used to evaluate nearly 400 multifamily housing projects for compliance with the design and construction requirements of the FHA. Managed plan and field surveys of nearly 400 multifamily properties throughout the US. Results published by HUD in 2003; *FHA Conformance Study*

■ **Accessibility Analysis of Model Building Codes**
**Client: US Department of Housing and Urban Development (HUD)**

Analyzed the National Building Code (BOCA), Uniform Building Code (UBC), Standard Building Code (SBC), and the first and final drafts of the International Building Code 2000 (IBC 2000), and worked with HUD's Model Codes Working Group to identify variances in the accessibility provisions of the model codes that did not meet the seven accessibility requirements of the FHA. The analysis was published in the Federal Register on March 23, 2000. Results of the analysis were used by the International Code Council (ICC) to produce the *Code Requirements for Housing Accessibility* (CRHA), a stand-alone code document that incorporates the recommendations made in the final report.

■ **Accessibility Consulting**
**Client: US Department of Housing and Urban Development (HUD)**

Reviewed the International Code Council's (ICC) *Code Requirements for Housing Accessibility* (CRHA) to ensure that its provisions were in compliance with the accessibility requirements of the FHA and to ensure that variances between the accessibility provisions of the IBC 2000 and those of the FHA, identified as a result of the Accessibility Analysis of Model Building Codes project (described above) were appropriately addressed. Consultant to HUD's Model Codes Working Group.

# Peter A. Stratton
## Senior Associate

### Instructor
New York Institute of Technology, NY, NY,
- Fair Housing Amendments Act of 1988
- Section 504 of the Rehabilitation Act of 1973
- Visit-able and Accessible Homes

### Conference Presentations
Florida Home Builders Assn/SEBC 2007
Common Design and Construction Violations of the FHA
Upcoming, Summer 2007

Fair Housing and Section 504: What You Need to Know
New York State Association for Affordable Housing
New York, NY May, 2006

Fair Housing Accessibility
Design & Technology Expo 2006
Rye, NY, March 2006

Fair Housing Accessibility
Cedar Rapids Civil Rights Commission
Cedar Rapids, IO, August 2005

Federal vs. Connecticut Fair Housing Law – The ANSI Type A and B Dwelling Units
Connecticut American Institute of Architects (CTAIA)
Norwalk, CT, June 2005

The FHA: Common Design and Construction Problems and Solutions
NAHB's "Building for Boomers and Beyond"
Chantilly, VA, May 2005

Accessible Housing Workshop, Guest Speaker
Bridgeport, CT, April 2005

Federal Access Requirements for Design and Construction
National American Indian Housing Council (NAIHC)
Las Vegas, NV, December 2003

New Developments in Fair Housing Accessibility
New York State Affordable Housing Conference,
New York, NY, May 2003

Accessibility Requirements of Section 504
Coalition for Indian Housing and Development (CIHD)
Las Vegas, NV, December 2002

Fair Housing Accessibility Guidelines
Design Matters – Affordable Housing Conference
Chicago, IL, October 2001

Housing Accessibility: Section 504
Sixth Native American Housing Summit
Portland, OR, 2000

Multifamily Housing and the FHA
National Conference on Seniors Housing
Philadelphia, PA, 1999

### Education
B.S., Architecture Technology
New York Institute of Technology, New York, NY
Magna Cum Laude, Nu Epsilon Tau – Architecture Honors

University of Connecticut, Stamford, CT, Business Writing Program