**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| EQUAL RIGHTS CENTER )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>POST PROPERTIES, INC. )<br>POST GP HOLDINGS, INC. )<br>POST APARTMENT HOMES, L.P. )<br>)<br>Defendants. )<br>_____) | Case. No. 1:06CV01991<br>Judge Richard J. Leon |

**SUPPLEMENTAL AFFIDAVIT OF MARK WALES**

I, Mark Wales, being over the age of 21 years, have personal knowledge and am competent to testify to the matters set forth herein. I hereby state as follows:

1. I have reviewed Plaintiff the Equal Rights Center's Reply to Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction ("Plaintiff's Reply") and this Affidavit responds to Plaintiff's mischaracterizations concerning a PowerPoint presentation that I made, which was attached to Plaintiff's Reply.

2. In Plaintiff's Reply, Plaintiff asserts that a PowerPoint presentation that I gave on January 11, 2006, shows that I view HUD's pronouncements (i.e., the FHA Guidelines and Design Manuel) as authoritative. Plaintiff's Reply ¶ 1.d. That assertion is incorrect.

3. As stated in my Declaration (dated April 25, 2007) the Fair Housing Act ("FHA") Guidelines and Design Manual are not mandatory and inconsistency with either the Guidelines or the Design Manual does not constitute a violation of the FHA's accessibility requirements. The Guidelines and other safe harbors may suggest optimal

1

or preferred standards of accessibility, but the recommendations are not required by the FHA.

  4. The FHA requires that multifamily dwellings be practically accessible to persons with disabilities. Developers and builders do not have to follow any federal regulations to meet FHA's requirements. This flexibility contrasts with Congress' regulations under the ADA Accessibility Guidelines for Buildings and Facilities (ADAAG) for other types of facilities such as hotels. Instead, Congress stopped short of issuing a national building code for residential housing. Further, the FHA contemplates that persons with disabilities are permitted "at the expense of the handicapped person" to make additional modifications to their apartments and condominiums to provide themselves with more extensive or optimal accommodations for their disabilities. 42 U.S.C. § 3604(f)(3)(a). This provision would have been largely unnecessary for new construction had Congress intended to require the same level of accessibility under the FHA for apartments as it did for "public accommodations," such as hotels, under the ADA.

  5. The main purpose of my PowerPoint presentation before The National Multi Housing Council Property Management Committee and my speaking engagement was to show the audience how to develop team-oriented cooperation among owners, developers, architects, contractors, and staff to effect compliance with the accessibility requirements of the FHA. Because my audience consisted of mostly property managers likely unfamiliar with the FHA and its requirements, I used illustrations and examples from safe harbors to give the audience an idea of what I was talking about and to increase the audience's awareness of the types of accessibility elements that the FHA addresses.

6. The purpose of my presentation was not to give instruction on the technical provisions of the FHA and ADA or to espouse my views in the interpretation of the FHA and ADA requirements. In fact, my Disclaimer on slide 56 clearly states the following:

> The comments are intended to be general in nature and to be examples. My comments here are not provided as guidance in any specific circumstances, nor do they reflect my opinions of specific cases or requirements.
>
> * * *
>
> This program is not intended to be instructive in the technical provisions of the FHA or ADA.
>
> * * *
>
> For the purposes of this seminar, my comments do not necessarily reflect my views and interpretations of the requirements of the law or technical criteria of any of the safe harbors as they would apply to any specific case.
>
> * * *
>
> Examples and lists are not exhaustive and not intended to reflect detailed requirements of any law, code, or standard.

7. My PowerPoint recognizes that the Guidelines are a safe harbor for meeting the FHA's accessibility requirements. And, I educate my audiences that meeting the safe harbors of the Guidelines may mitigate the risk of being sued. Yet, I also recognize what is currently happening in litigation brought by groups such as the ERC. Thus, during my presentation I discuss how to avoid the exact predicament that Post currently faces – aggressive litigation by interest groups hoping to expand the scope of the FHA by having the most stringent safe harbors converted into mandatory standards. However, to reiterate, the Guidelines are not mandatory and inconsistency with the Guidelines is just that, it is not indicative of a violation of the FHA accessibility requirements.

8. Further, in contrast to what Plaintiff asserted in its Reply, I am aware of cases in which the Court agreed that the Guidelines are not mandatory and thus rejected the argument that the HUD Guidelines are the minimum standard for compliance. For example, the jury instructions from *Barker v. Emory et al.*, Case No. 1:02-CV-2450-CC, U.S. District Court for the Northern District of Georgia, Atlanta Division, Judge Clarence Cooper are as follows:

> The issue for you, the jury, to resolve is whether the units and common areas of the Clairmont Campus, as designed and constructed, are reasonably accessible to and usable by most persons with disabilities. There is no bright line test to determine whether discrimination has occurred under the Fair Housing Act. You may not use an individualized assessment in making this determination.
> Several standards have been recognized as FHA "safe harbors," meaning that compliance with those standards will ensure compliance with the FHA. The recognized safe harbors are: Fair Housing Accessibility Guidelines, HUD's Fair Housing Design Manual (1998), the American National Standards Institute (ANSI) Section A117.1-1986, 1992, and 1998, the International Building Code (2000 and 2003), and the Code Requirements for Housing Accessibility (2000).
> Although compliance with a recognized "safe harbor" will ensure compliance with the FHA, you are not authorized to find a violation of the FHA based solely on a Defendant's failure to comply with specific measurements, dimensions, or recommendations set forth in the safe harbor. The safe harbor standards are not mandatory. Designers and builders may use any reasonable design that obtains a result consistent with the Act's requirements and may choose to depart from the safe harbors and seek alternative ways to demonstrate that they have met the requirement of the Fair Housing Act.

9. I am also aware of other experts in the field who agree that the Guidelines are not mandatory. For example, in *A Basic Guide to Fair Housing Accessibility* (John Wiley & Sons Inc. 2001) at page 12, author Peter Stratton, who was also listed by Plaintiff as a potential witness for the May 8 hearing, stated, "It is important to note that the Fair Housing Accessibility Guidelines issued by HUD are not mandatory and only

4

provide minimal requirements to ensure that housing is accessible to people with disabilities. Architects, builders, developers, and others may vary from those requirements if access to housing is, at a minimum, equivalent to that required by the Act."

I declare under penalty of perjury that the foregoing is true and correct.

Executed May 4, 2007.

_____
Mark Wales

Sworn and subscribed to before me on this \_\_\_\_ day of May, 2007.

_____
Notary Public

My commission expires on: _____

5

provide minimal requirements to ensure that housing is accessible to people with disabilities. Architects, builders, developers, and others may vary from those requirements if access to housing is, at a minimum, equivalent to that required by the Act."

I declare under penalty of perjury that the foregoing is true and correct.

Executed May 4, 2007.

_____
Mark Wales

Sworn and subscribed to before me on this 4th day of May, 2007.

_____
Notary Public

My commission expires on: at my death

```
OFFICIAL SEAL
SHARLENE H. MANISCALCO
NOTARY ID # 42531
NOTARY PUBLIC
LAFAYETTE PARISH
COMMISSIONED FOR LIFE
```