IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EQUAL RIGHTS CENTER )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>POST PROPERTIES, INC. )<br>POST GP HOLDINGS, INC. )<br>POST APARTMENT HOMES, L.P. )<br>)<br>Defendants. )<br>) | Case. No. 1:06CV01991<br>Judge Richard J. Leon |

### DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Defendants Post Properties, Inc., Post GP Holdings, Inc., and Post Apartment Homes, L.P. (collectively "Post") by undersigned counsel hereby file this Supplemental Brief In Opposition to Plaintiff's Motion for Preliminary Injunction.

The Equal Rights Center ("ERC") has failed to demonstrate the extraordinary circumstances warranting a preliminary injunction. Foremost, the ERC has utterly failed to demonstrate that if an injunction is not issued at this early stage of the litigation, it will suffer irreparable harm. As a matter of law, Section 3613(d) of the Fair Housing Act ("FHA") has never been interpreted by the courts or the federal agencies to preclude courts from issuing an order requiring subsequent purchasers of covered properties to allow for retrofits where violations of the FHA have been proven. Further, as a factual matter, prospective purchasers have both constructive and actual notice of this suit. To the extent the other preliminary injunction factors are even relevant to this motion,[1] the ERC's evidence proves nothing more

---

[1] Without proof of irreparable injury, no further inquiry is required and the motion should be denied. See CityFed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738, 747 (D.C. Cir. 1995)

1

than possible inconsistencies with one of the many FHA "safe harbors." Finally, Post has demonstrated an injunction is likely to have an immediate and detrimental impact on Post, its shareholders and investors, innocent third parties, and the residents of its buildings.

I. **THE EXTRAORDINARY CIRCUMSTANCES WARRANTING A PRELIMINARY INJUNCTION HAVE NOT BEEN PROVEN**

In the face of the Court's skepticism, the ERC has apparently backed away from the initial request to enjoin the sale of properties, instead requesting that Post be required to give notice of this suit to prospective purchasers of Post buildings. (Tr. at 20-21, 24, 35) (stating that ERC's "largest concern is when the whole apartment complex is being sold"). Yet, such retreat does not relieve the ERC of meeting the heavy burden of proving that an injunction is warranted. A lesser injunction does not require a lesser showing of entitlement to such extraordinary relief.[2]

    A) <u>The ERC's allegations of irreparable harm are legally erroneous and factually wrong.</u>

The ERC's alleged irreparable injury (that Section 3613(d) of the FHA would preclude retrofits at a later date) is based on a misinterpretation of the FHA and is undercut by the facts of this case. As explained in <u>City of Moundridge</u>:

> Irreparable harm is an imminent injury that is both great and certain, and that legal remedies cannot repair..... Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

City of Moundridge v. Exxon Mobil Corp., 429 F. Supp. 2d 117, 127 (D.D.C. 2006).

The ERC has not pointed to a single court that has held that Section 3613(d) precludes the Court from enforcing an order requiring retrofits if Post no longer owns the property. This is not, as the ERC suggests, because in most cases the owner of the property "come[s] to some

---

[2] Because interim injunctive relief is an "extraordinary" form of judicial relief and a "drastic remedy," courts should grant such relief sparingly. <u>Mazurek v. Armstrong</u>, 520 U.S. 968, 972 (1997).

kind of terms" with the ERC, but rather because the interpretation of the FHA advanced by the ERC is erroneous.

As a factual matter, the ERC's fear that prospective purchasers would not have notice of this lawsuit is unfounded. As ERC's counsel conceded, prospective purchasers can (and will) undertake due diligence prior to purchasing a property and will thereby learn that there is a lawsuit that affects the property. (Tr. at 8). Moreover, the ERC and the Department of Justice have been litigating these cases for several years now, and such suits are "not a secret." (Tr. at 29). Indeed, the ERC's own webpage of its press releases and newspaper articles touts the ERC's ability to get its series of lawsuits covered by the media.[3] Thus, prospective purchasers have constructive knowledge of this suit and would be hard pressed to convince this and any other court that they should not be forced to comply with its order.

Moreover, as the Court observed, during the normal course of the sale of a building, the lawyers representing the purchaser would inquire as to whether there are outstanding lawsuits related to the property. (Tr. at 8). Indeed, Post would have to reveal the existence of such litigation. These are multimillion dollar transactions between sophisticated parties and notice of a lawsuit is material to that transaction. Post is already providing notice of this lawsuit, it is disclosed in Post's SEC filings, and there are elaborate indemnifications and purchase price considerations to address these lawsuits. (Tr. at 29). The ERC's concern is not reflective of the realities of the marketplace or of Post's practices.

Finally, the ERC fails to tell the Court that in other suits it has taken positions that are inconsistent with its narrow reading of this Court's ability to fashion relief. For example, in

---

[3] See http://www.equalrightscenter.org/index_files/Page398.htm. According to a *Wall Street Journal* article, which is linked to on the ERC's website and titled "Apartment Landlords Are Likely To Face Disability-Access Suits," residential-property analysts at Green Street have advised real estate companies that it is reasonable to assume that they will be subject to lawsuits on these issues.
See http://www.realestatejournal.com/propertyreport/residential/20051121-corkery.html.

3

Equal Rights Center v. AvalonBay Communities, Inc., No. 05-cv-02626 (DMD), the ERC opposed AvalonBay's argument that it could not be found liable for retrofits at buildings that it purchased under the theory that AvalonBay did not "design" or "construct" the properties subject to suit. The ERC took a similar position in Equal Rights Center v. Equity Residential, No. 06-1060 (DMD). And, even in this case against Post, the ERC has included as Subject Properties in the Complaint, properties that were acquired by Post as built.

B)   The ERC has failed in its burden to show potential violations.

Contrary to their assertions, the ERC has not demonstrated "violations" at any of the Subject Properties, and the Guidelines are not "standards" for FHA compliance. (Tr. at 4-5). Rather, all the ERC has done is point to a few inconsistencies with the non-binding Guidelines and Manual. But, "[t]he Guidelines are not mandatory. . . ." Design Manual at 2. Moreover, the theatrics of counsel's use of a wheelchair during oral argument was an ineffective rebuttal to the "roll-thrus" performed by Paul Sheriff. Mr. Sheriff's declaration and the attached videos and photographs demonstrate that the units tested meet and exceed the FHA's "modest accessibility requirements on covered dwellings ... resulting in features which do not look unusual and will not add significant additional cost." Design Manual at 1 (quoting House Report 711 at 25 and 18).[4] Mr. Sheriff's roll-thrus (done in a wheelchair that is actually wider than the chair brought into the court by the ERC) demonstrates that the measurements presented by the ERC are not dispositive of accessibility. There is no "mystery" as to the standard with which these buildings must comply, (Tr. at 15), — it is the FHA. As required by the FHA, Mr. Sheriff demonstrated

---

[4] Mr. Sheriff is an expert in this field and his declaration is hardly "anecdotal" evidence. (Tr. at 15). Hence, the cases cited by Plaintiff (Tr. at 15), are irrelevant. In Quality Built, the court excluded evidence of a person in a wheelchair maneuvering about the property in question because the evidence was untimely. See United States v. Quality Built Construction, Inc., 309 F. Supp. 2d 767, 772 (E.D.N.C. 2003). In Tanski, the court excluded declarations from non-expert disabled residents who found the property elements accessible as "wholly subjective". United States v. Tanski, No. 1:04-CV-714, 2007 WL 1017020, *14 (N.D.N.Y. Mar. 30, 2007). Mr. Sherriff's expert testimony is timely, objective and probative of accessibility.

that the covered units he tested have "features of adaptive design" such as an "accessible route into and through the dwelling," placement of certain controls (e.g. light switches) "in accessible locations" and "usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space." 42 U.S.C. § 3604(f)(3)(C)(i)-(iii). Nothing more is required. As stated in the plain text of the Design Manual, "Fair housing units are not fully accessible, nor are they purported to be." Design Manual at 1. The ERC's belief that there are required uniform dimensions for covered units is simply wrong.[5] For all of the foregoing reasons, the Court should reject the ERC's request to order injunctive relief.

>Respectfully submitted,
>
>HOLLAND & KNIGHT LLP
>
>  /s/ Christopher B. Hanback
>Christopher B. Hanback (Bar # 232579)
>Alan I. Baron (Bar. # 340273)
>Rafe Petersen (Bar # 465542)
>2099 Pennsylvania Avenue, N.W.
>Suite 100
>Washington, D.C. 20006
>(202) 955 3000 Phone
>(202) 955 5564 Fax
>E-mail: christopher.hanback@hklaw.com
>E-mail: alan.baron@hklaw.com
>E-mail: rafe.petersen@hklaw.com
>
>*Counsel for Post Properties, Inc., et al.*

---

[5] As stated in the Introduction to the Design Manual, "[t]he accessibility requirements of the Fair Housing Act are intended to provide <u>usable housing</u> for persons with disabilities <u>without necessarily being significantly different from conventional housing.</u>" Design Manual at 7 (emphasis added). Nor can a simple review of floor plans be used to ascertain the accessibility of a space because such plans do not provide adequate detail to determine the accessiblity of units including their final configuration as actually built. It should also be noted that Post must meet certain accessibility requirements under state and local law. So, certain units are categorized by Post in drawings with terms such as "handicapped accessible", "hearing impaired" and "handicapped adaptable" units. However, use of such terms should not be interpreted as a concession by Post that other units not so categorized do not meet the requirements of the FHA.

## CERTIFICATE OF SERVICE

       I hereby certify that a true and accurate copy of the foregoing Supplemental Brief was served by electronic filing this 22nd day of May, 2007, on the following:

Sheila Jane Carpenter, Esq.
Jorden Burt LLP
1025 Thomas Jefferson Street, NW
Suite 400 East
Washington, DC 20007

Donald Lee Kahl, Esq.
Washington Lawyers' Committee for Civil Rights & Urban Affairs
11 Dupont Circle, NW
Suite 400
Washington, DC 20036

                                                /s/ Christopher B. Hanback
                                                Christopher B. Hanback