IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EQUAL RIGHTS CENTER )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>POST PROPERTIES, INC. )<br>POST GP HOLDINGS, INC. )<br>POST APARTMENT HOMES, L.P. )<br>)<br>Defendants. )<br>) | Case. No. 1:06CV01991<br>Judge Richard J. Leon |

## NOTICE OF RULE 30(b)(6) DEPOSITION OF EQUAL RIGHTS CENTER

Pursuant to Federal Rule of Civil Procedure 30(b)(6), Defendants Post Properties, Inc., Post GP Holdings, Inc., and Post Apartment Homes, LP (collectively "Post") will take the deposition of the Equal Rights Center ("ERC"). This deposition will commence at 10:00 A.M. on September 26, 2007, and will continue from day to day thereafter until the deposition is completed. The deposition will be taken at the offices of Holland & Knight LLP, located at 2099 Pennsylvania Avenue, NW, Suite 100, Washington, DC 20006. The deposition will be taken by stenographic means. The deposition is being taken for all purposes authorized by the Federal Rules of Civil Procedure.

Pursuant to Rule 30(b)(6), the Equal Rights Center is required to designate one or more officers, directors, managing agents, or other persons who consent to testify on its behalf about the following subjects:

1

## DEFINITIONS

1. The term "COMMUNICATION" means and includes any oral or written expression, statement or utterance of any nature made by or to anyone, including without limitation, correspondence, email, conversations and agreements.

2. The term "DISABILITY" is synonymous with "HANDICAP" and the terms have the meaning given for "handicap" in section 802(h) of the Fair Housing Act, 42 U.S.C. § 3602(h).

3. The term "DOCUMENT" is synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a) and shall include any tangible thing upon which information is or has been stored, recorded or communicated, including, but not limited to: records, letters, notes, correspondence, graphic or photographic matter, agreements, memoranda, diaries, calendars, telephone logs, messages, records, tapes, email and other electronically stored materials.

4. The term "IDENTIFY" or the "IDENTITY" means:

    a. When used in reference to a natural person, the person's full name, date of birth, social security number, dates of agency, employment or service as a volunteer (if the natural person is, or was at the time, an agency, employee or volunteer), and the last known business and residence address (including the specific apartment), and telephone number;

    b. When used in reference to a document, the type of document (i.e., letter, memorandum, email, chart, etc.), a brief description of the nature of the information in the document, its author and originator, its date or dates, all addresses and recipients, and its present location or custodian. If any such

      document was, but is no longer, in your possession or subject to your control, state additionally the approximate dates it was lost, discarded, or destroyed, and the identity of each person having knowledge of the contents thereof;

  c. When used in reference to a business entity, the structure of the business (i.e., corporation, partnership, sole proprietorship, etc.), a brief description of the nature of the business, and the business address and telephone number; and

  d. When used in reference to a Subject Property, the name of the Subject Property and the full address.

5.    The phrase "RELATE TO" shall be deemed to include: contain, allude to, respond to, comment on, discuss, show, disclose, explain, mention, refer to, analyze, constitute, comprise, evidence, set forth, summarize, characterize, either directly or indirectly, in whole or in part.

6.    The phrase "FAIR HOUSING ACT" means the Fair Housing Act Amendment of 1988, 42 U.S.C. §§ 3601-3619.

7.    The phrase "AMERICANS WITH DISABILITIES ACT" means the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.*

8.    The term "PERSON" means any natural person, group of natural persons, corporation, partnership, government agency or board, association, proprietorship, organization, or any other legal entity.

9.    The term "SUBJECT PROPERTIES" means the list of Subject Properties attached to PLAINTIFF's Complaint.

**TOPICS**

1.    The ERC's organizational and management structure, including office locations, each for-profit or not-for-profit entity, and all government agencies, divisions, departments, and

employees that are affiliated, formally or informally, with the ERC; the relationship between the ERC and these affiliated entities; and all persons who have served as officers, directors, or trustees of any such entity.

2. The identity of each current or former officer, director, trustee, employee, and volunteer, past and present, of the ERC since November 21, 2002, and a description of each person's duties and job responsibilities, dates of employment, or if uncompensated, dates of participation.

3. The identity of current and past ERC members, including identifying those whom the ERC claims, knows, or believes are persons with disabilities, and those who live within 15 miles of each of the Subject Properties and those whom the ERC claims were affected by Post's activities.

4. The ERC's financial information, including the ERC's net worth (or balance of accounts and reserves) as of the last day of the ERC's fiscal year, income statements, annual operating budgets, assets, liabilities, income and expenses, state or local tax returns filed, and compensation paid to any officer, director or trustee exceeding $5,000, since November 21, 2002.

5. The ERC's sources of funding and revenue including any grants or donations in excess of $100.00 in cash or "in kind" donations or services by federal, state, local governments, private entities, foundations, or persons, and any application for funding of ERC activities or reports or documents filed with, or funding determination received from, the United States Department of Housing and Urban Development or any other federal, state, or local government agency or official relating to fair housing or disabilities issues, since November 21, 2002.

6. Dollar value of all resources utilized, used, or diverted (specifically and separately itemized) to litigate or to prepare to bring this suit against Post, including resources expended to identify alleged discriminatory practice by Post and to investigate or "test" Post's activities (including the amount of time, resources, and money devoted to identification of victims of alleged discriminatory conduct by Post).

7. Dollar value of all resources utilized, used, or diverted (specifically and separately itemized) to counteract alleged discriminatory practice by Post, including reaching out to other potential plaintiffs, and responding to community requests for assistance in investigating alleged discriminatory conduct by Post.

8. Dollar value of all resources utilized, used, or diverted (specifically and separately itemized) to inspect Post's properties through the ERC's discovery process (including itemization of resources expended on experts, engineers, and consultants, and prosecution of this action at each property).

9. Dollar value of all resources utilized, used, or diverted (specifically and separately itemized) to and any information related to attorney fees and attorney time related to the ERC's claims against Post.

10. The date of communication, nature of communication, and identity of all persons (specifically identifying those whom the ERC claims, knows, or believes to have a disability) who have been in communication with the ERC or complained to the ERC with regard to the alleged fair housing discrimination by Post, or have resided in, inquired as to, or visited any Post property and have alleged or will allege to have been impacted by the alleged fair housing discrimination by Post.

5

11. The date of communication, nature of communication, and identity (including location) of all federal, state, or local agencies, or associations or advocacy groups that, since November 21, 2002, have been in communication with the ERC with regard to alleged discrimination by Post or have requested assistance from the ERC in investigating alleged discriminatory conduct by Post, including the services provided and whether any funding, compensation or expense reimbursements were exchanged.

12. All complaints, lawsuits, actions or administrative proceedings filed or instituted by the ERC or in which the ERC participated since January 1, 2002, related to Fair Housing Act accessibility design and construction violations.

13. All services provided and resources expended, including seminars, presentations and community outreach, by the ERC in each locality where a Subject Property is located and the identity of the members and/or attendees who reside in each town or city where a Subject Property is located.

14. The ERC's testing at Post properties, including the identity, qualifications, training, and knowledge regarding the Fair Housing Act ("FHA") and Americans with Disabilities Act ("ADA") accessibility requirements of any persons who served as testers or otherwise performed any investigative or other services at the direction of the ERC related to investigating alleged discrimination by Post, as well as a description of any investigation, testing or other analysis that the ERC has taken related to or in support of its allegations of discrimination against Post.

15. The identity of all persons whom the ERC contends or reasonably believes have information or knowledge concerning the allegations in the Complaint and a description of that information or knowledge.

16.     The circumstances of how and when the ERC first became aware of each of the allegations of discrimination against Post at each Subject Property as well as the nature of each and every action that Post took that the ERC alleges violated the FHA and ADA.

17.     Information and expert reports obtained in the inspection of any Post properties inspected in relation to this lawsuit, including all documents and information reviewed, received, considered, or relied upon by the ERC's experts.

18.     Information and documents that the ERC has distributed or sent to any persons or entity, in relation to investigation, education, or counteraction of Post's actions or the allegations of discrimination against Post, including to whom and where they were sent.

Respectfully submitted,

HOLLAND & KNIGHT LLP

/s/ Christopher B. Hanback
Christopher B. Hanback (Bar # 232579)
Alan I. Baron (Bar. # 340273)
Rafe Petersen (Bar # 465542)
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C. 20006
(202) 955 3000 Phone
(202) 955 5564 Fax
E-mail: christopher.hanback@hklaw.com
E-mail: alan.baron@hklaw.com
E-mail: rafe.petersen@hklaw.com

*Counsel for Post Properties, Inc., et al.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served via first-class certified mail, postage prepaid, this 27th day of August, 2007, on the following:

Sheila Jane Carpenter, Esq.
Jorden Burt LLP
1025 Thomas Jefferson Street, NW
Suite 400 East
Washington, DC 20007

Donald Lee Kahl, Esq.
Washington Lawyers' Committee for Civil Rights & Urban Affairs
11 Dupont Circle, NW
Suite 400
Washington, DC 20036


/s/ Christopher B. Hanback
Christopher B. Hanback

# 4740837_v1