## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EQUAL RIGHTS CENTER        ) | |
|         ) | |
|     Plaintiff,        ) | |
|         ) | |
|     vs.        ) | Case. No. 1:06CV01991 |
|         ) | Judge Richard J. Leon |
| POST PROPERTIES, INC.        ) | |
| POST GP HOLDINGS, INC.        ) | |
| POST APARTMENT HOMES, L.P.        ) | |
|         ) | |
|     Defendants.        ) | |
|         ) | |

## <u>DEFENDANTS' MOTION TO COMPEL DISCOVERY</u>

Defendants Post Properties, Inc., Post GP Holdings, Inc., and Post Apartment Homes,

L.P. (collectively "Post"), by undersigned counsel, hereby file this Motion to Compel Discovery.

The reasons in support of this Motion are set forth in the accompanying Memorandum of Points

and Authorities.


Respectfully submitted,

HOLLAND & KNIGHT, LLP

<u>/s/ Christopher B. Hanback</u>
Christopher B. Hanback (Bar # 232579)
Alan I. Baron (Bar. # 340273)
Rafe Petersen (Bar # 465542)
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C. 20006
(202) 955 3000 Phone
(202) 955 5564 Fax
E-mail: christopher.hanback@hklaw.com
E-mail: alan.baron@hklaw.com
E-mail: rafe.petersen@hklaw.com
*Counsel for Post Properties, Inc., et al.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| EQUAL RIGHTS CENTER | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Case. No. 1:06CV01991 Judge Richard J. Leon |
| POST PROPERTIES, INC. POST GP HOLDINGS, INC. POST APARTMENT HOMES, L.P. | ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
## DEFENDANTS' MOTION TO COMPEL DISCOVERY

Defendants Post Properties, Inc., Post GP Holdings, Inc., and Post Apartment Homes,

L.P. (collectively "Post"), by undersigned counsel, hereby file this Memorandum of Points and

Authorities in Support of Defendants' Motion to Compel Discovery.

Throughout the duration of the discovery process in this case, Plaintiff Equal Rights

Center ("ERC") has had a "take without giving" mentality that has prejudiced Post in its ability

to defend itself. The ERC has been unyielding on setting dates for its own deposition and site

inspections of Post and yet refuses to comply with and has made scheduling very difficult for

Post's proposed dates for depositions of the ERC. Additionally, despite Post's production of

extensive documents in response to the ERC's requests, the ERC has thwarted Post's rightful

attempts to request its own document production of the ERC. The ERC has delayed producing

documents and has almost completely refused to produce documents or answer interrogatories

without a protective order. Post has yet to see any documents that were allegedly relied on in

filing this complaint (e.g. testing files, counteraction of Post's alleged discrimination, and

diversion of resources). Nevertheless, incredibly the ERC has continued to seek discovery from Post, filing its First Set of Interrogatories and Second Set of Request for Production of Documents on September 14, 2007. A protective order has now been agreed to and a consent motion filed with the Court and still the ERC has not produced the requested documents. The Federal Rules of Civil Procedure entitle Post to its requested documents, interrogatory answers, and a reasonable date for taking a deposition, and the ERC's ignoring of these Rules should not be tolerated.

## I.      BACKGROUND

The ERC filed this Complaint against Post on November 21, 2006, alleging that Post violated the design and construct requirements of the Fair Housing Act ("FHA") 42 U.S.C. §§ 3601-3619. As a basis for its claims, the ERC alleged that it "tested" numerous Post properties, found violations, and then extrapolated from those alleged violations, that Post had engaged in a pattern and practice of FHA violations. In addition, the ERC claimed that it diverted resources and has otherwise had to counteract alleged discrimination by Post.

Post filed a motion to dismiss on January 29, 2007, based on the fact that the ERC lacks standing to pursue these claims and that the statute of limitations has run on all but one property subject to the Complaint. The Court denied Post's motion to dismiss on June 14, 2007, but Post intends to pursue its standing argument, among various other defenses, based on the discovery it has served on the ERC.

### A.      Post's Written Discovery to the ERC

Post served the ERC with written discovery, including its First Set of Interrogatories and First Request for Document Production, on July 3, 2007.[1] Accordingly, the ERC was required to

---

[1] The ERC also served Post with discovery requests pursuant to Fed. R. Civ. P. 34, including requests for production of documents and requests for inspection of properties. Post responded fully to the ERC's

answer the interrogatories and produce the requested documents by August 2, 2007. The ERC requested an extension on this deadline, to which Post consented, and the ERC served its written discovery responses on August 10, 2007.[2]

The ERC's written discovery responses and document productions are woefully lacking in substance. In addition to objections based on privilege and relevance, the ERC claimed that it would only provide certain answers or produce requested documents after the issuance of a protective order. As a result, the ERC produced virtually no information. Specifically, the ERC responded to Document Requests 1, 2, 5, 6, 7, 9, 11, 12, 13, 14, 15, 16, and 19 with the following statement: "Subject to and without waiving the objection, ERC will make available, pursuant to an appropriate protective order entered by the Court, nonprivileged responsive documents." These document requests primarily refer to the allegations in the Complaint including pattern and practice, resources utilized or diverted, testing of Post properties, and the ERC's damages, as well as evidence of any particular individuals or advocacy groups affected by the alleged discrimination, communications with individuals and advocacy regarding the alleged discrimination, and information about the ERC itself. Despite the obvious relevance of Post's requests, the ERC gave no further explanation as to why the documents related to such issues should be subject to a protective order or the basis for treating them as confidential.

In addition, the ERC's Interrogatory Answers were for the most part incomplete, offering little more than parroting back what was alleged in the Complaint. For instance, the ERC's answers to Interrogatories 6, 10, and 12 (questions related to the ERC's support for its specific

---

requests for production and cooperated with each and every date the ERC proposed for inspecting Post's properties. Post even offered additional information regarding the units at each inspected property in order to more easily facilitate the ERC's inspections.

[2] Pursuant to LCvR 5.2(b), the ERC's interrogatory answers and written responses to the request for production of documents are attached as Exhibits A and B, respectively. Post's specific interrogatories and requests for production are evident from these documents.

allegations of discrimination and damages), merely track the language of the Complaint and affidavits attached to the ERC's pleadings. The ERC provided no new information that would support its underlying theories. In Answer 3, the ERC only provided the qualifications for one of the five testers mentioned. There is no explanation for this partial response. Finally, similar to its responses to the document requests, the ERC refused to answer certain interrogatories without a protective order or answered by citing to its document productions (which are subject to a protective order). These interrogatories include numbers 7, 10, 16, and 17, which refer to ERC members, testing, donors, and funding respectively.

Despite this continued reference to a protective order, the ERC gave no indication as to whether a draft protective order would be forthcoming. The ERC also failed to produce any documents for which no protective order was deemed necessary even by the ERC. As a result, via letter on August 27, 2007, Post informed the ERC that it found its answers and document productions to be insufficient and demanded production of all documents which the ERC did not deem confidential. Moreover, although Post objects to the ERC's alleged need for a protective order, in an effort to further the discovery process, Post enclosed a draft protective order.

The ERC did not produce any additional documents until September 4, 2007, and even this production was paltry at best.[3] A consent motion for protective order was filed on September 12, 2007. However, the ERC has not produced any more documents or supplemented any interrogatory answers despite multiple requests and demands to do so from counsel for Post. Instead, the ERC recently served Post with yet another discovery request—its First Set of Interrogatories and Second Set of Requests for Production of Documents—on September 14, 2007. Post is entitled to its requested document production and the interrogatory answers. The

---

[3] This production consisted of print outs from ERC's website, promotional leaflets (in multiple languages), repetitive lists of its board of directors, a press release concerning the filing of this suit, and time entries for testers.

ERC's delay and failure to produce is unreasonable and inexcusable and is making a mockery of the discovery process.

**B.    Post's 30(b)(6) Deposition Notice to the ERC**

On August 27, 2007, Post served a Rule 30(b)(6) Deposition Notice on the ERC setting the date of the deposition for September 26, 2007. Counsel for the ERC responded that she would be unavailable on those dates and would get back to counsel for Post with other possible dates. After several days went by with no answer, counsel for Post proposed two other date options for the depositions, September 20 and 21, 2007. Again, counsel for the ERC responded that those dates would not work but did not offer any other possible dates. Counsel for the ERC then further restricted the possible dates by informing Post that one of the ERC's designated deponents, Rebecca Crootof—the deponent that will focus on the ERC's allegations against Post—would be unavailable until the final two weeks of October 2007.

The fact discovery deadline is October 31, 2007. Post therefore suggested that Ms. Crootof's deposition occur in September 2007, especially considering the substance of the expected testimony. Due to the alleged scheduling conflicts of the ERC's attorneys, counsel for the ERC informed Post that the remainder of September 2007 would also not work for Ms. Crootof. The ERC is represented by the law firm of Jorden Burt, a large law firm with many attorneys and has itself dedicated at least two in-house counsel who have appeared in this matter. Although Post does not doubt the veracity of ERC counsel's scheduling conflicts, Post finds it hard to believe that there are no Jorden Burt attorneys available for any of the offered deposition dates.

Fortunately, Post and the ERC have been able to schedule one of the ERC's 30(b)(6) deponents for October 3, 2007. The deposition of Ms. Crootof (the corporate representative who

allegedly will answer all questions related to alleged violations found at Post's properties and the specific allegations in the ERC's complaint), however, remains unscheduled.[4]

Post finds this situation particularly frustrating in view of the fact that Post has also been subject to a 30(b)(6) deposition by the ERC and the ERC was adamant as to that deposition date. Indeed, when Post requested that the deposition date be changed due to the deponent's medical situation, the ERC refused. Post ultimately complied. Plaintiff ERC, however, appears to be under the mistaken belief that the established rules of discovery do not apply when discovery is directed at itself.

## II.    ARGUMENT

### A.    The ERC Failed To Respond Adequately To Post's Written Discovery.

Under Fed. R. Civ. Proc. 37(a)(2)(B), if "a party fails to answer an interrogatory submitted under Rule 33, or if a party, in response to a request for inspection submitted under Rule 34, fails to respond that inspection will be permitted as requested or fails to permit inspection as requested, the discovering party may move for an order compelling an answer, or a designation, or an order compelling inspection in accordance with the request." If the answering party provides "an evasive or incomplete answer," that answer "is to be treated as a failure to disclose, answer, or respond" to the discovery request. Fed. R. Civ. P. 37(a)(3).

In order to compel the answers to interrogatories or the production of documents, the requesting party must first demonstrate the relevance of the documents if it is not self-evident from the request. *See Alexander v. FBI*, 194 F.R.D. 299, 304 (D.D.C.2000). Under Fed. R. Civ. P. 26, the information sought is relevant if it "appears 'reasonably calculated to lead to the discovery of admissible evidence.'" *Doe v. District of Columbia*, 231 F.R.D. 27, 30 (D.D.C.

---

[4] Post's counsel even offered to travel to North Carolina, the current residence of Ms. Crootof, to take the deposition. Again, this offer was rejected.

2005)(quoting Fed. R. Civ. P. 26(b)(1)).  Relevance is "broadly construed."  *Id.*  If a subject matter is "at the center" of a case, then interrogatories or document requests "seeking such information are relevant to the parties claims and defenses" and discovery on those subject matters is appropriate.  *See id.* at 39.

Each interrogatory and document request served by Post on the ERC is relevant to the ERC's claims or to Post's defenses to the ERC's claims.  As to the requests for production of documents, the ERC failed to provide information regarding the following topics, each of which is indisputably relevant: allegations in the Complaint including pattern and practice, resources utilized or diverted, testing of Post properties, and the ERC's damages, as well as evidence of or communications with any particular individuals or advocacy groups affected by the alleged discrimination, and information about the ERC itself.  Likewise, the incomplete interrogatory answers avoided giving information pertaining to various allegations in the Complaint, such as testing, members affected by the alleged discrimination, and the ERC's sources of funding that are used to prosecute this type of litigation.

1.    The ERC's Document Productions Were Incomplete.

In response to requests for documents under Fed. R. Civ. P. 34, the answering party must "state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is objected to, in which event the reason for the objection shall be stated" and "inspection permitted for the remaining parts."  Fed. R. Civ. P. 34(b).  "If a party wishes to prevent the disclosure of confidential documents, the party may motion the court for a Protective Order."  *Tequila Centinela, S.A. v. Bacardi & Co. Ltd.*, 2007 WL 1876388, *2 (D.D.C. 2007).  Without first obtaining a valid protective order, the party is required to produce the requested documents.  *See id.*

7

In this case, the ERC had 38 days to produce the documents requested by Post's First Request for Production of Documents before the agreed upon deadline. In this time, the ERC never once approached Post about the necessity of a protective order or confidentiality agreement. Instead, the ERC submitted written responses, which referred to the protective order and provided very little in the way of substance. In fact, on August 10, 2007, the ERC only produced publicly available material (pamphlets etc.), a list of cases or complaints in which the ERC was involved and the names and dates of seminars conducted by the ERC. The ERC did not include a draft protective order with its answers nor did it initiate discussions with Post regarding the protective order.

Instead, Post, without waiving its objections to the protective order, was forced to draft the protective order and provide it to the ERC. The protective order was finally agreed to and filed with the Court on September 12, 2007. Yet, the ERC has still produced no documents in response to Document Requests 1, 2, 4, 5, 6, 7, 8, 9, 10, 11, 13, 14, 15, 17, and 19 and very little as to Document Requests 3, 12, 16, 18 . Post is entitled to the requested documents under Rule 34. The ERC has no grounds on which to further delay its production.[5] Post respectfully requests that the Court compel the ERC to produce the requested documents forthwith. The ERC cannot bring a case against Post of such magnitude and then idly stand by unresponsive when Post engages in legitimate efforts to conduct its own discovery. Plaintiff ERC brought this case and it must be ready to move it along.

        2.    The ERC's Interrogatory Answers Were, For the Most Part, Insufficient
              and Incomplete.

Fed. R. Civ. P. 33 requires the answering party to answer each interrogatory "separately and fully in writing under oath, unless it is objected to, in which event the objecting party shall

---

[5] Nor does the ERC have claim to the argument that Post has been anything but forthcoming in its responses to its own requests.

state the reasons for objection and shall answer to the extent the interrogatory is not objectionable." *Williams v. Johanns*, 2006 WL 3826967, *2 (D.D.C. 2006) (citing Fed. R. Civ. P. 33(b)(1)). The answering party must give a complete answer; a reference to a file or document is not sufficient. *See id.* at *3. In addition, if the answering party objects based on privilege, the answering party has the burden of establishing the privilege's existence. *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1342 (D.C. Cir. 1984). Claiming a privilege should involve specifying which interrogatories, documents or class of documents are privileged and for what reasons, especially where the nature of requested information or documents does not reveal an obviously privileged matter. *See id.*

The ERC has patently ignored the requirements of Rule 33. The ERC did not give complete answers to multiple questions (*see* Interrogatory Answers 3, 6, 7, 9, 10, 11, 12, 13, 16, 17, 18, 19, 20, 21) and, for the most part, provided only references to that which has already been revealed in the Complaint and other pleadings. Moreover, many of the ERC's answers referred Post to document productions that were not actually produced (*see* Interrogatory Answer 3, 6, 10, 13, 17). In claiming a privilege, the ERC failed state exactly why it was claiming the privilege and failed to identify the nature of the information it was claiming as privileged (*see* Interrogatory Answers 1, 2, 4, 9, 13, and 15). In sum, the ERC failed to give Post even remotely adequate answers to its inquiries. The ERC, as Plaintiff, simply cannot file a case against Post and then go into "rope-a-dope" mode and refuse to answer or cooperate in discovery, especially when the discovery sought goes directly to the allegations in the Complaint.

### B.    The ERC Has Failed To Provide A Reasonable 30(b)(6) Deposition Date.

Pursuant to Fed. R. Civ. P. 37(a)(2)(B), the discovering party may move for a motion to compel if "a corporation or other entity fails to make a designation under Rule 30(b)(6)." Once

the discovering party files a notice of 30(b)(6) deposition with the deposition topics, the responding party "must designate a deponent who is knowledgeable on the subject matter identified." *United States v. M & T Mortgage Corp.*, 235 F.R.D. 11, 22 (D.D.C. 2006). It goes without saying that the deponent chosen by the responding party must be made available for the deposition on dates that are reasonable in light of the discovery deadline.

In this case, the ERC has designated Rebecca Crootof as a 30(b)(6) deponent who will speak directly to the ERC's Complaint allegations. Obviously, such information is key to Post's defense and will serve as a possible foundation for other depositions. Yet, the ERC has not agreed to or provided any reasonable dates on which Post may take the deposition. In this way, the ERC has failed to designate a proper deponent with regard to Ms. Crootof. The ERC's reasoning for Ms. Crootof's lack of availability is based not only on Ms. Crootof's vacation schedule, but also on the schedules of the attorneys for the ERC. And ultimately, it is the schedules of the attorneys which are preventing Post for taking Ms. Crootof's deposition in September 2007 as opposed to less than two weeks before the fact discovery cutoff.[6] Thus, the ERC's failure to designate a 30(b)(6) deponent who is actually available for a deposition warrants Post's motion to compel, and Post respectfully requests that the Court compel Ms. Crootof's deposition on a date in late September 2007 or early October 2007. Given the substance of Ms. Crootof's testimony, the last two weeks of October, that is, the last two weeks of before the fact discovery deadline, are unreasonable and unacceptable.

---

[6] Plaintiff ERC will likely move for an extension of the discovery cutoff date. An extension would be wholly unwarranted and Defendant Post will not consent to it. Despite the fact that the ERC, as Plaintiff, filed this case, the ERC has taken little action in seeking discovery against Post since its own 30(b)(6) deposition of Post on July 16 and 17, 2007. The ERC's current attempts to thwart Defendant Post's ability to reasonably comply with the court-ordered discovery schedule are inappropriate should not be used as a rationale for extending discovery.

## III.    CONCLUSION

Based on the foregoing, Defendants respectfully request that the Court grant their Motion

to Compel Discovery and impose any sanctions it deems just.  Defendants further request

pursuant to Fed. R. Civ. P. 37(a)(4) that they be awarded the costs and expenses incurred in

obtaining this order, including attorneys fees.

Respectfully submitted,

HOLLAND & KNIGHT, LLP

 /s/ Christopher B. Hanback
Christopher B. Hanback (Bar # 232579)
Alan I. Baron (Bar. # 340273)
Rafe Petersen (Bar # 465542)
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C. 20006
(202) 955 3000 Phone
(202) 955 5564 Fax
E-mail: christopher.hanback@hklaw.com
E-mail: alan.baron@hklaw.com
E-mail:  rafe.petersen@hklaw.com
*Counsel for Post Properties, Inc., et al.*

## RULE 37(a)(1)(B) CERTIFICATE

I hereby certify that counsel for Post has in good faith conferred or attempted to confer

with counsel for the ERC in an effort to secure the information and material requested without

court order.

Dated: September 18, 2007

 /s/ Christopher B. Hanback
Christopher B. Hanback

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Motion to Compel

Discovery was served by electronic filing, this 18th day of September, 2007, on the following:


Sheila Jane Carpenter, Esq.
Jorden Burt LLP
1025 Thomas Jefferson Street, NW
Suite 400 East
Washington, DC 20007

Donald Lee Kahl, Esq.
Washington Lawyers' Committee for Civil Rights & Urban Affairs
11 Dupont Circle, NW
Suite 400
Washington, DC 20036

                                     /s/ Christopher B. Hanback
                                     Christopher B. Hanback

# Exhibit A

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **EQUAL RIGHTS CENTER,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case. No. 1:06CV01991 |
| | ) | Judge Richard J. Leon |
| **POST PROPERTIES, INC.** | ) | |
| **POST GP HOLDINGS, INC.** | ) | |
| **POST APARTMENT HOMES, L.P.,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF THE EQUAL RIGHTS CENTER'S RESPONSES TO
## DEFENDANTS' FIRST SET OF INTERROGATORIES

Plaintiff Equal Rights Center (the "ERC"), by its attorneys, responds to Defendants Post

Properties, Inc., Post GP Holdings, Inc. and Post Apartment Homes, L.P.'s (collectively "Post")

First Set of Interrogatories, as follows:

### PRELIMINARY STATEMENT

ERC will respond to each and every interrogatory subject to the general objections set

forth below.  These objections form a part of the response to each and every interrogatory and

are set forth here to avoid the duplication and repetition of restating them for each response.

Various objections may be specifically referred to in a response for purposes of clarity.

However, failure to incorporate specifically a general objection should not be construed as a

waiver of any such objection.

### GENERAL OBJECTIONS

1.     ERC objects to Defendants' interrogatories to the extent they seek information

that is subject to the attorney-client privilege, the attorney work-product privilege, the privilege

1

accorded to settlement materials/negotiations, the First Amendment privilege, or any other applicable privilege or protection.

2.    ERC objects to Defendants' interrogatories to the extent they seek information not relevant to the issues in this lawsuit and not reasonably calculated to lead to the discovery of admissible evidence. To the extent that ERC responds to these interrogatories, it does not concede that any information requested is relevant to this action. ERC expressly reserves the right to object to further discovery into the subject matter of any of these interrogatories.

3.    ERC objects to each interrogatory to the extent it is vague, ambiguous, overly broad, unduly burdensome, oppressive, expansive or premature and thus not susceptible to response at this time. ERC further objects to the extent that the interrogatories use terms that are not well enough defined to permit a meaningful response.

4.    ERC objects to each interrogatory to the extent it seeks information concerning claims other than those at issue in this lawsuit. Such inquiries are overly broad, unduly burdensome, oppressive, and outside the scope of discovery.

5.    ERC objects to each interrogatory to the extent that it seeks confidential information analogous to trade secret information which in ERC's view cannot be adequately protected.

6.    In providing these responses, ERC does not in any way waive, but rather intends to preserve:

        a.    All objections as to competence, relevancy, materiality, and admissibility;

        b.    All objections as to vagueness, ambiguity, and undue burden; and

        c.    All rights to object on any ground to the use of responses herein or material produced pursuant to Defendants' discovery requests in any proceeding.

## RESERVATION OF RIGHTS

ERC's objections and responses are based on information now known to ERC. ERC

reserves the right to amend, modify or supplement its objections and responses if it learns of new

information. The fact that, in response to some of Defendants' interrogatories, ERC states that it

will produce any responsive, non-privileged documents does not mean that ERC has determined

that such documents exist. The fact that ERC may produce a document is not a concession that

the document or its contents are true, accurate, or authentic or that the document is relevant or

admissible in this case.

## OBJECTIONS TO DEFINITIONS

1.     The ERC objects to defining the terms "YOU" and "YOUR" as "the PLAINTIFF,

its agents, attorneys, representatives and all other persons or entities working on its behalf either

directly or indirectly" since this could encompass persons working on behalf of the ERC without

its knowledge or consent.

2.     With respect to the terms "IDENTIFY" or the "IDENTITY, the ERC objects to

the request to provide the social security number of persons identified because it calls for private

information for which Post has no need.

## RESPONSES TO INTERROGATORIES

1.     Identify any person who you claim has a disability who has ever been in
communication with the ERC or complained to the ERC with regard to the alleged
discrimination by Post related to fair housing and accessibility matters and state the reason each
person is not a named Plaintiff in this action.

Answer: The ERC objects to the portion of the interrogatory that calls for the reason that

a person is not a named plaintiff as that information is privileged since it is a legal judgment

3

made by the ERC's attorneys.  Without waiver of this objection, no such person is known to the

ERC.

2.        Identify any person whom you claim has a disability and is alleged to have
resided in any of the Subject Properties that you have alleged or will allege has been impacted by
the alleged actions of Post related to fair housing and accessibility matters and state the reason
each person is not a named Plaintiff in this action.

Answer:  The ERC objects to the portion of the interrogatory that calls for the reason that

a person is not a named plaintiff as that information is privileged since it is a legal judgment

made by the ERC's attorneys.  Without waiver of this objection, no such person is known to the

ERC.

3.        Identify any person who has served as "tester" or otherwise performed any
investigative or other services at the direction of the ERC related to investigating alleged
discrimination by Post or any other developer related to fair housing and accessibility matters
since November 21, 2002 and describe the properties visited, the date of the visit or visits, the
reports created from the visit or visits, and the person's qualifications for testing and
investigative work.

Answer:  The ERC objects to this interrogatory because it seeks information that is

irrelevant, overbroad, and unduly burdensome to produce.  As Post is aware, the ERC has

investigated discrimination by many developers since November 21, 2002.  Investigations of

developers other than Post are not relevant to the claims and defenses in this action.  The ERC

will provide this information with respect to properties belonging to Post by producing the

testing files on Post's properties. Those individuals conducting testing for the ERC with respect

to Post's properties include: Rebecca Crootoff, Ezinwanne Hawkins, Douglas Bernstein, Shauna

Eisenberg and Susan Caplow.  Their qualifications for testing and investigative work vary from

person-to-person, but include training by third-party expert, internal ERC trainings, and on-the-

job experience.  By way of example, Rebecca Crootof, who conducted all measurements with

respect to the testing of Post properties has attended a 1 day Fair Housing First seminar focused

on accessibility testing, a 2 day in-house professional development seminar conducted by Fair

Housing First, a 3 day ADA training conducted by Eastlake, Derry & Assoc., focusing on

accessibility testing, measurement, and methodology, a 5 day Fair Housing School conducted by

the National Fair Housing Alliance, and has been provided extensive in-house training by other

members of the ERC staff.

     4.     State whether you are aware of any person who has applied to reside, inquired
as to or visited any Post property that has alleged or will allege discrimination by Post and
identify that person and the dates of any such communications with the ERC, discuss the nature
of the communication, state the underlying allegation of discrimination for each person, state the
reason each person is not a named plaintiff in this action, and identify and describe all relevant
documents related to all such communications described above.

     Answer:  The ERC objects to the portion of the interrogatory that calls for reason that a

person is not a named plaintiff as that information is privileged since it is a legal judgment made

by the ERC's attorneys.  Without waiver of this objection, the ERC states that no such person is

known to the ERC.

     5.     Identify each person whom you contend or reasonably believe has information
or knowledge of facts or information concerning the allegations in the Complaint and provide for
each person identified a summary of the facts or information in his or her possession relating to
the allegations.

     Answer:  Individuals employed or affiliated with The Equal Rights Center, 11 Dupont

Circle, NW, Suite 400, Washington, DC 20036:

1.  **Rebecca Crootof** - National Project Coordinator; **Ezinwanne Hawkins** – Fair

    Housing Program Manager.  These individuals may have information on any of the

    following subjects:  a description of the ERC testing procedures used during the

    testing of the Subject Properties for violations of the FHA and ADA; and a

    description of the results of that testing.  *See* Testing files for further details.  Ms.

    Crootof also has knowledge of the ERC floor plan review procedures used during the

investigation of the subject properties for violations of the FHA and ADA; and the results of that review.

2. **Rabbi Dr. Bruce E. Kahn** - Executive Director. Rabbi Kahn may have information on any of the following subjects: Overall description of the mission and operations of the ERC; a description of ERC's investigation and testing related to this action; and ERC's damages suffered from its frustration of mission and diversion of resources.

3. **Arlene Corbin-Lewis** – Communications and Outreach Manager. Ms. Corbin-Lewis may have information on any of the following subjects: ERC's education and outreach efforts; and ERC's damages suffered from its frustration of mission and diversion of resources.

4. **Douglas Bernstein, Shauna Eisenberg and Susan Caplow**—Testers. These testers may have information on any of the following subjects: a description of the ERC testing procedures used during the testing of the subject properties for violations of the FHA and ADA; and the results of that testing.

5. **Michael Weinberger.** Mr. Weinberger may have information on any of the following subjects: the ERC floor plan review procedures used during the investigation of the subject properties for violations of the FHA and ADA; and the results of that review.

Individuals not employed by the ERC:

1. **Peter Stratton, Dence' Hayes and Mark Jackson** of Steven Winter Associates, Inc., 50 Washington Street, Norwalk, CT 06854, (203)857-0200. These individuals have been retained by the ERC as experts and may have information on the following

subjects:  explanations of FHA and ADA accessibility requirements and compliance

therewith; FHA and ADA violations found at Defendants' properties.

6.    State all facts and identify all documents that you claim support the allegations set forth in the Complaint.

Answer:  Discovery is continuing and the ERC will supplement this answer after

additional discovery.  However, to date this is known:  The ERC's testing prior to the filing of its

lawsuit against Post revealed that Post has consistently violated the rights of persons with

disabilities from the time that the FHAA and ADA became effective until today.  *See* Testing

files to be produced by the ERC pursuant to the ERC's Responses to Defendants' First

Document Requests.  Experts from Steven Winter Associates have tested certain properties and

found additional violations which will be detailed in their expert report(s) when completed.

These violations include but are not limited to:

**Carlyle (apartments in Alexandria, VA)**

Units

- Compliant maneuvering clearance not provided on the exterior side of several of the unit entry doors.
- Non-compliant level changes exist at unit entry doors and patio doors.
- Countertop s, located above the water closets, which obstruct the later installation of grab bars.
- Patio doorway openings are less than 32 inches wide, nominal.
- Level changes more than ¼ inch without compliant bevel exist at bathroom doorways.
- Turning circles are obstructed in some U-shaped kitchens, and less than 40 inches clear is provided between opposing elements in galley kitchens

**Pentagon Row (Arlington, VA)**

Units

- Compliant maneuvering clearance is not provided on the exterior side of several of the unit entry doors.
- Non-compliant level changes exist at unit entry doors and patio doors.
- Thermostats and switches are mounted too high.
- Clear floor space is not centered on some kitchen double-bowl sinks.

- Turning circles are obstructed in some U-shaped kitchens.
- Inaccessible outlets and switches are provided over countertops in unit kitchens and baths.
- Level changes more than ¼ inch without compliant bevel exist at bedroom and bathroom doorways.
- Patio doorway openings are less than 32 inches wide, nominal.
- Clear floor space is not provided at showers and some water closets.

Common Areas

- Maneuvering clearance is not provided at common area doors.
- Non-compliant level changes exist at common area doors.
- Opening pressure is too high and closing speed is too fast for common area doors.
- An accessible route is not provided to the sundeck.
- Trash and storage rooms are not accessible.
- Showers in common area bathrooms are not accessible.
- Knee space beneath lavatories and sinks in the common area kitchen, and the baths and restrooms is not compliant.
- Slopes of designated accessible parking spaces are more than 2 percent.
- Routes from designated accessible parking spaces to elevator lobby entrances are not accessible.
- Bike storage is not accessible.

**Oak (Atlanta, GA)**

Units

- Thermostats and switches are mounted too high.
- Non-compliant level changes exist at unit entry doors and patio doors.
- Countertop s, located above the water closets, obstruct the later installation of grab bars.
- Clear floor space is not provided at water closets located in alcoves.
- Entry door hardware is not accessible; i.e. doorknobs.

Common Areas

- Accessible routes are not provided between site access points and buildings and between buildings and common areas.
- Accessible routes are not provided between parking and common areas.
- Accessible routes are not provided between parking and unit entrances.
- Buildings contain more than one ground floor and accessible routes are not provided to both ground floors.
- Curb ramps are not accessible.
- Wall mounted duplex receptacles are mounted too low.
- An accessible garage is not provided where garage parking is provided.

**Briarcliff (Atlanta, GA)**

Units

- Non-compliant level changes exist at unit entry doors and patio doors.
- Thermostats are mounted too high.
- Doorway clearances are less than 32 inches wide, nominal, in units on both ground floors.
- Countertop s, located above the water closets, obstruct the later installation of grab bars.
- Entry door hardware is not accessible; i.e. doorknobs.
- Clear floor space is not provided at lavatories and water closets located in alcoves.

Common Areas

- Buildings contain more than one ground floor and accessible routes are not provided to both ground floors.
- Accessible routes are not provided between site access points and buildings and between buildings and common areas.
- Accessible routes are not provided between parking and common areas; i.e., have level changes, non-compliant running slopes and/or non-compliant cross slopes.
- Accessible routes are not provided between parking and unit entrances; i.e., have level changes, non-compliant running slopes and/or non-compliant cross slopes.
- Designated accessible parking spaces and access aisles have slopes greater than 2 percent.
- Vehicle stops are not provided where parking abuts the accessible route.
- Curb ramps are not accessible.
- Hardware on common areas gates is not accessible: latches are mounted too high on common area gates; and gate hardware requires two hands operation.
- Common area light switches require twisting and grasping.

Post disregarded its obligations to design and build properties in accord with the FHA, as amended, and ADA; it did no significant work to bring its properties into compliance until after this lawsuit was commenced. Even then, Post's remedial steps were largely limited to public and common areas where violations visible to the general public were addressed.

       7.      Identify and provide a list of current and past members, identifying those whom you claim are persons with disabilities and those who live within 15 miles of each of the Subject Properties, as well as the position, title, dates of employment, or if uncompensated, dates of participation, and job responsibilities of all persons who have worked in any capacity for the ERC, including past and current members of the board of directors or trustees, officers, and employees, as well as volunteers, at any time from November 21, 2002 to the present.

Answer: This interrogatory is, in fact, two entirely different interrogatories. Moreover, the ERC objects to this interrogatory because it seeks information that is irrelevant, overbroad, and unduly burdensome to produce. These objections notwithstanding, subject to an appropriate protective order entered by the Court, the ERC will provide a listing of members. As to officers and directors of the ERC, *see* ERC listings of officers and members of its board of directors to be produced pursuant to the ERC's Responses to Defendants' First Document Requests. As to those individuals who have participated in the ERC's investigation of Post, *see* Answer to Interrogatory No. 5.

8.    Provide a complete description of the organization and management structures of the ERC , including identifying all office locations for the ERC, each of the for-profit or not-for-profit entities and all government agencies, divisions, departments, and employees that are affiliated, formally or informally with the ERC. Your answer should address the nature of the relationship, include the approximate dates each such entity (or entities) was formed or incorporated and identify all persons who have served as officers, directors or trustees of any such entity, any time from November 21, 2002 to the present.

Answer: The ERC is a not-for-profit membership organization formed under the laws of the District of Columbia. The ERC was formed in 1999, and became a membership organization in 2006. At various times, the ERC has maintained offices in the District of Columbia, and the States of Maryland and Virginia. The ERC also retains employees in various other states, but does not maintain an office located in those states. The ERC is managed on a day-to-day basis by its Executive Director, Rabbi Bruce E. Kahn, in consultation with the ERC's Board of Directors. The ERC is not "affiliated," as the ERC understands that term, with any other organizations or government agencies. As to the officers and directors of the ERC, *see* Answer to Interrogatory No. 7.

9.    Identify each and every person whom you may call as a witness at trial and provide a brief summary of the anticipated testimony of each such witness. If the witness is an expert consultation or opinion witness, please identify:

1. His/her name, address, telephone number, occupation, and current employment;

2. The area of expertise claimed by such expert;

3. His/her education background, academic degrees, employment history, employment experience, professional licenses and any other matters which you contend qualify him/her as an expert;

4. The substance of all facts and opinions to which he/she could testify if called as a witness; and

5. A summary of the grounds for each such opinion.

Answer:  This interrogatory calls for attorney work-product in that witness selection will be made by trial counsel in consultation with the client.  It is also premature in that no determination has been made as to who will testify at trial.  Any such information required by the Federal Rules of Civil Procedure, this Court's Local Rules or this Court's Orders will be provided pursuant to the scheduling orders entered by the Court.

10.   State with precision: (1) how and when you first became aware of each of the allegations of discrimination against Post at each Subject Property, (2) the nature of each and every action that Post took that you alleged violated the Fair Housing Act (FHA) and Americans with Disabilities Act (ADA), (3) the identity of all persons or entities complaining to the ERC of discrimination by Post regardless of whether they are named Plaintiffs to this action, and (4) the identity of all persons or entities who have been in communication with the ERC concerning Post's alleged discriminatory actions who declined to become parties to this action or otherwise did not allege discrimination by Post.

Answer:

1. The ERC first became aware of Post's noncompliance with the FHA and ADA in connection with a general study of accessibility in new multi-family housing in the Washington Metropolitan Area that it conducted 2004.  It thereafter undertook systemic testing of Post's properties in 2006 on a nationwide scale which

11

uncovered the violations of the FHA and ADA that are disclosed in the ERC's

testing files.

2. *See* testing files to be produced pursuant to the ERC's Responses to Defendants'

First Document Requests.

3. None.

4. None.

11.      Describe any investigation, testing or other analysis that the ERC has undertaken related to or in support of alleged discrimination in the provision of accessible multifamily dwelling units since November 21, 2002 and identify and describe all relevant documents related to such investigation, testing or other analysis.

Answer: The ERC objects to this interrogatory because it seeks information that is

irrelevant, overbroad, and unduly burdensome to produce.  As Post is aware, the ERC has

investigated discrimination by many developers since November 21, 2002.  Investigations of

developers other than Post are not relevant to the claims and defenses in this action.  As to Post,

*see* Answers to Interrogatories Nos. 3, 6, and documents produced in response to those

Interrogatories.


12.      State the dollar value of the resources utilized by the ERC to investigate Post's activities (including the amount of time, resources and money devoted to identification of victims of alleged discriminatory conduct by Post) specifically and separately listing and itemizing the resources allegedly expended for investigation of alleged discriminatory practices of Post, outreach to other potential plaintiffs, and prosecution of this action, describing the nature of these activities, and identify all documents discussing or supporting the resources allegedly utilized.

Answer:  The ERC's damage analysis is preliminary and premised on information

currently available to it.  ERC states that it has been damaged by frustration of its mission, and

by having to divert resources that could have been used to provide counseling, education, and

referral services to instead identify and counteract Defendants' discriminatory policies and

practices through testing, investigation and litigation. Moreover, ERC further states that it has

not yet calculated the amount of additional, prospective damages relating to future efforts that

will be required as a result of Defendants' violations of the FHA and the ADA. In its calculation

of diversion of resources, ERC will compare tasks scheduled for the relevant time period with

the actual activities undertaken and completed during that said same time period. Additionally,

ERC will compare projected allocations of funds for the relevant time period with actual

allocations and expenditures during that said same time period. ERC will supplement this

Interrogatory when such calculations have been completed.

13.    State the dollar value of resources utilized to date as well as the estimated amount of resources to be used in the future by the ERC in inspecting Post's properties through the ERC's discovery process, specifically and separately listing and itemizing the resources allegedly expended on experts, engineers, consultants, and the prosecution of this action at each property.

Answer: As to resources that have been utilized to date by the ERC, *see* ERC time

records and expense records to be produced pursuant to the ERC's Responses to Defendants'

First Document Requests. As to the future amount of resources, the ERC objects to the extent

that the allocation of such resources is protected by the attorney work-product privilege. This

objection notwithstanding, to the extent that resources are actually incurred and become a part of

the ERC's damages calculations, the ERC will supplement this Answer.

14.    Identify all federal, state or local agencies (including the identity of the person representing the agency) who, since November 21, 2002, have been in communication with the ERC with regard to the alleged discrimination by Post, the dates of the communications, and the nature of the discussions, the resolution of the matter, and describe all relevant documents from such communications.

Answer: None.

15.    Identify all associations or advocacy groups who, since November 21, 2002, have been in communication with the ERC with regard to alleged discrimination by Post, the

13

dates of the communications, the nature of the discussion, and whether any funding, compensation or expense reimbursements were exchanged between the organizations.

Answer:  To the extent that counsel for the ERC is included within the term

"associations" the ERC objects to this interrogatory as seeking to invade the attorney client

privilege.  This objection notwithstanding, the ERC is not aware of any other such

communications.

16.    Beginning as of November 21, 2002, state the net worth (or balance of accounts and reserves) as of the last day of the ERC's fiscal year, income statement and annual operating budget of the ERC, listing all assets, liabilities, income and expenses, including all compensation paid to any officer, director or trustee exceeding $5,000 in any calendar year, and identify all federal, state or local tax returns filed and any application for funding of ERC activities or reports or documents filed with, or funding determination received from, the United States Department of Housing and Urban Development ("HUD") or any other federal, state, or local government agency or official relating to fair housing or disabilities issues.

Answer:  The ERC objects to this interrogatory in that it seeks information not relevant to

the claims and defenses in this lawsuit, it is overbroad and unduly burdensome, and it seeks to

invade the privacy of the ERC's individual donors.  These objections notwithstanding, the ERC

will provide financial documents, upon the entry of an appropriate protective order.

17.    Identify each and every source of revenue the ERC has received (and the dollar amount) since November 21, 2002, from federal, state and local government grants (including but not limited to HUD), and by private entities, foundations or persons including grants and donations in excess of $100.00 in cash or "in kind" donations or services and identify all documents to support such statements.

Answer:  The ERC objects to this interrogatory in that it seeks information not relevant to

the claims and defenses in this lawsuit, it is overbroad and unduly burdensome, and it seeks to

invade the privacy of the ERC's individual donors.  These objections notwithstanding, the ERC

will provide financial documents disclosing by category the various sources of its funding, upon

the entry of an appropriate protective order.

18.    State the dollar value of resources allegedly diverted by the ERC, whether or not set forth in the Complaint, you claim were expended to identify and counteract the alleged

14

discriminatory practices of Post, including the percentage of the ERC's annual budget devoted to the alleged diversion in each year in which the alleged diversion occurred as well as future estimates of costs related to investigating the individual Subject Properties, describe how and for what particular purpose each expenditure was made, and identify all documents (including receipts and/or invoices) referring to or discussing such statements.

Answer: *See* Answers to Interrogatory No. 12 and 13. The percentage of the ERC's

budget devoted to Post's discrimination can be as easily calculated by Post as by the ERC.

19.    State the dollar value of resources you claim were utilized to respond to community requests for assistance in investigating alleged discriminatory conduct by Post (including the dollar value of the resources utilized by the ERC to educate individuals alleged affected by Post), describe the nature of these activities, and identify all documents to support such statements.

Answer: *See* Answer to Interrogatory No. 12.

20.    Identify each seminar or presentation conducted by the ERC in each town or city where a Subject Property is located and identify each attendee who resided in a city or town where a Subject Property is located.

Answer: ERC objects to this interrogatory as overbroad, unduly burdensome, and seeking

information that is not relevant nor reasonably calculated to lead to discoverable evidence.

Subject to and without waiving the objection, ERC responds as follows: Attachment A to these

Responses identifies the various seminars and presentations during the time period 2003 to the

present, for which the ERC maintains records. The ERC does not routinely maintain records of

attendees at its seminars and presentations.

21.    Identify the organizations and persons, from the community or elsewhere, not heretofore identified, requesting assistance from the ERC in investigating alleged discriminatory conduct by Post, describe the services provided to assist persons with disabilities, indicate whether there are any persons or entities outside the greater Washington D.C. area (i.e., Washington DC, Northern Virginia, and Maryland) that are provided services by the ERC, and identify all facts and documents related to such requests and communications.

Answer: The ERC objects in that this is three interrogatories. The answer to the first is

that no organization or person that requested assistance from the ERC in investigating alleged

discriminatory conduct by Post. Second, the various services provided by the ERC to persons

15

with disabilities are described in the brochures to be produced by the ERC pursuant to the ERC's

Responses to Defendants' First Document Requests.  Finally there are persons and entities

outside the Washington Metropolitan Area that are provided services by the ERC.  These

services include counseling, advocacy and enforcement of civil rights across the United States.

The request to identify "all" facts and documents related to such requests and communications

calls for information and documents not relevant to the claims and defenses in this lawsuit, is

overbroad and unduly burdensome.  Moreover, this interrogatory would require the disclosure of

the identities of individuals whose claims are unrelated to this matter in any way, and the

disclosure of on-going ERC investigations.  These objections notwithstanding, *see* documents

produced pursuant to Responses to Interrogatories 16 and 20 for descriptions of the ERC's

program activity.

22.     Provide a description of all complaints, lawsuit, actions or administrative
proceedings filed or instituted by the ERC (or in which the ERC participated) since January 1,
2002 related to housing discrimination against persons with disabilities.

Answer:  *See* Attachment B.


Dated: August 9, 2007                          Respectfully submitted,

                                               *Sheila J. Carpenter*
                                               Sheila J. Carpenter
                                               DC Bar #935742
                                               sjc@jordenusa.com
                                               Jorden Burt LLP
                                               1025 Thomas Jefferson St. N.W.
                                               Suite 400 East
                                               Washington, D.C.  20007
                                               Tel:  (202) 965-8165
                                               Fax: (202) 965-8104

                                               Donald L. Kahl
                                               DC Bar #489472

16

Don_Kahl@washlaw.org
Isabelle M. Thabault
DC Bar #318931
Isabelle_Thabault@washlaw.org
Washington Lawyers'
Committee for Civil Rights and
Urban Affairs
11 Dupont Circle, NW
Suite 400
Washington, D.C.  20036
Tel:  (202) 319-1000
Fax:  (202) 319-1010

Attorneys for Plaintiff
Equal Rights Center

Attachment A

| Name of Project | Date |
|---|---|
| Fair Housing Symposium | Apr-03 |
| Fair Housing Symposium | Apr-04 |
| Fair Housing Symposium | Apr-05 |
| Latino Outreach at CentroNia | Sep-05 |
| Latino Outreach at Neighbors Consejo | Sep-05 |
| Civil Rights School/ Fair Housing Event | Sep-05 |
| Outreach in Ethiopian Neighborhoods | Sep-05 |
| Tester Recruitment Neighbors Consejo | Oct-05 |
| Newcomer Services (Seminars) | Oct-05 |
| Non-profit Happy Hour | Oct-05 |
| Latino Organization Outreach | Oct-05 |
| Latino Outreach CentroNia | Oct-05 |
| Women and the Right to Housing Seminar | Oct-05 |
| Newcomer Services (Seminars) | Nov-05 |
| Disabilities Expo | Nov-05 |
| Latino and Gay Community Outreach | Jan-06 |
| Tester Training | Jan-06 |
| Lecture at Bread for the City | Jan-06 |
| Mail ERC Brocures | Jan-06 |
| Website Update and Translation | Jan-06 |
| Bus/Metro Ads | Jan-06 |
| HIV/AIDS Training | Jan-06 |
| Disability Training | Jan-06 |
| Disability Rights Membership Party | Jan-06 |
| Program between ERC and Carecen | Jan-06 |
| Discussion at National Law Center on Homelessness and Poverty | Jan-06 |
| Lecture at Bread for the City | Jan-06 |
| DC Schools Disabilities Fair | Feb-06 |
| Disabilities Rights | Feb-06 |
| Membership | Feb-06 |
| Newsletter Published | Feb-06 |
| Website Update and Translation | Feb-06 |
| Media Relations | Feb-06 |
| Tester Training | Feb-06 |
| Interfaith Conference Breakfast | Feb-06 |
| Lecture at Newcomer Services | Feb-06 |
| Interfaith Conference Mailing | Feb-06 |
| Know Your Rights Presentation | Feb-06 |
| Non-profit Happy Hour | Feb-06 |
| Inter-Faith Conference Breakfast | Feb-06 |
| DC Schools Career Fair | Feb-06 |
| WMCCAI Conference | Feb-06 |
| Diamond Taxi Cab Training | Mar-06 |
| Disability Rights | Mar-06 |
| Community Training | Mar-06 |
| Membership | Mar-06 |
| Website Update and Translation | Mar-06 |
| Media Relations | Mar-06 |
| Advocacy Tips Training | Mar-06 |
| Street Sense | Mar-06 |
| Newcomer Services (Seminars) | Mar-06 |

Attachment A

| | |
|---|---|
| DC Youth Law Fair | Mar-06 |
| American University Workers Rights Presentation | Mar-06 |
| Know Your Rights Presentation Carecen | Mar-06 |
| DC Learns Meeting | Mar-06 |
| Lecture at Transnational Housing Meeting | Apr-06 |
| Membership | Apr-06 |
| Fair Housing Symposium | Apr-06 |
| Media Relations | Apr-06 |
| Website Update and Translation | Apr-06 |
| Presentation at American University | Apr-06 |
| Falls Church Symposium | Apr-06 |
| Prince George's County Homeless Service Partnership Meeting | Apr-06 |
| American University Workers Rights Presentation | Apr-06 |
| Internship and Research Outreach | Apr-06 |
| CBO Immigrants Rights Now! | Apr-06 |
| Employment Presentation | May-06 |
| Website Update and Translation | May-06 |
| Compliance Brochure | May-06 |
| Education Design Discussion at American University | May-06 |
| ERC Lunch and Learn | May-06 |
| Know Your Rights Centronia | May-06 |
| Life After Americorp Reception | May-06 |
| Presentation at Latino Transitional Housing | Jun-06 |
| Independence Now general Meeting | Jun-06 |
| Disability Rights Television | Jun-06 |
| Membership | Jun-06 |
| Public Service Announcement | Jun-06 |
| Website Update and Translation | Jun-06 |
| Display at Life after Americorps | Jun-06 |
| Newsletter Published | Jun-06 |
| Falls Church Training | Jun-06 |
| Getting A Job is A Job | Jun-06 |
| ADA EEOC Charge Tips | Jun-06 |
| Pregnancy Discrimination | Jun-06 |
| Retaliation in the Workplace | Jun-06 |
| Disability Hiring Discrimination | Jun-06 |
| The ARC of DC Outreach | Jun-06 |
| Know Your Rights Presentation | Jun-06 |
| Civil Rights Alliance Meeting | Jun-06 |
| NFHA Conference | Jun-06 |
| Mayoral Candidates Forum | Jun-06 |
| Taking the Dis from Disability Lecture | Jun-06 |
| Fair Housing Presentation | Jul-06 |
| Disabilities Rights Presentation | Jul-06 |
| Fair Employment Presentation | Jul-06 |
| Website Update and Translation | Jul-06 |
| Media Relations | Jul-06 |
| Getting A Job is A Job | Jul-06 |
| Immigrant Workers Rights | Jul-06 |
| Pregnancy Discrimination | Jul-06 |
| Retaliation in the Workplace | Jul-06 |
| SAALT | Jul-06 |

Attachment A

| | |
|---|---|
| Fair Housing Presentation | Aug-06 |
| Disabilities Rights Presentation | Aug-06 |
| Fair Employment Presentation | Aug-06 |
| E-Newsletter | Aug-06 |
| Website Update and Translation | Aug-06 |
| Media Relations | Aug-06 |
| Public Accomodations Campaign | Aug-06 |
| Lecturer | Aug-06 |
| College Recruiting | Aug-06 |
| Immigrant Workers Rights | Aug-06 |
| Pregnancy Discrimination | Aug-06 |
| Retaliation in the Workplace | Aug-06 |
| Outreach to Muslim and Arab Leaders | Aug-06 |
| Getting A Job is A Job | Aug-06 |
| Community Service Partnership Fair | Aug-06 |
| Fair Housing Presentation | Sep-06 |
| Disabilities Rights Presentation | Sep-06 |
| Fair Employment Presentation | Sep-06 |
| College Recruiting | Sep-06 |
| Membership | Sep-06 |
| Website Update and Translation | Sep-06 |
| Media Relations | Sep-06 |
| Public Accomodation Campaign | Sep-06 |
| Immigrant Workers Rights | Sep-06 |
| Pregnancy Discrimination | Sep-06 |
| Retaliation in the Workplace | Sep-06 |
| Fair Housing Presentation | Sep-06 |
| ERC Presentation | Sep-06 |
| Domestic Violence Hearing | Sep-06 |
| National Forum on the Human Right to Housing | Sep-06 |
| Getting A Job is A Job | Sep-06 |
| Know Your Rights Presentation at Carecen | Sep-06 |
| Disabilities Rights Presentation | Oct-06 |
| Fair Employment Presentation | Oct-06 |
| Membership | Oct-06 |
| Website Launch | Oct-06 |
| Media Relations | Oct-06 |
| Tester Recruiting | Oct-06 |
| Immigrant Worker Rights | Oct-06 |
| Getting A Job is A Job | Oct-06 |
| Sexual Harrassment Module Development | Oct-06 |
| DC Fair Housing and Predatory Lending Forum | Oct-06 |
| Celebration of National Disability Employee Awareness Month | Oct-06 |
| Internship Fair | Oct-06 |
| Disability/Careers Conference | Oct-06 |
| PRIDE Career Fair | Oct-06 |
| Fair Housing Presentation | Nov-06 |
| Fair Employment Presentation | Nov-06 |
| Disabilities Rights Presentation | Nov-06 |
| Lecturer | Nov-06 |
| Tester Recruiting | Nov-06 |
| Immigrant Workers Rights | Nov-06 |

## Attachment A

| | |
|---|---|
| Getting A Job is A Job | Nov-06 |
| Sexual Harrassment Module Development | Nov-06 |
| Media Relations | Nov-06 |
| Fair Housing Presentation | Dec-06 |
| Fair Employment Presentation | Dec-06 |
| Disability Rights Presentation | Dec-06 |
| Media Relations | Dec-06 |
| Tester Recruiting | Dec-06 |
| Getting A Job is A Job | Dec-06 |
| Sexual Harrassment Marketing and Presentation | Dec-06 |
| Accessibilty Training (DC Housing Finance Agency) | Dec-06 |
| DC Fair Housing and Predatory Lending Forum | Dec-06 |
| ERC Presentation at FLY | Dec-06 |
| Tester Training | Jul-07 |
| Interfaith Conference Outreach | 6-Jan |
| Fair Housing Symposium | 6-Apr |
| Civil Rights Alliance Outreach | Jun-07 |
| Civil Rights Alliance Outreach | Jul-07 |

Attachment B
Equal Rights Center
Administrative and Judicial Complaints

| Plaintiff | Defendant | Forum | Case Number |
|---|---|---|---|
| ERC et al | Archstone Smith et al. | US District Ct, MD | AMD 04cv3975 |
| ERC | Avalon Bay | DCOHR & HUD | 06-033-H (DCOHR) 03-06-0036-8 (HUD) |
| ERC | AvalonBay Communities, Inc. | US District Ct, MD | 8:05-cv-02626-AW |
| ERC | Baker Place at the Manor | MDCHR | 0206-1431 |
| ERC | Ballston Place Archstone-Smith Communities Trust | HUD | 03-04-0612-8 |
| ERC | Bozzuto & Assoc., Inc. | HUD & DCOHR | 03-05-0756-8 (HUD) 06-009-H (DCOHR) |
| ERC | Bozzuto & Assoc., Inc. | US District Ct, MD | 8:05-cv-02558 |
| ERC | CBRE & Trammell Crow Company | US District Court, DC | 1:07cv01008 |
| ERC | Courthouse Place Archstone-Smith Communities Trust | HUD | 03-04-0615-8 |
| ERC | Dulles Green Apartments, Toll Brothers Realty Trust | Real Estate Board & HUD | REB 2003-02827 (REB) 03-03-0174-8 (HUD) |
| ERC | Equity Residential | US District Ct, MD | 1:06-cv-01060 |
| ERC | Esplanade at Park Center Archstone-Smith Trust | Real Estate Board | REB 2003-02829 |
| ERC | James E. Jones v. Humphrey Management et al | Montgomery Co. Human Rights Commission & HUD | 0509-0641 (MCHR) 03-05-0721-8 (HUD) |
| ERC | Jones v. Windsor Crossing | MDCHR | 0206-1426 |
| ERC | Kettler | DC District Court, DC | 1:07cv01017 |
| ERC | Kingscrest, Sentinel Real Estate | MDCHR | 0206-1432 |
| ERC | Park Station Old Towne Dolben | MDCHR | 0206-1430 |
| ERC | Post Properties | US District Court, DC | 1:06-cv-01991 |
| ERC | Robert and Catherine Sherwood v. The Towers Condominium | DCOHR | 07-151-H |
| ERC | Silverwood Farm Apartments | MDCHR | 0212-2027 |
| ERC | Steward Towers Limited Partnership | MDCHR | 0209-1697 |
| ERC | Stoneridge Archstone-Smith Communities Trust | HUD | 03-04-0613-8 |
| ERC | Summit Largo, Summit Largo Properties | MDCHR | 0206-1429 |

Attachment B
Equal Rights Center
Administrative and Judicial Complaints

| ERC | The Apartments of St. Charles- Village Lake | Maryland Commission on Human Relations (MDCHR) | 0212-2026 |
|-----|---------------------------------------------|-----------------------------------------------|-----------|
| ERC | The Condo. Residences at Fallsgrove | MDCHR | 0212-2023 |
| ERC | Trammell Crow Residential | US District Court, DC | 1:07cv01231 |
| ERC | Warwick House Apartments, LCOR Weike Design Group | U.S. Department of Housing and Urban Development & Real Esate Board | REB 2003-02828 (REB) 03-02-0172-8 (HUD) |
| ERC | Windsor Villa; Windsor/GID | MDCHR | 0206-1426 |
| ERC | Woodland Park Apts., Archstone-Smith Communities Trust | HUD | 03-04-0611-8 |
| | | | |

## VERIFICATION

WASHINGTON,                    )
                               )    ss:
DISTRICT OF COLUMBIA           )

Rabbi Bruce E. Kahn, having first been duly sworn under oath, says the foregoing

Plaintiff the Equal Rights Center's Responses To Defendants' First Set Of Interrogatories are

true and accurate to the best of his knowledge and belief.

*Rabbi Bruce E. Kahn*

Rabbi Bruce E. Kahn
Executive Director
Equal Rights Center

Subscribed and sworn to before me this __8 th__ day of __August__ , 2007

*Thelma D. Goodwin*
Notary Public

My commission expires: __10/14/2011__

Thelma D. Goodwin
Notary Public, District of Columbia
My Commission Expires 10/14/2011

18

**CERTIFICATE OF MAILING**

I HEREBY CERTIFY that on this 9th of August 2007, a copy of the foregoing Plaintiff the Equal Rights Center's Responses to Defendants' First Set of Interrogatories was mailed via certified class mail, postage prepaid to: Christopher B. Hanback, Esq., Holland & Knight, 2099 Pennsylvania Ave., NW, Suite 100, Washington, D.C. 20006, Attorneys for Defendants.

*Donald L. Kahl*
Donald L. Kahl

# Exhibit B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **EQUAL RIGHTS CENTER**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **Case. No. 1:06CV01991** |
| | ) | Judge Richard J. Leon |
| **POST PROPERTIES, INC.**, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S RESPONSES TO
## DEFENDANT'S FIRST DOCUMENT REQUESTS

Plaintiff the Equal Rights Center (the "ERC"), by its attorneys, responds to Defendants' First Request for Production of Documents, as follows:

### PRELIMINARY STATEMENT

The fact that ERC states that it will produce or has produced any non-objectionable and non-privileged documents responsive to a particular request does not mean that it has determined that such documents exist. To the extent such documents do exist, ERC will produce them to Defendants.

ERC will respond to each and every request for production subject to the general objections set forth below. These objections form a part of the response to each and every request and are set forth here to avoid the duplication and repetition of restating them for each response. Various objections may be specifically referred to in a response for purposes of clarity. However, the failure to incorporate specifically a general objection should not be construed as a waiver of any such objection.

# GENERAL OBJECTIONS

1.      ERC objects to Defendants' requests to the extent they seek information that is subject to the attorney-client privilege, the attorney work product privilege, the privilege accorded to settlement materials/negotiations, the First Amendment privilege, or any other applicable privilege or protection.

2.      ERC objects to Defendants' requests to the extent they seek information not relevant to the issues in this lawsuit and not reasonably calculated to lead to the discovery of admissible evidence.  To the extent that ERC provides documents in response to these requests, it does not concede that any information requested is relevant to this action.  ERC expressly reserves the right to object to further discovery into the subject matter of any of these requests.

3.      ERC objects to each request to the extent it is vague, ambiguous, overly broad, unduly burdensome, oppressive, expensive or premature and thus not susceptible to response at this time.  ERC further objects to the extent that the requests use terms that are not well enough defined to permit a meaningful response.

4.      ERC objects to each request to the extent it seeks information concerning claims other than those at issue in this lawsuit.  Such inquiries are overly broad, unduly burdensome, oppressive, and seek information beyond the proper scope of discovery.

5.      ERC objects to each request to the extent it seeks information that is confidential or analogous to trade secret information which in ERC's view cannot be adequately protected.

6.      In providing these responses, ERC does not in any way waive, but rather intends to preserve:

      a.      All objections as to competence, relevancy, materiality, and admissibility;

      b.      All objections as to vagueness, ambiguity, and undue burden; and

      c.      All rights to object on any ground to the use of responses herein or

material produced pursuant to Defendants' discovery request in any proceeding.

## RESPONSES TO SPECIFIC REQUESTS

      1.      All documents that relate in any way to allegations of discriminatory conduct
engaged in by Post specifically including, but not limited to, those by a person who you allege to
have a disability.

**RESPONSE:** The ERC object to this request to the extent that it seeks privileged attorney-client

or attorney work-product materials.  Subject to and without waiving the objection, ERC will

make available, pursuant to an appropriate protective order entered by the Court, non-privileged

responsive documents.  Defendants are also referred to the two Affidavits of Rebecca Crootoff,

the Affidavits of Peter Stratton and the ERC's Exhibits all previously provided Defendants in

connection with the ERC's Motion for Preliminary Injunction.

      2.      All documents relied upon by the ERC as demonstrating a "pattern and practice in
designing and constructing apartment properties" by Post.

**RESPONSE:** The ERC objects to this request to the extent that it seeks privileged attorney-

client or attorney work-product materials.  Subject to and without waiving the objection, ERC

will make available, pursuant to an appropriate protective order entered by the Court, non-

privileged responsive documents.  Defendants are also referred to the two Affidavits of Rebecca

Crootoff, the Affidavits of Peter Stratton and the ERC's Exhibits all previously provided

Defendants in connection with the ERC's Motion for Preliminary Injunction.

      3.      All documents identifying each current or former officer, director, trustee,
employee, and volunteer, past and present, of the ERC, showing his/her title and dates of
employment since November 21, 2002 and a description of his/her duties.

3

**RESPONSE:** The ERC objects to this request as to the identity of ERC volunteers who did not

participate in any activities related to Post. Subject to and without waiving the objection, ERC

will make available non-privileged responsive documents.

     4.    All documents reflecting or otherwise relating to communication between any person and the ERC relating to Post's alleged discriminatory actions, including, but not limited to, all documents reflecting or relating to any allegation of discriminatory conduct engaged in by Post.

**RESPONSE:** The ERC objects to this request to the extent that it seeks privileged attorney-

client or attorney work-product materials. Subject to and without waiving the objection, the

ERC will make available non-privileged responsive documents.

     5.    All documents related to resources you claim were utilized or expended by the ERC, directly or indirectly, in relation to testing, analysis or investigation of allegations of discriminatory conduct by Post or otherwise related to this action specifying those related to diversion of resources and frustration of mission.

**RESPONSE:** The ERC objects to this request to the extent that it seeks privileged attorney-

client or attorney work-product materials. Subject to and without waiving the objection, ERC

will make available, pursuant to an appropriate protective order entered by the Court, non-

privileged responsive documents. Defendants are also referred to the two Affidavits of Rebecca

Crootoff and the ERC's Exhibits all previously provided Defendants in connection with the

ERC's Motion for Preliminary Injunction.

     6.    All documents related to the ERC's testers/investigators/inspectors of the alleged discriminatory conduct by Post including any documents showing the testers/investigators/inspectors' qualifications, training, and knowledge of the Americans with Disabilities Act ("ADA") and Fair Housing Act's ("FHA") accessibility requirements.

**RESPONSE:** The ERC objects to this request to the extent that it seeks "all" documents.

Subject to and without waiving the objection, ERC will make available, pursuant to an

appropriate protective order entered by the Court, non-privileged responsive documents.

Defendants are also referred to the two Affidavits of Rebecca Crootoff, previously provided to

Defendants.

7.     Documents demonstrating the ERC's net worth as of the last day of the ERC's
fiscal year, the income statement and operating budget of the ERC including assets, liabilities,
balance of accounts and reserves, income and expenses, real estate owned, pay roll, state and
federal tax returns, year-end statements and reports to HUD since November 21, 2002.

**RESPONSE:** Subject to and without waiving its objections, the ERC will make available,

pursuant to an appropriate protective order entered by the Court, non-privileged responsive

documents.

8.     All year-end statements issued since November 21, 2002 that reflect the account
number and balance of any loans or indebtedness owed by the ERC, including, but not limited to,
mortgages, vehicle loans or tax liens.

**RESPONSE:** *See* General Objections.

9.     All correspondence, memoranda, or other documents reflecting communications
to or from any officer, director, trustee, employee, volunteer, member, or agent of the ERC
relating to this action, the FHA, the ADA, state or local fair housing or accessibility
requirements, multifamily dwelling units, or persons with disabilities.

**RESPONSE:** The ERC objects to this request to the extent that it seeks "all" documents, and to

the extent that it seeks documents relating to any person or entity other than Post.  The ERC also

objects to this request to the extent that it seeks privileged attorney-client or attorney work-

product materials.  Subject to and without waiving these objections, the ERC will make

available, pursuant to an appropriate protective order entered by the Court, non-privileged

responsive documents.

10.     All documents reviewed, received, considered, or to be relied upon by any expert
retained or consulted by the ERC in connection with this action.

**RESPONSE:** The ERC objects to this request as premature. The ERC will engage in expert

discovery in accordance with the Federal Rules of Civil Procedure, the Court's rules, and any

scheduling order entered by the Court.

11. All documents reflecting or otherwise relating to any communication between the ERC and any other person or any government agency, that relate to or discuss Post and/or Post's obligations under the FHA and ADA, or any allegations of discrimination against Post.

**RESPONSE:** The ERC will make available, pursuant to an appropriate protective order entered

by the Court, non-privileged responsive documents.

12. All documents referred to, identified in, or that are responsive to any interrogatories propounded to the ERC in Defendants' First Set of Interrogatories, or that you identified, reviewed, consulted, or relied upon in responding to any interrogatory propounded in this action.

**RESPONSE:** Subject to the objections identified in the ERC's Answers to Defendants' First Set

of Interrogatories, the ERC will make available, pursuant to an appropriate protective order

entered by the Court, non-privileged responsive documents.

13. Documents identifying every person that the ERC has contacted concerning allegations against Post or any other developer of multifamily dwelling units.

**RESPONSE:** The ERC objects to this request to the extent that it seeks the identity of "every

person" and to the extent that it seeks information relating to any developer of multifamily

dwelling units other than Post. The ERC also objects to this request to the extent that it seeks

privileged attorney-client or attorney work-product materials. Subject to and without waiving

these objections, the ERC will make available, pursuant to an appropriate protective order

entered by the Court, non-privileged responsive documents.

14. All documents received from or given to the ERC by any person in any way related to the allegation of discrimination against or the actions of Post.

**RESPONSE:** The ERC objects to this request to the extent that it seeks privileged attorney-

client or attorney work-product materials. Subject to and without waiving these objections, the

ERC will make available, pursuant to an appropriate protective order entered by the Court, non-

privileged responsive documents.

     15.    All documents sufficient to identify all persons with disabilities who have ever resided in, inquired about residing in, or visited any of the Subject Properties and who have been in contact with the ERC.

**RESPONSE:** The ERC will make available, pursuant to an appropriate protective order entered

by the Court, non-privileged responsive documents.

     16.    All documents that the ERC sent or distributed to any person in relation to investigation of Post's actions or the allegations of discrimination against Post.

**RESPONSE:** The ERC objects to this request to the extent that it seeks privileged attorney-

client or attorney work-product materials. Subject to and without waiving these objections, the

ERC will make available, pursuant to an appropriate protective order entered by the Court, non-

privileged responsive documents.

     17.    All documents that the ERC sent or distributed to any person in relation to education about and counteraction of Post's actions or the allegations of discrimination against Post.

**RESPONSE:** The ERC will produce non-privileged responsive documents.

     18.    All documents that the ERC sent or distributed to any person outside of the Washington D.C. area (i.e., Washington DC, Northern Virginia, and Maryland) in relation to Post's actions or the allegations of discrimination against Post.

**RESPONSE:** The ERC will produce non-privileged responsive documents.

     19.    All documents supporting your claim for damages in this action.

**RESPONSE:** The ERC objects to this request to the extent that it seeks privileged attorney-client or attorney work-product materials. Subject to and without waiving these objections, the ERC will make available, pursuant to an appropriate protective order entered by the Court, non-privileged responsive documents.

Dated: August 9, 2007                              Respectfully submitted,

_Sheila J. Carpenter_
Sheila J. Carpenter
DC Bar #935742
sjc@jordenusa.com
Jorden Burt LLP
1025 Thomas Jefferson St. N.W.
Suite 400 East
Washington, D.C. 20007
Tel: (202) 965-8165
Fax: (202) 965-8104

Donald L. Kahl
DC Bar #489472
Don_Kahl@washlaw.org
Isabelle M. Thabault
DC Bar #318931
Isabelle_Thabault@washlaw.org
Washington Lawyers'
Committee for Civil Rights and
Urban Affairs
11 Dupont Circle, NW
Suite 400
Washington, D.C. 20036
Tel: (202) 319-1000
Fax: (202) 319-1010

Attorneys for Plaintiff
Equal Rights Center

## CERTIFICATE OF MAILING

I HEREBY CERTIFY that on this 9th of August 2007, a copy of the foregoing Plaintiff's Responses to Defendants' First Document Requests was mailed via certified class mail, postage

prepaid to:  Christopher B. Hanback, Esq., Holland & Knight, 2099 Pennsylvania Ave., NW, Suite 100, Washington, D.C.  20006,  Attorneys for Defendants.

*Donald L. Kahl*
Donald L. Kahl

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EQUAL RIGHTS CENTER )<br><br>Plaintiff, )<br><br>vs. )<br>)<br>POST PROPERTIES, INC. )<br>POST GP HOLDINGS, INC. )<br>POST APARTMENT HOMES, L.P. )<br>)<br>Defendants. )<br>) | Case. No. 1:06CV01991<br>Judge Richard J. Leon |

### ORDER

UPON CONSIDERATION OF Defendants' Motion to Compel Discovery, and any

opposition thereto, it is by the United States District Court for the District of Columbia, this _____

day of _____ 2007, hereby

ORDERED that Defendants' Motion to Compel Discovery is GRANTED.  It is further

ORDERED that Defendants are awarded the costs and expenses they incurred in

obtaining this order.


_____
**JUDGE RICHARD J. LEON**


Copies provided to:

Sheila Jane Carpenter, Esq.
Donald Lee Kahl, Esq.
Christopher B. Hanback, Esq.


# 4791307_v1

13