UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EQUAL RIGHTS CENTER<br><br>      Plaintiff,<br><br>      v.<br><br>POST PROPERTIES, INC., *et al*,<br><br>      Defendants. | Civil Action No. 06-1991(RJL)(AK) |

**MEMORANDUM OPINION**[1]

Pending before the Court is Defendants' Motion to Compel Discovery [59], Plaintiff's Opposition [61], and Defendants' Reply [62]. Defendants request that the Court order Plaintiff to (1) provide more complete answers in response to Defendants' First Set of Interrogatories, (2) produce additional documents in response to Defendants' First Request for Document Production, and (3) provide a reasonable date for a 30(b)(6) deposition. For the reasons set forth below, Defendants' Motion to Compel Discovery is GRANTED IN PART and DENIED IN PART.

I.   **Background**

On November 21, 2006, Plaintiff Equal Rights Center ("ERC") filed a Complaint alleging that Defendants (collectively "Post") engaged in "ongoing and systematic violations" of the Fair

---

[1] The case was referred to the undersigned Magistrate Judge for resolution Defendant's Motion to Compel, pursuant to Local Civil Rule 72.2(a). (*See* Minute Order dated 9/20/07.)

1

Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et seq.* (Compl. ¶ 2.) Specifically, ERC alleges that Post violated these civil rights statutes in the "design, construction and/or operation of covered multifamily dwellings, including residential complexes" in various states and the District of Columbia. (*Id.*) ERC, a non-profit organizations focusing on civil rights issues, asserts that it "tested" twenty-seven Post properties and discovered FHA and ADA violations in the properties' construction and design. (Compl.¶¶ 7, 18, 21.)

Fact discovery is currently set to terminate on October 31, 2007. (*See* Minute Order dated 3/15/07.) In furtherance of discovery, the trial court granted the parties' Consent Motion for a Protective Order on September 24, 2007 [60]. As stated by the parties, the purpose of this order is to "expedite the completion of discovery and reduce the number of discovery disputes" [58-2]. Defendants filed the instant Motion to Compel on September 18, 2007, after the parties requested these confidentiality procedures but before the trial court signed the Protective Order.

**II.**     **Discussion**

  A.     <u>Local Civil Rule 7(m) and Federal Rule of Civil Procedure 37(a)(2)(A)</u>

Prior to filing a motion to compel discovery, both the Local Rules of this Court and the Federal Rules of Civil Procedure impose upon the moving party a duty to confer with opposing counsel and make a good faith effort to resolve the dispute without judicial intervention. Specifically, the Local Rules provide:

> Before filing any nondispositive motion in a civil action, counsel shall discuss the anticipated motion with opposing counsel, *either in person or by telephone*, in a good faith effort to determine whether there is any opposition to the relief sought

2

> and, if there is opposition, to narrow the areas of disagreement . . . A party shall include in its motion a statement that the required discussion occurred, and a statement as to whether the motion is opposed.

LCvR 7(m) (emphasis added).  *See also* FED. R. CIV. P. 37(a)(2)(A) (A motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court action.").

Failure to comply with the duty to confer requirement set forth in these rules is grounds for dismissing a motion to compel.  *See, e.g., U.S. ex rel Hocket v. Columbia/HCA Healthcare, Corp.*, 498 F.Supp.2d 25, 34 (D.D.C. 2007) (counsel's failure to attach a certification that she had conferred with opposing counsel before filing a motion seeking leave to file a surreply was grounds for denying the motion); *Ellipso, Inc. v. Mann*, 460 F.Supp.2d 99, 102 (D.D.C. 2006) (denying discovery motions for failure to comply with LCvR 7(m)); *U.S. ex rel Pogue v. Diabetes Treatment Centers of America, Inc.*, 235 F.R.D. 521, 528 (D.D.C. 2006) (denying a motion to compel for failure to comply with FRCP 37(a)(2)(A) and LCvR 7(m)).  The Local Rule is clear that compliance with the duty to confer requirement necessitates something more than an exchange of letters or a chain of e-mail correspondence; if the moving party does not discuss the anticipated motion with opposing counsel "in person or by telephone," then she has not followed the rule and the court may dismiss her motion.  *See id*. (holding that parties who generated "an abundance of paper in corresponding about the underlying discovery disputes" but did not "discuss[] the motions in person of by phone" did not comply with Local Civil Rule 7(m)).

Plaintiff argues that Defendants' Motion to Compel must be dismissed because Defendants failed to comply with Local Civil Rule 7(m) and Federal Rule of Civil Procedure

37(a)(2)(A). (Pl.'s Opp'n at 1-2.) Specifically, Plaintiff submits that the parties never had a conversation about the alleged problems with Plaintiff's responses to Defendants' discovery requests. (*Id*. at 1.) Furthermore, Plaintiff asserts that defense counsel merely left a voicemail communicating their intent to file a motion to compel and failed to respond to a subsequent e-mail from Plaintiff's counsel inquiring about the basis for the motion. (*Id*. at 2.) Accordingly, Plaintiff argues that the "Rule 37(a)(1)(B) certificate"[2] appended to Defendants' Motion, which states that "counsel for Post has in good faith conferred or attempted to confer with counsel for ERC" is erroneous. (*Id*.) Defendants respond to these allegations with a Declaration that details "multiple emails" and "at least one letter" demanding documents from Plaintiff and/or discussing Defendant's contention that Plaintiff's responses were inadequate. (Def.'s Reply at 3; *see also* Decl. of Rafe Petersen.)

Even if this Court accepts as true Defendants' assertion that they communicated about the motion with opposing counsel by emails and letters, the Court would still have a basis for dismissing Defendants' Motion for failure to comply with the meet and confer requirement. As stated above, Local Rule 7(m) requires something more than an exchange of written correspondence. The rule anticipates that attorneys will, at a minimum, pick up the telephone and speak to their colleagues as problems arise in litigation. Perhaps if such a conversation occurred before Defendants filed their Motion to Compel, the issues now before the Court could have been narrowed in scope or eliminated altogether. Therefore while the Court will not dismiss Defendants' Motion on these grounds, the Court admonishes the parties to be mindful of

---

[2] Plaintiff points out that the certification requirement is set forth in Rule 37(a)(2)(A) and that there is no Rule 37(a)(1)(B). While true, the Court will not penalize Defendants' for this minor typographical error.

their meet and confer obligations as the litigation progresses and make a good faith effort to resolve disputes before requesting the assistance of the Court.

      B.    <u>Plaintiff's Answers to Interrogatories</u>

Federal Rule of Civil Procedure 33(b)(1) provides: "Each interrogatory shall be answered separately and fully in writing under oath, unless objected to, in which event the objecting party shall state the reasons for objection and shall answer to the extent the interrogatory is not objectionable." If a party to whom an interrogatory was propounded fails to answer, the Rules provide that "the discovering party may move for an order compelling an answer." FED. R. CIV. P. 37(a)(2)(B). An "evasive or incomplete" answer is treated as a failure to answer when determining whether the discovering party is permitted to file a motion to compel. FED. R. CIV. P. 37(a)(3). The party moving to compel discovery has the burden of proving that the opposing party's answers were incomplete. *Daiflon, Inc., v. Allied Chem. Corp.*, 534 F.2d 221, 227 (10th Cir. 1976), *cited in U.S. ex rel. El-Amin v. George Washington Univ.*, No. 1:95-cv-02000, 2000 WL 1763679, at *1 (D.D.C. Nov. 27, 2000).

Defendants find three major deficiencies in Plaintiff's Responses to Defendants' First Set of Interrogatories. First, Defendants argue that Plaintiff did not provide complete responses to Interrogatories ## 3, 6, 7, 9-13, and 16-21. (Def.'s Mot. at 9.) Second, Defendants object to Plaintiff's answers to Interrogatories ## 3, 6, 10, 13, and 17 because they include references to documents that have not been produced. (*Id*.) Finally, Defendants assert that Plaintiff failed to meet its burden of establishing a privilege with respect to the answers to Interrogatories ## 1, 2, 4, 9, 13 and 15. (*Id*.)

1.  *Plaintiff's Answers to Interrogatories 3, 18, 19, and 21 are Incomplete*

A party to whom an interrogatory is propounded "must provide true, explicit, responsive, complete, and candid answers." *Hansel v. Shell Oil Corp.*, 169 F.R.D. 303, 305 (E.D. Pa. 1996). One of the primary "purpose[s] of discovery is to make a trial 'less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent possible' . . . ." *Id*. (quoting *United States v. Proctor & Gamble*, 356 U.S. 677, 683 (1958)). A party frustrates this purpose when it refuses to answer proper interrogatories. *Id*. In this case, Defendants argue that Plaintiffs only provided partial answers to many of their interrogatories. (Def.'s Mot. at 3-4.) Each of the contested answers will be addressed in turn.

*Interrogatory # 3*. Defendants asked Plaintiff to provide the names and qualifications of any person who has served as a tester or performed investigative services for the ERC and to "describe the properties visited, the date of the visit or visits, [and] the reports created." (Def.'s Ex. A at 4.) In response, Plaintiff provided the names of some of the testers and only provided the qualifications for one of them "[b]y way of example." (*Id*.) This answer is similar to that provided by plaintiffs in *Hansen* to an interrogatory that asked them to provide, *inter alia*, "names of buyers receiving the favorable prices from Shell, products sold, amounts of those products, [and] prices charged the favorable buyers." *Hansen*, 169 F.R.D. at 306. Plaintiffs in that case responded with the names of four companies and only "limited information relating to sales of lubricants to them." *Id*. The Court found that this answer was "inadequate, vague, cryptic, evasive, and completely lacking in the candid disclosure required of the parties." *Id*. Similarly in the present case, Plaintiff, in answering Interrogatory # 3, fails to completely and fully address the question asked of it.

*Interrogatory # 6*. Defendants asked Plaintiff to "[s]tate and identify all documents that you claim support the allegations set forth in the complaint." (Def.'s Ex. A at 7.) In response, Plaintiff provided a list of alleged FHA and ADA violations in four Post properties and indicated that ERC's testing files support the allegations in the Complaint. (*Id*. at 7-9.) Plaintiff further stated that additional violations would be detailed in expert reports that were not yet completed. (*Id*.) Because a party has an ongoing duty to supplement its disclosures, *see* FED. R. CIV. P. 26(e)(2), it is sufficient for a party to answer an interrogatory by stating that it is presently unable to provide the information sought. 7-33 MOORE'S FEDERAL PRACTICE - CIVIL § 33.102. Therefore it was proper for Plaintiff to respond to this interrogatory by identifying known facts and documents and indicating that additional information would be forthcoming in compliance with its continuing duty to supplement prior disclosures.

*Interrogatory # 10*. This question contained four sub-parts. First, Defendants asked Plaintiff to describe "how and when [ERC] first became aware of each of the allegations of discrimination against Post at each Subject Property." (Def.'s Ex. A at 11.) Plaintiff responded by briefly describing the general study of accessibility ERC conducted at properties in the D.C. area and the systematic testing that ERC conducted at Post properties nationwide. (*Id*.) Second, Defendants asked Plaintiff to identify the nature of each alleged violation of the ADA and FHA by Post. (*Id*.) Plaintiff did not provide an answer, instead directing Defendants to the testing files. (*Id*. at 12.) In sub-parts (3) and (4) Defendants asked Plaintiff to identify persons who had complained of discrimination by Post to the ERC or communicated with ERC regarding the alleged discrimination. (*Id*. at 11.) Plaintiff responded that no such persons existed. (*Id*.) With the exception of Plaintiff's response to sub-part (2), which is incomplete and improper for the

7

reasons discussed later in this Memorandum Opinion, Plaintiff's answers to Interrogatory # 10 satisfy the standards for completeness set forth in Rule 33(b)(1).

*Interrogatory # 11.* Defendants asked Plaintiff to describe the ERC's investigations "of alleged discrimination in the provision of accessible multifamily dwelling units since November 21, 2002" and to "identify and describe all relevant supporting documentation." (Def.'s Ex. A at 12.) Plaintiff objected on relevance grounds to the extent that this questions inquires about developers other than Post. (*Id.*) With respect to investigations of Post, Plaintiff directed Defendants to outside documents and other interrogatory answers. (*Id.*) Under the Federal Rules, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." FED. R. CIV. P. 26(b)(1). Information about ERC's investigations of companies other than Post is not relevant to the claim that Post violated the ADA and FHA. On the other hand, information about ERC's investigation of Post is clearly relevant to the allegations contained in the Complaint. However, to the extent that the information sought by this Interrogatory is a sub-set of the information sought by Interrogatory #6, it was proper for Plaintiff's to answer this question by referring to its earlier answers.

*Interrogatories ## 12 and 13.* In Interrogatory # 12, Defendants requested that Plaintiff "[s]tate the dollar value of the resources utilized by the ERC to investigate Post's activities" and in Interrogatory # 13 they asked Plaintiffs to "[s]tate the dollar value of resources utilized to date as well as the estimated amount of resources to be used in the future by the ERC in inspecting Post's properties through the ERC's discovery process." (Def.'s Ex. A at 12-13.) Plaintiff responded that its damage analysis was preliminary and therefore Plaintiff would supplement its answers when the calculations were complete. (*Id.*) Plaintiff also invoked the work product

privilege with respect to Defendant's question about future expenditures. (*Id*. at 13.) As discussed above, it is proper for a party to answer an interrogatory by stating that the required information is not presently available to it. *See* 7-33 MOORE'S FEDERAL PRACTICE - CIVIL § 33.102. Whether Plaintiff properly and adequately invoked the work product privilege is discussed below. Overall, the Court rejects Defendants' argument that Plaintiff's answers to Interrogatories ## 12 and 13 are incomplete.

*Interrogatories ## 16 and 17*. These Interrogatories request that Plaintiff provide financial information about the ERC, including its net worth, operating budget, and sources of revenue. (Def.'s Ex. A at 14.) Plaintiff objected on various grounds, including privilege, but went on to state that it would provide financial documents disclosing the information sought upon the entry of a protective order. (*Id*.) Rule 33 does not allow a party to answer an interrogatory by providing a document; rather, the rule states that each question must be "answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(1). *See Sempier v. Johnson & Higgins*, 45 F.3d 724, 734 (3d Cir. 1995) (finding that reference to party's "position statement" was not sufficient to answer an interrogatory that sought the factual basis for plaintiff's termination"). Despite this deficiency, the Court cannot discern, and Defendants have not attempted to explain, how ERC's financial profile is relevant to any claim or defense in this lawsuit and therefore will not compel Plaintiff to provide a further response to these Interrogatories.

*Interrogatories ## 18 and 19*. These questions ask Plaintiff to provide the dollar value of resources expended by ERC to "identify and counteract the allegedly discriminatory practices of Post" and to "respond to community requests for assistance in investigating alleged

9

discriminatory conduct by Post." (Def.'s Ex. A at 14-15.)  Plaintiff responded by referring to its answers to Interrogatories ## 12 and 13, which are similar - but not identical - to Interrogatories ## 18 and 19.  Because each interrogatory must be answered separately and fully, it was improper for Plaintiff to answer in this manner.  Therefore the Court finds that Plaintiff's response to Interrogatories ## 18 and 19 are incomplete and must be supplemented.

*Interrogatory # 20*.  Defendant asked Plaintiff to identify each seminar or presentation that ERC conducted in a city where a subject property is located and identify each attendee of such a seminar or presentation who resides in a city where a subject property is located.  (Def.'s Ex. A at 15.)  Notwithstanding their objections on various grounds, Plaintiff submitted an attachment to its interrogatory responses that contained the names and dates of various seminars and presentations.  (*Id*. at 15, Attach. A.)  Plaintiff further stated that this list only represents those seminars or presentations for which ERC maintains records and that ERC does not routinely maintain records of attendees.  (*Id*. at 15.)  Because a party cannot be expected to supply information that it does not have, Plaintiff's response to Interrogatory 20, as supplemented by Attachment A, appears to be a sufficient answer to Defendant's question.

*Interrogatory # 21*.  In this Interrogatory, Defendants first asked Plaintiff to identify organizations and persons that have "request[ed] assistance from the ERC in investigating alleged discriminatory conduct by Post."  (Def.'s Ex. A at 15.)  Plaintiff responded that no such organization or person exists.  (*Id*.)  Defendants then asked Plaintiff to "describe the services provided to assist persons with disabilities."  (*Id*.)  Plaintiff answered with reference to ERC brochures that would be produced in response to Defendants' First Document Requests.  (*Id*. at 15-16)  Finally Defendants asked Plaintiff to identify persons or entities outside of the

Washington, D.C. area that receive ERC services and to identify facts and documents relating to communications with those persons or entities. (*Id*. at 15.) Plaintiff acknowledged that such persons or entities exist, made a general description of services provided, and referred to documents Plaintiff produced in response to Interrogatories ## 16 and 20. Plaintiff's answers to this Interrogatory are incomplete insofar as they refer to outside documents and do not provide full responses to the questions asked. Therefore Plaintiff will be ordered to supplement this answer.

        2.     *Plaintiff's Answers to Interrogatories 3, 6, 7, 10(2), 13, and 17 are Improper and Unresponsive*

Because Rule 33(b)(1) requires a party to answer each interrogatory "fully," it is technically improper and unresponsive for an answer to an interrogatory to refer to outside material, such as pleadings, depositions, or other interrogatories. 7-33 MOORE'S FEDERAL PRACTICE - CIVIL § 33.103. *See also Cont'l Illinois Nat'l Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 686 (D. Kan. 1991) (stating that an interrogatory answer that incorporated a deposition by reference was improper); *Atlanta Shipping Corp., Inc. v. Cross & Brown Co.*, 113 F.R.D. 108, 111 (S.D.N.Y. 1986) (holding that response to interrogatory that included several pages of references to documents was inadequate).

Plaintiff answered Interrogatories ## 3, 6, 10(2), 13, and 17 by referring to documents that Plaintiff anticipated it would produce in response to Defendants' First Document Requests. (Def.'s Ex. A at 4, 7, 12, 14.) For example, in Interrogatory #6, Defendant asked Plaintiff to "[s]tate all facts and identify all documents that you claim support the allegations set forth in the

11

Complaint." (*Id*. at 7.) Not only was this answer incomplete, as discussed above, but Plaintiff directed Defendant to "Testing files to be produced by the ERC pursuant to the ERC's Responses to Defendant's First Document Requests." (*Id*.) Because this answer, and the answers to Interrogatories ## 3, 10(2), 13, 16 and 17, refer to outside material, the Court finds them to be improper and unresponsive. Therefore the Court will order Plaintiff to supplement its responses to these Interrogatories.

        3.     *Plaintiff Properly Raised Objections to Interrogatories ## 1, 2, 4, 9, 13, and 15*

If a party objects to an interrogatory, it must state its grounds for objection "with specificity." FED. R. CIV. P. 33(b)(4). The Federal Rules further provide:

> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial-preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

FED. R. CIV. P. 26(b)(5). In responding to Defendants' First Set of Interrogatories, Plaintiff invokes the work product privilege with respect to Interrogatories ## 1, 2, 4, 9, 13 and the attorney-client privilege with respect to Interrogatory #15. Defendants now argue that in claiming these privileges "ERC failed [to] state exactly why it was claiming the privilege and failed to identify the nature of the information it was claiming as privileged." (Def.'s Mot. at 9.)

Plaintiff objected to Interrogatories ## 1, 2, and 4 on the grounds that they "call[] for the reason that a person is not a named plaintiff as that information is privileged since it is a legal judgment made by the ERC's attorneys." (Def.'s Ex. A at 3, 4, 5.) The work product privilege

protects, *inter alia*, an attorney's "'mental impressions, personal beliefs,' and [ ] litigation strategies." *Alexander v. F.B.I.*, 192 F.R.D. 12, 18 (D.D.C. 2000) (quoting *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)). Although Plaintiff does not cite any cases or provide any further explanation for its claim that the decision to include a plaintiff in litigation is protected by the work product privilege, the Court finds that such a judgment qualifies as an attorney's mental impression, personal belief or litigation strategy and that Plaintiff has stated this objection with the requisite specificity.

Plaintiff objected to Interrogatory # 9 because it asks Plaintiff to identify each person that it intends to call as a witness at trial and summarize their anticipated testimony. (Def.'s Ex. A at 10-11.) Courts are split as to whether a party may use discovery mechanism to learn the identities of fact witnesses that its opponent may call at trial. *Compare Wirtz v. Cont'l Finance & Loan Co. of West End*, 326 F.2d 561, 564 (5th Cir. 1964) (holding that party may not be compelled to reveal the names of witnesses "long before trial"), *with E.E.O.C. v. Metro. Museum of Art*, 80 F.R.D. 317, 318 (S.D.N.Y 1978) (holding "that the policies underlying the discovery provisions of the Federal Rules of Civil Procedure also support the disclosure of witness lists in civil cases"). *See also* 8 FED. PRAC. & PROC. CIV.2D § 2013 n.16-17 (comparing authorities on whether names of trial witnesses are discoverable). This Court believes that discovery is not the appropriate time to obtain an opponent's witness list and that Plaintiff properly invoked the work product privilege with respect to this interrogatory.

Plaintiff objected to Interrogatory # 13 because the amount of money that ERC intends to expend in the future to inspect Post properties is protected by the work product privilege. Contrary to Defendants' assertions, this objection satisfies the specificity requirement because it

makes the claim expressly and identities the thing not produced. *See* FED. R. CIV. P. 26(b)(5). Plaintiff does not state why such information would be protected by the work product privilege, but it is conceivable that such information would fall under the umbrella of attorney mental impressions and trial strategy. Additionally, Defendants' Motion to Compel focuses on the manner in which the privilege was invoked and not whether it applied to the information withheld. (*See* Def.'s Mot at 9.) Therefore the Court will not order Plaintiff to supplement its answer to this interrogatory.

Finally, Plaintiff objected to Interrogatory # 15, which seeks to discover communications between association or advocacy groups and the ERC, on the basis of the attorney-client privilege to the extent that counsel for ERC is included within the term "associations." (Def.'s Ex. A at 13-14.) Again, Plaintiff has expressly stated the grounds for its objection - the attorney-client privilege - and the identity of the information not produced - communications between ERC and its counsel. As the attorney-client privilege would undoubtedly encompass such communications, the Court will not order Plaintiff to supplement its response to this interrogatory either.

      C.    <u>Plaintiff's Response to Document Requests</u>

In response to thirteen of Defendants' document requests, Plaintiff responded, in part: "Subject to and without waiving any objection, ERC will make available, pursuant to an appropriate protective order entered by the Court, non-privileged responsive documents." (*See, e.g.*, Def.'s Ex. B at 3.) Defendants argue that this response was improper because a party is obligated to produce requested documents unless the party firsts obtains a valid protective order.

(Def.'s Mot. at 7.) Since the filing of Defendant's Motion to Compel, Judge Leon signed a protective order that had been requested by both parties. (*See* Protective Order dated 9/22/07.) Because the entry of this Protective Order should enable Plaintiff to respond to document requests at issue, it would be premature at this time for the Court to rule on this issue. Therefore Dependants' Motion to Compel the production of documents will be denied without prejudice.

### D.     Scheduling of 30(b)(6) Deposition

Defendants initially moved to compel Plaintiff to set a reasonable time for the 30(b)(6) deposition of Rebecca Crootof. (Def.'s Mot. at 5, 9-10.) In light of the October 31 discovery deadline, Defendants suggested that Ms. Crootof's deposition take place in September but Plaintiffs indicated that Ms. Crootof would be unavailable until the last two weeks in October. (*Id*. at 5.) Defendants have now accepted October 18 and 19 as the dates for Ms. Crootof's deposition, but are concerned that the ten calendar days between the deposition and the close of discovery will be insufficient for Defendants to determine whether follow-up depositions are warranted. (Def.'s Reply at 3.) Accordingly, Defendants reserved their right to seek a unilateral extension of the discovery deadline. (*Id*.) Because Defendants have now consented to a late-October date for the 30(b)(6) deposition, their motion to set a reasonable time for this deposition must be denied as moot. Furthermore, the merits of Plaintiff's Motion for Amendment of Scheduling Order [63] to extend the discovery deadline will not be addressed until such a motion is ripe.

**III.     Conclusion**

For the foregoing reasons, the Court finds that Defendant's Motion to Compel Discovery should be granted in part and denied in part. The Court will issue an Order consistent with this Memorandum Opinion.


Dated: October 18, 2007                                          /s/
                                                          ALAN KAY
                                                          UNITED STATES MAGISTRATE JUDGE