IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EQUAL RIGHTS CENTER ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case. No. 1:06CV01991 |
| ) | Judge Richard J. Leon |
| POST PROPERTIES, INC. ) | |
| POST GP HOLDINGS, INC. ) | |
| POST APARTMENT HOMES, L.P. ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR AMENDMENT OF SCHEDULING ORDER**

Defendants Post Properties, Inc., Post GP Holdings, Inc., and Post Apartment Homes, L.P. (collectively "Post"), by undersigned counsel, hereby file this Opposition to Plaintiff's Motion for Amendment of Scheduling Order. Plaintiff's request that the scheduling order be extended seven months is unreasonable and unnecessarily dilatory. Plaintiff filed this suit and must be prepared to prosecute it in a timely manner. The Equal Rights Center ("ERC") has taken off months at a time from any attempt whatsoever at engaging in any discovery and now at the Eleventh Hour seeks to have the Court rescue them from their own procrastination. Such an extension of discovery prejudices Post, whose business has been and will continue to be interrupted and interfered with during the lengthy discovery period that is requested. Accordingly, in support of its Opposition, Post states the following:

1.     Plaintiff filed this Complaint on November 21, 2006, alleging that Post violated the design and construct requirements of the Fair Housing Act ("FHA") 42 U.S.C. §§ 3601-3619. As a basis for its claims, Plaintiff alleged that it "tested" numerous Post properties, found

violations, and then extrapolated from those alleged violations, that Post had engaged in a pattern and practice of FHA violations. In addition, Plaintiff claimed that it diverted resources and has otherwise had to counteract alleged discrimination by Post.

2.  Post filed a Motion to Dismiss on January 29, 2007, based on the fact that Plaintiff lacks standing to pursue these claims and that the statute of limitations has run on all but one of the properties subject to the Complaint. The Motion was ripe as of March 9, 2007, and denied by the Court on June 14, 2007. Post's Motion to Dismiss, however, did not preempt Plaintiff's ability to conduct discovery in this case.

3.  The Court's Scheduling Order was entered on March 15, 2007. The Scheduling Order stated:

> It is hereby ORDERED that plaintiff shall have until 120 days after discovery commences to amend its Complaint; Any other parties shall also be joined by that date; The cutoff for fact discovery is October 31, 2007; Expert reports are due November 16, 2007, with rebuttal reports due December 14, 2007; Expert depositions may be taken and the expert discovery cutoff is January 31, 2008; Dispositive motions shall be due February 29, 2008, the oppositions due March 28, 2008, and the replies due April 11, 2008.

4.  Thus, the Scheduling Order allowed the parties seven and one-half months to complete fact discovery and eight months to complete expert discovery.

5.  Plaintiff commenced discovery by serving its First Request to Inspect Property and First Request to Produce Documents on April 5, 2007. Post timely complied with these Requests by producing the requested documents, which were currently in its possession, on May 9, 2007, and by agreeing to Plaintiff's dates for inspection of Post's properties. In addition, Post indicated to Plaintiff via its pleadings that several binders of documents pertaining to the design and construction of the properties would be made available. *See, e.g.*, Post's Oppo. to ERC's

Motion to Strike Affidavit of Dayna Boone, D.E. No. 23, at 7 (Mar. 27, 2003). Plaintiff has still not requested to inspect the offered binders.

6. Plaintiff's experts inspected Post Pentagon Row during the week of June 18, 2007, and Post Carlyle Square during the week of June 25, 2007. These inspections are very disruptive to Post and its residents. Indeed, at these two properties alone Plaintiff sought to enter some 96 different units for the purposes of taking measurements of their kitchens and bathrooms. In addition, Plaintiff required access to all common areas and residential amenities. In addition to being an inconvenience to the residents, this is extremely taxing on Post's property managers, who must provide notice to all occupied units, address residents' concerns or complaints (people who work at night, pets, infant's sleeping schedules, etc.),[1] organize keys and passes, set aside parking etc. Nonetheless, Post complied with all requests for access, even those that it felt were unreasonable and burdensome.[2]

7. On July 10, 2007, Plaintiff provided Post an aggressive inspection schedule that included inspection dates for fourteen different properties in five states and the District of Columbia.[3] These inspections were set to take place on July 17-20, 23-26, and 30; August 1-3, 6-8, 9-10, 13-17, 20-23, and 27-30; September 10-14 and 23-27; and October 1-4. Post agreed to these inspection dates and began to prepare for the inevitable disruption.

---

[1] While Post has encouraged the ERC's inspectors to visit unoccupied units, a large percentage of the units that have been inspected are occupied. While the residents are given notice, this has inevitably led to disruptions such as walking in on a woman sleeping in her bed and waking sleeping infants.

[2] During the inspections, the ERC has measured and inspected every nook and cranny of the buildings including trash rooms, storage lockers, fitness centers, pools, roof-top decks, bar-b-q grills, public bathrooms, gym showers, garages, mail centers, elevators, bike racks, towel dispensers, water fountains, sidewalks, parking spaces, billiards rooms and business centers.

[3] This was updated on July 11, 2007.

8. Plaintiff's experts inspected Post Briarcliff and a property formerly known as Post Oak during the week of July 16, 2007. However, Plaintiff then informed Post that it was cancelling all future scheduled inspections. Plaintiff gave no reason for the cancellation.

9. On July 16 and 17, 2007, Plaintiff conducted a Rule 30(b)(6) deposition of Post's designated witness Dayna Boone. In the intervening time between this deposition and Plaintiff's Motion to Amend the Scheduling Order, Plaintiff noticed no other deponents of Post (despite its unfounded complaints that Post's deponent had insufficient knowledge). In addition, at no point over these 12 weeks did Plaintiff's counsel ask to inspect any of the binders that Post created concerning the various properties.

10. Meanwhile, Post pursued discovery against Plaintiff. On July 3, 2007, Post served Plaintiff with its First Set of Interrogatories and First Set of Document Requests. Plaintiff served its Responses on August 9, 2007, and produced responsive documents on September 24 and 25, as well as October 2 and 17, 2007.

11. On August 27, 2007, Post served Plaintiff with a Notice of a Rule 30(b)(6) Deposition. Plaintiff designated two deponents—Rabbi Bruce Kahn and Rebecca Crootof—and the depositions occurred on October 3 and 18, 2007, respectively.

12. Plaintiff waited until September 14, 2007, approximately six months after discovery commenced and two months after its last acts of discovery *(i.e.*, the deposition and inspections that took place during the week of July 16, 2007) to serve Post with Plaintiff's First Set of Interrogatories and Second Request for Production of Documents. As noted in Post's Motion to Compel, during this time Plaintiff did everything possible to avoid moving discovery along – thwarting Post's attempts to obtain responses to its interrogatories and document

production requests and refusing to schedule the second 30(b)(6) deposition until October 18, 2007.

13. Post's response to the Interrogatories and Requests were not due until October 17, 2007. This late date is not due to anything that Post has done but to Plaintiff's deliberate choice to wait until discovery was about to close to finally get around to filing its <u>first</u> set of interrogatories and document production requests that go to the merits of Plaintiff's claims. Moreover, the ERC offers no explanation for why it has only "recently" subpoenaed the design professionals in this case. Their identity has been known for months. It was unquestionably Plaintiff's choice to proceed at this pace and in this manner.

14. Upon reviewing and analyzing Plaintiff's broad requests, Post informed Plaintiff that hundreds of boxes of documents are potentially responsive. However, this number of boxes would be more than manageable if Plaintiff had made a targeted request and had timely served its requests before the close of the discovery deadline. Document Production Request # 8 alone is an excellent example of Plaintiff's tactics. In that request, Plaintiff seeks the following

> All documents constituting, referring to, or relating to, the design of each multifamily apartment complex and dwelling at the Subject Properties, or other properties identified in your responses to Plaintiff's First Set of Interrogatories, including, but not limited to, site plans, cutoff plans, sewer plans, erosion control plans, grading and drainage plans, building placement, building specifications, shop drawings, "as-built" drawings, and any other blueprints or plans, as well as Post Real Estate Team files and Post Legal Team Real Estate Files

Hence, Plaintiff has asked for virtually every document related to the design and construction of over 60 properties. Having requested thousands of documents, many of which are unlikely to provide relevant evidence, Plaintiff now has the temerity to suggest that the volume of documents to be produced be considered a reason to extend discovery. Plaintiff chose the sequence and scope of its discovery and must live by that choice.

5

15. Plaintiff has not made a compelling argument for seven additional months to conduct discovery. Plaintiff's motion states that Plaintiff "will enlist additional resources to review Defendants' documents." And in fact, on October 17, 2007, two additional attorneys from the law firm of Fried, Frank, Harris, Shriver & Jacobson LLP entered their appearance in this case.[4] Yet, even before this other firm was enlisted to work on this case, Post is aware of at least eight lawyers representing Plaintiff in this matter – partners Shelia Carpenter and Richard T. Choi, and associates Eric D. Combs, Evan J Taylor and Robin M. Sanders, of Jordan Burt, and Donald Kahl, Isabelle M. Thabault and Mirium Ledever of the Washington Lawyers Committee. Thus, even before ERC recently sent for reinforcements, this case was not understaffed with opposing counsel. With this number of experienced lawyers, Plaintiff had more than the necessary resources to work thru discovery within the time allotted.

16. Discovery should not be extended based on Plaintiff's statement that it needs to conduct additional property inspections. Plaintiff had scheduled inspections until the end of the discovery period and Post was willing to comply with those inspection dates. It was Plaintiff's choice to unilaterally cancel those inspections. Its last-second change in strategy should not warrant an extension.

17. Discovery should also not be extended based on Plaintiff's statement that it needs additional time to take depositions. Although Plaintiff states that its deposition notices will be based on its review of Post's documents, again it was Plaintiff's choice to wait months before serving Post with any document requests. Moreover, Plaintiff was made aware of several key

---

[4] Fried Frank represents the ERC in a lawsuit against Kettler, another of ERC's cases against residential apartment and condominium developers. Interestingly, in the Meet and Confer statement filed in that case, the same counsel at Fried Frank indicated that the ERC only needed 4 months to get thru fact discovery of some 40 properties, although the court ultimately ordered six months. In this case, the ERC has already had seven and a half months and seeks to double that.

Post employees at the deposition of Dayna Boone and Plaintiff has not endeavored to depose them within the Court's scheduled discovery period.[5]

18.     Plaintiff's dilatory tactics should not be rewarded with a seven month extension. Accordingly, Post respectfully requests that Plaintiff's Motion for Amendment of Scheduling Order be DENIED.

                                                 Respectfully submitted,

                                                 HOLLAND & KNIGHT, LLP

                                                 /s/ Christopher B. Hanback
Christopher B. Hanback (Bar # 232579)
Alan I. Baron (Bar. # 340273)
Rafe Petersen (Bar # 465542)
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C. 20006
(202) 955 3000 Phone
(202) 955 5564 Fax
E-mail: christopher.hanback@hklaw.com
E-mail: alan.baron@hklaw.com
E-mail:  rafe.petersen@hklaw.com
*Counsel for Post Properties, Inc., et al.*

---

[5] In fact, Plaintiff's counsel was so disinterested in this case that they did not even order the transcript from the deposition of Dayna Boone, asking Post's counsel to inquire of its status on July 31, 2007.

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing Opposition to Plaintiff's Motion for Amendment of Scheduling Order was served via electronic filing this 22nd day of October, 2007, on the following:

Sheila Jane Carpenter, Esq.
Jorden Burt LLP
1025 Thomas Jefferson Street, NW
Suite 400 East
Washington, DC 20007

Donald Lee Kahl, Esq.
Washington Lawyers' Committee for Civil Rights & Urban Affairs
11 Dupont Circle, NW
Suite 400
Washington, DC 20036

<br>

/s/ Christopher B. Hanback
Christopher B. Hanback

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EQUAL RIGHTS CENTER )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>POST PROPERTIES, INC. )<br>POST GP HOLDINGS, INC. )<br>POST APARTMENT HOMES, L.P. )<br>)<br>Defendants. )<br>_____) | Case. No. 1:06CV01991<br>Judge Richard J. Leon |

**ORDER**

UPON CONSIDERATION OF Plaintiff's Motion for Amendment of Scheduling Order, and any opposition thereto, it is by the United States District Court for the District of Columbia, this ____ day of _____ 2007, hereby

ORDERED that Plaintiff's Motion for Amendment of Scheduling Order is DENIED.

_____
**JUDGE RICHARD J. LEON**

Copies provided to:

Sheila Jane Carpenter, Esq.
Donald Lee Kahl, Esq.
Christopher B. Hanback, Esq.

# 4870205_v2