UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| ) | |
| EQUAL RIGHTS CENTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:06CV01991 |
| ) | Judge Richard J. Leon |
| POST PROPERTIES, INC., *et al.*, ) | Magistrate Judge Alan Kay |
| ) | |
| Defendants. ) | |
| _____ ) | |

## PLAINTIFF'S MOTION TO COMPEL DISCOVERY

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, Plaintiff the Equal Rights Center ("ERC") respectfully moves this Court for entry of an order compelling Defendants Post Properties, Inc., Post GP Holdings, Inc., and Post Apartment Homes, LP (collectively "Post") to give full and complete responses to certain pending written discovery requests. Specifically, the discovery at issue in this Motion pertains to evidence of Fair Housing Act ("FHA") and Americans with Disabilities Act ("ADA") violations at over 50 Post properties throughout the nation. Substantial evidence of these violations is reflected in "compliance reviews" of Post properties, initiated both before and after the ERC filed this Complaint, and related documents in Post's possession.

Improperly claiming "privilege," Post is withholding these records, including objective physical conditions, that would evidence FHA and ADA violations. Moreover, while Post denies in its Answer that there are any accessibility violations at any of its properties, discovery has revealed that Post is now altering its properties in an obvious attempt to bring them into

compliance with federal law. As a result of Post's post-complaint property alterations, the compliance reviews may now constitute the most comprehensive direct evidence of the violations that existed at Post properties pre-alteration and at the time the ERC filed its Complaint. Indeed, further discovery is likely to establish that Post's alteration efforts constitute spoliation of evidence for which additional relief will be required.

Notwithstanding multiple efforts to obtain Post's compliance with its discovery obligations, Post defiantly refuses to produce the compliance reviews or allow any discovery concerning them. In addition, Post refuses to take any measures to prevent evidence spoliation caused by the property alterations. The ERC therefore has no choice but to move to compel the appropriate relief from the Court.

This Motion also is critical to the ERC's ability to complete discovery by the February 28, 2008 cut-off date established in the Amended Scheduling Order. If Post is permitted to withhold the compliance reviews and the objective facts demonstrating property conditions at the time of the compliance reviews and before Post altered the properties, the ERC may be forced to conduct redundant expert reviews at each property, perhaps duplicating the compliance reviews already undertaken and greatly increasing the overall costs and time needed to complete discovery. Even then, of course, the ERC's experts will be hampered unfairly by the fact that Post already has altered many of the properties, making it difficult, if not impossible, to evaluate their pre-alteration conditions.

As demonstrated in the accompanying Memorandum of Points and Authorities, none of Post's rationales for refusing this discovery is supported by the law. Therefore, the ERC urges the Court to grant the Motion in full.

Dated: December 6, 2007        Respectfully submitted,

/s/ Alyssa C. Lareau
Alyssa C. Lareau (DC Bar No. 494881)
Douglas W. Baruch (DC Bar No. 414354)
Fried, Frank, Harris, Shriver & Jacobson LLP
1001 Pennsylvania Avenue, N.W.
Suite 800
Washington, D.C.  20004-2505
Telephone No.:   202-639-7306
E-mail address:  Alyssa.Lareau@friedfrank.com
E-mail address:  Douglas.Baruch@friedfrank.com

Donald L. Kahl  (DC Bar No. 489472)
Isabelle M. Thabault  (DC Bar No. 318931)
Washington Lawyers' Committee
for Civil Rights and Urban Affairs
11 Dupont Circle
Suite 400
Washington, DC 20036
Telephone No.:  202-319-1000
E-mail address:  Don_Kahl@washlaw.org
E-mail address:  Isabelle_Thabault@washlaw.org

*Attorneys for Plaintiff*
*Equal Rights Center*

## CERTIFICATE OF GOOD FAITH ATTEMPT TO SECURE DISCOVERY

I HEREBY CERTIFY that pursuant to Federal Rule of Civil Procedure 37 and Local Rule 7(m), prior to filing this Motion, I conferred with Defendants' counsel via telephonic conference call in a good faith effort to secure the discovery at issue in this Motion on November 8, 2007.  During this call, I informed Defendants' counsel that a Motion to Compel would be filed if the requested discovery was not produced.

/s/ Alyssa C. Lareau_____
Alyssa C. Lareau (DC Bar No. 494881)

3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____ )
                                          )
EQUAL RIGHTS CENTER,                      )
                                          )
              Plaintiff,                  )
                                          )
       v.                                 )     Case No. 1:06CV01991
                                          )     Judge Richard J. Leon
POST PROPERTIES, INC., et al.,            )     Magistrate Judge Alan Kay
                                          )
              Defendants.                 )
_____ )
```

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL DISCOVERY

Plaintiff the Equal Rights Center ("ERC"), by undersigned counsel, hereby submits this Memorandum of Points and Authorities in Support of Plaintiff's Motion to Compel Discovery. For the reasons set forth below, the Court should grant this Motion.

## INTRODUCTION AND BACKGROUND

The issues raised in this Motion go to the heart of this case. The Complaint alleges that Defendants Post Properties, Inc., Post GP Holdings, Inc., and Post Apartment Homes, LP (collectively "Post") have designed and constructed multiple apartment and condominium projects in this District and elsewhere that fail to comply with the accessibility provisions of the Fair Housing Act ("FHA") and the Americans with Disabilities Act ("ADA") ("Subject Properties"). As a result of these violations, and Post's alleged "pattern and practice" of repeat violations over the past 15 years, Post has rendered tens of thousands of residential apartments inaccessible to persons with disabilities. Post's conduct is contrary to law, and the ERC's Complaint seeks injunctive relief and other redress to correct these conditions.

4

In order to prove these violations, the ERC has propounded discovery aimed at identifying the violations, the pattern and practice of Post resulting in the violations, and Post's knowledge of and failure to prevent or remedy these violations.  To date, the ERC has taken a corporate deposition to begin to learn some of the underlying facts, and the ERC has propounded written discovery seeking interrogatory responses and the records necessary to assess liability and prove the violations.  In addition, the ERC has commenced inspections of some of the Subject Properties, using accessibility experts to verify and further document the existence of the alleged FHA and ADA violations.

The ERC has run into a troubling roadblock constructed by Post.  That obstacle arises from the fact — unearthed in discovery and now confirmed through Post's privilege log — that since the filing of the Complaint in 2006,

(1)      Post has conducted "compliance reviews" of dozens of Post properties (comprised of thousands of "covered units" under the FHA) and,

(2)      Based on those compliance reviews, Post has either completed alterations of the units and buildings (in an apparent attempt to remedy or conceal the violations) or is in the process of making such alterations.

Of course, to the extent that Post now recognizes that the properties were designed and constructed in violation of law and is finally taking corrective action in an attempt to make these residences accessible and compliant, the ERC applauds the effort, if in fact the result is compliance with accessibility laws.  Indeed, this lawsuit seeks to mandate, among other things, that Post inspect each property covered by the FHA and ADA and take the corrective measures necessary to bring those units into compliance.  However, by making remedial alterations while

the lawsuit is pending, Post is spoliating the evidence of the violations and prejudicing the ERC's ability to fully document the extent of the pre-existing violations.

Through discovery, the ERC has now learned that Post has conducted extensive compliance surveys of almost fifty of the Post Subject Properties at issue in this Complaint. To the extent that these compliance surveys fully document the condition of the properties — as most fair housing compliance experts would do in such a survey — they would provide an alternate means of establishing the FHA and ADA "conditions" of these properties through photographs, drawings, videos, measurements and other means commonly used by such experts. Even to the extent that the compliance reviews were not completely thorough, either by design or result, the reviewer's report or assessment of the property condition would still be relevant to documenting FHA and ADA noncompliance, particularly where alterations have been performed by Post as a result of the compliance reviews.

The ERC is entitled to discover these compliance reviews and supporting documentation, including the invoices from and retainer agreements with the individuals or entities who conducted the reviews. The ERC has demanded these records in written discovery (document requests and interrogatories) and has sought to inquire about them in deposition. Unfortunately, Post has objected and taken the position that these compliance reviews and supporting documentation, including the evidence of the property conditions prior to Post's property alterations, are not discoverable on the grounds of attorney-client privilege and attorney-work product privilege. In other words, Post is withholding direct evidence that would substantiate the extent of the violations prior to its alterations.

Post's position is untenable. The law does not permit Post to withhold from discovery facts regarding the accessibility conditions of the properties at issue in this litigation. Moreover,

in those instances where Post has altered some or all violations based on its inspections, surveys and compliance reviews, these facts are now within the exclusive province of Post and, without them, the ERC is unfairly prejudiced in its ability to provide direct evidence of the alleged violations.

The evidence of Post's compliance reviews and alteration efforts is concrete and growing. A summary of the evidence includes the following:

- **Exhibit A** is the "Privilege Log" produced by Post to the ERC. It identifies forty-seven "compliance review" documents for forty-seven of the Post Subject Properties at issue in this case. As the log indicates, the vast majority of these "compliance review" reports were conducted after the November 2006 filing of the Complaint in this case. According to Post's Privilege Log, these reports were prepared by Theresa Kitay, who is an accessibility consultant, and is also an attorney. Post contends that they do not have to disclose Ms. Kitay's reviews, claiming protection under the attorney-client and attorney work product privileges. *Id.*

- **Exhibit B** is a collection of excerpts from the transcript of the Rule 30(b)(6) deposition of Post (through its designee Dayna Boone) by the ERC. In that deposition, Post admits that:

    (1)    Ms. Kitay is a consultant to Post who is reviewing Post properties to determine their compliance with accessibility requirements (22:2-15);

    (2)    As a result of her compliance reviews, Ms. Kitay suggested that Post make "changes" to its properties (23:19-23);

(3)    As a result of these compliance surveys, Post has engaged "outside

providers" ─ i.e., contractors ─ to effect the changes that Post's

compliance advisors recommended (23:24 – 24:10); and

(4)    Post has retained numerous other consultants, none of whom have been

identified by Post as attorneys, including Bob Woodall, Paul Sheriff, Gaila

Barnett, Fred Collier, and Larry Perry, to determine compliance at its

properties, and at least one of these consultants was retained by Post prior

to the filing of the Complaint (24:18 – 29:3, 43:6-21).

- **Exhibit C** is a compilation of documents produced by Post in discovery

containing invoices for some of the alterations that Post has already made to the

Subject Properties, including many alterations after the filing of the ERC's

Complaint.  For instance:

(1)    On July 11, 2007, TSI Contracting, Inc. invoiced Post for "correcting

ADA deficiencies at building 600" of Post Brookhaven property

(Post012483);

(2)    On July 24, 2007, Vanguard Property Services, Inc., as part of a $131,000

contract, invoiced Post for various alterations  at the Post Rocky Point

property in Tampa, including "additional hand rails" (Post012486);

(3)    On March 6, 2007, Vanguard invoiced Post for "decreasing asphalt slope

at handicap spot from 13% to 5%" at the Post Collier Hills property

(Post012495); and

(4)    On December 18, 2006, Guardian Construction invoiced Post for "Fair

Housing Act work" completed at a Post property in Dallas, including

8

removing thresholds, removing a wall in a bathroom to provide 48" clear floor space, and making changes "to allow for access by wheelchair" (Post012532).[1]

These exhibits combine to demonstrate that (a) Post has, in many instances, at least partially documented the existence of the very types of FHA and ADA violations at the Subject Properties that are alleged in the ERC's Complaint; (b) Post has taken, and is taking, actions as a result of its compliance surveys that alter, conceal or obliterate the existence of these violations; and (c) Post has spent hundreds of thousands of dollars to make these alterations.  While these exhibits reference generally numerous violations, the specifics and full extent of the violations are not detailed in the invoices provided.  The details of the violations are, however, contained in the compliance reviews which Post has refused to produce.  What these exhibits also demonstrate is that the documentation of the pre-alteration condition of these properties cannot be privileged (particularly since the conditions were disclosed to third-party contractors in order to specify remedial actions).  Moreover, even if they could be subject to work product privilege, given Post's spoliation of the only evidence of these violations, ERC has a demonstrated need to discover this information, thereby overcoming any privilege.

The ERC repeatedly has attempted to resolve this dispute without involving the Court, but unfortunately Post has left the ERC with no choice except to seek the aid of the Court.  With the discovery cut-off date approaching in early 2008, the ERC must have this discovery immediately.  Without it, the ERC may be forced to inspect each property and try to determine

---

[1]    Exhibit C includes many other similar alteration exemplars as well.

9

and reconstruct the extent of the violations prior to Post's alterations (plus any additional violations), adding enormous expense, delay, and unnecessary burden to this case.

## THE ERC'S DISCOVERY REQUESTS

On April 5, 2007, the ERC served its First Request to Inspect Property and First Request to Produce Documents on Post.  Portions of the documents requested were produced on May 9, 2007 and July 2, 2007, but written responses to the requests to produce were not served on the ERC until September 23, 2007.

On September 14, 2007, the ERC served its First Set of Interrogatories and Second Request to Produce Documents.  Written responses were served by Post on October 17, 2007,[2] and some responsive documents were produced on October 17, 2007 and October 23, 2007. Post's responses to Plaintiff's First Set of Interrogatories and Second Request to Produce Documents are at issue in this Motion to Compel.

On October 30, 2007 ERC's counsel sent a letter to Post's counsel detailing the numerous deficiencies in Post's discovery responses (attached as **Exhibit E**).  A "meet and confer" telephone call took place on November 8, 2007, following which Post made clear that it would not provide the requested discovery (*see* **Exhibits F and G**).

## ARGUMENT

Post cannot, within the requirements of the Federal Rules, withhold the completed compliance reviews, inspections and surveys from the ERC by asserting work product and attorney-client privilege.  These privileges do not protect the underlying objective data – simple

---

[2]    These written responses are attached as **Exhibit D**, pursuant to Local Rule 5.2(b).  The ERC identifies below the specific requests at issue and has bracketed those requests and responses for the Court's convenience in the Exhibit.

measurements and photographs contained in these documents. Furthermore, the work product privilege, if it is applicable at all, is overcome here because the ERC has a substantial need for this unique factual information. Finally, the attorney-client privilege is inapplicable as the reports were not prepared by Post's attorneys and do not disclose protected communications.

## I.    The Compliance Reviews Are Not Protected By the Work Product Privilege

Post incorrectly contends that the attorney work product privilege protects the compliance reviews performed by accessibility experts, which are responsive to Interrogatory Nos. 6, 7, 8, 12, and 13 and Document Request No. 4. **Exh. D**. This discovery seeks to obtain these inspection and compliance reports, and the supporting documentation, including the reviewer/inspector's measurements, photographs, videos and other evidence of the FHA/ADA compliance conditions of the properties. The ERC also seeks to discover the identities of the inspectors and the particulars of the inspections, including the dates and units and public or common use areas inspected. Post refuses to produce any such information. Post did not contend at the meet and confer, nor could they seriously argue, that the discovery seeks information that is not relevant to the ERC's claims, or that it would be unduly burdensome to produce it. Instead, Post rests its entire objection on its assertion of attorney-client and attorney work product privilege. These objections are not well-founded and must be overruled on this record.

Rule 26 of the Federal Rules of Civil Procedure generally protects from discovery materials "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative." Fed. R. Civ. P. 26(b)(3); *see also United States ex rel. Fago v. M&T Mortgage Corp.*, 242 F.R.D. 16, 18 (D.D.C. 2007); *Willingham v. Ashcroft*, 228 F.R.D. 1, 3 (D.D.C. 2005). Material is prepared "in anticipation of litigation" if the lawyer or party

reasonably anticipates that *specific* litigation is likely to occur and prepares the material because of the prospect of that litigation and with the intent of contributing to the successful resolution of the litigation. *Fago*, 242 F.R.D. at 18; *Willingham*, 228 F.R.D. at 4. Rule 26 does not protect the material sought by the ERC for several reasons.

To begin with, to the extent that Post is withholding, on *privilege* grounds, any accessibility compliance reviews, inspection reports or surveys conducted of the properties at issue in this case and the related retention agreements and consultant invoices, Post was obligated to interpose that objection *and* to identify the withheld documents on a privilege log. Fed. R. Civ. P. 26(b)(5)(A); *Banks v. Office of Senate Sergeant-At-Arms and Doorkeeper*, 471 F.3d 1341, 1343 (D.C. Cir. 2006). Here, Post's privilege log — which consists of two pages — identifies forty-seven documents, each of which supposedly was authored by "Theresa L. Kitay" and each of which is supposedly exempt from disclosure under the "attorney-client and work product privilege." **Exh. A.** Yet, as Post's Rule 30(b)(6) designee admitted in deposition, Post engaged numerous additional consultants, including Bob Woodall, Paul Sheriff, Gaila Barnett, Fred Collier, and Larry Perry. **Exh. B at 24:18-27:5, 43:6-9.** No documents or responses have been provided relating to these individuals and any work they conducted with respect to the properties. Moreover, no documents from these individuals or pertaining to their work have been identified on Post's privilege log. As a result, Post should be deemed to have waived or abandoned any privilege protections for such documents or discovery, and the Court should order the immediate production of this discovery by Post. The only remaining objection by Post has to do with Ms. Kitay's reports and the evidence Post is withholding pertaining to them. Post's attempt to label Ms. Kitay's records as privileged is without merit on multiple grounds.

**First**, several of Ms. Kitay's accessibility reports were prepared prior to the filing of the

Complaint in this case on November 21, 2006. *See* **Exh. A**. There is no evidence that Post was aware that the ERC was contemplating litigation against Post before the ERC filed and served the Complaint. Therefore, reports prepared by Ms. Kitay prior to the filing of the Complaint cannot have been prepared "in anticipation of litigation."[3] The same is true with respect to the other accessibility consultants Post admits it retained prior to the filing of the Complaint. *See* **Exh. B, 24:13-26:7**. To the extent that these consultants provided reports or communications to Post that are responsive to discovery requests, these documents must be produced and are not entitled to work product protection.

**Second**, as to the reports prepared after the filing of the Complaint, even if prepared in anticipation of litigation, the work product doctrine *does not* permit Post to withhold underlying facts. *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., Inc.,* 967 F.2d 980, 984 n.5 (4th Cir. 1992) ("The work product immunity never reaches to protect from discovery actual evidence taken from the scene or facts about the scene or incident."); *see also In re Unilin Decor N.V.*, 153 Fed. Appx. 726, 728 (Fed. Cir. 2005); *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995). These underlying facts – measurements, photographs, and evidence of the conditions at the properties, and the alterations made there – are relevant and subject to full discovery by the ERC. Post does not deny that the documents sought by the ERC contain such objective facts. Moreover, because Post has now altered the condition of many of these properties, these reports may be the only source of factual

---

[3]    A mere generalized fear that a party may someday be sued is not a basis to invoke this claim of "in anticipation of litigation." *See See In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998) ("For a document to meet this [work product] standard, the lawyer must at least have had a subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable."); *Willingham*, 228 F.R.D. at 4 (holding that to be entitled to work product protection, a document must have been created "because a lawyer or party reasonably anticipated that <u>specific</u> litigation would occur"). Were that alone the test, every litigant would be able to shield the vast  majority of its pre-litigation activities from disclosure.

information regarding the measurements of various features at the properties. Post has no legitimate grounds to withhold these facts now.

**Third**, even assuming the documents might in part constitute attorney work product, the inquiry does not end there, as this privilege is not absolute. A party may obtain discovery of even these materials upon showing "substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed. R. Civ. P. 26(b)(3); *accord In re Sealed Case*, 856 F.2d 268, 273 (D.C. Cir. 1988); *Fago*, 242 F.R.D. at 18. In order to demonstrate substantial need, the party seeking the discovery must show 'adequate reasons' why the work product should be subject to discovery. *In re Sealed Case*, 676 F.2d 793, 810 (D.C. Cir. 1982).

Here, as reflected in Exhibit C, the need for disclosure is clear. Post is in the process of altering the Subject Properties in a belated attempt to bring them into compliance with the FHA and ADA. The subcontractor invoices contained in Exhibit C are filled with references to alterations being made in an attempt to remedy FHA and ADA deficiencies, and other tasks that plainly are intended to correct deficiencies identified by Post's accessibility consultants. However, the invoices do not themselves contain copies of the inspection reports or the specific measurements observed at the properties before the alteration. Post produced these invoice documents in response to the ERC's discovery requests seeking evidence of remediation, but it has not produced the accessibility surveys and reports. *See, e.g.*, **Exh. G at Interr. No. 11**. And Post has admitted that it is altering properties based on these accessibility surveys and reports. *See* **Ex. H, 22:2-23:23**.

To the extent that Post is altering the condition of its properties prior to ERC inspections, the ERC is unfairly prejudiced in its ability to provide direct evidence of all accessibility

violations.  The ERC clearly cannot "recreate" the conditions that existed prior to Post's

alterations at these properties.  However, the documented conditions of these properties pre-

alteration clearly and unequivocally establish the existence of these violations.[4]  The ERC has an

established "need" for this discovery both because the surveys may be the only available

evidence of the conditions that existed at the properties prior to the filing of the Complaint, and

because additional surveys would impose an enormous and unnecessary burden on the ERC, and

may ultimately be futile because of the changed conditions at the properties.  The ERC's need

outweighs any work product privilege under these circumstances.

    **Finally,** even for those properties at which Post has not yet completed its alterations, the

ERC has a substantial need for the underlying measurements and conditions of the properties that

are reflected in the documents sought here.  The data collected by Post and its consultants

regarding the condition of the properties, to the extent that they document non-compliance with

the FHA and ADA, will greatly reduce the burden and costs to the litigants to inspect each of

these properties again.  *See* Fed. R. Civ. P. 1 ("[The Federal Rules] shall be construed and

administered to secure the just, speedy, and inexpensive determination of every action.").  These

inspections not only are costly and time consuming, they can, in many instances, be disruptive to

existing tenants because they require that the consultants access the units to document

accessibility conditions.  It is clearly in everyone's interests, including the tenants, to avoid

repeated intrusions where possible and to avoid duplicative inspections where feasible.

    For these reasons, Post should be ordered to provide full and complete answers to

--------------------------------------

[4]     This Motion seeks discovery of the withheld documents and information concerning property conditions.
In the event that these documents and information are not adequate to establish the pre-alteration condition
of the properties, the ERC likely will seek other relief on the grounds of evidence spoliation.  The ERC
reserves all rights in this regard.

Interrogatory Numbers 6, 7, 8, 12, and 13, and to produce all documents responsive to the ERC's

Document Request Number 4.

## II.    **The Compliance Reviews Are Not Protected by the Attorney-Client Privilege**

Post also claims that the attorney-client privilege applies to the documents and

information sought by the ERC.  *See* **Exhs. D & G** (Responses to Interrogatory Nos. 6, 7, 8, 12

and 13) and **Exh. A** (privilege log).  Post claims this privilege is applicable based on the fact that

Ms. Kitay, in addition to being an accessibility consultant, is also an attorney.[5]  However, simply

because Ms. Kitay is an attorney does not result in everything she does or says being protected

by the attorney-client privilege.

The attorney-client privilege applies only if:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to
> whom the communication was made (a) is a member of the bar of a court or his
> subordinate and (b) in connection with this communication is acting as a lawyer; (3) the
> communication relates to a fact of which the attorney was informed (a) by his client (b)
> without the presence of strangers (c) for the purpose of securing primarily either (i) an
> opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not
> (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a)
> claimed and (b) not waived by the client.

*In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984) (quoting *United States v. United Shoe*

*Machinery Corp.*, 89 F. Supp. 357, 358-59 (D. Mass. 1950)).  The D.C. Circuit repeatedly has

held that the privilege "should be strictly confined within the narrowest possible limits

underlying its purpose."  *In re Sealed Case*, 676 F.2d 793, 807 n.44 (D.C. Cir. 1982); *accord*

*Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp.*, 5 F.3d 1508,

1514 (D.C. Cir. 1993); *Hicks v. Bush*, 452 F. Supp. 2d 88, 100 (D.D.C. 2006); *Banks v. Office of*

---

[5]    This claimed privilege obviously does not apply to the reviews conducted by Bob Woodall, Paul Sheriff,
Gaila Barnett, Fred Collier, and Larry Perry, none of whom are believed by the ERC to be attorneys.  As
noted above, even if the privilege could apply to these reviewers, Post has waived any such privilege by not
identifying the documents of these individuals on Post's privilege log.

16

*Senate Sergeant-At-Arms and Doorkeeper*, 236 F.R.D. 16, 19 (D.D.C. 2006).  Even when communications are protected by the privilege, "the facts underlying those communications are not protected."  *Byers v. Burleson*, 100 F.R.D. 436, 438 (D.D.C. 1983); *accord Upjohn v. United States*, 449 U.S. 383, 395-96 (1981).

    In the present case, although Ms. Kitay is an attorney, she is also often retained as an accessibility consultant.  In fact, Ms. Kitay's maintains the distinction between these separate roles in which she serves on her two websites:  www.kitaylaw.net for her law practice (Theresa L. Kitay, Attorney at Law) and www.fhionline.net for her accessibility consulting business (the Fair Housing Institute).  When she is obtained as an accessibility consultant, Ms. Kitay is not "acting as a lawyer," *see In re Sealed Case*, 737 F.2d at 98, and thus her communications to Post are not privileged.

    Furthermore, even assuming *arguendo* that Ms. Kitay was retained by Post as an attorney, the objective data contained in her reports, such as measurements and photographs, are still discoverable.  Such objective material do not contain any communications from the client; rather, they are simply unprivileged underlying factual material contained in a communication from an attorney to a client.  In keeping with the D.C. Circuit's policy of narrowly construing the attorney-client privilege, this Court should find that the privilege does not protect the information the ERC seeks here, and Post should be ordered to provide full and complete answers to Interrogatory Numbers 6, 7, 8, 12, and 13.

III.    **Additional Motion To Compel Issue Regarding Prior Accessibility Complaints**

In addition to the foregoing, the ERC seeks an order compelling additional discovery on prior complaints regarding accessibility violations.[6]  In particular, Document Request Nos. 6 and 7 seek formal and informal complaints filed against Post or any property Post owns relating to issues of accessibility.  **Exh. D**.  In response to these requests, Post produced a small number of documents and generally objected to the requests on the basis of relevance and privilege.  *Id.*

The information sought is relevant, as Federal Rule of Civil Procedure 26(b)(1) allows discovery of "any matter, not privileged, that is relevant to the claim or defense of any party." Actual knowledge is a relevant factor in assessing punitive damages.  *See, e.g.*, *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 231 (1970); *Nakajima v. General Motors Corp.*, 857 F. Supp. 100, 103 (D.D.C. 1994).  Thus, Post's knowledge that its properties were not accessible is directly relevant to the ERC's claim for punitive damages.  *See* Complaint, Prayer for Relief.  Evidence that Post received complaints from other tenants, agencies, etc. that its properties did not comply with the design and construction requirements of the FHA or the ADA shows that Post had knowledge that its properties were not accessible.

Post's claim of privilege is similarly without merit.  As discussed above, the attorney-client privilege protects only communications between an attorney and a client.  The documents the ERC seeks here are only those to, from, or with third parties.  In addition, the ERC does not seek materials prepared in anticipation of litigation that would be subject to the work product privilege.  The ERC also is entitled to discover the complaints Post received relating to

---

[6]    In the meet and confer between the parties to discuss Post's discovery responses, the ERC identified several other concerns with Post's responses.  Post has assured the ERC that it intends to provide the information requested.  The ERC reserves the right to bring these issues to the Court's attention at a later date should it find that the information provided is not fully responsive to the ERC's requests.

accessibility and how those complaints were ultimately resolved.  Accordingly, Post should be ordered to produce all complaints received related to accessibility in response to Document Request Nos. 6 and 7.

## CONCLUSION

For the reasons stated above, Plaintiff respectfully asks this Court to grant its Motion to Compel Discovery and order Defendants to provide the requested discovery.

Dated: December 6, 2007                    Respectfully submitted,

                                           /s/ Alyssa C. Lareau
                                           Alyssa C. Lareau (DC Bar No. 494881)
                                           Douglas W. Baruch (DC Bar No. 414354)
                                           Fried, Frank, Harris, Shriver & Jacobson LLP
                                           1001 Pennsylvania Avenue, N.W.
                                           Suite 800
                                           Washington, D.C.  20004-2505
                                           Telephone No.:   202-639-7306
                                           E-mail address:  Alyssa.Lareau@friedfrank.com
                                           E-mail address:  Douglas.Baruch@friedfrank.com

                                           Donald L. Kahl (DC Bar No. 489472)
                                           Isabelle M. Thabault (DC Bar No. 318931)
                                           Washington Lawyers' Committee
                                           for Civil Rights and Urban Affairs
                                           11 Dupont Circle
                                           Suite 400
                                           Washington, DC 20036
                                           Telephone No.:  202-319-1000
                                           E-mail address:  Don_Kahl@washlaw.org
                                           E-mail address:  Isabelle_Thabault@washlaw.org

                                           *Attorneys for Plaintiff*
                                           *Equal Rights Center*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____ )
                                        )
EQUAL RIGHTS CENTER,                    )
                                        )
        Plaintiff,                      )
                                        )
        v.                              )       Case No. 1:06CV01991
                                        )       Judge Richard J. Leon
POST PROPERTIES, INC., *et al*.,        )       Magistrate Judge Alan Kay
                                        )
        Defendants.                     )
_____ )

## [PROPOSED] ORDER

Upon consideration of Plaintiff Equal Rights Center's Motion to Compel Discovery, and

any opposition thereto, and for good cause showing it is hereby

ORDERED that Plaintiff's Motion to Compel is GRANTED, and it is

FURTHER ORDERED that within seven days of this Order's entry Defendants shall

serve full and complete responses to Interrogatory Nos. 6, 7, 8, 12, and 13 and Document

Request Nos. 4, 6, and 7, including the documents identified on Defendants' Privilege Log

(Exhibit A), the supporting notes and materials relating to the documents on Defendants'

Privilege Log, and all other compliance reviews, surveys and inspections of Post properties by

any other Post consultant or expert.


Dated:_____        By:_____
                                          Honorable Alan Kay
                                          United States Magistrate Judge

# EXHIBIT A

**ERC v. Post - Privilege Log**

| Date | Document Type | Author | Property/Building for which Compliance Review was Conducted | Privilege Designation |
|---|---|---|---|---|
| 8/27/06 | Compliance Review | Theresa L. Kitay, Esq. | Post Biltmore | Attorney-Client and Work Product Privilege |
| 11/27/06 | Compliance Review | Theresa L. Kitay, Esq. | Post Brookhaven - Phase III | Attorney-Client and Work Product Privilege |
| 9/4/06 | Compliance Review | Theresa L. Kitay, Esq. | Post Collier Hills | Attorney-Client and Work Product Privilege |
| 10/16/06 | Compliance Review | Theresa L. Kitay, Esq. | Post Crest | Attorney-Client and Work Product Privilege |
| 10/1/07 | Compliance Review | Theresa L. Kitay, Esq. | Post Crossing | Attorney-Client and Work Product Privilege |
| 9/28/07 | Compliance Review | Theresa L. Kitay, Esq. | Post Dunwoody | Attorney-Client and Work Product Privilege |
| 10/17/07 | Compliance Review | Theresa L. Kitay, Esq. | Post Gardens | Attorney-Client and Work Product Privilege |
| 4/29/07 | Compliance Review | Theresa L. Kitay, Esq. | Post Glen | Attorney-Client and Work Product Privilege |
| 7/17/06 | Compliance Review | Theresa L. Kitay, Esq. | Post Lenox Park | Attorney-Client and Work Product Privilege |
| 10/13/06 | Compliance Review | Theresa L. Kitay, Esq. | Post Lindbergh | Attorney-Client and Work Product Privilege |
| 8/14/06 | Compliance Review | Theresa L. Kitay, Esq. | Post Oglethorpe | Attorney-Client and Work Product Privilege |
| 9/13/06 | Compliance Review | Theresa L. Kitay, Esq. | Post Parkside | Attorney-Client and Work Product Privilege |
| 4/8/07 | Compliance Review | Theresa L. Kitay, Esq. | Post Peachtree Hills | Attorney-Client and Work Product Privilege |
| 9/10/06 | Compliance Review | Theresa L. Kitay, Esq. | Post Renaissance | Attorney-Client and Work Product Privilege |
| 8/14/06 | Compliance Review | Theresa L. Kitay, Esq. | Post Ridge | Attorney-Client and Work Product Privilege |
| 10/2/06 | Compliance Review | Theresa L. Kitay, Esq. | Post Riverside | Attorney-Client and Work Product Privilege |
| 10/21/07 | Compliance Review | Theresa L. Kitay, Esq. | Post Spring | Attorney-Client and Work Product Privilege |
| 5/1/07 | Compliance Review | Theresa L. Kitay, Esq. | Post Stratford | Attorney-Client and Work Product Privilege |
| 7/17/06 | Compliance Review | Theresa L. Kitay, Esq. | Post Corners at Trinity Centre | Attorney-Client and Work Product Privilege |
| 8/14/06 | Compliance Review | Theresa L. Kitay, Esq. | Post Forest | Attorney-Client and Work Product Privilege |
| 8/14/06 | Compliance Review | Theresa L. Kitay, Esq. | Post Pentagon Row | Attorney-Client and Work Product Privilege |
| 8/14/06 | Compliance Review | Theresa L. Kitay, Esq. | Post Tyson Corner | Attorney-Client and Work Product Privilege |
| 7/17/06 | Compliance Review | Theresa L. Kitay, Esq. | Post Massachusetts Avenue | Attorney-Client and Work Product Privilege |
| 2/1/07 | Compliance Review | Theresa L. Kitay, Esq. | Post Ballantyne | Attorney-Client and Work Product Privilege |
| 2/16/07 | Compliance Review | Theresa L. Kitay, Esq. | Post Gateway Place | Attorney-Client and Work Product Privilege |
| 1/30/07 | Compliance Review | Theresa L. Kitay, Esq. | Post Park at Phillips Place | Attorney-Client and Work Product Privilege |
| 2/12/07 | Compliance Review | Theresa L. Kitay, Esq. | Post Uptown Place | Attorney-Client and Work Product Privilege |

| Date | Document Type | Author | Property/Building for which Compliance Review was Conducted | Privilege Designation |
|---|---|---|---|---|
| 8/27/06 | Compliance Review | Theresa L. Kitay, Esq. | Post Bay Club | Attorney-Client and Work Product Privilege |
| 12/18/06 | Compliance Review | Theresa L. Kitay, Esq. | Post Harbour Place | Attorney-Client and Work Product Privilege |
| 9/18/07 | Compliance Review | Theresa L. Kitay, Esq. | Post Hyde Park | Attorney-Client and Work Product Privilege |
| 12/19/06 | Compliance Review | Theresa L. Kitay, Esq. | Post Parkside - Phase I | Attorney-Client and Work Product Privilege |
| 12/19/06 | Compliance Review | Theresa L. Kitay, Esq. | Post Parkside - Phase II | Attorney-Client and Work Product Privilege |
| 12/11/06 | Compliance Review | Theresa L. Kitay, Esq. | Post Rocky Point | Attorney-Client and Work Product Privilege |
| 1/20/07 | Compliance Review | Theresa L. Kitay, Esq. | Post Abbey - Dallas | Attorney-Client and Work Product Privilege |
| 1/9/07 | Compliance Review | Theresa L. Kitay, Esq. | Post Addison Circle - Addison | Attorney-Client and Work Product Privilege |
| 2/21/07 | Compliance Review | Theresa L. Kitay, Esq. | Post Barton Creek - Austin | Attorney-Client and Work Product Privilege |
| 10/2/07 | Compliance Review | Theresa L. Kitay, Esq. | Post Cole's Corner - Dallas | Attorney-Client and Work Product Privilege |
| 1/9/07 | Compliance Review | Theresa L. Kitay, Esq. | Post Gallery - Dallas | Attorney-Client and Work Product Privilege |
| 1/9/07 | Compliance Review | Theresa L. Kitay, Esq. | Post Heights - Dallas | Attorney-Client and Work Product Privilege |
| 6/4/07 | Compliance Review | Theresa L. Kitay, Esq. | Post Legacy - Plano | Attorney-Client and Work Product Privilege |
| 2/21/07 | Compliance Review | Theresa L. Kitay, Esq. | Post Park Mesa - Austin | Attorney-Client and Work Product Privilege |
| 1/20/07 | Compliance Review | Theresa L. Kitay, Esq. | Post Square - Dallas | Attorney-Client and Work Product Privilege |
| 2/28/07 | Compliance Review | Theresa L. Kitay, Esq. | Post Uptown Village - Dallas | Attorney-Client and Work Product Privilege |
| 1/5/07 | Compliance Review | Theresa L. Kitay, Esq. | Post Vineyard - Dallas | Attorney-Client and Work Product Privilege |
| 1/7/07 | Compliance Review | Theresa L. Kitay, Esq. | Post Vintage - Dallas | Attorney-Client and Work Product Privilege |
| 2/26/07 | Compliance Review | Theresa L. Kitay, Esq. | Uptown Leasing Center - Dallas | Attorney-Client and Work Product Privilege |
| 9/5/06 | Compliance Review | Theresa L. Kitay, Esq. | Post Oak | Attorney-Client and Work Product Privilege |

# EXHIBIT B

20119 boone dayna 071607.txt

1

```
 1           IN THE UNITED STATES DISTRICT COURT

 2              FOR THE DISTRICT OF COLUMBIA

 3

 4    EQUAL RIGHTS CENTER,

 5           Plaintiff,

 6       vs.                    Case No. 1:06 CV 01991

 7    POST PROPERTIES, INC.,      Judge Richard Leon

 8    et al.,

 9           Defendants.

10    ~~~~~~~~~~~~~~~~~~~~~~~~~

11

12              30(b)(6) DEPOSITION OF

13                 DAYNA W. BOONE

14

15                 July 16, 2007

16                  12:45 p.m.

17

18                 17th Floor

19           999 Peachtree Street, NE

20               Atlanta, Georgia

21

22        Maxyne Bursky, RPR, CCR-2547

23

24

25
```

20119 boone dayna 071607.txt

22

1       A.  No, different consultants.

2       Q.  Are there any other occasions when you review

3    a property for accessibility requirements?

4       A.  Those would be the main thing.  We might also

5    have people whose specialty it is -- again, third-party

6    consultants check our properties for compliance.

7       Q.  When would you have that done?  When have you

8    had that done?

9       A.  That's an ongoing process.

10      Q.  What consultant or consultants are you using?

11      A.  We are using Terry Kitay, is one consultant

12   that we have used.

13      Q.  Can you spell that name, please?

14      A.  Terry, T-E-R-R-Y, K-I-T-A-Y.

15      Q.  Is it Mr. Kitay?

16      A.  Ms.

17      Q.  Which properties has she reviewed to date?

18      A.  I don't have that information.

19      Q.  Do you know approximately how many she has

20   reviewed?

21      A.  Not off the top of my head.

22      Q.  What is she doing for you?

23      MR. BARON:  Let me raise an issue.  Terry

24   Kitay is a lawyer and we regard her reports or

25   anything she has advised the company to be within

20119 boone dayna 071607.txt

23

1       the attorney-client privilege.
2           With that admonition and caution, you may
3       respond to the question.
4           THE WITNESS:  Would you repeat the question?
5       Q.  (By Ms. Carpenter) I asked what she was doing
6   for you.  What type of work was she doing?
7       A.  She is acting in an advisory capacity.
8       Q.  Is she bringing violations to your attention?
9           MR. BARON:  Objection.
10          I am instructing you not to answer.
11      Q.  (By Ms. Carpenter) You can answer yes or no.
12          MR. BARON:  Not the way you phrased it.  It
13      assumes there were violations.  I instructed her
14      not to answer.
15      Q.  (By Ms. Carpenter) Is she bringing any
16  violations to your attention?
17          MR. BARON:  Objection, same instruction.
18      Covered by attorney-client.
19      Q.  (By Ms. Carpenter) As a result of any
20  information that Ms. Kitay has brought to your
21  attention, have you made any changes in any of your
22  apartment communities?
23      A.  Yes.
24      Q.  Tell me what those have been.
25      A.  I don't have that information at hand.

20119 boone dayna 071607.txt

24

```
 1              MR. BARON:  Let me stop for a second.
 2              (The witness and her counsel confer.)
 3              MR. BARON:  We have invoices from, I guess you
 4         would call them, outside providers who have
 5         engaged in some of this work.  Ms. Phelps is at
 6         the moment reviewing them, but that will be
 7         responsive to your question in large measure.
 8              MS. CARPENTER:  So we'll have those later
 9         today?
10              MR. BARON:  Yes.  That's my point.
11              MS. CARPENTER:  We will skip that and come
12         back to that.
13         Q.  (By Ms. Carpenter) Are you using any
14    consultants besides Ms. Kitay?
15         A.  Yes.
16         Q.  Can you tell me who they are?
17         A.  I'm sorry, could you repeat the question?
18         Q.  You were going to tell me what other
19    consultants Post is currently using besides Terry
20    Kitay.
21         A.  I want to make sure I am giving you the right
22    information here.  Okay, we have used a third-party
23    inspection company called Asset Advisory Services.
24         Q.  What is the address of that company?
25         A.  I don't have that information.
```

⬜

Page 24

20119 boone dayna 071607.txt

25

```
 1      Q.  Do you know what town they are from?
 2      A.  They are a national company.
 3      Q.  who at that company have you used?
 4      A.  Bob woodall.
 5      Q.  Can you spell his last name, please?
 6      A.  W-O-O-D-A-L-L.
 7      Q.  What properties has he advised you about?
 8      A.  That, I don't recall.
 9      Q.  Have you made any changes to any properties as
10   a result of Mr. woodall's recommendations?
11      A.  with respect to him and his company, I'm not
12   sure.
13      Q.  Any other consultants you are currently using?
14      A.  we have used a gentleman named Paul Sheriff.
15      Q.  What has Mr. Sheriff done for you?
16      A.  This information was provided to me by someone
17   else in the company because this is not my area of
18   day-to-day responsibility.  So I have been provided
19   with names and I don't have more information than that.
20      Q.  Do you know when Mr. Sheriff was hired?
21      A.  I do not.
22      Q.  How about Mr. woodall?
23      A.  I do not.
24      Q.  What about Ms. Kitay?
25      A.  I do not.
```

20119 boone dayna 071607.txt

26

1        Q.  Do you know if these people were hired before
2   or after the Equal Rights Center's lawsuit was brought?
3        A.  Before.
4        Q.  All?
5        A.  Two I'm sure, one I'm not sure.
6        Q.  Which ones do you know for sure?
7        A.  I know Bob Woodall and Terry Kitay.  I'm not
8   sure about Paul Sheriff.
9        Q.  Who provided you with this information about
10  the consultants?
11       A.  Glen Smith.
12       Q.  Glen Smith?
13       A.  Yes.
14       Q.  Do you know where he got it?
15       A.  I do not.
16       Q.  Are there any other consultants that the
17  company is currently using?
18       A.  Currently using, the list that was provided to
19  me does not indicate whether we are currently using
20  them or whether we used them in the past.
21       Q.  My next question was going to be, what
22  consultants have you used in the past.
23       A.  Okay.
24       Q.  Do you know any besides the three you have
25  already named?

Page 26

20119 boone dayna 071607.txt

27

1        A.   There are two others, Gaila Barnett.

2        Q.   Can you spell that?

3        A.   G-A-I-L-A, Barnett, B-A-R-N-E-T-T, and Fred

4    Collier.

5        Q.   Collier with an I-E-R?

6        A.   Yes.

7        Q.   Ms. Barnett, does she have a company?

8        A.   I don't know.  I have her name here.

9        Q.   When was she used?

10       A.   Generally, I'm aware she's been used in the

11   past several years.

12       Q.   What's her area of expertise?

13       A.   Accessibility.

14       Q.   Did the company make any changes to any of its

15   apartment complexes as a result of her recommendation?

16       A.   Yes.

17       Q.   What changes?

18       A.   Typically, those changes were made to

19   sidewalks -- this was exterior work -- sidewalks,

20   ramps, parking, building entrances and other public

21   areas.

22       Q.   So Ms. Barnett's work did not address the

23   interior of units?

24       A.   Correct.

25       Q.   Can you tell me which complexes?

20119 boone dayna 071607.txt

28

```
 1        A.   This was at Post Addison Circle.
 2        Q.   Was that the only one?
 3        A.   That she was aware of in connection with --
 4   yes, this particular case.
 5        Q.   Did that grow out of a lawsuit?
 6        A.   Yes.
 7        Q.   who brought the lawsuit?
 8        A.   The plaintiff's name is Sapp, S-A-P-P.
 9        Q.   Is that the last name?
10        A.   Yes.
11        Q.   Do you have a first name?
12        A.   No.
13        Q.   When was the lawsuit brought?
14        A.   It was in the general year of 2005.
15        Q.   Was it settled?
16        A.   We performed the work.
17        Q.   Performed the work that plaintiff was
18   requesting?
19        A.   Yes, through a negotiation.
20        Q.   How about Fred Collier, what kind of work did
21   he do?
22        A.   Again, his name was provided to me by Glen
23   Smith, and in the interest of time of pulling all this
24   information together, I basically have his name and
25   understand that he is a third-party consultant that we
```

0

20119 boone dayna 071607.txt

29

1    use to advise us on accessibility matters.

2         Q.   Do you know what you used him for?

3         A.   Other than accessibility matters, I do not.

4         Q.   Do you know which complexes?

5         A.   No.

6         Q.   On the Sapp matter, do you have a case number,

7    a report?

8         A.   I have a case number.  It's 3-03-CV-2593-M.

9         Q.   M or N?

10        A.   M as in mother.

11        Q.   Do you know what court that was in?

12        A.   I do not.

13        Q.   That was in Texas?

14        A.   Yes.

15        Q.   What city?

16        A.   Addison.

17        Q.   Do you know of any other accessibility

18   consultants that the company has used?

19        A.   Architects.

20        Q.   You testified earlier that you used the

21   architects in the design process.  Have you used

22   architects for other purposes related to accessibility?

23        A.   Generally, the way it would work would be if

24   we are developing a property from the ground up, we

25   would use an architect to design that project and look

20119 boone dayna 071607.txt

43

1          (Whereupon at 1:44 p.m., a 12-minute recess
2     was taken.)
3          MR. BARON:  She has something she wants to add
4     to an earlier answer.
5     Q.  (By Ms. Carpenter) Go ahead.
6     A.  There was a third-party consultant that we
7     used that I left off the list.
8     Q.  Okay.
9     A.  The name is Larry Perry.
10    Q.  P-E-R-R-Y?
11    A.  Right.
12    Q.  That's my bird's name.
13         MR. BARON:  Larry or Perry?
14         MS. CARPENTER:  Perry.
15    Q.  Where is Mr. Perry from?
16    A.  Again, all I have is the name.
17    Q.  Do you know if he has a company?
18    A.  I do not.
19    Q.  What work has he been doing for Post?
20    A.  He is one of the consultants that we have used
21    in connection with accessibility issues.
22    Q.  Do you know which property or properties he
23    has addressed?
24    A.  I do not.
25    Q.  Do you know if the company has made any

# EXHIBIT C

# In-House Action Items

| | Completion Date |
|---|---|
| Property | 8/1/2007 |

**Addison**
Installed proper signage to office area restrooms
Replace all common area knob hardware with lever handle
Replaced all twist timers in common areas

**Vintage**                                    7/1/2007
Installed proper signage to office area restrooms
Replace all common area knob hardware with lever handle
Replaced all twist timers in common areas
Replace faucets in common areas with lever handle

**Midtown**
Replace all common area knob hardware with lever handle     11/1/2007
Replaced all twist timers in common areas

**Uptown Village**
Replace all common area knob hardware with lever handle     8/1/2007
Replaced all twist timers in common areas
Installed proper signage to common area restrooms

POST012480

| GL Date | Do Ty | Document Number | Invoice Number | Business Unit | Obj Acct | Sub | Vendor | Description | Amount |
|---|---|---|---|---|---|---|---|---|---|
| 7/24/2007 | PS | 1664462 | 2567 | 202300 | 9084 | 999 | TSI CONTRACTING SERVICES, INC. | CURB RAMP & SIGNS - BLDG 600 | 2,150.00 |
| 7/24/2007 | PS | 1664463 | 2588 | 202300 | 9084 | 999 | TSI CONTRACTING SERVICES, INC. | CURB CUT BY TENNIS COURTS | 1,200.00 |
| 11/1/2007 | PS | 1706537 | 3134 | 202300 | 9084 | 999 | TSI CONTRACTING SERVICES, INC. | CURB CUT | 2,100.00 |
| 8/1/2007 | OV | 1667401 | 10100-5 | 202000 | 9084 | 999 | VANGUARD PROPERTY SERVICES | Contract No. 5592 Chg 002 | 18,434.00 |
| 8/1/2007 | OV | 1667401 | 10100-5 | 202000 | 9084 | 999 | VANGUARD PROPERTY SERVICES | Contract No. 5592 Chg 003 | 9,085.00 |
| 8/13/2007 | OV | 1671458 | 64328 | 202000 | 9084 | 999 | VANGUARD PROPERTY SERVICES | Contract No. 5592 Chg 004 | 2,075.00 |
| 10/12/2007 | PS | 1698100 | 1008976 | 202000 | 9084 | 999 | VALLEYCREST-FLORIDA PROPS/ORLA | LAWN REPAIRS FROM SIDEWALK WOR | 3,890.00 |
| 11/8/2007 | PS | 1709146 | 10424-3 | 202000 | 9084 | 999 | VALLEYCREST-FLORIDA PROPS/ORLA | INSTALL STACKABLE STONE WALL/3 | 3,890.00 |
| 9/21/2007 | PS | 921/2007 | 62179 | 202300 | 9084 | 999 | VANGUARD PROPERTY SERVICES, IN | MAKE A CURB CUT AND INSTALL HA | 2,575.00 |
| 10/23/2007 | BE | 190035 | 3133 | 203100 | 9084 | 999 | BUILDERS STEEL SUPPLY | CHANGE FED GATE | 350.00 |
| 9/18/2007 | PS | 1673821 | 10276 | 203200 | 9084 | 999 | TSI CONTRACTING SERVICES, INC. | INSTALLED 37 CANE TAPS | 7,400.00 |
| 7/3/2007 | PS | 1656040 | 10287 | 203230 | 9084 | 999 | VANGUARD PROPERTY SERVICES | INSTALLED 9 WHEEL STOPS | 720.00 |
| 10/18/2007 | PS | 1701837 | 5646 | 203400 | 9084 | 999 | CORNERSTONE BUILDING & RENOVAT | PAINTED METAL RAILING BY TENNI | 250.00 |
| 9/10/2007 | PS | 1692027 | 10155 | 204000 | 9084 | 999 | VANGUARD PROPERTY SERVICES | LEVEL ACCESSIBLE PARKING SPACE | -3,170.00 |
| 7/5/2007 | BE | 381555 | 10155 | 204300 | 9084 | 999 | VANGUARD PROPERTY SERVICES | LEVEL ACCESSIBLE PARKING SPACE | 250.00 |
| 7/17/2007 | PS | 1661219 | 9647 | 204301 | 9084 | 999 | YONG'S REFURBISHING | 2105-PAINT AND FIX WALLS DUE T | 3,170.00 |
| 7/5/2007 | PS | 10155 | 10155 | 204301 | 9084 | 999 | VANGUARD PROPERTY SERVICES | LEVEL ACCESSIBLE PARKING SPACE | 2,726.00 |
| 7/5/2007 | BE | 1656596 | 3824/9951 | 204301 | 9084 | 999 | HOME DEPOT SUPPLY | (9004-041) ULTRAMAX SNGL CYLIN | 5,717.18 |
| 7/5/2007 | BE | 1656596 | 3824/9951 | 205000 | 9084 | 999 | HOME DEPOT SUPPLY | (9201-2471) KWIKSET DELTA SAT | 20.55 |
| 7/5/2007 | BE | 1656596 | 3824/9951 | 205000 | 9084 | 999 | HOME DEPOT SUPPLY | (9450-324) KWIKSET DELTA SATI | 2,813.56 |
| 7/5/2007 | BE | 1656596 | 3824/9951 | 205000 | 9084 | 999 | HOME DEPOT SUPPLY | 97862-650) ULTRAMAX SNGL CYLIN | 1,023.75 |
| 7/5/2007 | BE | 1656596 | 3824/9951 | 205000 | 9084 | 999 | HOME DEPOT SUPPLY | ULTRAMAX SNGL CYLINDER DEAD-BA | 3,529.61 |
| 8/24/2007 | BE | 1677721 | 39361146 | 205000 | 9084 | 999 | HOME DEPOT SUPPLY | KWIKSET SATIN CHROME SGL SIDED | 488.03 |
| 8/27/2007 | PS | 1678469 | 30 | 205000 | 9084 | 999 | BUNDY'S MASONRY, INC. | FHA AND ADA STAMED CONCRETE PI | 2,726.00 |
| 9/5/2007 | PS | 1682105 | 035972 | 206000 | 9084 | 988 | CHATHAM LANDSCAPE SERVICES, IN | ADA PICNIC AREA | 827.26 |
| 7/10/2007 | BE | 1656276 | 3841723 | 206000 | 9084 | 988 | HOME DEPOT SUPPLY | SATIN CHROME SGL SIDED | 1,226.19 |
| 11/1/2007 | PS | 1707227 | 2885 | 205000 | 9084 | 988 | TSI CONTRACTING SERVICES, INC. | ADA/FHA REPAIRS | 13,028.00 |
| 7/10/2007 | BE | 1656030 | 38707838 | 205700 | 9084 | 988 | HOME DEPOT SUPPLY | STAINLESS STEEL FINISH DOOR PU | 25.86 |
| 7/10/2007 | BE | 1656030 | 38707838 | 205700 | 9084 | 988 | HOME DEPOT SUPPLY | STAINLESS STEEL DOOR PULL PLAT | 67.45 |
| 7/10/2007 | BE | 265 | 265 | 205700 | 9084 | 988 | HOME DEPOT SUPPLY | HURRICANE BROCHURE - GEN | 0.01 |
| 9/14/2007 | PS | 1688558 | AR-7394 | 205700 | 9084 | 988 | DIXIE SERVICES PAINTING & REST | LOWER FIRE EXT. | 4,800.00 |
| 9/14/2007 | PS | 1688568 | AR-7400 | 206700 | 9084 | 988 | ATLANTA RECONSTRUCTION, INC. | SHEETROCK BATHRM APT 807 | 95.00 |
| 9/14/2007 | PS | 1654073 | AR-7202 | 206700 | 9084 | 988 | ATLANTA RECONSTRUCTION, INC. | SHEETROCK LIVING ROOM WALL APT | 150.00 |
| 7/1/2007 | BE | 361523 | AR-7202 | 205500 | 9084 | 988 | ATLANTA RECONSTRUCTION, INC. | 2417 INSTALL HANDICAP BARS FOR | 95.00 |
| 7/1/2007 | PS | 1703942 | AR-7525 | 205500 | 9084 | 988 | ATLANTA RECONSTRUCTION, INC. | 2417 INSTALL HANDICAP BARS - 23 | -300.00 |
| 10/24/2007 | PS | 1703942 | AR-7525 | 206500 | 9084 | 988 | ATLANTA RECONSTRUCTION, INC. | INSTALL HANDICAP BAR SIDE - 23 | 150.00 |
| 10/24/2007 | PS | 1703942 | AR-7525 | 206500 | 9084 | 988 | ATLANTA RECONSTRUCTION, INC. | INSTALL HANDICAP BAR FRONT - 2 | 175.00 |
| 11/13/2007 | PS | 1703942 | AR-7525 | 206700 | 9084 | 988 | ATLANTA RECONSTRUCTION, INC. | REPAIR SHEET ROCK IN HALL - 23 | 175.00 |
| 7/5/2007 | BE | 361591 | AR-7525 | 206700 | 9084 | 988 | HOME DEPOT SUPPLY | INSTALL HANDICAP BAR - 23 | 150.00 |
| 7/5/2007 | PS | 1654159 | 10228 | 207000 | 9084 | 988 | VANGUARD PROPERTY SERVICES | PUSHBUTTON LOCK W/ SCHLAGE CYL | -369.84 |
| 11/5/2007 | PS | 1656606 | 2496-427 | 207700 | 9084 | 988 | LEES GENERAL REPAIRS, INC. | HAND RAIL 300 RIGHT SIDE | 988.00 |
| 7/5/2007 | PS | 1708412 | 52534 | 207700 | 9084 | 988 | BUILDERS STEEL SUPPLY | 1618 INSTALLED HANDICAPPED GRA | 625.00 |
| 11/8/2007 | PS | 1710376 | AR-7632 | 207700 | 9084 | 988 | ATLANTA RECONSTRUCTION, INC. | REPAIR RAILINGS 2 SIDES | 580.80 |
| 10/19/2007 | PS | 1673559 | 10230 | 207700 | 9084 | 988 | VANGUARD PROPERTY SERVICES | INSTALL 4 HAND CAP BARS IN AP | 600.00 |
| 10/17/2007 | BE | 380916 | 62396 | 208901 | 9084 | 988 | BUILDERS STEEL SUPPLY | HANDICAP RAMP GAZEBO-RENAISSAN | 600.00 |
| 9/13/2007 | PS | 1701090 | 10160-2 | 210901 | 9084 | 988 | VANGUARD PROPERTY SERVICES | STORAGE AREA 2000 BUILDING | 900.00 |
| 7/12/2007 | PS | 1671559 | 000279 | 213200 | 9084 | 988 | LARSEN ENGINEERING, INC. | RETAINAGE ON CONTRACTED WORK | 5,474.00 |
| 8/21/2007 | PS | 1661610 | 3016 | 213900 | 9084 | 988 | TSI CONTRACTING SERVICES, INC. | RETAINAGE ON BLOCK WALL ORE1 | 307.05 |
| 10/18/2007 | PS | 1659049 | 3032 | 215000 | 9084 | 988 | TSI CONTRACTING SERVICES, INC. | LOWER FIRE EXT. | 900.00 |
| 10/16/2007 | PS | 1692058 | 7122.1 | 215000 | 9084 | 988 | MILLER CONSTRUCTION SERVICES, | FHA CONVERSION IN BATH | 2,385.00 |
| 9/5/2007 | CA | 397959 | | 215500 | 9084 | 988 | POST APARTMENT HOMES,INC | DEPOSIT AL FINK REIMB | -2,000.00 |
| 9/14/2007 | PS | 1702822 | 323 | 215500 | 9084 | 988 | J&R BUILDING & RENOVATION, INC | DRYWALL REPAIR IN WATER HEATER WO | 4,500.00 |
| 10/22/2007 | PS | 1702227 | 321 | 215600 | 9084 | 988 | J&R BUILDING & RENOVATION, INC | LAMINATE UNDER COUNTER FROM AD | 410.00 |
| 10/22/2007 | PS | 391916 | 32306 | 215700 | 9084 | 988 | ALL STAR TILE AND REFINISHING | INSTALL HANDI-CAP BARS | 525.00 |
| 8/24/2007 | PS | 369270 | 07,87 | 216100 | 9084 | 988 | A.K. HOLCOMB CONSTRUCTION, INC | DEPOSIT ON H/C SIGNS | 307.05 |
| 10/22/2007 | PS | 1668049 | 36016 | 216100 | 9084 | 988 | DENYSE SIGNS | INSTALLED H/C SIGNS | 645.00 |
| 1/8/2007 | PS | 1710499 | 07-245 | 216100 | 9084 | 988 | A.K. HOLCOMB CONSTRUCTION, INC | BALANCE ON H/C SIGNS | 405.00 |
| 11/1/2007 | PS | 1710876 | SH12971 | 216100 | 9084 | 988 | DENYSE SIGNS | | |

POST012481

*[handwritten: Note! Wrong?]*   *[handwritten: Note! Wrong?]*

| Date | P3 | | | | | | Vendor | Description | Amount |
|---|---|---|---|---|---|---|---|---|---|
| -10/02/2007 | P3 | 1695355 | 637567401 | 240200 | 9064 | 999 | REXEL | AE2000 TR2000 TRIM RING | 154.66 |
| 10/2/2007 | P3 | 1695355 | 637567401 | 240200 | 9064 | 999 | REXEL | AE2000 TR2000 TRIM RING | 154.66 |
| 11/8/2007 | P3 | 1710742 | 40526119 | 240601 | 9064 | 999 | HOME DEPOT SUPPLY | PLASTIC BRAILLE RESTROOMS SIGN | 14.06 |
| 11/14/2007 | P3 | 1712431 | 40852818 | 240601 | 9064 | 999 | HOME DEPOT SUPPLY | MOTION ACTIVATED LIGHT CONTROL | 37.86 |
| 11/14/2007 | P3 | 1712431 | 40852818 | 240601 | 9064 | 999 | HOME DEPOT SUPPLY | GLACIER BAY TWO HNDL LAV FAUCE | 150.13 |
| 11/14/2007 | P3 | 1712474 | 160373593B | 240601 | 9064 | 999 | WILMAR SUPPLY COMPANY, INC. | KWIKSET 200CL PASSAGE LEVERSET | 124.84 |
| 7/13/2007 | P3 | 1692210 | 3336 | 241901 | 9064 | 999 | GUARDIAN CONSTRUCTION | REWORK RAMP AT POOL | 275.00 |
| 7/12/2007 | P3 | 1651111 | 3303 | 242300 | 9064 | 999 | GUARDIAN CONSTRUCTION | REWORK SIDEWALKS ADA | 9,488.00 |
| 7/7/2007 | P3 | 1654259 | 3302 | 242300 | 9064 | 999 | GUARDIAN CONSTRUCTION | PIA REPAIRS | 4,080.00 |
| 7/13/2007 | P3 | 1660194 | 3337 | 242300 | 9064 | 998 | GUARDIAN CONSTRUCTION | REWORK PAVER AT ACCESS GATE | 1,120.00 |
| 7/23/2007 | P3 | 1663267 | 1920 | 242400 | 9064 | 999 | S & B GATEWORKS AND WELDING IN | KIOSK MOUNTING | 453.16 |
| 9/4/2007 | P3 | 1696872 | 771 | 242400 | 9064 | 999 | TRU SERVICES, INC. | CONT/ART LABOR | 1,000.00 |
| 10/2/2007 | P3 | 1685377 | 771 | 242400 | 9064 | 999 | TRU SERVICES, INC. | CONT/ART LABOR TO WIRE AND MOU | 400.00 |
| 8/1/2007 | P3 | 1667110 | 2650 | 242901 | 9064 | 999 | GUARDIAN CONSTRUCTION | APT INTERIOR MODIFICATIONS | 2,910.00 |
| 10/1/2007 | P3 | 1682687 | 637567901 | 242901 | 9064 | 999 | REXEL | ALTRONIX AL01212ULP/CB3 POWER | 338.52 |
| 10/1/2007 | P3 | 1683062 | 0407145 | 242901 | 9064 | 999 | UNITED RENOVATIONS, L.P. | REWORK PAVERS AT COMMUNITY ROO | 1,000.00 |
| 10/2/2007 | P3 | 1695015 | 637567902 | 242901 | 9064 | 999 | REXEL | LINEAR AE2000 PLUS | 4,989.24 |
| 10/4/2007 | P3 | 1695304 | 637567902 | 242901 | 9064 | 999 | REXEL | LINEAR TR2000 TRIM RING | 154.66 |
| 10/28/2007 | P3 | 1706272 | 778 | 243401 | 9064 | 999 | TRU SERVICES, INC. | CONTRACT LABOR FOR WIRE PULL A | 600.00 |
| 9/7/2007 | P3 | 1698459 | 2176 | 244901 | 9064 | 999 | S & B GATEWORKS AND WELDING IN | FRABRICATE AND RELOCATE PEDEST | 2,432.96 |
| 11/6/2007 | P3 | 1709192 | 40931H70 | 244601 | 9064 | 999 | WORTHINGTON CONSTRUCTORS, INC. | REWORK CURB & RAMPS | 1,596.69 |
| 11/9/2007 | P3 | 1710483 | 40819H75 | 244601 | 9064 | 999 | HOME DEPOT SUPPLY | MOTION ACTIVATED LIGHT CONTROL | 18.83 |
| 8/9/2007 | P3 | 1670364 | 3B1616649A | 245700 | 9064 | 999 | HOME DEPOT SUPPLY | MOTION ACTIVATED LIGHT CONTROL | 454.38 |
| | P3 | 1670365 | 3B1616649B | 245700 | 9064 | 999 | HOME DEPOT SUPPLY | 500W MOTION ACTIVATED LIGHT CO | 178.92 |
| 9/1/2007 | P3 | 1680066 | 71465.1 | 252000 | 9064 | 999 | MILLER CONSTRUCTION SERVICES, | BLOW MOLDED TABLE 30 X 60 FO | 107.86 |
| | | | | | | | | SIDEWALK RAMP | 2,040.00 |

POST012482



**TSI Contracting, Inc.**
5295 Lake Pointe Center Drive
Suite J
Cumming, GA 30041
770-886-7777 / 770-886-0774 fax

# Invoice

| Date | Invoice #. |
|------|-----------|
| 7/11/2007 | 2567 |

**Bill To**

Post Brookhaven
C/O Post Properties
4401 Northside Parkway, Ste 800
Atlanta GA  30327

| P.O. No. | Terms |
|----------|-------|
| GA 07-356 | Net 30 Days |

| Item | Qty | Description | Rate | Amount |
|------|-----|-------------|------|--------|
| Maintenance | | Correct ADA discrepancies at building 600<br>Install new curb ramp<br>Install new ADA sign and hash marks<br>Grind trip hazard and paint 10x20 stairwell slab | 2,150.00 | 2,150.00 |

OK
Bn

So 84-592

Please make check payable to TSI Contracting, Inc.
Fed ID 582365334

| Total | $2,150.00 |
|-------|-----------|

POST012483

*TSI Contracting, Inc.*

**TSI**
*Contracting*
INCORPORATED

5295 Lake Pointe Center Drive
Suite J
Cumming, GA 30041
770-886-7777 / 770-886-0774 fax

# Invoice

| Date | Invoice # |
|------|-----------|
| 7/11/2007 | 2568 |

| Bill To |
|---------|
| Post Brookhaven<br>C/O Post Properties<br>4401 Northside Parkway, Ste 800<br>Atlanta GA  30327 |

| | P.O. No. | Terms |
|---|----------|-------|
| | GA 07-404 | Net 30 Days |

| Item | Qty | Description | Rate | Amount |
|------|-----|-------------|------|--------|
| Maintenance | | Correct ADA discrepancies<br>Curb cut by tennis courts at phase 2 | 1,200.00 | 1,200.00 |

Please make check payable to TSI Contracting, Inc.
Fed ID 582365334

**Total** $1,200.00

POST012484



**TSI Contracting, Inc.**
5295 Lake Pointe Center Drive
Suite J
Cumming, GA 30041
770-886-7777 / 770-886-0774 fax

# Invoice

| Date | Invoice # |
|------|-----------|
| 10/11/2007 | 3134 |

| Bill To |
|---------|
| Post Properties<br>Attn: Glen Austin<br>4401 Northside Parkway<br>Suite 800<br>Atlanta GA 30327 |

25 OCT AM 9:49

*WTN #*
*375/185*

| P.O. No. | Terms |
|----------|-------|
| GA 07-594 | Net 30 Days |

| Item | Qty | Description | Rate | Amount |
|------|-----|-------------|------|--------|
| Maintenance | | Curb cut at trash compactor at Post Crossing<br>+ *Landed Pavees* | 2,100.00 | 2,100.00 |
| | | *OK*<br>*Ga* | | |
| | | *9084-999* | | |

Please make check payable to TSI Contracting, Inc.
Fed ID 582365334

| Total | $2,100.00 |
|-------|-----------|

POST012485

JUL-25-2007 06:18    From:VANGUARD                    To:4048465656                    Page:2/6

# VANGUARD
### PROPERTY SERVICES, INC.

# Invoice

| | |
|---|---|
| **Date** | |
| 7/24/2007 | |

**Invoice #**

10160-5

**Bill To**

Post Properties
4401 Northside Parkway
Suite 800
Atlanta, Ga 30327

7/24

**Job Site**

Post Rocky Point
3101 N. Rocky Point Dr. Ne
Tampa, Fl 33607

5592

| **Due Date** | **Terms** |
|---|---|
| 7/24/2007 | Due on receipt |

| Description | Rate | Amount |
|---|---|---|
| Original contract- $131,082.00 | 32,474.00 | 32,474.00 |
| | | |
| Change orders- $40,010.00 | | |
| | | |
| - Additional hand rails- $1020.00 | | |
| - Additional urinal lowered- $575.00 | | |
| -Two additional thresholds installed at leasing office- $550.00 | | |
| -Additional concrete work- $2000.00 | | |
| -10% profit- $415.00   10% overhead- $415.00 | | |
| -Change totals- $4975.00 (included in $40,010.00 above). | | |
| | | |
| Less monies received- $138,618.00 | | |
| | | |
| Balance due on original contract- $32,474.00 | | |

*7/31/07*
*No Suppiers on Job*
*No Waivers needed)*

ENTERED
AUG-1 2007

**"We make it happen"**

| **Balance Due** | $32,474.00 |
|---|---|

**1471 Mahogany Chase • Acworth, GA 30101 • 678-391-3272 • Fax 770-428-4561**

POST012486

ADA WORK

7 AUG AM 7:43

**ValleyCrest**
Landscape Maintenance

**INVOICE**
**64528**

Remit To: P.O. Box 404083
Atlanta, GA  30384-4083

355901
Post Properties
One Riverside
4401 Northside Parkway, #800
Atlanta, GA  30327-5000

*Job Location:*
Post Rocky Point

BS

| Invoice Date 08/03/07 | Customer Purchase Order Number | AEW Number 64528 | PAYMENT TERMS: Payment due 15 days following the date of this invoice | |
|---|---|---|---|---|
| | Scope of Work Performed | | | Quantity UM |
| 1 | Install Stackable Mulch Wall Along New Sidewalk See Map Item #1 | | $ 1,525.00 | |
| 2 | Install Stackable Mulch Wall Along New Sidewalk See Map Item #2 | | $ 1,525.00 | |
| 3 | Grade Area and Add Mulch See Map Item #3 | | $ 150.00 | |
| 4 | Grade Area and Add Mulch See Map Item #4 | | $ 150.00 | |
| 5 | Grade Area and Add Mulch See Map Item #5 | | $ 180.00 | |
| 6 | Grade Area and Add Mulch See Map Item #6 | | $ 180.00 | |
| 7 | Grade Area and Add Mulch See Map Item #7 | | $ 180.00 | |

WTN# 3355172

| For questions, please call Cyndi at (813) 621-6619. | **TOTAL** | **$ 3,890.00** |
|---|---|---|

ORIGINAL

POST012487

# ValleyCrest
Landscape Maintenance

**INVOICE**

**Sold To:** 355901
Post Properties
One Riverside
4401 Northside Parkway, #800
Atlanta GA 30327-5000

**Customer #:** 355901
**Invoice #:** 1068976
**Invoice Date:** 9/17/2007
**Sales Order:** 64528
**Cust PO #:** WTN #3313658

| Job Number | Description | | Amount |
|---|---|---|---|
| 341300275 | Post Rocky Point | | |
| | Install Stackable Stone Wall | Along New Sidewalk | 3,890.00 |
| | Install Stackable Stone Wall | Along New Sidewalk | |
| | Grade Area and Add Mulch | | |
| | Grade Area and Add Mulch | | |
| | Grade Area and Add Mulch | | |
| | Grade Area and Add Mulch | | |
| | Grade Area and Add Mulch | | |

19 SEP PM 2:12

| | |
|---|---|
| Total Invoice Amount | 3,890.00 |
| Taxable Amount | |
| Tax Amount | |
| Balance Due | 3,890.00 |

**Terms:** Net 15 Days

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

*Please detach stub and remit with your payment*

**Payment Stub**
Customer Account #: 355901
Invoice #: 1068976
Invoice Date: 9/17/2007

| Amount Due: | $ 3,890.00 |
|---|---|

*Thank you for allowing us to serve you*

*Please reference the invoice # on your
check and make payable to*

Post Properties
One Riverside
4401 Northside Parkway, #800
Atlanta GA 30327-5000

ValleyCrest Landscape Maintenance
P.O. Box 404083
Atlanta, GA 30384-4083

POST012488

Oct 29 2007 16:02    HP LASERJET FAX

P.3

ADA

30 OCT AM 8:17

**Date**
10/22/2007

# VANGUARD
Property Services, Inc.

**Invoice**

**Invoice #**
10424-3

1471 Mahogany Chase • Acworth, Ga 30101 • 678-391-3272 • Fax 770-428-4561

"We make it happen"

381 0131

| Bill To | Job Site |
|---|---|
| Post Properties<br>4401 Northside Parkway<br>Suite 800<br>Atlanta, Ga 30327 | Post Rocky Point<br>3101 N. Rocky Point Dr. Ne<br>Tampa, Fl 33607 |

| Due Date | Terms |
|---|---|
| 10/22/2007 | Due on receipt |

| Description | Rate | Amount |
|---|---|---|
| Made a curb cut. Installed new lay down handicap ramp. Installed handicap stencil, hash marks, and handicap sign. | 2,375.00 | 2,375.00 |

"We make it happen"

**Balance Due**    $2,375.00

POST012489

BUILDERS STEEL SUPPLY, INC.           POST    E4915       **INVOICE**
P. O. BOX 996                                  25695           Page  1
LILBURN, GA   30048
(770) 921-1550

          TERMS: 1 1/2% Service Charge after 30 Days

TO:                                        NUMBER        DATE
                                           52179        9/11/07

      POST PROPERTIES, INC.        Ship To: POST LENOX PARK
      One Riverside                         PER PHIL
      4401 Northside Pkwy., Ste 800         P/O 3492328
      Atlanta              GA 30327

   Attn: GLEN AUSTIN                     Ship Via

| QUANTITY | DESCRIPTION | UNIT PRICE | AMOUNT |
|---|---|---|---|
| | REWORK PED GATE @ LO TO MEET HC CODE | | 350.00 |
| | * Subtotal * | | 350.00 |

                                                    13 SEP PM 3:34

| ORIGINAL Thank You For Your Business! | TOTAL ➡ | 350.00 |
|---|---|---|

**TSI Contracting, Inc.**
5295 Lake Pointe Center Drive
Suite J
Cumming, GA 30041
770-886-7777 / 770-886-0774 fax

# Invoice

| Date | Invoice # |
|------|-----------|
| 10/11/2007 | 3133 |

**Bill To**

Post Properties
Attn: Glen Austin
4401 Northside Parkway, Ste 800
Atlanta GA 30327

18 OCT AM 9:49

WTN #
3757247

| P.O. No. | Terms |
|----------|-------|
| GA 07-594 | Net 30 Days |

| Item | Qty | Description | Rate | Amount |
|------|-----|-------------|------|--------|
| Maintenance | | Curb cut at apartment 3212 at Post Woods | 2,000.00 | 2,000.00 |

OK
Ba

5084.999

Please make check payable to TSI Contracting, Inc.
Fed ID 582365334

| **Total** | $2,000.00 |
|-----------|-----------|

POST012491

**Date**
6/14/2007

# VANGUARD
PROPERTY SERVICES, INC.

31 JUL AM 7:23

# Invoice

**Invoice #**
10276

**Bill To**

Post Properties
4401 Northside Parkway
Suite 800
Atlanta, Ga 30327

**Job Site**

Post Hyde Park
502 S. Fremont Ave.
Tampa, Fl 33606

| | Due Date | Terms |
|---|---|---|
| | 6/14/2007 | Due on receipt |

| Description | Rate | Amount |
|---|---|---|
| Install 37 stairwell cane taps. | 7,400.00 | 7,400.00 |

WTN# 3115344

| | | |
|---|---|---|
| **"We make it happen"** | **Balance Due** | $7,400.00 |

1471 Mahogany Chase • Acworth, GA 30101 • 678-391-3272 • Fax 770-428-4561

POST012492

| Date |
|------|
| 6/12/2007 |

# VANGUARD
PROPERTY SERVICES, INC.

# Invoice

| Invoice # |
|-----------|
| 10267 |

**Bill To**

Post Properties
4401 Northside Parkway
Suite 800
Atlanta, Ga 30327

**Job Site**

Post Bay at Rocky Point
2600 North Rocky Point Drive
Tampa, Fl 33607

| Due Date | Terms |
|----------|-------|
| 6/12/2007 | Due on receipt |

| Description | Rate | Amount |
|-------------|------|--------|
| Installed 8 additional wheel stops in front of office and fitness center. | 720.00 | 720.00 |

WTN#
3115374

26 JUN AM 8:32

"We make it happen"

| Balance Due | $720.00 |
|-------------|---------|

POST012493

# Invoice

Cornerstone Building and
Renovations
112 Van Gogh Terrace
Winchester, Va 22602
571-237-5550

| DATE | INVOICE # |
|------|-----------|
| 9/24/07 | 5846 |

11 OCT AM 9:57

**Bill To**

Post Corners
5804 Post Corners Trail
Centreville, Va 20120

Vendor # 365418

| | P.O. NUMBER |
|--|-------------|
| | 3717677 |

| ITEM | DESCRIPTION | QTY | RATE | AMOUNT |
|------|-------------|-----|------|--------|
| | Paint Metal Railings By Tennis Courts | 1 | 250.00 | 250.00 |

| | | | |
|--|--|--|--|
| | | Subtotal | 250.00 |
| | | 0.88% Tax | |
| | | **Total** | **250.00** |

POST012494

JUN-27-2007 01:36   From:VANGUARD   To:4046465656   Page:3/3

# VANGUARD
### PROPERTY SERVICES, INC.

# Invoice

| Date | Invoice # |
|------|-----------|
| 3/6/2007 | 10155 |

**Bill To**

Post Properties
4401 Northside Parkway
Suite 800
Atlanta, Ga 30327

WTN #

3/36894

**Job Site**

Post Collier Hills
914 Collier Rd. NW
Atlanta, Ga 30318

| Due Date | Terms |
|----------|-------|
| 3/6/2007 | Due on receipt |

| Description | Rate | Amount |
|-------------|------|--------|
| Decrease asphalt slope at handicap spot from 13% to 5%. Reseal and re-stripe. | 3,170.00 | 3,170.00 |

OK
1x

9084-997

28 JUN AM10:43

**"We make it happen"**

| Balance Due | $3,170.00 |
|-------------|-----------|

**1471 Mahogany Chase • Acworth, GA 30101 • 678-391-3272 • Fax 770-428-4561**

POST012495

'07 07 09 08:48p    YONGS REFURBISHING

10 JUL AM 7:14

**YONG'S REFURBISHING**

P.O.Box 9022
Marietta, GA 30065-2022
Tel :770-427-9979
Fax:770-427-9934

# Invoice

| Date | Invoice # |
|---|---|
| 7/6/2007 | 9647 |

| Bill To |
|---|
| POST COLLIER HILL
914 COLLIER ROAD
ATLANTA, GEOEGIA 30318 |

| P.O. No. | Terms |
|---|---|
| 2963422 | |

| Description | | Amount |
|---|---|---|
| 2105 | Repair door frame and fixed corner in guest bed | 250.00 |

It's been a pleasure working with you!

| Total | $250.00 |
|---|---|

POST012496

FROM : BUNDY                PHONE NO. : 7705901031          Aug. 17 2007 07:42AM P1/1

20 AUG AM 7:40

Invoice

# Bundy's Masonry



337 Keeler Woods Drive
Marietta, GA  30064
770-265-1832
Fax: 770-590-1031

## *INVOICE*

| Customer | | |
|---|---|---|
| Name | Post Properties | |
| Address | 4401 Northside Dr | |
| City | Atl          GA | 30327 |
| Phone | | |

| Date | 8/17/07 |
|---|---|
| Order No | 30 |
| Terms | Pay In Full |
| Due Date | Paid in full upon completion of job |

| Qty | Item & Description | Price | Amount |
|---|---|---|---|
| 310sq ft | Post Glen<br><br>Decorative concrete stamping near bld 1200.<br><br>french gray color / stone ashlar pattern. | | |
| | TOTAL COST          Mat@ Labor | | |

| Payment Details |
|---|
| Cash |
| Check # |

| Subtotal | 2,600.00 |
|---|---|
| Tax & Ins | $136.00 |
| Total | 2736.00 |

POST012497

Aug. 21. 2007  3:19PM                                              No. 0035   P. 3



INVOICE

28 AUG AM 8:01

Invoice Date: 08/21/07                    Invoice: 035872

Project:                                  Bill To:

POST PROPERTIES                           POST PROPERTIES
4401 NORTHSIDE PARKWAY                     4401 NORTHSIDE PARKWAY
SUITE 800                                 SUITE 800
ATLANTA          GA 30327-3057             ATLANTA          GA 30327-3057

Acct: 0135  Job: 211387 P.O.       Terms: UPON RECEIPT    Due: 08/26/07
--------------------------------------------------------------------------
Description                        Quantity   Unit Price   Ext Price
--------------------------------------------------------------------------
POST GLEN
WORK PERFORMED 8.14.07
CODE: 205000.9084.999.

SUPERVISOR HOURS 10                            278.82       278.82

LABOR HOURS 10                                 247.19       247.19

DUMP TRUCK 1 DAY                                84.00        84.00

6 BALES PINESTRAW                               17.25        17.25


*WTN 3441998*


                        Total Invoice Amount:    627.26


                        Current Billing:         627.26
                                                ----------
                        Amount Due:              627.26

Invoices 30 days past due are subject to 18% (annual) finance charge
        1672 Old Forty One Highway • Marietta, GA • 30060
        Phone: 770 • 427 • 3020   Fax 770 • 427 • 3181

POST012498



**TSI Contracting, Inc.**
5295 Lake Pointe Center Drive
Suite J
Cumming, GA 30041
770-886-7777 / 770-886-0774 fax

# Invoice

| Date | Invoice # |
|------|-----------|
| 8/16/2007 | 2695 |

26 OCT PM 1:07

Bill To

Post Properties
Glenn Austin
4401 Northside Parkway, Ste 800
Atlanta GA 30327

WTW #
3419944

| | | | P.O. No. | Terms |
|---|---|---|----------|-------|
| | | | GA 07-356 RVD | Net 30 Days |

| Item | Qty | Description | Rate | Amount |
|------|-----|-------------|------|--------|
| Contract Draw | | Correct ADA compliance discrepancies throughout property, as per proposal GA 07-256 at Post Glen. | 13,028.00 | 13,028.00 |

OK
ba
10-25-07

9084.999

| | | | | |
|---|---|---|---|---|
| Please make check payable to TSI Contracting, Inc. Fed ID 582365334 | | | **Total** | $13,028.00 |

POST012499



June 19, 2007                                            Proposal # GA-07-356
                                                                Revised

Glen Austin
Post Properties
4401 Northside Parkway Suite 800
Atlanta, GA 30327

This proposal is submitted to Post Properties for Post Glen (hereinafter referred to as the Owner) by
TSI Contracting Inc. (hereinafter referred to as the Contractor).

Scope:  Correct ADA compliance discrepancies as outlined below:
1. At the Leasing office, the exterior threshold at the front door has a rise greater than ½".
   Raise and level pavers to correct height and slope.                      $1,360.00®
2. The marble thresholds in the Leasing office have a ½" change of level on the carpet side that
   is not beveled. In two areas, raise the level of the subfloor under the carpet at the threshold using a
   thin set material and reinstall the carpet.                              $320.00
3. The threshold at the Men's Room below the Leasing office has a change of level greater than
   ¼". Replace the threshold with a different type.                         $160.00
4. The curb cut at the right side of the leasing office parking area needs a detectable warning
   area. Install domed pavers to replace existing pavers.                   $425.00

5. The storage units near Building 900 have no accessible route. Provide a curb cut and marked
   accessible route.                                                        $1,800.00
6. The Recycle center has no designated accessible loading zone or parking space. Provide
   painted hash area encompassing the loading zone.                         $175.00

7. The curb ramp at the entrance to the resident business center may be blocked by parked cars.
   Paint hash marking to designate area as accessible.                      $80.00®
8. The handrails on the ramp from the parking area to the resident business center have no
   extensions. Move each of the end posts back 12" and add curved extensions to each. $1,200.00
9. The ramp from the parking area to the resident business center has no level landing at the top
   and there is a lip more than 1/4". Remove existing pavers, lower the level at the gate and level
   the pavers as reinstalled to correct height.                            $1400.00

10. The overhang from parked cars can obstruct the accessible route from the shared designated
    parking space serving entrances 2.1 and 2.2. Install eleven (11) wheel stops at the parking spaces
    at Building 200.                                                         $924.00

5295 Lake Pointe Center Drive, Suite J, Cumming, GA 30041    770-886-7777/770-886-0774 fax

POST012500

11. The curb cut at entrance 3.2 terminates in the driveway of a private garage. Demo the existing curb cut and sidewalk system and construct a new curb cut ramp with hand rails and curbing with a painted accessible route to the 3.1 entrance.                                    $3,360.00

12. The overhang from parked cars can obstruct the accessible route from the shared designated parking space serving entrances 5.1 and 5.2. Install six (6) wheel stops at the parking spaces at Building 500.                                                                        $504.00

13. Leasing office install 22 linear feet of ADA handrail                                         $1320.00

                              Total Price:                                 $13,028.00

Respectfully Submitted:        **Christian Siefferman**          Date: 6-19-07
                               Project Manager

POST012501

*IN TN # 3207838*

*10 JUL AM 8:15*

Invoice

COMPANY ADDRESS:

Dixie Services Painting & Restoration, Inc.
880 Hank Fry Rd.
Clarkesville, Ga 30523
Phone ; 404-791-0185 Fax 706-754-4176

DATE:  7/9/07
INVOICE #: ( 565 )

BILL TO:
Post Gardens
Keith Gibson

DUE DATE:  7/24/07
P.O. NUMBER:   K. Gibson

ITEM / DESCRIPTION / QTY / RATE / AMOUNT

   Lowered 90 fire extinguisher boxes @ 12 bldgs to meet current code requirements . Repaired
previous mounting holes in walls .    4,500.00

ITEM SUMMARY:
0% Tax:  0.00
Subtotal:  4,500.00
Total:  4,500.00

MESSAGE:   Thank you for your business!

POST012502

# Atlanta Reconstruction Inc.

3706 Memorial Pkwy.
Kennesaw, Ga 3015
Cell # 770-380-2630

# Invoice

Number:  AR-7394

Date:    **August 17, 2007**

**Bill To:**
Post Gardens Apartment Homes
1020 Lenox Park Blvd.
Atlanta, Ga. 30319

| Purchase Order # | | Terms |
|---|---|---|
| WTN #3494474 | | |

| Apartment # | Description | Amount |
|---|---|---|
| 607 | Repaired sheetrock in bath. | 150.00 |

| | Total | $150.00 |
|---|---|---|

POST012503

**Atlanta Reconstruction Inc.**
3706 Memorial Pkwy.
Kennesaw, Ga 3015
Cell # 770-380-2630

13 JUN AH 7:35

# Invoice

Number:  AR-7202

Date:   June 12, 2007

Bill To:

Riverside By Post
4401 Northside Parkway
Atlanta, Ga. 30327

| Purchase Order # | Terms |
| --- | --- |
| WTN #3059231 | |

| Apartment # | Description | Amount |
| --- | --- | --- |
| 2417 | Installation of 2 handicap bars in bath | 350.00 |
| | Total | $350.00 |

Oct 17 07 02:22p    Atlanta Reconstruction    7709741611    p.6

## Atlanta Reconstruction Inc.

3706 Memorial Pkwy.
Kennesaw, Ga 3015
Cell # 770-380-2630

# Invoice

Number:  AR-7525

Date:    October 04, 2007

**Bill To:**

Riverside By Post
4401 Northside Parkway
Atlanta, Ga. 30327

18 OCT AM 9:36

| Purchase Order # | Terms |
|---|---|
| WTN # 3750951 | |

| Apartment # | Description | Amount |
|---|---|---|
| 2317 | Installed 2 handicap bars in bath. | 350.00 |
| 2317 | Repaired sheetrock in hall. | 150.00 |
| | Total | $500.00 |

POST012505

Nov 05 07 04:30p    Parodi    7709741611    p.3

**Atlanta Reconstruction Inc.**

3706 Memorial Pkwy.
Kennesaw, Ga 30152
Cell # 770-380-2630

# Invoice

Number:  AR-7591

Date:    November 01, 2007

6 NOV AM 9:45

**Bill To:**

Riverside By Post
4401 Northside Parkway
Atlanta, Ga. 30327

| Purchase Order # | Terms |
|---|---|
| WTN #3869408 | |

| Apartment # | Description | Amount |
|---|---|---|
| 2405 | Installed 1 handicap bar in bath. | 175.00 |
| | **Total** | **$175.00** |

POST012506

JUN-27-2007 01:36   From:VANGUARD          To:404B465656            Page:2/3

# VANGUARD
## PROPERTY SERVICES, INC.

# Invoice

| Date | Invoice # |
|------|-----------|
| 3/26/2007 | 10228 |

**Bill To**

Post Properties
4401 Northside Parkway
Suite 800
Atlanta, Ga 30327

WTN #

3126877

**Job Site**

Post Dunwoody
7150 W. Peachtree Dunwoody
Rd. NE
Atlanta, Ga 30328

| Due Date | Terms |
|----------|-------|
| 3/26/2007 | Due on receipt |

| Description | Rate | Amount |
|-------------|------|--------|
| Installed 22 ln. feet of handrail at building 300, right of breezeway along staircase. | 968.00 | 968.00 |

OK

9084.999

28 JUN AM 10:43

**"We make it happen"**

| Balance Due | $968.00 |
|-------------|---------|

1471 Mahogany Chase • Acworth, GA 30101 • 678-391-3272 • Fax 770-428-4561

POST012507

FROM :LEE'S GENERAL REPAIRS                    FAX NO. :770 932 1696          Oct. 29 2007 04:55PM  P1                    30 OCT AM 8:18

## LEE'S GENERAL REPAIRS, INC.
### 5700 O'Rouke Rd.
### Buford, GA 30518
### Cell # 770-598-5880

TO Post Dunwoody Apts.

DATE: 10/29/01

Vendor # 5763

WTN NUMBER

3807640

**INVOICE**
2456-01

| UNIT | DESCRIPTION | PRICE |
|------|-------------|-------|
| 1619 OPP | Install 3 handicapped grab bars in tub area. | 250.00 |
| | Pull toilet. | |
| | Purchase + install handicapped toilet + seat. | 315.00 |
| | | 825.00 |

That You!

PLEASE PAY BY THIS INVOICE. NO STATEMENT WILL BE SENT.

POST012508



# INVOICE

BUILDERS STEEL SUPPLY, INC.
P. O. BOX 996
LILBURN, GA   30048
(770) 921-1550

POST          E4950
              25898          Page  1

TERMS: 1 1/2% Service Charge after 30 Days

                                      NUMBER          DATE
                                      52534          10/31/07

TO:

POST PROPERTIES, INC.          Ship To: POST DUNWOODY
One Riverside                           BUILDINGS 1600 & 300
4401 Northside Pkwy., Ste 800           P O # 3819844
Atlanta          GA  30327

Attn: GLEN AUSTIN---MAIN OFFICE          Ship Via

|  | DESCRIPTION |  |  | AMOUNT |
|---|---|---|---|---|
| REPAIR RAIL BUILDING 300 |  |  |  |  |
| REWORK RAIL BUILDING 1600 |  |  |  |  |
| 42" HIGH HANDRAIL | 4'0" | 20.00 LF | | 80.00 |
| 2 MEN & EQUIPMENT | 7 HOURS | 70.00 HR | | 490.00 |
| * Subtotal * | | | | 570.00 |
| Georgia State Tax 4% | | | | 3.20 |
| Fulton Co Marta L/O Educ Tax | | | | 1.50 |
| Marta Sales Tax 1% | | | | .00 |

5 NOV PM 12:48

TOTAL ▶          575.60

ORIGINAL Thank You For Your Business!

POST012509

Oct 10 07 04:23p    Atlanta Reconstruction    7709741611    p.3

# Atlanta Reconstruction Inc.

3706 Memorial Pkwy.
Kennesaw, Ga 3015
Cell # 770-380-2630

# Invoice

Number:  AR-7532

Date:    October 09, 2007

Bill To:

Post Chastain Apartment Homes
4090 Roswell Rd.
Atlanta, Ga. 30342

11 OCT AM 9:57

| Purchase Order # | Terms |
|---|---|
| WTN #3700324 | |

| Apartment # | Description | Amount |
|---|---|---|
| 5202 | Both baths had 2 handicap bars installed in each. | 600.00 |
| | **Total** | **$600.00** |

POST012510

**Date**

3/22/2007

# VANGUARD
PROPERTY SERVICES, INC.

# Invoice

**Invoice #**

10230

**Bill To**

Post Properties
4401 Northside Parkway
Suite 800
Atlanta, Ga 30327

**WTN #**

N|A

**Job Site**

Post Renaissance
400 Central Park Place
Atlanta, Ga  30308

**Due Date**

3/22/2007

**Terms**

Due on receipt

| Description | Rate | Amount |
|---|---|---|
| Install cedar handicap ramp to gazebo. | 800.00 | 800.00 |

*WTN 2835735*

"We make it happen"

**Balance Due**          $800.00

1471 Mahogany Chase  •  Acworth, GA 30101•  678-391-3272  •  Fax 770-428-4561

POST012511

# INVOICE

BUILDERS STEEL SUPPLY, INC.
P. O. BOX 996
LILBURN, GA  30048
(770) 921-1550

POST          E4933          Page  1
              25745

TERMS: 1 1/2% Service Charge after 30 Days

NUMBER        DATE
52386         10/09/07

TO:

POST PROPERTIES, INC.          Ship To: POST RENAISSANCE
One Riverside                           P/O 3699451
4401 Northside Pkwy., Ste 800
Atlanta          GA 30327

Attn: GLEN AUSTIN          Ship Via

| QUANTITY | DESCRIPTION | UNIT PRICE | AMOUNT |
|---|---|---|---|
| INSTALLED | | | |
| | 7'10" HI FENCE   10'5" | LS | 550.00 |
| 1 | 4'0" X 7'10" GATE | LS | 350.00 |
| | * Subtotal * | | 900.00 |
| | | | |
| | | | 10 OCT PM 2:36 |

TOTAL          900.00

ORIGINAL Thank You For Your Business!

**POST012512**

**TSI Contracting, Inc.**
5295 Lake Pointe Center Drive
Suite J
Cumming, GA 30041
770-886-7777 / 770-886-0774 fax

# Invoice

| Date | Invoice # |
|------|-----------|
| 9/17/2007 | 3004 |

**Bill To**

Post Properties
Attn: Glenn Austin
4401 Northside Pkwy, Ste 800
Atlanta GA 30327

*POST PARKSIDE*

*WTN*
*3582038*

| P.O. No. | Terms |
|----------|-------|
| GA 07-544 | Net 30 Days |

| Item | Qty | Description | Rate | Amount |
|------|-----|-------------|------|--------|
| Maintenance | | Total amount to lower 32 extinguishers, throughout property, at Post Parkside | 800.00 | 800.00 |

*OK ba*

*9084.999*

Please make check payable to TSI Contracting, Inc.
Fed ID 582365334

| **Total** | **$800.00** |
|-----------|-------------|

*IN MASTER*



**TSI Contracting, Inc.**
5295 Lake Pointe Center Drive
Suite J
Cumming, GA 30041
770-886-7777 / 770-886-0774 fax

# Invoice

| Date | Invoice # |
|------|-----------|
| 9/19/2007 | 3032 |

**Bill To**

Post Properties
4401 Northside Pkwy, Ste 800
Atlanta GA 30327
Attn: Glenn Austin

5 OCT AM 9:38

*WTN #*
*2675852*

| P.O. No. | Terms |
|----------|-------|
| GA 07-372 | Net 30 Days |

| Item | Qty | Description | Rate | Amount |
|------|-----|-------------|------|--------|
| Maintenance | | Correct ADA compliant discrepancies at Post Parkside, as per GA 07-372 proposal | 2,395.00 | 2,395.00 |

*OK*
*Ba*
*9084-995*

| | |
|--|--|
| Please make check payable to TSI Contracting, Inc. Fed ID 582365334 | |
| **Total** | $2,395.00 |

POST012514

# TSI
## *Contracting*
### INCORPORATED

June 15, 2007

Proposal # GA-07-372
revised

Glen Austin
Post Properties
4401 Northside Parkway Suite 800
Atlanta, GA 30327

This proposal is submitted to Post Properties for Post Parkside (hereinafter referred to as the Owner) by TSI Contracting Inc. (hereinafter referred to as the Contractor).

Scope: Correct ADA compliance discrepancies as outlined below:
1. The folding table in the laundry room is higher than 34" (at 37"). Lower the existing table to correct height and patch and paint wall area to match.     $285.00
2. At the building breezeways, there are no cane detection areas under the stairs to the upper floors. Add cane detection at three (5) stairs.     $1000.00
3. In the restroom at the fitness center, the door swings into the clear floor space at the fixtures. Remove the existing door and reverse the swing to open into the hallway. Patch and paint the surrounding area to match.     $550.00
4. On the third floor of the building, the entry from the garage has a lip with a vertical change of level greater than ¼". Grind the floor surface to acceptable height of less than ¼" difference.     $175.00
5. Visitors may access the building through the garage only through the courtyard. Signage for the accessible parking and accessible route is not well defined. Install a new sign above the existing "Jason's Deli" sign at the correct height and correct the sign on the other parking area. Repaint the existing handicap parking signage (4 places) on the concrete and blank out the existing signage on the opposite side.     $385.00

Total Price:     $2,395.00

Respectfully Submitted: **Christian Siefferman**
Project Manager

Date: 6-15-07

5295 Lake Pointe Center Drive, Suite J, Cumming, GA 30041     770-886-7777/770-886-0774 fax

POST012515

Miller Construction Services
1006 Parkwood Circle
Suite 230
Atlanta     GA  30339-
(770) 388-9007  Phone
(770) 388-2056  Fax

# MILLER
## CONSTRUCTION SERVICES

### INVOICE

Invoice No: 7122.1
Date: 8/9/2007
Due Date: 8/9/2007

Bill To:

Post Porperties
4401 Northside Pkwy.
Atlanta     GA  30327-

Job No: 7122
Description: Post Falls Grove
PO #:

| Description | Extended Price | Comment |
|---|---|---|
| 100% completion per contract | 4,500.00 | |

Apt. 2308

115500 2670-02985    (12  8/20/07

21 AUG AM 7:34

WTN # 3428164

Thank You For Your Business!
Terms: Net 21

Less Retainage  0.00
Amount Due   4,500.00

POST012516

# Miller Construction Services, Inc.

1306 Olympic Court, Conyers, GA  30012

Phone 770-388-9007 Toll Free Phone: 877-224-584 Fax 770-388-0256

## PROPOSAL

| | |
|---|---|
| **PROPOSAL #:** 07122 | **TO:** Post Properties,Inc. |
| **DATE:** 5/1/07 | 4401 Northside Parkway #800 |
| **PROJECT:** Post Falls Grove | Atlant, Ga. 30327 |
| **LOCATION:** 102 Fallsgrove Blvd. | Phone:   703-968-7678 |
| Rockville, Maryland 20850 | Fax:   703-968-6774 |
| | Attn:   Keith / Marty |
| | E-mail:   marty.martel@postproperties.com |

The undersigned proposes to furnish all materials and necessary equipment and perform
all labor necessary to complete the following work:

| DESCRIPTION | COST |
|---|---|
| Remove and replace tub surround with new Kohler ADA compliant tub surround. | $    4,500.00 |
| Remove and replace approximately 65 SF of 6x6 tile. | |
| Install grab bar in tub area. | |
| Install grab bar behind toilet. | |
| Lower bathroom vanity so that the top of the countertop is 34" above the finished floor. | |
| *Post Properties is responsible for the flooring.* | |

$    4,500.00

(Four Thousand Five Hundred Dollars and 00/100s)

***Note: The price quoted in this proposal is for the scope of work described above and is valid for
30 days from date of proposal.  Any modifications to this proposal may warrant a price alteration.
After 30 days, Miller Construction Services, Inc. reserves the right to renegotiate.*

All of the above work to be completed in a substantial and workmanlike manner.  Any alteration or deviation
from the plans and specifications will be executed only upon written orders for same.  All agreements must
be in writing.

*Respectfully Submitted,*

Contractor:    Miller Construction Services, Inc.

By: Nathan Millard

## ACCEPTANCE

You are hereby authorized to furnish all material, equipment and labor required to complete the work
described in the above proposal for which the undersigned agrees to pay the amount stated in said proposal

POST012517

**JJR BUILDING & RENOVATION INC.**

20471 BLUE HERON TERRACE
STERLING, VA 20165

PHONE: (571) 283-1089    FAX #:(703) 880-6440

# Invoice

| Date | Invoice # |
|------|-----------|
| 9/24/2007 | 322 |

| Bill To |
|---------|
| POST FALLSGROVE<br>102 Fallsgrove Blvd.<br>Rockville, Maryland 20850 |

WTN# 3739223

15 OCT PM 2:26

| Unit # | Description | Hours | rate | P.O. No. |
|--------|-------------|-------|------|----------|
| | | | | Amount |
| 0000 | Drywall repair in the club room and in the fitness center. | | | 295.00 |

Thank you for your business.

| | Total | $295.00 |
|--|-------|---------|

POST012518

**JJR BUILDING & RENOVATION INC.**

20471 BLUE HERON TERRACE
STERLING, VA 20165

PHONE: (571) 283-1089     FAX #:(703) 880-6440

# Invoice

| Date | Invoice # |
|------|-----------|
| 9/24/2007 | 321 |

| Bill To |
|---------|
| POST FALLSGROVE
102 Fallsgrove Blvd.
Rockville, Maryland 20850 |

WTN# 3739223

15 OCT PM 2:26

| P.O. No. |
|----------|
|          |

| Unit # | Description | Hours | rate | Amount |
|--------|-------------|-------|------|--------|
| 0000 | Install laminate under the kitchen countertop in the club room. | | | 410.00 |

Thank you for your business.

| | Total | $410.00 |
|---|-------|---------|

POST012519



# INVOICE



| | |
|---|---|
| | 9/27/2007 |
| | 32306 |
| | WTN 3531066 |

**BILL TO:**

POST APARTMENT HOMES, LP
ATTN: AP DEPT.-BALLANTYNE
4401 NORTHSIDE PKWY., STE. 800
ATLANTA, GA 30327

8014 CUMMING HWY.
SUITE 403-333
CANTON, GA 30115

HOTEL & APARTMENT UPGRADE EXPERTS

| TERMS | | |
|---|---|---|
| Net 30 | 10/27/2007 | 716 |

| ITEM | DESCRIPTION | | | |
|---|---|---|---|---|
| WORK | INSTALL HANDICAP BARS IN ONE BATHROOM. 42" ON BACK WALL, 24" ON SPOUT WALL. WORK TO INCLUDE SHEETROCK REMOVAL, WOOD SUPPORTS ADDED TO WALLS, MAKE SHEETROCK AND PAINT REPAIRS. | | 525.00 | 525.00 |

10 OCT AM 8:31

A finance charge of 1.5% per month will be charged on all invoices not paid within 30 days of invoice date. Customer is liable for all collection fees.

| | **TOTAL** | $525.00 |
|---|---|---|

THANK YOU FOR CHOOSING ALL STAHR INC.

POST012520

**DeNyse Signs**
4521 Industrial Access Rd.
Douglasville, GA  30134
770-942-0688
800-941-7446

15 OCT PM 4:48

**DEPOSIT INVOICE**

| QUOTE NUMBER | WTN# | SALES PERSON | CUSTOMER # | TERMS | DATE |
|---|---|---|---|---|---|
| 36016 | 3698306 | Brent Henley | 362569 | Net | 10/11/07 |

***SOLD TO***
Post Parkside
Jay Jackson
425 East Central Blvd
Orlando, FL  32801

*** SHIP TO***
Post Parkside
Jay Jackson
425 East Central Blvd
Orlando, FL  32801

| | |
|---|---|
| *Total Sign Package | $ 810.00 |
| Material @ 50% | $ 255.00** |
| Labor/Services @ 50% | $ 150.00 |
| **Amount Now Due** | $ 405.00 |

**tax included – $255. material, $0.00 tax

*Please Note:
Pricing subject to required change orders due to variance in scope of work

**POST012521**



**INVOICE**

**INVOICE NO:**    07-246

**DATE:**    October 30, 2007                    6 NOV PM 12:31

**SOLD TO:**    Post Properties
                Attn: Keith Gibson
                4401 Northside Parkway, Suite 800
                Atlanta, GA  30327-3057

**REFERENCE:**    AKH #07141, Post Properties Grab Bars

For services rendered at the above referenced project as follows:

| | |
|---|---|
| ➢ Supervision | $  140.00 |
| ➢ Carpentry & Drywall Labor | 332.50 |
| ➢ Bath Accessories | 20.00 |
| ➢ | |
| ➢ Overhead & Profit 15% | 73.87 |
| ➢ | |

**Total now due**          $          **566.37**

**TERMS OF PAYMENT – 15 DAYS**
Net due 15 days from receipt of invoice
Subject to 1 1/2% Monthly/18% Per Annum Interest

*Parkside - FL*        WTN # 3870466

822 West Central Boulevard • Orlando, Florida 32805
Phone: 407-849-0436 • Fax: 407-849-0439 • www.akholcomb.com

POST012522



# DeNYSE SIGNS

5 NOV PM 3:36

**INVOICE**

Invoice Number: SI112971

Invoice Date: 11/02/07

Page: 1

Bill
To:  Post Properties
     Keith Gibson
     4401 Northside Parkway
     Suite 800
     Atlanta, GA  30327

Ship
To:  Post Parkside
     425 East Central Blvd
     Orlando, FL  32801

WTN# 3870313

| | |
|---|---|
| Customer ID | POSPARORL |
| P.O. Number | |
| P.O. Date | 09/29/07 |
| Our Order No. | |
| SalesPerson | Brent Henley |
| Job No. | 36016 |

| | |
|---|---|
| Ship Via | VENDORS TRUCK |
| Ship Date | |
| Install Date | |
| Due Date | 11/02/07 |
| Terms | C O D |

| Description | Quantity | Unit Price | Total Price |
|---|---|---|---|
| Post Parkside 6"x6" Handicap Access Sign 3/4" PVC Backer 6"x6" with Beveled Edge and 1/8" Aluminum Face Panel Painted with Vinyl Graphics. | 6 | 85.00 | 510.00 |
| Installation | 1 | 200.00 | 200.00 |
| Travel / Survey | 1 | 100.00 | 100.00 |
| NOTE: Please Delete the Info Below This Line Prior to Invoicing: | | | |
| Ship to DeNyse Signs | | | |
| 1372 North Goldenrod Road #23 | | | |
| Orlando, Florida 32807 | | | |
| Attn: Brent Henley | | | |
| Customer Deposit 10-23-07  ck#906427 | -1 | 405.00 | -405.00 |

| | | |
|---|---|---|
| Amount Subject to Sales Tax | | Invoice Total: | 810.00 |
| 0.00 | | Deposit: | -405.00 |
| | Sales Tax | Subtotal: | 405.00 |
| | Area Code | Tax: | 0.00 |
| | | Total: | 405.00 |

4521 Industrial Access Blvd. Douglasville, GA, 30134  770-942-0888  770-489-0934  www.denysesigns.com

**POST012523**



**Guardian Construction**
4210 Spring Valley Rd
Farmers Branch, TX 75244

Phone: 214-340-1819
Fax: 214-340-0333

3 JUL AM 8:13

# Invoice

| Date | Invoice # |
|------|-----------|
| 6/26/2007 | 3336 |

| Bill To |
|---------|
| Post Properties |
| One Riverside |
| 4401 Northside Parkway, Suite 800 |
| Atlanta, GA 30327 |

| P.O. No. | Terms | Project |
|----------|-------|---------|
| | | Post Square #07-4069 |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| 1 | Post Square | 275.00 | 275.00 |
| | Add 5' x 1' at Pool Area | | |

WTN # 3174611

| | Total | $275.00 |
|--|-------|---------|

POST012524

## Guardian Construction
4210 Spring Valley Rd
Farmers Branch, TX 75244

Phone: 214-340-1819
Fax: 214-340-0333

# Invoice

| Date | Invoice # |
|------|-----------|
| 6/13/2007 | 3303 |

**Bill To**

Post Properties
One Riverside
4401 Northside Parkway, Suite 800
Atlanta, GA 30327

| P.O. No. | Terms | Project |
|----------|-------|---------|
| WTN 3081753 | | #07-4033 Post Vintage |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| 1 | Brick Pathway (Green) | | |
| 1 | Brick Pathway (Green) | 675.00 | 675.00 |
| 1 | Sidewalk Removal and Install of Concrete (brick salvage) | 1,215.00 | 1,215.00 |
| 1 | 2nd Level H/C Striping | 2,228.00 | 2,228.00 |
| 1 | Thresholds | 725.00 | 725.00 |
| 1 | Laundry Room (Green) | 1,200.00 | 1,200.00 |
| 1 | Brick Pathway (Gray) | 1,220.00 | 1,220.00 |
| 1 | Laundry Room (Gray) | 325.00 | 325.00 |
| 1 | Brick Pathway (Gray) | 550.00 | 550.00 |
| | | 1,350.00 | 1,350.00 |

Thank you for your business.

| **Total** | **$9,488.00** |
|-----------|-----------|

POST012525

# Guardian Construction

## Invoice

4210 Spring Valley Rd
Farmers Branch, TX 75244

Phone: 214-340-1819
Fax: 214-340-0333

19 JUN AM 7:10

| Date | Invoice # |
|------|-----------|
| 6/13/2007 | 3302 |

**Bill To**

Post Vinyard
Attn: Accounts Payable
3096 N. Hall Street Ste. 173
Dallas, TX 75204

| P.O. No. | Terms | Project |
|----------|-------|---------|
| WIN 3081758 | | Post Vinyard |

| Quantity | Description | | Rate | Amount |
|----------|-------------|---|------|--------|
| 1 | 3 Trash shoot Parking Space Modifications | | 650.00 | 650.00 |
| 1 | 2 Walkways Portland io | | 750.00 | 750.00 |
| 1 | 1 Gate Modification | | 1,220.00 | 1,220.00 |
| 1 | Threshold repair work | | 1,440.00 | 1,440.00 |

Thank you for your business.

**Total**          $4,060.00

POST012526



## Guardian Construction
4210 Spring Valley Rd
Farmers Branch, TX 75244

Phone: 214-340-1819
Fax: 214-340-0333

# Invoice

| Date | Invoice # |
|------|-----------|
| 6.26.2007 | 3337 |

**Bill To**

Post Properties
One Riverside
4401 Northside Parkway, Suite 800
Atlanta, GA 30327

| P.O. No. | Terms | Project |
|----------|-------|---------|
|          |       | Post Vintage |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| 1 | Post Vintage<br>RE-work 4x6 pavers at gate by pool | 1,120.00 | 1,120.00 |

WTN# 3174613

Thank you for your business.

| **Total** | $1,120.00 |
|-----------|-----------|

POST012527

# S & B Gateworks and Welding, Inc.



S & B Gateworks and Welding Inc
5408 Fox Run Dr
Attn Scott Purvis
Watauga, TX  76137

(817) 498-2506 x1

## Invoice

| DATE | INVOICE # |
|------|-----------|
| 07/11/2007 | 1920 |

| TERMS | DUE DATE |
|-------|----------|
| Net 30 | 08/10/2007 |

BILL TO:
Post-Apartment Homes

| | REP |
|---|---|
| | Scott |

| DESCRIPTION | AMOUNT |
|-------------|--------|
| • Install T.A.C. stand at the Vintage as per Briian. Dig trench and install conduit run. | 453.16 |

*E-MAIL —*
*BRIAN —*
*WTN +S*
*VINEYARD*

*PER BRIAN THIS IS FOR*
*VINEYARD — ERROR ON INVOICE TYPO*
*CBW 7/7/07*

| | |
|---|---|
| SUBTOTAL | $453.16 |
| TAX (8.25%) | $0.00 |

POST012528

Tru Service, Inc.

2412 Shelden Drive
McKinney, Texas 75070

# Invoice

| Date | Invoice # |
|------|-----------|
| 9/11/2007 | 771 |

| Bill To |
|---------|
| Post Properties<br>5040 Addison Circle<br>suite 200<br>Addison, TX 75001 |

SEP 11 2007

| P.O. No. | Terms | Project |
|----------|-------|---------|
| | Due on receipt | |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| 1 | Install Conduit and new Teleentry wiring for ADA Job | 1,000.00 | 1,000.00 |

WTN # 377 84

*[signature]* 9/11/07

| | **Total** | $1,000.00 |
|--|-----------|-----------|

POST012529

Tru Service, Inc.

2412 Shelden Drive
McKinney, Texas 75070

# Invoice

| Date | Invoice # |
|------|-----------|
| 9/24/2007 | 777 |

**Bill To**

Post Properties
5040 Addison Circle
suite 200
Addison, TX 75001

28 SEP AM 9:25

| P.O. No. | Terms | Project |
|----------|-------|---------|
| 3622678 | Due on receipt | |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| | Post Vineyard Pulled wire into new Tel entry and mount Tel entry on sidewalk post. also cut in existing Tel entry. | 800.00 | 800.00 |

*[signature]*
9/26/07

| | Total | $800.00 |
|--|-------|---------|

POST012530



214.340.1819
214.340.0333 Fax
6780 Abrams Rd. Ste. 103-215
Dallas, TX 75231
email: support@guardianconst.com

23 JUL AM 9:22

**INVOICE**
Post Heights                                                12/18/06
3015 State Street #111
Dallas TX 75204

RE: Fair Housing Act work          WTN # 3264814

Our Job # 06-3117                  (K) 7/20/07
Our Invoice #2650

The following invoice is for the work completed at the above
referenced property. If you should have any questions please contact
us.

Bid #06-4611
Total for work completed                    $2,910.00


**Final Total Due**                         $2910.00




Thank you for your on going support.

Jason Small
Guardian Construction

**Please make checks payable to "GUARDIAN CONSTRUCTION"


_The best thing to happen in the industry since the hammer met the nail._

**POST012531**



214.340.1819
214.340.0333 Fax
4210 Spring Valley Road
Farmers Branch, Texas 75244
email: support@guardianconst.com

POST HEIGHTS                                                    #06-4611

## SCOPE OF WORK – #3029

- Remove 2 transitions one at entry from kitchen to living and from living to bathroom
- Taper existing wood from ¼ x ¾" on and angle to allow for access by wheelchair.
- Re-install wood. Apply sealer.
- Remove and flip one door leading into bathroom. Reuse all material.
- At wall between bathroom and closet, remove wall and relocate to a finished measurement of 48" from bath tub wall.
- Relocate cable, phone, electrical as needed. (based on visual in this unit others may vary.)
- Relocate 1 sprinkler head.
- Tape bed & texture wall. Reuse trim. Paint only affected work.
- Note: flooring to be handled by others.
- Clean up mess and haul off debris.
- 3 days to complete work per unit.
- Remove wood threshold as needed leading into unit and taper and re-install.
- Clean up mess and haul off debris.

## SCOPE OF WORK –#3030

- Remove and flip one door leading into bathroom. Reuse all material.
- Remove 2 transitions one at entry from kitchen to living and from living to bathroom
- Taper existing wood from ¼ x ¾" on and angle to allow for access by wheelchair.
- Re-install wood. Apply sealer.
- Note: flooring to be handled by others.
- Clean up mess and haul off debris.
- 1 day to complete work per unit.
- Remove wood threshold as needed leading into unit and taper and re-install.
- Clean up mess and haul off debris.

POST012532



214.340.1819
214.340.0333 Fax
4210 Spring Valley Road
Farmers Branch, Texas 75244
email: support@guardianconst.com

Post Heights
AGREEMENT                                                    #06-4611

GUARDIAN CONSTRUCTION AGREES TO PERFORM AND FURNISH ALL ITEMS DETAILED IN THIS SCOPE

FOR THE SUM OF:                                             $2,910.00

LINE ITEM COST

Total for 3029                                             $2,250.00
Total for 3030                                             $660.00


Note: we plan to use the spare material in Janitor room as needed for transitions.

WARRANTY

1 year labor warranty on all workmanship.
All work specified will include materials, taxes, insurance, and labor necessary to complete the
provided scope of work.


EXCLUSIONS

Guardian Construction cannot be held responsible for delays attributed to weather, material
supplier delays, and other acts of nature
Any work above and beyond the scope of work.


TERMS AND CONDITIONS

Payment terms to be agreed upon prior to start of project
Retention of due within 30 days of completion of punch list items.
This bid may be withdrawn if not accepted in 30 days.


SERVICE AGREEMENT

POST HEIGHTS

ACCEPTED BY: _____

TITLE: _____

DATE: _____

GUARDIAN CONSTRUCTION REPRESENTATIVE:

Submitted by: Bill Holcomb


POST012533

Tru Service, Inc.

2412 Shelden Drive
McKinney, Texas 75070

# Invoice

| Date | Invoice # |
|------|-----------|
| 9/24/2007 | 778 |

28 5EP AM 9:25

| Bill To |
|---------|
| Post Properties |
| 5040 Addison Circle |
| suite 200 |
| Addison, TX 75001 |

| P.O. No. | Terms | Project |
|----------|-------|---------|
| 3622705 | Due on receipt | |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| | Post Addison Circle building M. installed new wiring and mount Tel entry | 800.00 | 800.00 |

| | Total | $800.00 |
|---|-------|---------|

9/20/07

POST012534

# S & B Gateworks and Welding, Inc.

S & B Gateworks and Welding Inc
5408 Fox Run Dr
Attn Scott Purvis
Watauga, TX, 76137

(817) 498-2506 x1

## Invoice

| DATE | INVOICE # |
|------|-----------|
| 10/11/2007 | 1999 |
| TERMS | DUE DATE |
| Net 30 | 11/10/2007 |

WTN# 3730257

22 OCT AM 9:29

**BILL TO**

Post Apartment Homes

| | Sales Rep |
|---|---|
| | Scott |
| Activity | Amount |
| Relocate existing ped. gate as per ADA. Refabricate enclosure. Hang gate on new 5" block hinges. Paint black | 2,432.89 |

*[signature]* 10/12/07

| | |
|---|---|
| SUBTOTAL | $2,432.89 |
| TAX (8.25%) | $0.00 |
| TOTAL | $2,432.89 |

POST012535



## Worthington Constructors Inc.
5616 Edgemoore Drive
Houston, TX 77081

# Invoice

| Date | Invoice # |
|------|-----------|
| 5/1/2007 | 2176 |

| Bill To | Ship To |
|---------|---------|
| Post Apartments Homes, LP<br>Attn:AP Department<br>4401 Northside Pkwy., Ste. 800<br>Atlanta, GA 30327 | Post Properties Apartments Midtown<br>302 Gray Avenue<br>Houston, Tx 77002<br>WTN#2823228 |

| P.O. No. | Terms | Project |
|----------|-------|---------|
|  |  | Post ADA RAMPS |

| Description | Qty | Rate | Amount |
|-------------|-----|------|--------|
| Remove the existing brick pavers, around the (5) new concrete ADA ramps, re-level the sub-grade and reinstall the removed brick pavers. |  | 1,475.00 | 1,475.00T |

Our vendor # is 323526
WTN#2823228

Thank you for your business

| | |
|---|---|
| Subtotal | $1,475.00 |
| Sales Tax (8.25%) | $121.69 |
| Total | $1,596.69 |
| Balance Due | $1,596.69 |

| Phone# | Fax # | E- mail | Web Site |
|--------|-------|---------|----------|
| (713) 660-6666 | (713) 660-8323 | WorthingtonCompany@sbcglobal.net | www.worthingtonconstructors.com |

POST012536



**Miller Construction Services**
1000 Parkwood Circle
Suite 230
Atlanta          GA  30339-
(770) 388-9007  **Phone**
(770) 388-2056  **Fax**

# INVOICE

Invoice No: 7145.1
Date: 8/9/2007
Due Date: 8/9/2007

**Bill To:**

Post Porperties
4401 Northside Pkwy.
Atlanta          GA  30327-

Job No: 7145
Description: Post Forest
PO #:



| Description | Extended Price | Comment |
|---|---|---|
| 100% Completion per contract | 2,040.00 | |

| | | |
|---|---|---|
| Thank You For Your Business! | Less Retainage | 0.00 |
| Terms: Net 21 | Amount Due | 2,040.00 |

POST012537

## Miller Construction Services, Inc.
1306 Olympic Court, Conyers, GA 30012
Phone 770-388-9007 Toll Free Phone: 877-224-584 Fax 770-388-0256

### PROPOSAL

**PROPOSAL #:** 07145
**DATE:** 5/25/07
**PROJECT:** Post Forest
**LOCATION:** 1210 Pine Forest Circle.
Fairfax, VA 22030

**TO:** Post Properties, Inc.
4401 Northside Parkway #800
Atlant, Ga. 30327
Phone:    703-968-7678
Fax:      703-968-6774
Attn:     Marty Martel

The undersigned proposes to furnish all materials and necessary equipment and perform all labor necessary to complete the following work:

| DESCRIPTION | COST |
|---|---|
| Remove existing concrete curb and asphalt sidewalk. | $  2,040.00 |
| Replace with concrete curb ramp. | |
| Install drainage pipe along gutter path to allow proper site drainage. | |
| **Total Proposal: $** | **2,040.00** |

*Note:  Work may require full removal and chimney rebuild at an additional cost to be determined*
**Note: The price quoted in this proposal is for the scope of work described above and is valid for 30 days from date of proposal.  Any modifications to this proposal may warrant a price alteration. After 30 days, Miller Construction Services, Inc. reserves the right to renegotiate.*

All of the above work to be completed in a substantial and workmanlike manner.  Any alteration or deviation from the plans and specifications will be executed only upon written orders for same.  All agreements must be in writing.

*Respectfully Submitted,*

Contractor:     Miller Construction Services, Inc.

By: Nathan Millard

### ACCEPTANCE

You are hereby authorized to furnish all material, equipment and labor required to complete the work described in the above proposal for which the undersigned agrees to pay the amount stated in said proposal and according to the terms thereof.

3/15/2007
Date:

POST012538

# EXHIBIT D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| EQUAL RIGHTS CENTER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case. No. 1:06CV01991 |
| | ) | Judge Richard J. Leon |
| POST PROPERTIES, INC. | ) | |
| POST GP HOLDINGS, INC. | ) | |
| POST APARTMENT HOMES, L.P. | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS' RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES AND WRITTEN RESPONSES TO PLAINTIFF'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS

Defendants Post Properties, Inc., Post GP Holdings, Inc., and Post Apartment Homes, L.P. (collectively "Post"), by undersigned counsel, hereby submit this response to Plaintiff's First Set of Interrogatories and written response to Plaintiff's Second Request for Production of Documents.

### GENERAL OBJECTIONS

1.      Post objects to Plaintiff's interrogatories and document requests, including the definitions and instructions, to the extent they (a) contain requests that exceed the scope and requirements of the applicable federal and local rules and (b) purport to require discovery not provided for by these rules, including, but not limited to discovery on subjects not at issue in this case.

2.      Post objects to each interrogatory and document request to the extent they seek information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other rule of privilege or confidentiality provided by law.

3.      Post objects to Plaintiff's interrogatories and document requests insofar as they are duplicative, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

4.      Post objects to Plaintiff's interrogatories and document requests to the extent they require Post to provide information or identify documents already known to or in the possession of Plaintiff or its agents.

5.      In responding to these interrogatories and document requests, Post does not waive the foregoing objections, nor the specific objections that are set forth in the responses to particular interrogatories and document requests. By making its responses, Post does not concede that the information or documents requested is relevant to this action or is calculated to lead to the discovery of admissible evidence. Post expressly reserves the right to object to further discovery into the subject matter of any of these interrogatories or document requests, to the introduction into evidence of any response or portion thereof, and to supplement its responses should further investigation disclose responsive information or documents.

## SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES

1.      Identify each person who provided information or documents to assist in answering these interrogatories and, for each person, state with which interrogatories they assisted.

**Response:** Subject to and without waiving any general or specific objection, Post states that Dayna Boone provided information for Interrogatory Nos. 2, 3, 4, and 5; Keith Gibson, Lori Addicks and Glen Austin provided information for Interrogatory Nos. 9 & 10; and Donna Williams, Chris Papavasilo, Carol Wolff, Susan Kabe, Sherri Cohen, and Glen Smith generally provided information that relates to multiple responses.

2.      Identify each multifamily housing complex (whether apartment or condominium), including those currently under construction, and including but not limited to the Subject

Properties, whether garden-style or high-rise, designed and constructed for first occupancy after March 13, 1991, or for which the last building permit was issued, or renewed by a state, county or local government, after June 15, 1990, in which you have ever held, directly or indirectly, any ownership interest, or in which you participated, in any way, in the design or construction of the complex.

**Specific Objection:** Post objects to Interrogatory No. 2 because it is duplicative of information already provided to Plaintiff at the deposition of Dayna Boone.

**Response:** Subject to and without waiving any general or specific objection, a list of Post's currently owned apartment properties, which were designed and constructed after March 13, 1991 or for which the last building permit was issued after June 15, 1990, is attached hereto as Exhibit A. Exhibit A contains the project name, date acquired, date of first occupancy, and owner. A list of those properties currently under construction is attached hereto as Exhibit B. Post refers Plaintiff to Interrogatory Response No. 5 for information as to properties Post no longer owns.

3.     Identify each multi-family property owned in whole or in part by you since March 13, 1991 to which you have added four or more new units, and with respect to each such property, identify each and every person employed by you who is participating, or did participate in the design and construction of said new units, including any architect, engineer, building, contractor (both general contractors and subcontractors), or designer that was involved in the process of the design and construction of any of such units. (You need not identify individuals who functioned solely as laborers or craftspeople.)

**Specific Objection:** Post objects to Interrogatory No. 3 because it is duplicative of information already provided to Plaintiff at the deposition of Dayna Boone.

**Response:** Subject to and without waiving any general or specific objection, Post Ballantyne is the only property to which Post has added four or more new units to an existing structure. For information as to the persons employed by Post who participated in the design and construction of Post Ballantyne, see Exhibits 4, 9 & 10 to the deposition of Dayna Boone as well as the supplemental information that was produced on September 18, 2007.

3

4.     Identify each person, whether employed by you or not, and including but not limited to architects, design professionals, engineers, builders, and contractors (both general contractors and subcontractors), who were involved in the process of the design or construction of any of the Subject Properties, or other properties identified by you herein. For each person or entity identified, provide their last known address, telephone number, the identity of which specific property or properties they had an involvement in the design or construction, dates of employment or retention, and a description of their involvement in the design or construction of each property. (You need not identify individuals who functioned solely as laborers or craftspeople.)

**Specific Objection:** Post objects to Interrogatory No. 4 to the extent that it is duplicative of information already provided to Plaintiff at the deposition of Dayna Boone. Post also objects to this Interrogatory because it seeks information that is irrelevant to the issues raised in the litigation and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, the dates of employment or retention of Post's employees are irrelevant to Plaintiff's claims, which are related to FHA compliance.

**Response:** Subject to and without waiving any general or specific objection, Post refers Plaintiff to the list of Post employees which was provided to Plaintiff at the deposition of Dayna Boone (*see* Dep. Exs. 9 & 10). This list identifies whether an employee was involved in design or construction by way of identifying the department for which the employee worked. Post is unable to distinguish among its employees in terms of the exact extent of involvement in the construction or design of any specific properties. As indicated during the Boone deposition, Post uses a team approach for the development of its properties, and employees work on multiple projects and have alternate roles. As to outside design professionals, Post refers Plaintiff to the information and lists provided to Plaintiff at the deposition of Dayna Boone (*see, e.g.*, Dep. Ex. 4) as well as the supplemental information that was produced on September 18, 2007.

5.     For each Subject Property or other property identified herein, for which you have divested yourself of any ownership interest, identify when you divested yourself of your interest,

to whom you conveyed the interest, the compensation received by your for the transfer of said interest, and any provision in governing divestiture agreements relating to any obligation to, or liability for, compliance with the FHA or the ADA, or any local accessibility code or regulation. If record title to any of the Subject Properties, or other properties identified by you herein, is held in the name of any entity owned or controlled, (directly or indirectly) in whole or in part, by you, identify that entity, its officers, directors, shareholders, unit holders, members and managers.

**Specific Objections:** Post objects to Interrogatory No. 5 to the extent that it is duplicative of information already provided to Plaintiff at the deposition of Dayna Boone. Post also objects to this Interrogatory because it seeks information that is irrelevant to the issues raised in the litigation and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, the compensation received by Post for the transfer of said interest is irrelevant to Plaintiff's claims, which are related to FHA compliance.

**Response:** Subject to and without waiving any general or specific objection, a list of properties Post has sold since the IPO in 1993 is attached as Exhibit C. This list does not include properties for which Post has divested a less than 100% interest. Exhibit C includes the property name, the date acquired, the date of first occupancy, the date sold, and the buyer. As to information regarding divestiture agreements, Post will produce to the ERC relevant non-privileged documents in Post's closing binders as they are kept in the normal course of business at Post's offices. Additionally, a list of sales in condominium projects is attached at Exhibit D. Exhibit D includes the name of the condominium project, the date the project was acquired, the date of first occupancy, the date sold, and the buyer. As to information regarding the record owner of each property, Post has already provided to Plaintiff this information at the deposition of Dayna Boone (*see, e.g.*, Dep. Ex. 5).

6.     Identify each of the Subject Properties, or other properties identified by you herein, whose public or common areas fail to meet the accessibility requirements of the ADA, and fully describe each such failure in detail.

5

**Specific Objections:** Post objects to Interrogatory No. 6 because it seeks privileged

information. Post will not produce any information as to opinions and advice it has received

from its attorneys; nor will it produce any information as to opinions and advice that were

prepared in anticipation of litigation. Post further objects to this Interrogatory to the extent that it

seeks a legal conclusion and includes an underlying legal premise or assumption that Post has

properties where public or common areas fail to meet the accessibility requirements of the ADA.

Additionally, Post objects because this Interrogatory is vague, over broad, and unduly

burdensome. Finally, Post objects because Plaintiff has the ability to obtain the requested

information itself and in fact has had the opportunity to inspect Post's properties pursuant to the

discovery process, and during its "testing" of Post's properties.

     7.     With respect to the Subject Properties, and any other properties identified by your
herein, identify each covered multi-family dwelling, including those currently under
construction, by community name, street address, and unit number, that contains any of the
following: common or public use areas that are not on an "accessible route" as that term is denied
in Chapter 2 of the FHA Design Manual as published by the United States Department of
Housing and Urban Development; handicapped parking spaces of less than 96" in width; steps or
stairs in front of entry ways in common or public use areas, or at the entry way to any covered
multi-family dwelling; fire alarm pulls whose lowest operable part is higher than 48" above the
finished floor; light switches, thermostats or other environmental controls whose lowest operable
part is higher than 48" above the finished floor; interior or exterior door thresholds (including
sliding doors) higher than ¼" or ½" if beveled; clear floor space centered in front of any
bathroom sink, toilet or tub of less than 30" x 48" (outside the swing of the door as it is closed),
and one of the three clear floor spaces identified in Chapter 7B of the FHA Design Manual as
published by the United States Department of Housing and Urban Development; clear floor
space in kitchen of less than 30" x 48" centered at each fixture and appliance, or less than a 40"
distance between opposable elements, or, in any "U" shaped kitchen, a 60" diameter turning
circle at the base of the "U"; or exterior doors of less than 32" in width at their narrowest point,
or interior doors of less than 31 ½in width at their narrowest point.

**Specific Objections:** Post objects to Interrogatory No. 7 because it seeks privileged

information. Post will not produce any information as to opinions and advice it has received

from its attorneys; nor will it produce any information as to opinions and advice that were

prepared in anticipation of litigation. Post further objects to this Interrogatory to the extent that it

seeks a legal conclusion and includes an underlying legal premise or assumption that Post has

properties with elements that fail to comply with the FHA. Additionally, Post objects because

this Interrogatory is vague, over broad, and unduly burdensome. Finally, Post objects because

Plaintiff has the ability to obtain the requested information itself and in fact has had the

opportunity to inspect Post's properties pursuant to the discovery process, and during its "testing"

of Post's properties.

8.      With respect to each of the units identified by your in response to Interrogatory
No. 7, state (a) the specific HUD Guideline or FHA recognized safe harbor, with which you
assert that unit or area complies, or (b) if you do not claim it otherwise meets the requirements of
42 U.S.C. § 3604(f)(3)(C), describe how your contend that it meets the accessibility
requirements of the FHA.

**Specific Objections:** Post objects to Interrogatory No. 8 because it seeks privileged

information. Post will not produce any information as to opinions and advice it has received

from its attorneys; nor will it produce any information as to opinions and advice that were

prepared in anticipation of litigation. Post further objects to this Interrogatory to the extent that it

seeks a legal conclusion and includes an underlying legal premise or assumption that Post has

properties with elements that fail to comply with the FHA. Additionally, Post objects because

this Interrogatory is vague, over broad, and unduly burdensome. Finally, Post objects because

Plaintiff has the ability to obtain the requested information itself and in fact has had the

opportunity to inspect Post's properties pursuant to the discovery process, and during its "testing"

of Post's properties.

9.      Identify each instance, and all documents related thereto, in which you, or anyone
on your behalf, or anyone who was an employee at the time, made or gave any written opinion,
testimony, or presentation relating in any way to the accessibility requirements of the FHA or
ADA.

**Specific Objection:** Post objects to Interrogatory No. 9 because it seeks privileged information. Post will not produce any information as to opinions and advice it has received from its attorneys; nor will it produce any information as to opinions and advice that were prepared in anticipation of litigation. Interrogatory No. 9 is also vague, over broad, and unduly burdensome. Finally, Post objects to this Interrogatory to the extent that it seeks a legal conclusion and includes an underlying legal premise that there are *specific* accessibility design requirements under the FHA.

**Response:** Subject to and without waiving any general or specific objection, Post states that documents showing various presentations by and for Post employees is attached are as Exhibit E. Although, Post does not have records of each and every presentation given related to the Fair Housing Act, Exhibit E provides a representative example.

      10.     Identify each workshop, seminar, symposium, class, trade event, or meeting of any kind attended by any of your employees, the subject of which, in whole or in part, was compliance with the design and construction requirements of Section 3604(f)(3)(c) of the FHA, or the ADA and identify all documents obtained by your employees at such workshop, seminar, symposium, class, trade event, or meeting.

**Specific Objections:** Interrogatory No. 10 is vague, over broad, and unduly burdensome. Post currently has approximately 850 employees and at one time had approximately 2,000 employees. Post's employees have a natural level of turnover and no records exist as to each workshop, seminar, symposium, class, trade event, and meeting attended by each Post employee.

**Response:** Subject to and without waiving any general or specific objection, Post states that Exhibit E attached hereto includes a representative example of workshops, seminars, symposiums, classes, trade events, and meetings attended by Post employees.

8

11.     Identify any document that relates or refers to the estimated cost of compliance by you with the design and construction requirements of Section 3604(f)(3)(c) of the FHA, and describe any action(s), if any, taken by you as result thereof.

**Specific Objections:**  Post objects to Interrogatory No. 11 because it is vague, over broad, and

unduly burdensome.  Post objects also to the extent that this Interrogatory seeks a legal

conclusion and includes an underlying legal premise that there are *specific* accessibility design

requirements under the FHA.

**Response:**  Subject to and without waiving any general or specific objection, Post refers Plaintiff

to the information and invoices regarding retrofits related to FHA compliance that were provided

to Plaintiff at the deposition of Dayna Boone (*see* Dep. Exs. 7 & 8).  Post further notes that this

information is not kept in the manner suggested by Plaintiff in that Post does not specifically

break out and record the cost of compliance with the design and construction requirements or

provisions of the FHA, or the ADA, at the Subject Properties but rather it is part of the overall

cost of construction and design.

12.     If, with respect to each of the Subject Properties, and other properties identified by you herein, you have ever made any effort to comply with the requirements of Section 3604(f)(3)(c) of the FHA, describe for each such property, all such efforts including: the identity of the person(s) reviewing each such property (or the plans for the property) for compliance on your behalf; the date(s) such reviews took place; what action was taken as a result of such reviews; and the cost of any such action.

**Specific Objection:**  Post objects to Interrogatory No. 12 to the extent that it seeks a legal

conclusion and includes an underlying legal premise that there are *specific* accessibility design

requirements under the FHA.  Additionally, Post objects to Interrogatory No. 12 because it seeks

privileged information.  Any actions taken as a result of a review by Post's attorneys is covered

by attorney-client privilege.

9

**Response:** Subject to and without waiving any general or specific objection, Post states that it regularly consults its design professionals and other experts throughout the development process for each of its properties to ensure compliance with all federal, state, and local accessibility codes and laws. Moreover, Post's team approach to development allows for multiple reviews of development plans and properties during the development process by various Post employees to ensure compliance with all federal, state, and local accessibility codes and laws. The individuals involved in this process were disclosed at the deposition of Dayna Boone (*see, e.g.,* Dep. Exs. 4, 9 & 10).

13.    Since the filing of the Complaint in this litigation, identify each action you have taken to evaluate your compliance with the accessibility requirements of the FHA and/or ADA, the persons involved in such actions or evaluations, and describe any alterations, repairs, retrofits or other remedial actions taken by you at each of Subject Properties or other covered properties identified by you herein, including both the pre-existing conditions (including measurements) and the post-alteration conditions (including measurements) of the affected areas.

**Specific Objection:** Post objects to Interrogatory No. 13 because it is duplicative of information already provided to Plaintiff at the deposition of Dayna Boone and duplicative of other interrogatories in this same request. Additionally, Post objects to Interrogatory No. 13 because it seeks privileged information. Any evaluations by Post's attorneys, or actions taken as a result those evaluations are covered by attorney-client privilege. Finally, Post objects to Interrogatory No. 13 to the extent that it seeks a legal conclusion and includes an underlying legal premise that there are *specific* accessibility design requirements under the FHA.

**Response:** Subject to and without waiving any general or specific objection, Post refers Plaintiff to the information and invoices regarding construction activities that were provided to Plaintiff at the deposition of Dayna Boone (*see* Exs. 7 & 8). Additionally, as to Post's evaluation of compliance with accessibility requirements, Post regularly consults with its design

10

professionals and other experts throughout the development process and employs a team

approach, which allows for multiple reviews of development plans and properties during the

development process by various Post employees to ensure compliance with all federal, state, and

local accessibility codes and laws.

14.    Identify any covered multi-family unit(s) at the Subject Properties, or other
properties identified by you herein, that were specifically designed and constructed so as to be
accessible to persons with mobility impairments under a standard other than the FHA (e.g.,
Uniform Building Code), stating which standard was used.

**Specific Objections:** Post objects to Interrogatory No. 14 because it is vague, unduly

burdensome, and seeks information that is irrelevant to the issues raised in the litigation and not

reasonably calculated to lead to the discovery of admissible evidence.

**Response:** Subject to and without waiving any general or specific objection, Post states that all

Post properties are designed to be accessible and to comply with all relevant federal, state and

local codes and laws.

15.    If you contend that any feature at any of the Subject Properties, or other properties
identified by you herein, is inaccessible or not adaptable for use by persons with disabilities
because of the actions or inactions of someone other than you, identify each such property, each
feature, each person whose action or inaction resulted in its being inaccessible or not adaptable
for use by persons with disabilities, and identify all facts and documents that support, refute, or
otherwise relate to your contention.

**Specific Objection:** Post objects to Interrogatory No. 15 because it is vague, overly broad, and

unduly burdensome. Post further objects because Interrogatory No. 15 seeks a legal conclusion

as to whether a property is inaccessible or not adaptable.

**Response:** Subject to and without waiving any general or specific objection, Post states that

although it does not contend that any features of any of the Subject Properties are inaccessible or

not adaptable, Post does rely on design professionals, such as architects, engineers and

11

contractors, in the design and construction of its Properties to ensure that all features are

accessible and adaptable for use by persons with disabilities.


16.     Identify each instance where, at the time of construction of any of the Subject
Properties or other properties identified by you herein, a claim of site impracticality was made by
you, and accepted by any regulatory authority as a basis to deviate from the accessibility
requirements of either the FHA or ADA and identify all documents that constitute, relate or refer
to such a claim.

**RESPONSE:** Subject to and without waiving any general or specific objection, Post is aware of

no instances where, at the time of construction of any Post properties, Post has made a claim of

site impracticality.


17.     For the time period March 13, 1991, to the present, identify each tenant at each of
the Subject Properties, or other properties identified by you herein, who used a wheelchair or had
any other mobility impairment, during any part of their tenancy. With respect to each such
tenant, identify the apartment by address and complex which they rented, the dates of their
tenancy, whether they made any complaint or request regarding accessibility or for a reasonable
accommodation in their apartment, the nature of said request or complaint, and describe any
resulting actions taken by you in response to each such complaint or request.

**Specific Objections:** Post objects to Interrogatory No. 17 to the extent that it assumes that Post

illegally profiles its tenants based on disability.   Furthermore, Post objects to Interrogatory 17 to

the extent that it seeks information that is irrelevant to the issues raised in this litigation and not

reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff's Complaint

focuses on the design and construction requirements of the FHA; any requests for reasonable

accommodations at Post properties are irrelevant to Plaintiff's allegations.  Nevertheless, Post

states that when and if reasonable accommodations are requested, Post complies will all

reasonable requests.

**Response:** Post does not profile its tenants.  Therefore, Post has no records from March 13,

1991, to the present from which it can identify tenants who are persons with disabilities, persons

12

who use wheelchairs, or persons who have mobility impairments.   However, due to Post's

interaction with its tenants, Post knows with certainty that some properties have tenants with

disabilities or mobility impairments and it is Post's belief that many of its properties have

tenants with disabilities or mobility impairments.

## WRITTEN RESPONSES TO SPECIFIC REQUESTS FOR PRODUCTION

1.    With respect to any of the Subject Properties, or any other property identified in
your responses to Plaintiff's First Set of Interrogatories, which you contend was acquired by your
after the complete of design and construction, all documents relating to the acquisition
transaction, including but not limited to, due diligence reviews and inspections, negotiations,
disclosures, and all closing documents as executed by the parties (including all exhibits,
schedules and documents incorporated by reference).

**Specific Objections:** Post objects to Document Request No. 1 because it is overly broad,

irrelevant, and seeks voluminous documents.  Plaintiff's requests for documents related to due

diligence reviews, negotiations, disclosures, and closing documents are irrelevant to the issues

raised in the litigation and not reasonably calculated to lead to the discovery of admissible

evidence.

**Response:** Subject to and without waiving any general or specific objection, Post states that

information as to the properties acquired by Post after the completion of design and construction

is included in Exhibits A, D, and C attached hereto.  Each exhibit includes a category "Date

Acquired" which refers to the acquisition date for either the structure or land as noted.  Post will

provide all relevant non-privileged documents related to its acquisitions as they are kept in the

normal course of business at Post's offices.

2.    All documents that constitute, relate or refer to any communication between you
and any architect, design professional, engineer, builder, or contractor that in any way discusses,
refers to, or relates to compliance with Section 3604(f)(3)(c) of the FHA or the ADA, in the
design and construction of any of the multifamily apartment complexes and dwellings at the

13

Subject Properties, or other properties identified in your responses to Plaintiff's First Set of Interrogatories.

**Specific Objections:** Post objects to Document Request No. 2 because it is over broad, unduly burdensome, and voluminous.

**Response:** Subject to and without waiving any general or specific objection, Post will produce all relevant non-privileged development plans and files related to its design professionals and the Subject Properties as they are kept in the normal course of business at Post's offices.

3.      All documents relating to or referring to any standard(s) for accessibility or adaptable design for individuals with disabilities that were actually used or consulted in the design and construction of each of the Subject Properties, or other properties identified in your responses to Plaintiff's First Set of Interrogatories.

**Specific Objections:** Post objects to Document Request No. 3 because it is over broad, unduly burdensome, and voluminous.

**Response:** Subject to and without waiving any general or specific objection, Post will produce all relevant non-privileged development plans and files related to its design professionals and the Subject Properties as they are kept in the normal course of business at Post's offices.  Examples of specific standards used or consulted are attached hereto as Exhibit F.

4.      All documents that relate or refer to the cost of compliance by your with the design and construction requirements of Section 3604(f)(3)(c) of the FHA, or the ADA, either in general, or with respect to any specific property.

**Specific Objections:** Post objects to Document Request No. 4 because it is duplicative of documents already provided to Plaintiff at the deposition of Dayna Boone.  Post further objects to the extent Document Request No. 4 seeks privileged information.  Post will not produce documents that are prepared in anticipation of litigation subject to the work product privilege.

14

**Response:** Subject to and without waiving any general or specific objection, Post states that it already provided to Plaintiff at the deposition of Dayna Boone information and invoices regarding retrofits related to FHA compliance (*see* Dep. Exs. 7 & 8). Post further notes that this information is not kept in the manner suggested by Plaintiff in that Post does not specifically break out and record the cost of compliance with the design and construction requirements or provisions of the FHA, or the ADA, at the Subject Properties but rather it is part of the overall cost of construction and design.

5.    All internal guidelines, policies, design manuals or drawings, practices and requirements for properties in which you hold any ownership interest that relate to:

    a.    The accessibility to persons with disabilities of public use and common use portions as well as housing units at your properties;

    b.    The creation of any architectural plans or any other type of design drawings by you for any of the Subject Properties, or any other properties identified herein.

    c.    Selection, retention, oversight or approval of any architect or other design professional (and their plans and design drawings) involved in the design or multi-family housing owned or controlled (directly or indirectly) by you;

    d.    Selection, retention, oversight or approval of any general contractor, construction comply, construction supervisor or foreman involved in the construction of multi-family housing owned or controlled (directly or indirectly) by you;

    e.    Procurement of any building materials or components used in the construction (including build out and final finish or multi-family housing owned or controlled (directly or indirectly) by you;

    f.    Quality control (including but not limited to on-site inspection) of construction of multi-family housing owned or controlled (directly or indirectly) by you;

    g.    Compliance with the accessibility requirements of the FHA and/or ADA at multi-family housing owned or controlled (directly or indirectly) by you;

    h.    The placement of electrical outlets, thermostats and other environmental controls;

    i.    The width of interior and exterior doors;

    j.    The use of sliding doors to patios or balconies;

    k.    The design of accessible routes to, into and through each dwelling;

    l.    Reinforcements in bathroom walls from grab bars; and

    m.    Design of kitchens and bathrooms so as to be accessible to person in wheelchairs.

**Specific Objection:** Post objects to Document Request No. 5 because it is over broad, unduly burdensome, and voluminous. Post further objects because Plaintiff seeks documents that are irrelevant to the issues raised in this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Post's procurement of building materials, quality control not related to FHA compliance, and the selection and retention of Post's architects and contractors have no relation to Plaintiff's claims regarding FHA compliance. Post also objects to Document Request No. 5 as duplicative of documents already provided to Plaintiff at the deposition of Dayna Boone. Finally, Post objects to the extent Document Request No. 5 seeks privileged information. Post will not produce documents that are protected by the attorney client privilege or those prepared in anticipation of litigation subject to the work product privilege.

**Response:** Subject to and without waiving any general or specific objection, Post refers Plaintiff to the FHA policies it produced to Plaintiff at the deposition of Dayna Boone (*see* Dep. Exs. 21 & 22). Post further states that attached as Exhibit G are Post's best practice manual and other relevant policies. Finally, Post states that there is no one person, or one document, or one place at Post, where all documents referring the FHA can be found; nor are documents kept specifically within the categories requested by Plaintiff in Document Request No. 5. Any additional responsive documents will be provided as they are kept in the normal course of business at Post's offices.

6.    All documents relating or referring to any complaint, whether informal, administrative or judicial, made to or against you, or any multifamily apartment complex or dwelling in which you held any ownership interest, the subject of which was compliance with the design and construction requirements of Section 3604(f)(3)(c) of the FHA, or the ADA or any request for a reasonable accommodation from a tenant with a disability at any such property.

16

**Specific Objections:** Post objects to Document Request No. 6 because Plaintiff seeks documents that are irrelevant to the issues raised in this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Post's involvement with complaints not brought forward in this particular litigation is not relevant to Plaintiff's claims and allegations in this litigation. Post also objects to the extent that Plaintiff requests documents that are protected by attorney-client and work product privilege.

**Response:** Subject to and without waiving any general or specific objection, Post states that a list of cases with which Post was involved was produced at the deposition of Dayna Boone (*see* Dep. Ex. 3). In addition, relevant non-privileged documents are attached hereto as Exhibit H.

7.      The Complaint, Petition or Charge, Post's response to the Complaint, Petition or Charge, and all documents evidencing any settlement or final disposition of any administrative or judicial complaint, notice of violation, citation, or notification or whatever nature from or to any state, district, or municipal authority relating to any alleged violations by you or any statute, code or ordinance against Post since March 13, 1991, and relating to any issue of accessibility at any multifamily housing property owned, in whole or in part, directly or indirectly, or managed by you.

**Specific Objections:** Post objects to Document Request No. 7 because Plaintiff seeks documents that are irrelevant to the issues raised in this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Post's involvement with Complaints other than the one brought in this particular litigation is not relevant to Plaintiff's claims and allegations in this litigation. Post further objects to Plaintiff's request for documents that are public records because Plaintiff can access those documents just as well as Post can. Post also objects because Document Request No. 7 seeks documents protected by attorney-client and work product privilege.

**Response:** Subject to and without waiving any general or specific objection, Post states that relevant non-privileged responsive documents are attached as Exhibit H.

17

8.     All documents constituting, referring to, or relating to, the design of each multifamily apartment complex and dwelling at the Subject Properties, or other properties identified in your responses to Plaintiff's First Set of Interrogatories, including, but not limited to, site plans, cutoff plans, sewer plans, erosion control plans, grading and drainage plans, building placement, building specifications, shop drawings, "as-built" drawings, and any other blueprints or plans, as well as Post Real Estate Team files and Post Legal Team Real Estate Files.

**Specific Objections:** Post objects to Document Request No. 8 because Plaintiff seeks documents that are irrelevant to the issues raised in this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Post's cutoff plans, sewer plans, and erosion control plans have no relevance to the issues raised in this litigation. In addition, Post objects because this document request is vague, over broad, unduly burdensome, and voluminous.

**Response:** Subject to and without waiving any general or specific objection, Post will produce relevant non-privileged site and development plans and files as they are kept in the normal course of business at Post's office.

9.     All documents relating to whether, or how, the construction of any of the multifamily apartment complexes and dwellings at the Subject Properties, or other properties identified in your responses to Plaintiff's First Set of Interrogatories deviate from your design.

**Specific Objections:** Post objects to Document Request No. 9 as vague, irrelevant, over broad, unduly burdensome, and voluminous.

**Response:** Subject to and without waiving any general or specific objection, Post states that it does not record exactly how or whether construction deviates from design; however, Post will produce relevant non-privileged site and development plans and files as they are kept in the normal course of business at Post's offices.

10.     All documents relating to any contention by you that any of the accessibility requirements of the FHA or ADA are not applicable at any of the Subject Properties, or any other properties identified in your response to Plaintiff's First Set of Interrogatories, based on site impracticality.

18

**Response:** Subject to and without waiving any general or specific objection, Post states that it is aware of no instances in which Post itself has made a claim of site impracticality.

11.    All documents referring or relating to the services that each architect, designer, engineer, builder, and contractor, provided or was to provide at each of the multifamily apartment complexes and dwellings at the Subject Properties, or other properties identified in your responses to Plaintiffs' First Set of Interrogatories. This request includes, but is no limited to, contracts and amendments thereto, change orders, correspondence, e-mails, memoranda of understanding, invoices and canceled checks reflecting payment for services rendered, as well as any complaint or demand by you relating to any alleged failure to perform by each such architect, designer, engineer, builder, and contractor.

**Specific Objections:** Post objects to Document Request No. 11 because it is over broad, unduly burdensome, and voluminous. Post further objects because Plaintiff seeks documents that are irrelevant to the issues raised in this litigation and not reasonably calculated to lead to the discovery of admissible evidence insofar as Plaintiff seeks documents that are not related to compliance with the FHA. Finally, Post objects to Document Request No. 11 as duplicative of documents already offered to Plaintiff.

**Response:** Subject to and without waiving any general or specific objection, Post will produce agreements and contracts with its design professionals as well as other relevant non-privileged files related to services provided by Post's design professionals and contractors as they are kept in the normal course of business at Post's offices.

12.    The complete development and construction files for each of the multifamily apartment complexes and dwellings at the Subject Properties, or other properties identified in your responses to Plaintiff's First Set of Interrogatories, including, but not limited to, correspondence, and communications between or among the architect(s), engineers(s), builder(s), owner(s), permitting authorities, and any other entity or individual with input in, or control over, the design process.

**Specific Objections:** Post objects to Document Request No. 12 because it is over broad, unduly burdensome, and voluminous. Post further objects because Plaintiff seeks documents that are

irrelevant to the issues raised in this litigation and not reasonably calculated to lead to the

discovery of admissible evidence insofar as Plaintiff seeks documents that are not related to

compliance with the FHA.

**Response:** Subject to and without waiving any general or specific objection, Post will produce

agreements and contracts with its design professionals and contractors as well as other relevant

non-privileged files related to services provided by Post's design professionals and contractors as

they are kept in the normal course of business at Post's offices.

      13.    Any document provided by any regulatory authority that your contend
demonstrates your compliance with the accessibility requirements of the FHA and/or ADA at
any of the Subject Properties, or any other property identified by you in your responses to
Plaintiff's First Set of Interrogatories.

**Response:** Subject to and without waiving any general or specific objection, Post states that no

such documents exist.

      14.    All documents to all persons who has any role in the design or construction of any
of the multifamily apartment complexes and dwellings at the Subject Properties, or other
properties identified in your responses to Plaintiff's First Set of Interrogatories, including but not
limited to, their personnel files.

**Specific Objections:** Post objects to Document Request No. 14 because it is vague, over broad,

unduly burdensome, and voluminous. Plaintiff's request for *all* documents to *all* persons who

had *any* role in the design or construction of *any* multifamily apartment complexes is clearly

unreasonable and impossibly nonspecific.

**Response:** Subject to and without waiving any general or specific objection, Post refers Plaintiff

to the documents produced or to be produced in the normal course of business pursuant to

Document Request Nos. 2, 8, 9, 11 and 12.

15.    All documents relating to each policy of liability insurance, reinsurance or excess liability insurance under which any insurance business may have a duty to defend you in this action, may be liable to satisfy part or all of a judgment that may be entered against you in this action, or may be liable to indemnify or reimburse you for payments made to satisfy such judgment.

**Specific Objections:** Post object to Document Request No. 15 because it seeks information

subject to attorney-client privilege.

**Response:** Subject to and without waiving any general or specific objections, Post states that a

copy of its insurance policy is attached as Exhibit I.


16.    If you are seeking indemnification or contribution from any person or entity, in whole or in party, for any damages of the cost of other relief (including retrofitting) claim by Plaintiff in this action or any costs which you may incur as a result of this litigation, including attorneys' fees, provide all documents that constitute, relate, refer to or support your claims of indemnification or contribution.

**Specific Objections:** Post objects to Document Request. No. 16 because it seeks a legal

conclusion and includes an underlying legal premise that indemnification would actually be

necessary.  To the extent that indemnification would be necessary, though Post maintains that it

would not be necessary, Post objects to the Document Request based on attorney-client privilege.

Finally, Post objects because Plaintiff seeks documents that are irrelevant to the issues raised in

this litigation and not reasonably calculated to lead to the discovery of admissible evidence.

Indemnification or contribution would be proceedings to which Plaintiff would not be a party.


17.    All documents that constitute, relate or refer to any training, guidance, conferences, workshops, or instruction regarding compliance with the FHA, the ADA, access for persons with disabilities, or the design and construction of covered multifamily dwellings under the FHA or ADA, provided to you or any of your employees, agents or contractors by any governmental agency or trade association or organization.

**Specific Objections:** Post objects to Document Request No. 17 because it is vague, over broad,

unduly burdensome, and voluminous.

**Response:** Subject to and without waiving any general or specific objection, Post refers Plaintiff

to Exhibit E attached hereto.

18.    All documents that constitute, relate to or refer to any training, guidance or
instruction regarding compliance with the FHA or the ADA provided by you to any or
employees, agents or contractors.

**Specific Objections:** Post objects to Document Request No. 18 because it is vague, over broad,

unduly burdensome, and voluminous.  Post further objects based on attorney-client privilege to

the extent Plaintiff seeks documents related to guidance and instruction from Post's attorneys.

**Response:** Subject to and without waiving any general or specific objection, Post refers Plaintiff

to Exhibit E attached hereto.

19.    All documents received from HUD or from any other federal, state, or local
government agency, which refer or relate to the requirements of subsection 804(f)(3)(C) of the
FHA, 42 U.S.C. § 3604(f)(3)(C), of the ADA, or which reflect any contact with the federal, state,
or local government agency regarding those requirements.

**Response:** Subject to and without waiving any general or specific objection, Post will produce to

Plaintiff any such documents received from HUD or from any other federal, state, or local

government agency as they are kept in the normal course of business at Post's offices.

20.    To the extent not provided in response to a prior request for production, all
documents that relate to any application of the FHA or the ADA to the design or construction of
the multifamily apartment complexes and dwellings identified in your response to Plaintiff's First
Set of Interrogatories.

**Specific Objections:** Post objects to Document Request No. 18 because it is vague, over broad,

unduly burdensome, and voluminous.

21.    With respect to the Subject Properties, or other properties identified in your
responses to Plaintiff's First Set of Interrogatories, and for the time period March 13, 1991, to the
present, all tenant files of whatever nature where the tenant, or a member of the tenant's family,
used a wheelchair or had some other mobility impairment.

**Specific Objections:** Post objects to Document Request No. 21 to the extent that it assumes that Post illegally profiles its tenants based on disability. Post's tenant files do not include information as to whether a tenant or a member of a tenant's family uses a wheelchair or has some other mobility impairment.

**Response:** Subject to and without waiving any general or specific objection, Post will make its tenant files available to Plaintiff as they are kept in the normal course of business at Post's offices.

      22.     Any document that you contend refutes the claims of Plaintiff herein or that you contend support any defense asserted by you herein.

**Specific Objections:** Post objects to Document Request No. 22 as vague, over broad, unduly burdensome, and voluminous. Post further objects based on attorney-client privilege because Document Request No. 22 seeks documents related to advice given by Post's attorneys.

**Response:** Subject to and without waiving any general or specific objection, Post will produce Certificates of Occupancy for the Subject Properties at Post's offices.

      23.     All non-privileged documents identified in response to Plaintiff's First Set of Interrogatories.

**Specific Objections:** Post objects to Document Request No. 23 as vague, over broad, unduly burdensome, and voluminous.

**Response:** Subject to and without waiving any general or specific objection, Post will make available all non-privileged responsive documents as they are kept in the normal course of business at Post's offices.

23

24.    All documents reviewed by any person designated by you to testify on Post's behalf pursuant to Fed. R. Civ. P. 30(b)(6).

**Response:** Subject to and without waiving any general or specific objection, Post will make available all non-privileged responsive documents as they are kept in the normal course of business at Post's offices.

25.    Documents reflecting the last known contact information for the individuals listed on Exhibits 9 and 10 to the deposition of Dayna Boone (omit executive or administrative assistants, interns and technicians) and any other persons participating in the management or supervision of the design or construction of the Subject Properties, as well as any other properties identified in your answers to interrogatories.

**Specific Objections:** Post objects to Document Request No. 25 because it is duplicative of information already produced to Plaintiff at the deposition of Dayna Boone.

**Response:** Subject to and without waiving any general or specific objection, Post refers Plaintiffs back to Exhibits 9 and 10 to the Deposition of Dayna Boone because these documents include the last known contact information for each individual listed.

26.    All billings or invoices from 1990 to the present, from any expert, consultant or attorney relating to the actual rendition of advice or services relating to accessibility issues at your multifamily housing properties.

**Specific Objections:** Post objects to Document Request No. 26 as privileged subject to attorney-client privileged because billings and invoices show the nature of the advice or consultation given by Post's attorneys.

27.    Your most current net worth statements prepared by, or for, you.

**Specific Objections:** Post objects to Document Request No. 27 because Plaintiff seeks documents that are irrelevant to the issues raised in this litigation and not reasonably calculated

to lead to the discovery of admissible evidence. Post's current net worth is irrelevant to

Plaintiff's claims related to FHA compliance.

**Response:** Subject to and without waiving any general or specific objection, Post refers Plaintiff

to Post's annual reports as well as the information and documents provided at the deposition of

Dayna Boone (*see, e.g.,* Dep. Exs. 23, 24, 25).


Respectfully submitted,

HOLLAND & KNIGHT, LLP

/s/ Christopher B. Hanback
Christopher B. Hanback (Bar # 232579)
Alan I. Baron (Bar. # 340273)
Rafe Petersen (Bar # 465542)
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C. 20006
(202) 955 3000 Phone
(202) 955 5564 Fax
E-mail: christopher.hanback@hklaw.com
E-mail: alan.baron@hklaw.com
E-mail: rafe.petersen@hklaw.com
*Counsel for Post Properties, Inc., et al.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and accurate copy of the foregoing Response to Plaintiffs First

Set of Interrogatories and Second Set of Document Requests was served via first-class mail,

postage prepaid, this 17th day of October, 2007, on the following:


Sheila Jane Carpenter, Esq.
Jorden Burt LLP
1025 Thomas Jefferson Street, NW
Suite 400 East
Washington, DC 20007

Donald Lee Kahl, Esq.
Washington Lawyers' Committee for Civil Rights & Urban Affairs
11 Dupont Circle, NW
Suite 400
Washington, DC 20036




                                        /s/ Christopher B. Hanback
                                        Christopher B. Hanback


# 4815750_v2

26

# EXHIBIT E

# FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

1001 Pennsylvania Avenue, NW
Washington, DC 20004-2505
Tel: 202.639.7000
Fax: 202.639.7003
www.friedfrank.com

Direct Line:  202.639.7306
Alyssa.Lareau@friedfrank.com

October 30, 2007

**Via Email and U.S. Mail**

Christopher B. Hanback
Holland & Knight, LLP
2099 Pennsylvania Avenue, NW
Suite 100
Washington, DC 20006

Re:     *Equal Rights Center v. Post Properties Inc., et al.*
        Case No. 1:06CV01991

Dear Mr. Hanback:

This correspondence is to advise you of the specific instances where we believe that the Defendants' Responses to Plaintiff's First Set of Interrogatories and Defendants' Responses to Plaintiff's Second Request for Production of Documents are either insufficient or improper in several respects, and require further response. We would like to discuss these issues with you. To facilitate that discussion, and to allow you to discuss the issues with your client, we are setting forth our initial views as to the deficiencies in writing. We ask that your client, Post Properties, Inc. ("Post") supplement its responses as outlined below:

## Defendants' Responses to Plaintiff's First Set of Interrogatories

1. <u>Failure to sign</u>: In accordance with Federal Rule of Civil Procedure 33(b)(2), interrogatory responses are to be signed under oath by the person making them. Post's interrogatory responses are signed only by Mr. Hanback. Please resubmit these responses in compliance with Rule 33(b)(2).

2. <u>Interrogatory No. 1</u>: In response to interrogatory no. 1, Post identifies several individuals who provided information or documents to assist in answering the interrogatories. Please identify the employers, job titles, and, for Post employees, dates of employment for each of these individuals. As you know, the Definitions make it clear that Defendants are to provide this type of

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

Christopher B. Hanback

October 30, 2007
Page 2

information when identifying individuals. In addition, please specify which
individuals are associated with each interrogatory.

3. <u>Interrogatory No. 3</u>: Post references the Exhibits to the Deposition of Dayna
Boone and other outside material in response to the ERC's questions regarding
design and construction. As Magistrate Judge Kay stated in his Opinion
granting in part and denying in part Defendants' Motion to Compel, it is
"improper and unresponsive" to answer an interrogatory by referring to outside
material such as depositions. In addition, the information provided at the Rule
30(b)(6) deposition was not specific as to who worked on Post Ballantyne.
Please supplement this response.

4. <u>Interrogatory No. 4</u>: The dates of employment of Post's employees are directly
relevant to the Complaint's allegation that Post has engaged in a pattern and
practice of violating the accessibility standards of the FHA and ADA. *See*
Compl. ¶¶ 6, 39-41, 54, 66. The interrogatory asks which employees worked on
particular projects and does not ask for the "exact extent of involvement" of
each employee. In addition, Post's response is improper as it refers to exhibits
from the deposition of Dayna Boone. Please supplement this response.

5. <u>Interrogatory No. 5</u>: Information relating to the compensation received by Post
from the transactions discussed in this interrogatory is directly relevant to the
ERC's ability to understand the structure of the transactions and assess liability
under the FHA and ADA. The protective order entered in this matter ensures
confidentiality of this information. Even so, we are willing to discuss any
additional confidentiality concerns. In addition, Post's reference to producing
"relevant non-privileged documents in Post's closing binders" is unclear. Please
identify these documents, and if the documents have not yet been produced,
please clarify. Finally, Post's response also is improper as it refers to exhibits
from the deposition of Dayna Boone. Please supplement this response.

6. <u>Interrogatory Nos. 6 and 7</u>: Post has testified that accessibility experts have
surveyed its properties and created reports of their findings. Post has also
admitted that it is remediating some properties based on these surveys. *See*
Boone Dep. at 167-68 and Exs. 7 and 8. To the extent that expert surveys
demonstrate and document the existence of violations, or the actual conditions,
of covered units and properties where Post has, subsequent to the Complaint,
undertaken alterations to the premises, such information is only available from
Post; thus the claim of work product, even if arguably applicable, does not stand
as a bar to discovery. In any event, the information sought includes objective
facts, such as measurements and photographs of the preexisting conditions,
which are not subject to any claim of attorney/client or work product privilege.
Please supplement this response.

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

Christopher B. Hanback                          October 30, 2007
                                                Page 3

7. <u>Interrogatory No. 8</u>:  Post has denied liability and denied that the properties in question do not comply with the FHA and ADA.  This is therefore a proper request for the basis for Post's assertion that the properties in fact comply with the design and construction provisions of these statutes.  The ERC is entitled to know on what basis Post has denied liability.  *See* Fed. R. Civ. P. 33 (c).  Please supplement this response.

8. <u>Interrogatory No. 11</u>:  This interrogatory simply seeks to determine whether, as a result of any surveys or studies, Post evaluated the cost to replace or repair certain features of apartments, for example, patio doors.  If no information exists, Post can say so.  In addition, an interrogatory answer that references a deposition is improper and unresponsive.  Please supplement this response.

9. <u>Interrogatory No. 12</u>:  Identification of potential witnesses, objective facts recorded about properties, and subsequent remedial actions taken are not subject to any claim of attorney/client privilege.  In addition, an interrogatory answer that references a deposition is improper and unresponsive.  This interrogatory asks who, if anyone, reviewed each property for FHA compliance, when the review occurred, and what the results of the review were.  Please supplement this response.

10. <u>Interrogatory No. 13</u>:  Post has testified that accessibility experts have surveyed its properties and created reports of their findings.  Post has also admitted that it is remediating some properties based on these surveys.  *See* Boone Dep. at 167-68 and Exs. 7 and 8.  Objective facts, such as measurements, photographs, or subsequent remedial actions taken, are not subject to any claim of attorney/client privilege.  In addition, an interrogatory answer that references a deposition is improper and unresponsive.  Please supplement this response and provide a privilege log for related documents you contend are privileged.

**<u>Defendants' Responses to Plaintiff's Second Request for Production of Documents</u>**

11. <u>Document Request No. 1:</u>  Post's reference to producing "relevant non-privileged documents related to its acquisitions" is unclear.  Please identify these documents.  If the documents have not yet been produced, please clarify.

12. <u>Document Request Nos. 2 and 3:</u>  This request is very specific as to the information sought and the response does not reveal whether any such documents exist.  Please clarify.

13. <u>Document Request No. 4:</u>  This request seeks the documents that relate to interrogatories 6, 7, 11, 12, and 13.  To the extent that documents may

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

Christopher B. Hanback                         October 30, 2007
                                               Page 4

demonstrate the existence of pre-remediation conditions or FHA/ADA
violations at properties where Post has, subsequent to the Complaint, undertaken
alterations to the premises, such information is only available from Post, and any
claim of work product, even if arguably applicable, would not bar discovery.
Please supplement this response.

14. <u>Document Request No. 5</u>:  Procurement documents, practices and procedures
    are directly relevant to the Complaint's allegation that Post has engaged in a
    pattern and practice of violating the accessibility standards of the FHA and
    ADA. *See* Compl. ¶¶ 6, 39-41, 54, 66.  In addition, quality control is directly
    relevant to the ERC's claim for punitive damages; we do not seek documents
    unrelated to FHA and/or ADA compliance.  Please supplement this response.

15. <u>Document Request Nos. 6 and 7</u>:  Post's knowledge of claims that its properties
    were not accessible and its responses to such knowledge are directly relevant to
    the ERC's claim for punitive damages.  No attorney/client privilege attaches to
    documents to, from or with third parties.  Please supplement this response and
    produce a privilege log with respect to documents not provided in Exhibit H.

16. <u>Document Request Nos. 11 and 12</u>:  These responses do not indicate whether
    Post plans to produce all the documents requested.  Please clarify.

17. <u>Document Request No. 14</u>:  The ERC needs the personnel files of the Post
    employees involved in the design and construction process in order to determine
    if any employee was ever held to account for Post's alleged failure to comply
    with the FHA and ADA and to help determine the employee's current
    whereabouts.  Please supplement this response.

18. <u>Document Request No. 16</u>:  In light of the fact that Post has had certain
    properties surveyed and begun remedial action in light of these surveys, it is
    possible that Post has or will make demands or enter into negotiations for
    indemnity or contribution from vendors.  These communications with vendors
    would be directly relevant to the violations alleged in the complaint and could
    not be privileged.  Please supplement this response.

19. <u>Document Request No. 20</u>:  This response does not indicate whether Post plans
    to produce any of the documents requested.  Further, the objection stated
    references "Document Request No. 18."  Please clarify.

20. <u>Document Request No. 23</u>:  The privilege log provided by Post contains only
    five documents.  Please supplement this log to include all documents identified
    in response to Plaintiff's first set of interrogatories that Post claims are
    privileged.

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

Christopher B. Hanback                                October 30, 2007
                                                     Page 5

21. <u>Document Request No. 26</u>:  The documents requested contain objective facts
    only and do not contain mental impressions or privileged communications.
    Documents evidencing the amount of work, time spent on tasks, and the
    revenues a consultant or expert derives from Post, are relevant and non-
    privileged.  Please supplement this response.  The ERC does not seek the bills of
    Post's litigation counsel.

## Defendants' Privilege Log

    With its most recent production of documents, Post has provided a one-page
Privilege Log that contains entries for five (5) documents claimed by Post to be
protected from discovery.  This privilege log is both incomplete and improper.
Specifically:

1.  With respect to the five documents that are identified by Post, while identifying
    that an attorney was involved in the communications, Post does not identify the
    other individuals involved so that a determination as to privilege can be made.
    Please identify the other addressees/recipients of each of these documents.

2.  POST11150 and 11192 are identified as "email strings."  This appears to
    encompass multiple e-mails, but the authors and addressee/recipients are not
    identified.  Please provide a complete identification of each email in these
    "strings."

3.  In the documents accompanying the Post Privilege Log there are several pages
    that have been removed and replaced with pages stating: "PRIVILEGED AND
    CONFIDENTIAL REDACTED MATERIAL." *See, e.g.*, POST09957 – 60.
    These documents, and those similarly marked, do not appear on the Post
    Privilege Log at all.  We are, therefore, unable to evaluate the applicability of
    any privilege.  Please supplement the Post Privilege Log to properly identify <u>all</u>
    documents withheld under a claim of privilege.

    In light of these issues with Post's discovery responses, we would like to arrange
"meet and confer" by telephone or in person so that we can explore the possibility of
resolving some of these disputes.  We would like to hold that "meet and confer" on
Monday November 5 at 10:00 am.  Please advise us if that date and time present any
problems for you.

                                    Sincerely,

                                    *Alyssa C Lareau*

                                    Alyssa C. Lareau

# EXHIBIT F

# Holland+Knight

Tel  202 955 3000
Fax  202 955 5564

Holland & Knight LLP
2099 Pennsylvania Avenue, N.W., Suite 100
Washington, D.C.  20006-6801
www.hklaw.com

Rafe Petersen
202 419 2481
rafe.petersen@hklaw.com

November 16, 2007

<u>VIA E-MAIL AND FIRST CLASS MAIL</u>

Alyssa Lareau, Esq.
Fried, Frank, Harris, Shriver & Jacobson LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004

Re:    *Equal Rights Center v. Post Properties, et al.*
         Case No. 1:06CV01991

Dear Ms. Lareau:

This letter responds to your October 30, 2007 letter wherein you request that Post Properties, Inc. ("Post") supplement its responses to Plaintiff's First Set of Interrogatories and Plaintiff's Second Request for Production of Documents. In addition, we are responding to your e-mail of November 9, 2007. As expressed in our phone conversation on November 8, 2007, Post is willing to supplement its discovery responses as set forth below:

**<u>Post's Responses to Plaintiff's First Set of Interrogatories</u>**

1. <u>Failure to sign</u>: Post will resubmit its Responses to Plaintiff's First Set of Interrogatories along with its Supplemental Responses such that they will both comply with Federal Rule of Civil Procedure 33(b)(2).

2. <u>Interrogatory No. 1</u>: Post will supplement its response to Interrogatory Number 1 to provide the employers, job titles, and, for Post employees, dates of employment for each individual identified. Also, Post will supplement its response with additional persons who assisted with answering these interrogatories.

3. <u>Interrogatory No. 3</u>: Post will supplement its response to Interrogatory Number 3 by providing Post's list of employees who participated in the design and construction of Post properties. Further, we will respond to your suggestion that we identify the employees most likely to have worked on Ballantyne based on the region to which they were assigned. Post will additionally identify the design professionals that participated in the design and construction of the additional units at Ballantyne. However, Post does not keep records of which particular employees participate in the design and construction of

November 16, 2007
Page 2

each property, and therefore cannot absolutely determine exactly the role that each employee played in the design and construction of Ballantyne. As indicated during the Boone deposition, Post uses a team approach for the development of its properties, and employees may work on multiple projects at any one time and have interchangeable roles.

4.  Interrogatory No. 4: As indicated in its previous response to Interrogatory Number 4, Post does not have any records that identify by specific property its employees, who were involved in the process of the design or construction of any of those properties. Post will supplement its response by again providing the list of employees as well as a revised list of design professionals who were involved in the process of the design or construction of the Subject Properties. Post will further supplement its response by providing the dates of employment for its employees.

5.  Interrogatory No. 5: Post does not agree with ERC's position that information relating to compensation received by Post as a result of the requested transactions is directly relevant. Nevertheless, subject to the protective order and confidentiality agreement entered into between the parties, Post will produce documents that include information related to the compensation Post received. Such documents are available at Post's offices as they are kept in the normal course of business at Post's offices. Post will additionally supplement its response to reflect this production. To clarify Post's reference to "closing binders", on October 22, 2007, Post produced binders to Ms. Carpenter containing closing documents for the Post Oak and Post Massachusetts Avenue properties. The documents within these binders are representative of the documents that would be in closing binders for all of Post's properties, and Ms. Carpenter agreed that ERC would use those documents to focus its discovery requests. Post will supplement its response to Interrogatory Number 5 and will identify the record owner of each of the Subject Properties.

6.  Interrogatory Nos. 6 and 7: Post maintains its objection to Interrogatory Nos. 6 and 7. Post objects in that such a request includes an underlying legal presumption that Post's properties do not comply with the requirements of the FHA. Post objects to the information requested in these interrogatories to the extent they seek opinions and advice Post has received from its attorneys, or opinions and advice that was prepared in anticipation of litigation. As we have discussed, Post's counsel retained accessibility consultants to evaluate Post's properties in anticipation of litigation. Post is entitled to hire consultants to assess exposure to litigation risk and does not have to release that information. In particular, the reports prepared by Ms. Kitay contain the opinions, judgments and thought processes of an attorney hired by Post because of the prospect of litigation. The ERC has other avenues to obtain any "objective data" in these reports through the discovery process. In fact, ERC has been given ample opportunity to inspect Post's properties pursuant to the discovery process, and during its "testing" of Post's properties. Accordingly, any "objective data" contained in the reports is otherwise available to the ERC, and these reports are protected in their entirety. Further, Post will not waive this privilege and identify the information requested in light of your assertions concerning post-construction alterations to properties. Post has already produced

November 16, 2007
Page 3

information related to post-construction alterations at properties in the form of invoices. The ERC is free to draw any conclusion it likes from such information and to utilize other avenues of discovery to determine the significance of alterations, if any.

7. <u>Interrogatory No. 8</u>:  Post will supplement its response to Interrogatory Number 8 to reflect that it did not identify any units in its response to Interrogatory Number 7.

8. <u>Interrogatory No. 11</u>: Post referred to Exhibits 7 & 8 to the Deposition of Dayna Boone because they are fairly voluminous and the information was already provided to ERC. Post will, however supplement its response to Interrogatory No. 11 by providing these documents again if Plaintiff so requires and by providing any new documents that have been created since the Deposition of Dayna Boone. As noted in the past, compliance is just one element of the cost of design and construction and there is no reliable way of breaking out exactly what is the cost of compliance. As to cost estimates created post-construction, Post objects in that such a request includes an underlying legal presumption that Post's properties do not comply with the requirements of the FHA. Further, Post objects to the extent this interrogatory seeks any documents created at the request of counsel to assess litigation risk and exposure as such documents are protected. This includes, specifically, assessment of litigation exposure related to the allegations made by ERC. Further, Post will not waive this privilege and identify the information requested in light of your assertions concerning post-construction alterations to properties. Post has already produced information related to post-construction alterations at properties in the form of invoices. The ERC is free to draw any conclusion it likes from such information and to utilize other avenues of discovery to determine the significance of repair work, if any.  In sum, Post is unwilling to disclose any information that reveals an evaluation of litigation risk or assessment of the underlying allegations made by the ERC as such information was created in anticipation of litigation and at the request of counsel, and is accordingly privileged.

9. <u>Interrogatory No. 12</u>: Post will supplement its response to Interrogatory Number 12 to identify its employees involved in the review of development plans and properties during the development process to ensure compliance with all federal, state, and local accessibility codes and laws. Because Post's reviews are ongoing throughout the whole development process, Post cannot point to a specific date at which a compliance review took place. Any post-construction compliance reviews conducted by Post are privileged as created in anticipation of litigation and at the advice of counsel.

10. <u>Interrogatory No. 13</u>: Post referred to Exhibits 7 & 8 to the Deposition of Dayna Boone because they are fairly voluminous and already provided to the ERC. Post will, however, supplement its response to Interrogatory No. 13 by providing these documents again if Plaintiff so requires. Post otherwise maintains its objections to this Interrogatory. Post objects to the information requested in this interrogatory to the extent it seeks opinions and advice Post has received from its attorneys, or opinions and advice that was prepared in anticipation of litigation. Any accessibility consultants that have surveyed Post's properties have done so at the request of counsel and in anticipation of litigation. Accordingly, the opinions and advice presented in reports prepared by those experts are

November 16, 2007
Page 4

protected from disclosure. Post will not waive this privilege and identify the information requested. Post has already produced certain information in the form of invoices as to any alterations that have taken place and Post will supplement these documents to the extent than any documents have been created. Plaintiff has the ability to obtain further information regarding measurements and photographs of Post's properties itself and has in fact had the opportunity to inspect Post's properties pursuant to the discovery process, and during its "testing" of Post's properties.

## Post's Responses to Plaintiff's Second Request for Production of Documents

11. <u>Document Request No. 1</u>: The Federal Rules of Civil Procedure do not compel the specific identification of documents to be produced in response to a request for production, but only require a statement as to whether the production will be made as requested. In light of this requirement, Post incorporates herein its Response to Document Request Number 1, and will produce all relevant non-privileged documents related to its acquisitions. These documents will be produced as they are kept in the normal course of business at Post's offices.

12. <u>Document Request Nos. 2 and 3</u>: If there have been non-privileged communications between Post and any architect, design professional, engineer , builder, or contractor that in any way discusses, refers to, or relates to compliance with Section 3604(f)(3)(c) of the FHA or the ADA, then these documents will be produced as part of Post's files related to its design professionals. Post does not keep its files in a matter that would easily identify any such communications and at this time, Post cannot confirm that there have been any such communications. However, to the extent these communications exist, they will be produced along with Post's other non-privileged files related to its design professionals.

13. <u>Document Request No. 4</u>: Post will supplement its response to Document Request Number 4 to indicate that it will produce responsive non-privileged documents. Post incorporates its discussion of its responses to Interrogatory Numbers 6, 7, 11, 12, and 13 above, and will not produce compliance assessments prepared by or at the direction of counsel.

14. <u>Document Request No. 5</u>: Post will supplement its response to say that responsive non-privileged documents related to procurement at specific properties will be produced as they are kept in the normal course of business in Post's development files at Post's offices. In response to Plaintiff's more narrow request for procurement policies at the corporate level, Post will supplement its response to state that it is unaware of any corporate policies to procure specific materials for development. Materials are bought on an individual basis in the market for each development. Given that Post's objection related to quality control was unclear, Post will supplement its response to indicate that it will produce non-privileged documents related to quality control which is related to FHA or ADA compliance.

15. <u>Document Request Nos. 6 and 7</u>: Post continues to object to requests for documents of complaints not related to the allegations in ERC's Complaint.

November 16, 2007
Page 5

16. <u>Document Request Nos. 11 and 12</u>: Post continues to object to the overbroad, unduly burdensome, and voluminous documents sought by these requests. However, Post will agree to the production of the non-privileged documents related to design and construction on a rolling timetable based on a targeted property by property search of its records.

17. <u>Document Request No. 14</u>: Post's personnel files contain records wholly irrelevant to the issues in ERC's Complaint. Post will supplement its response to state that it is unaware of any discipline of its employees involving disability or the accessibility requirements of the FHA or ADA. Post will not produce in a wholesale fashion the personnel files of its employees. If ERC continues to want to examine such files, Post will produce a representative sample of a personnel files so that ERC may refine its request to include documents reasonably calculated to lead to the discovery of admissible evidence.

18. <u>Document Request No. 16</u>: Post maintains its objection based on attorney-client privilege. Any decision Post's makes as to whether or not to seek indemnification will be at the advice of counsel, and Post has not yet made any such decisions.

19. <u>Document Request No. 20</u>: Post will supplement its response to Document Request Number 20 to indicate that it objects to Document Request Number 20 because it is vague, overbroad, unduly burdensome, and voluminous. Post will further supplement its response to indicate that it will produce responsive non-privileged documents related to design and construction as they are kept in the normal course of business at Post's offices.

20. <u>Document Request No. 23</u>: Post will provide a supplemental privilege log as it continues to identify documents protected by the attorney-client, work product, or other privilege.

21. <u>Document Request No. 26</u>: The documents sought by Document Request Number 26 contain the nature of the advice or consultation given by Post's attorneys, or experts or consultants hired by Post's attorneys in anticipation of litigation. Post will provide a supplemental privilege log that reflects the privileged nature of these documents.

**Post's Privilege Log**

1. Post's privilege log identifies all individuals, including addressees and recipients, involved in the documents. For POST10015-10017, a Trust Amendment, there are no addressees or recipients.

2. For POST11150 and 11192, all recipients of the email strings are identified. For POST11150, the original email is addressed to Steve Etminani from Dayna Boone and John Mears and Sherry Cohen are CCed. The second email is addressed to Dayna Boone from Steve Etminani and John Mears and Sherry Cohen are CCed.

3. All documents withheld under a claim of privilege are identified in the privilege log. The example bates range provided is the first document listed in the log. The included sheets should read "Privilege and Confidential Material Withheld" so as not to confuse those

November 16, 2007
Page 6

docs withheld from some simply redacted. No documents were redacted; they are only withheld. Post will provide a supplemental privilege log as it continues to identify documents protected by the attorney-client, work product, or other privilege.

Post will provide a supplemental privilege log as it continues to identify documents protected by the attorney-client, work product, or other privilege. Specifically, Post will provide a log relating to the disputed reports discussed above.

Please do not hesitate to call if you have other questions or concerns.

Sincerely,

HOLLAND & KNIGHT LLP

Rafe Petersen

# 4899646_v4

# EXHIBIT G

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| EQUAL RIGHTS CENTER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case. No. 1:06CV01991 |
| | ) | Judge Richard J. Leon |
| POST PROPERTIES, INC. | ) | |
| POST GP HOLDINGS, INC. | ) | |
| POST APARTMENT HOMES, L.P. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' SUPPLEMENTAL RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES AND PLAINTIFF'S SECOND SET OF REQUESTS FOR DOCUMENT PRODUCTION

Defendants Post Properties, Inc., Post GP Holdings, Inc., and Post Apartment Homes, L.P. (collectively "Post"), by undersigned counsel, hereby submit this response to Plaintiff's First Set of Interrogatories and written response to Plaintiff's Second Request for Production of Documents.

## GENERAL OBJECTIONS

1.    Post objects to Plaintiff's interrogatories and document requests, including the definitions and instructions, to the extent they (a) contain requests that exceed the scope and requirements of the applicable federal and local rules and (b) purport to require discovery not provided for by these rules, including, but not limited to discovery on subjects not at issue in this case.

2.    Post objects to each interrogatory and document request to the extent they seek information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other rule of privilege or confidentiality provided by law.

3.      Post objects to Plaintiff's interrogatories and document requests insofar as they are duplicative, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

4.      Post objects to Plaintiff's interrogatories and document requests to the extent they require Post to provide information or identify documents already known to or in the possession of Plaintiff or its agents.

5.      In responding to these interrogatories and document requests, Post does not waive the foregoing objections, nor the specific objections that are set forth in the responses to particular interrogatories and document requests.  By making its responses, Post does not concede that the information or documents requested is relevant to this action or is calculated to lead to the discovery of admissible evidence.  Post expressly reserves the right to object to further discovery into the subject matter of any of these interrogatories or document requests, to the introduction into evidence of any response or portion thereof, and to supplement its responses should further investigation disclose responsive information or documents.

### SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES

1.      Identify each person who provided information or documents to assist in answering these interrogatories and, for each person, state with which interrogatories they assisted.

**Response:**  Subject to and without waiving any general or specific objection, Post states that Dayna Boone provided information for Interrogatory Nos. 2, 3, 4, and 5; Keith Gibson, Lori Addicks and Glenn Austin provided information for Interrogatory Nos. 9 & 10; and Donna Williams, Chris Papavasiliou, Carol Wolff, Susan Kabe, Sherry Cohen, and Glen Smith generally provided information that relates to multiple responses.

2

**Supplemental Response**: Each of the above individuals is employed by Post. Dayna Boone is Director, Real Estate Legal Services, and was hired on April 1, 1999. Keith Gibson is Capital Expense Manager, and was hired on December 2, 2000. Lori Addicks is Vice President, Career Development, and was hired on March 15, 2004. Glenn Austin is Senior Vice President, Property Services, and was hired on July 19, 1982. Donna Williams is a Paralegal, and was hired on March 1, 2006. Chris Papavisiliou is a Law Clerk, and was hired on September 17, 2007. Carol Wolff is Disbursements Manager, and was hired on August 27, 2001. Susan Kabe is Procurement Manager, and was hired on September 6, 1988. Sherry Cohen is Executive Vice President, and was hired on September 11, 1984. Glen Smith is Vice President, Legal Affairs, and was hired on January 1, 2000. Additional Post employees who assisted in answering these interrogatories include: Linda Ricklef, Senior Vice President, Human Resources, hired on June 15, 1998; Angel Gravley, Payroll Manager, hired on October 1, 2001; Ellen Hopper, Payroll & Compensation Specialist, hired on March 1, 2002; Bill Cartwright, Predevelopment Director, hired July 8, 1996; Chuck Konas, Executive Vice President, Construction/Development, hired October 11, 2004; and George Kelly, Director of Construction – Southeast, hired on June 6, 2005. All of these individuals, with the exception of those specifically noted in the Response, generally provided information that relates to multiple responses.

    2.    Identify each multifamily housing complex (whether apartment or condominium), including those currently under construction, and including but not limited to the Subject Properties, whether garden-style or high-rise, designed and constructed for first occupancy after March 13, 1991, or for which the last building permit was issued, or renewed by a state, county or local government, after June 15, 1990, in which you have ever held, directly or indirectly, any ownership interest, or in which you participated, in any way, in the design or construction of the complex.

**Specific Objection:** Post objects to Interrogatory No. 2 because it is duplicative of information already provided to Plaintiff at the deposition of Dayna Boone.

3

**Response:** Subject to and without waiving any general or specific objection, a list of Post's

currently owned apartment properties, which were designed and constructed after March 13,

1991 or for which the last building permit was issued after June 15, 1990, is attached hereto as

Exhibit A. Exhibit A contains the project name, date acquired, date of first occupancy, and

owner. A list of those properties currently under construction is attached hereto as Exhibit B.

Post refers Plaintiff to Interrogatory Response No. 5 for information as to properties Post no

longer owns.

**Supplemental Response:** A supplemental list of properties currently under construction is

attached hereto as Supplemental Exhibit B. As to condominium complexes designed and

constructed for first occupancy after March 13, 1991, or for which the last building permit was

issued, or renewed by a state, county or local government, after June 15, 1990, Post refers

Plaintiff to Exhibit D attached to Post's initial interrogatory responses.


3.      Identify each multi-family property owned in whole or in part by you since March
13, 1991 to which you have added four or more new units, and with respect to each such
property, identify each and every person employed by you who is participating, or did participate
in the design and construction of said new units, including any architect, engineer, building,
contractor (both general contractors and subcontractors), or designer that was involved in the
process of the design and construction of any of such units. (You need not identify individuals
who functioned solely as laborers or craftspeople.)

**Specific Objection:** Post objects to Interrogatory No. 3 because it is duplicative of information

already provided to Plaintiff at the deposition of Dayna Boone.

**Response:** Subject to and without waiving any general or specific objection, Post Ballantyne is

the only property to which Post has added four or more new units to an existing structure. For

information as to the persons employed by Post who participated in the design and construction

of Post Ballantyne, see Exhibits 4, 9 & 10 to the deposition of Dayna Boone as well as the

supplemental information that was produced on September 18, 2007.

**Supplemental Response:** The design professionals participating in the design and construction

of Ballantyne include Reinhardt Architects and Site Tech Construction. The Post employees

most likely to have participated in the design and construction of Ballantyne, based on the region

or responsibility to which they are assigned, include George Kelly and Keith Gibson. Other

employees may have also worked on Ballantyne; however, Post does not record the particular

employees that participate in the design and construction of each property, and therefore cannot

absolutely determine exactly which employees participated in the design and construction of

Ballantyne. As indicated during the Boone deposition, Post uses a team approach for the

development of its properties, the addition of phases to existing properties, and employees work

on multiple projects and have various roles.

4.      Identify each person, whether employed by you or not, and including but not
limited to architects, design professionals, engineers, builders, and contractors (both general
contractors and subcontractors), who were involved in the process of the design or construction
of any of the Subject Properties, or other properties identified by you herein. For each person or
entity identified, provide their last known address, telephone number, the identity of which
specific property or properties they had an involvement in the design or construction, dates of
employment or retention, and a description of their involvement in the design or construction of
each property. (You need not identify individuals who functioned solely as laborers or
craftspeople.)

**Specific Objection:** Post objects to Interrogatory No. 4 to the extent that it is duplicative of

information already provided to Plaintiff at the deposition of Dayna Boone. Post also objects to

this Interrogatory because it seeks information that is irrelevant to the issues raised in the

litigation and not reasonably calculated to lead to the discovery of admissible evidence.

Specifically, the dates of employment or retention of Post's employees are irrelevant to Plaintiff's

claims, which are related to FHA compliance.

**Response:** Subject to and without waiving any general or specific objection, Post refers Plaintiff

to the list of Post employees which was provided to Plaintiff at the deposition of Dayna Boone

(*see* Dep. Exs. 9 & 10).  This list identifies whether an employee was involved in design or construction by way of identifying the department for which the employee worked.  Post is unable to distinguish among its employees in terms of the exact extent of involvement in the construction or design of any specific properties.  As indicated during the Boone deposition, Post uses a team approach for the development of its properties, and employees work on multiple projects and have various roles.  As to outside design professionals, Post refers Plaintiff to the information and lists provided to Plaintiff at the deposition of Dayna Boone (*see, e.g.*, Dep. Ex. 4) as well as the supplemental information that was produced on September 18, 2007.

**Supplemental Response:**  Post's employee list, which includes the dates of employment for each employee, is attached to this Supplemental Response as Exhibit H.  The payroll search criteria that created this list is identified in the list header.  A supplemented list of design professionals and contractors who were involved in the process of the design or construction of each property is attached as Exhibit I.

     5.     For each Subject Property or other property identified herein, for which you have divested yourself of any ownership interest, identify when you divested yourself of your interest, to whom you conveyed the interest, the compensation received by your for the transfer of said interest, and any provision in governing divestiture agreements relating to any obligation to, or liability for, compliance with the FHA or the ADA, or any local accessibility code or regulation.  If record title to any of the Subject Properties, or other properties identified by you herein, is held in the name of any entity owned or controlled, (directly or indirectly) in whole or in part, by you, identify that entity, its officers, directors, shareholders, unit holders, members and managers.

**Specific Objections:**  Post objects to Interrogatory No. 5 to the extent that it is duplicative of information already provided to Plaintiff at the deposition of Dayna Boone.  Post also objects to this Interrogatory because it seeks information that is irrelevant to the issues raised in the litigation and not reasonably calculated to lead to the discovery of admissible evidence.

Specifically, the compensation received by Post for the transfer of said interest is irrelevant to Plaintiff's claims, which are related to FHA compliance.

**Response:** Subject to and without waiving any general or specific objection, a list of properties Post has sold since the IPO in 1993 is attached as Exhibit C. This list does not include properties for which Post has divested a less than 100% interest. Exhibit C includes the property name, the date acquired, the date of first occupancy, the date sold, and the buyer. As to information regarding divestiture agreements, Post will produce to the ERC relevant non-privileged documents in Post's closing binders as they are kept in the normal course of business at Post's offices. Additionally, a list of sales in condominium projects is attached at Exhibit D. Exhibit D includes the name of the condominium project, the date the project was acquired, the date of first occupancy, the date sold, and the buyer. As to information regarding the record owner of each property, Post has already provided to Plaintiff this information at the deposition of Dayna Boone (*see, e.g.*, Dep. Ex. 5).

**Supplemental Response:** A list identifying the record owner for each property is attached to this Supplemental Response as Exhibit J. Subject to the protective order and confidentiality agreement, Post will produce relevant non-privileged documents reflecting the compensation it has received in the transfer of its ownership interests as they are kept in the normal course of business at Post's offices.

6.    Identify each of the Subject Properties, or other properties identified by you herein, whose public or common areas fail to meet the accessibility requirements of the ADA, and fully describe each such failure in detail.

**Specific Objections:** Post objects to Interrogatory No. 6 because it seeks privileged information. Post will not produce any information as to opinions and advice it has received from its attorneys; nor will it produce any information as to opinions and advice that were

7

prepared in anticipation of litigation. Post further objects to this Interrogatory to the extent that it

seeks a legal conclusion and includes an underlying legal premise or assumption that Post has

properties where public or common areas fail to meet the accessibility requirements of the ADA.

Additionally, Post objects because this Interrogatory is vague, over broad, and unduly

burdensome. Finally, Post objects because Plaintiff has the ability to obtain the requested

information itself and in fact has had the opportunity to inspect Post's properties pursuant to the

discovery process, and during its "testing" of Post's properties.

      7.      With respect to the Subject Properties, and any other properties identified by your
herein, identify each covered multi-family dwelling, including those currently under
construction, by community name, street address, and unit number, that contains any of the
following: common or public use areas that are not on an "accessible route" as that term is denied
in Chapter 2 of the FHA Design Manual as published by the United States Department of
Housing and Urban Development; handicapped parking spaces of less than 96" in width; steps or
stairs in front of entry ways in common or public use areas, or at the entry way to any covered
multi-family dwelling; fire alarm pulls whose lowest operable part is higher than 48" above the
finished floor; light switches, thermostats or other environmental controls whose lowest operable
part is higher than 48" above the finished floor; interior or exterior door thresholds (including
sliding doors) higher than ¼" or ½" if beveled; clear floor space centered in front of any
bathroom sink, toilet or tub of less than 30" x 48" (outside the swing of the door as it is closed),
and one of the three clear floor spaces identified in Chapter 7B of the FHA Design Manual as
published by the United States Department of Housing and Urban Development; clear floor
space in kitchen of less than 30" x 48" centered at each fixture and appliance, or less than a 40"
distance between opposable elements, or, in any "U" shaped kitchen, a 60" diameter turning
circle at the base of the "U"; or exterior doors of less than 32" in width at their narrowest point,
or interior doors of less than 31 ½in width at their narrowest point.

**Specific Objections:** Post objects to Interrogatory No. 7 because it seeks privileged

information. Post will not produce any information as to opinions and advice it has received

from its attorneys; nor will it produce any information as to opinions and advice that were

prepared in anticipation of litigation. Post further objects to this Interrogatory to the extent that it

seeks a legal conclusion and includes an underlying legal premise or assumption that Post has

properties with elements that fail to comply with the FHA. Additionally, Post objects because

this Interrogatory is vague, over broad, and unduly burdensome. Finally, Post objects because

Plaintiff has the ability to obtain the requested information itself and in fact has had the

opportunity to inspect Post's properties pursuant to the discovery process, and during its "testing"

of Post's properties.

8.    With respect to each of the units identified by you in response to Interrogatory
No. 7, state (a) the specific HUD Guideline or FHA recognized safe harbor, with which you
assert that unit or area complies, or (b) if you do not claim it otherwise meets the requirements of
42 U.S.C. § 3604(f)(3)(C), describe how your contend that it meets the accessibility
requirements of the FHA.

**Specific Objections:** Post objects to Interrogatory No. 8 because it seeks privileged

information. Post will not produce any information as to opinions and advice it has received

from its attorneys; nor will it produce any information as to opinions and advice that were

prepared in anticipation of litigation. Post further objects to this Interrogatory to the extent that it

seeks a legal conclusion and includes an underlying legal premise or assumption that Post has

properties with elements that fail to comply with the FHA. Additionally, Post objects because

this Interrogatory is vague, over broad, and unduly burdensome. Finally, Post objects because

Plaintiff has the ability to obtain the requested information itself and in fact has had the

opportunity to inspect Post's properties pursuant to the discovery process, and during its "testing"

of Post's properties.

**Supplemental Response:** Post did not identify any units in Interrogatory No. 7.

9.    Identify each instance, and all documents related thereto, in which you, or anyone
on your behalf, or anyone who was an employee at the time, made or gave any written opinion,
testimony, or presentation relating in any way to the accessibility requirements of the FHA or
ADA.

**Specific Objection:** Post objects to Interrogatory No. 9 because it seeks privileged information.

Post will not produce any information as to opinions and advice it has received from its

9

attorneys; nor will it produce any information as to opinions and advice that were prepared in anticipation of litigation. Interrogatory No. 9 is also vague, over broad, and unduly burdensome. Finally, Post objects to this Interrogatory to the extent that it seeks a legal conclusion and includes an underlying legal premise that there are *specific* accessibility design requirements under the FHA.

**Response:** Subject to and without waiving any general or specific objection, Post states that documents showing various presentations by and for Post employees is attached as Exhibit E. Although, Post does not have records of each and every presentation given related to the Fair Housing Act, Exhibit E provides a representative example.

   10.    Identify each workshop, seminar, symposium, class, trade event, or meeting of any kind attended by any of your employees, the subject of which, in whole or in part, was compliance with the design and construction requirements of Section 3604(f)(3)(c) of the FHA, or the ADA and identify all documents obtained by your employees at such workshop, seminar, symposium, class, trade event, or meeting.

**Specific Objections:** Interrogatory No. 10 is vague, over broad, and unduly burdensome. Post currently has approximately 850 employees and at one time had approximately 2,000 employees. Post's employees have a natural level of turnover and no records exist as to each workshop, seminar, symposium, class, trade event, and meeting attended by each Post employee.

**Response:** Subject to and without waiving any general or specific objection, Post states that Exhibit E attached hereto includes a representative example of workshops, seminars, symposiums, classes, trade events, and meetings attended by Post employees.

   11.    Identify any document that relates or refers to the estimated cost of compliance by you with the design and construction requirements of Section 3604(f)(3)(c) of the FHA, and describe any action(s), if any, taken by you as result thereof.

**Specific Objections:** Post objects to Interrogatory No. 11 because it is vague, over broad, and unduly burdensome. Post objects also to the extent that this Interrogatory seeks a legal

conclusion and includes an underlying legal premise that there are *specific* accessibility design requirements under the FHA.

**Response:** Subject to and without waiving any general or specific objection, Post refers Plaintiff to the information and invoices regarding retrofits related to FHA compliance that were provided to Plaintiff at the deposition of Dayna Boone (*see* Dep. Exs. 7 & 8). Post further notes that this information is not kept in the manner suggested by Plaintiff in that Post does not specifically break out and record the cost of compliance with the design and construction requirements or provisions of the FHA, or the ADA, at the Subject Properties but rather it is part of the overall cost of construction and design.

**Supplemental Response:** Any new invoices regarding retrofits related to FHA compliance that have been created since the deposition of Dayna Boone are attached as Exhibit K.

12.    If, with respect to each of the Subject Properties, and other properties identified by you herein, you have ever made any effort to comply with the requirements of Section 3604(f)(3)(c) of the FHA, describe for each such property, all such efforts including: the identity of the person(s) reviewing each such property (or the plans for the property) for compliance on your behalf; the date(s) such reviews took place; what action was taken as a result of such reviews; and the cost of any such action.

**Specific Objection:** Post objects to Interrogatory No. 12 to the extent that it seeks a legal conclusion and includes an underlying legal premise that there are *specific* accessibility design requirements under the FHA. Additionally, Post objects to Interrogatory No. 12 because it seeks privileged information. Any actions taken as a result of a review by Post's attorneys is covered by attorney-client privilege.

**Response:** Subject to and without waiving any general or specific objection, Post states that it regularly consults its design professionals and other experts throughout the development process for each of its properties to ensure compliance with all federal, state, and local accessibility

11

codes and laws. Moreover, Post's team approach to development allows for multiple reviews of

development plans and properties during the development process by various Post employees to

ensure compliance with all federal, state, and local accessibility codes and laws. The individuals

involved in this process were disclosed at the deposition of Dayna Boone (*see, e.g.,* Dep. Exs. 4,

9 & 10).

**Supplemental Objection:** In subsequent discussions with Plaintiff, Plaintiff informed Post that

it was most concerned with post-construction efforts to comply with the requirements of Section

3604(f)(3)(c) of the FHA. However, any post-construction compliance reviews conducted by

Post are privileged as created in anticipation of litigation and at the advice of counsel.

**Supplemental Response:** Subject to and without waiving any objection, including the

supplemental objection above, a list of individuals and a list of design and construction

professionals involved in the review of properties during development in an effort to comply

with the requirements of Section 3604(f)(3)(c) of the FHA, are attached to this Supplemental

Response as Exhibits H and I. Because Post's consultation with its design professionals and

other experts is ongoing throughout the whole development process, Post cannot point to a

specific date in which a compliance review took place.


13.    Since the filing of the Complaint in this litigation, identify each action you have
taken to evaluate your compliance with the accessibility requirements of the FHA and/or ADA,
the persons involved in such actions or evaluations, and describe any alterations, repairs, retrofits
or other remedial actions taken by you at each of Subject Properties or other covered properties
identified by you herein, including both the pre-existing conditions (including measurements)
and the post-alteration conditions (including measurements) of the affected areas.

**Specific Objection:** Post objects to Interrogatory No. 13 because it is duplicative of information

already provided to Plaintiff at the deposition of Dayna Boone and duplicative of other

interrogatories in this same request. Additionally, Post objects to Interrogatory No. 13 because it

seeks privileged information. Any evaluations by Post's attorneys, or actions taken as a result

those evaluations are covered by attorney-client privilege. Finally, Post objects to Interrogatory

No. 13 to the extent that it seeks a legal conclusion and includes an underlying legal premise that

there are *specific* accessibility design requirements under the FHA.

**Response:** Subject to and without waiving any general or specific objection, Post refers

Plaintiff to the information and invoices regarding construction activities that were provided to

Plaintiff at the deposition of Dayna Boone (*see* Exs. 7 & 8). Additionally, as to Post's evaluation

of compliance with accessibility requirements, Post regularly consults with its design

professionals and other experts throughout the development process and employs a team

approach, which allows for multiple reviews of development plans and properties during the

development process by various Post employees to ensure compliance with all federal, state, and

local accessibility codes and laws.

14.    Identify any covered multi-family unit(s) at the Subject Properties, or other
properties identified by you herein, that were specifically designed and constructed so as to be
accessible to persons with mobility impairments under a standard other than the FHA (e.g.,
Uniform Building Code), stating which standard was used.

**Specific Objections:** Post objects to Interrogatory No. 14 because it is vague, unduly

burdensome, and seeks information that is irrelevant to the issues raised in the litigation and not

reasonably calculated to lead to the discovery of admissible evidence.

**Response:** Subject to and without waiving any general or specific objection, Post states that all

Post properties are designed to be accessible and to comply with all relevant federal, state and

local codes and laws.

**Supplemental Response:** Post bases its belief that all properties are intended to be designed and

constructed to comply with all relevant federal, state, and local codes and law on its reliance on

13

outside design professionals, with whom Post regularly consults throughout the design and construction process to ensure compliance.

15. If you contend that any feature at any of the Subject Properties, or other properties identified by you herein, is inaccessible or not adaptable for use by persons with disabilities because of the actions or inactions of someone other than you, identify each such property, each feature, each person whose action or inaction resulted in its being inaccessible or not adaptable for use by persons with disabilities, and identify all facts and documents that support, refute, or otherwise relate to your contention.

**Specific Objection:** Post objects to Interrogatory No. 15 because it is vague, overly broad, and unduly burdensome. Post further objects because Interrogatory No. 15 seeks a legal conclusion as to whether a property is inaccessible or not adaptable.

**Response:** Subject to and without waiving any general or specific objection, Post states that although it does not contend that any features of any of the Subject Properties are inaccessible or not adaptable, Post does rely on design professionals, such as architects, engineers and contractors, in the design and construction of its Properties to ensure that all features are accessible and adaptable for use by persons with disabilities.

16. Identify each instance where, at the time of construction of any of the Subject Properties or other properties identified by you herein, a claim of site impracticality was made by you, and accepted by any regulatory authority as a basis to deviate from the accessibility requirements of either the FHA or ADA and identify all documents that constitute, relate or refer to such a claim.

**RESPONSE:** Subject to and without waiving any general or specific objection, Post is aware of no instances where, at the time of construction of any Post properties, Post has made a claim of site impracticality.

17. For the time period March 13, 1991, to the present, identify each tenant at each of the Subject Properties, or other properties identified by you herein, who used a wheelchair or had any other mobility impairment, during any part of their tenancy. With respect to each such tenant, identify the apartment by address and complex which they rented, the dates of their

14

tenancy, whether they made any complaint or request regarding accessibility or for a reasonable accommodation in their apartment, the nature of said request or complaint, and describe any resulting actions taken by you in response to each such complaint or request.

**Specific Objections:** Post objects to Interrogatory No. 17 to the extent that it assumes that Post illegally profiles its tenants based on disability. Furthermore, Post objects to Interrogatory 17 to the extent that it seeks information that is irrelevant to the issues raised in this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff's Complaint focuses on the design and construction requirements of the FHA; any requests for reasonable accommodations at Post properties are irrelevant to Plaintiff's allegations. Nevertheless, Post states that when and if reasonable accommodations are requested, Post complies with all reasonable requests.

**Response:** Post does not profile its tenants. Therefore, Post has no records from March 13, 1991, to the present from which it can identify tenants who are persons with disabilities, persons who use wheelchairs, or persons who have mobility impairments. However, due to Post's interaction with its tenants, Post knows with certainty that some properties have tenants with disabilities or mobility impairments and it is Post's belief that many of its properties have tenants with disabilities or mobility impairments.

## SUPPLEMENTAL WRITTEN RESPONSES TO
## SPECIFIC REQUESTS FOR PRODUCTION

4.      All documents that relate or refer to the cost of compliance by your with the design and construction requirements of Section 3604(f)(3)(c) of the FHA, or the ADA, either in general, or with respect to any specific property.

**Specific Objections:** Post objects to Document Request No. 4 because it is duplicative of documents already provided to Plaintiff at the deposition of Dayna Boone. Post further objects

15

to the extent Document Request No. 4 seeks privileged information. Post will not produce documents that are prepared in anticipation of litigation subject to the work product privilege.

**Response:** Subject to and without waiving any general or specific objection, Post states that it already provided to Plaintiff at the deposition of Dayna Boone information and invoices regarding retrofits related to FHA compliance (*see* Dep. Exs. 7 & 8). Post further notes that this information is not kept in the manner suggested by Plaintiff in that Post does not specifically break out and record the cost of compliance with the design and construction requirements or provisions of the FHA, or the ADA, at the Subject Properties but rather it is part of the overall cost of construction and design.

**Supplemental Response:** Post will produce all non-privileged responsive documents as they are kept in the normal course of business at Post's offices.

5.    All internal guidelines, policies, design manuals or drawings, practices and requirements for properties in which you hold any ownership interest that relate to:

   a.   The accessibility to persons with disabilities of public use and common use portions as well as housing units at your properties;

   b.   The creation of any architectural plans or any other type of design drawings by you for any of the Subject Properties, or any other properties identified herein.

   c.   Selection, retention, oversight or approval of any architect or other design professional (and their plans and design drawings) involved in the design or multi-family housing owned or controlled (directly or indirectly) by you;

   d.   Selection, retention, oversight or approval of any general contractor, construction comply, construction supervisor or foreman involved in the construction of multi-family housing owned or controlled (directly or indirectly) by you;

   e.   Procurement of any building materials or components used in the construction (including build out and final finish or multi-family housing owned or controlled (directly or indirectly) by you;

   f.   Quality control (including but not limited to on-site inspection) of construction of multi-family housing owned or controlled (directly or indirectly) by you;

   g.   Compliance with the accessibility requirements of the FHA and/or ADA at multi-family housing owned or controlled (directly or indirectly) by you;

| | |
|---|---|
| h. | The placement of electrical outlets, thermostats and other environmental controls; |
| i. | The width of interior and exterior doors; |
| j. | The use of sliding doors to patios or balconics; |
| k. | The design of accessible routes to, into and through each dwelling; |
| l. | Reinforcements in bathroom walls from grab bars; and |
| m. | Design of kitchens and bathrooms so as to be accessible to person in wheelchairs. |

**Specific Objection:** Post objects to Document Request No. 5 because it is over broad, unduly burdensome, and voluminous. Post further objects because Plaintiff seeks documents that are irrelevant to the issues raised in this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Post's procurement of building materials, quality control not related to FHA compliance, and the selection and retention of Post's architects and contractors have no relation to Plaintiff's claims regarding FHA compliance. Post also objects to Document Request No. 5 as duplicative of documents already provided to Plaintiff at the deposition of Dayna Boone. Finally, Post objects to the extent Document Request No. 5 seeks privileged information. Post will not produce documents that are protected by the attorney client privilege or those prepared in anticipation of litigation subject to the work product privilege.

**Response:** Subject to and without waiving any general or specific objection, Post refers Plaintiff to the FHA policies it produced to Plaintiff at the deposition of Dayna Boone (*see* Dep. Exs. 21 & 22). Post further states that attached as Exhibit G are Post's best practice manual and other relevant policies. Finally, Post states that there is no one person, or one document, or one place at Post, where all documents referring the FHA can be found; nor are documents kept specifically within the categories requested by Plaintiff in Document Request No. 5. Any additional responsive documents will be provided as they are kept in the normal course of business at Post's offices.

17

**Supplemental Response:** Post will produce non-privileged responsive documents that relate to

procurement and quality control related to FHA and/or ADA compliance as they are kept in the

normal course of business at Post's offices.   In addition, responsive documents are attached as

Exhibit L.  Post is unaware of any corporate policies to procure specific materials for

development on a portfolio-wide basis.

     14.    All documents to all persons who has any role in the design or construction of any
of the multifamily apartment complexes and dwellings at the Subject Properties, or other
properties identified in your responses to Plaintiff's First Set of Interrogatories, including but not
limited to, their personnel files.

**Specific Objections:**  Post objects to Document Request No. 14 because it is vague, over broad,

unduly burdensome, and voluminous.  Plaintiff's request for *all* documents to *all* persons who

had *any* role in the design or construction of *any* multifamily apartment complexes is clearly

unreasonable and impossibly nonspecific.

**Response:** Subject to and without waiving any general or specific objection, Post refers Plaintiff

to the documents produced or to be produced in the normal course of business pursuant to

Document Request Nos. 2, 8, 9, 11 and 12.

**Supplemental Response:**  Post is unaware of any discipline of its employees involving disability

or the accessibility requirements of the FHA or ADA.  Post will produce a representative sample

of personnel files as individuals are identified by the ERC so that ERC may refine its request to

include documents reasonably calculated to lead to the discovery of admissible evidence.

     20.    To the extent not provided in response to a prior request for production, all
documents that relate to any application of the FHA or the ADA to the design or construction of
the multifamily apartment complexes and dwellings identified in your response to Plaintiff's First
Set of Interrogatories.

**Specific Objections:**  Post objects to Document Request No. 18 because it is vague, over broad,

unduly burdensome, and voluminous.

**Supplemental Objection**: Post objects to Document Request No. 20 because it is vague, over broad, unduly burdensome, and voluminous.

**Supplemental Response:** Subject to and without waiving any general or specific objection, Post will produce all responsive non-privileged documents as they are kept in the normal course of business at Post's offices.

Respectfully submitted,

HOLLAND & KNIGHT, LLP

/s/ Christopher B. Hanback
Christopher B. Hanback (Bar # 232579)
Alan I. Baron (Bar. # 340273)
Rafe Petersen (Bar # 465542)
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C. 20006
(202) 955 3000 Phone
(202) 955 5564 Fax
E-mail: christopher.hanback@hklaw.com
E-mail: alan.baron@hklaw.com
E-mail: rafe.petersen@hklaw.com
*Counsel for Post Properties, Inc., et al.*

19

## VERIFICATION

I, Dayna Boone, hereby verify that the foregoing Supplemental Responses to Plaintiff's First Set of Interrogatories, which have been prepared with the assistance of counsel and after a review of all existing documents relevant to this matter, are true and correct to the best of my knowledge, information and belief.

I, Dayna Boone, further verify that the Responses to Plaintiff's First Set of Interrogatories, which were served on Plaintiffs on October 17, 2007 and included in the foregoing Supplemental Responses, and which were prepared with the assistance of counsel and after a review of all existing documents relevant to this matter, are true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct. Executed on _November 30, 2007_ .

Dayna Boone

20

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Supplemental Response was served via first-class mail, postage prepaid, this 20th day of November, 2007, on the following:

Alyssa Lareau, Esq.
Fried, Frank, Harris, Shriver & Jacobson LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004

Sheila Jane Carpenter, Esq.
Jorden Burt LLP
1025 Thomas Jefferson Street, NW
Suite 400 East
Washington, DC 20007

Donald Lee Kahl, Esq.
Washington Lawyers' Committee for Civil Rights & Urban Affairs
11 Dupont Circle, NW
Suite 400
Washington, DC 20036


                                        /s/ Christopher B. Hanback
                                        Christopher B. Hanback


# 4912209_v2

21