## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EQUAL RIGHTS CENTER )
)
Plaintiff, )
)
vs. )    Case No. 1:06CV01991
)    Judge Richard J. Leon
POST PROPERTIES, INC. )
POST GP HOLDINGS, INC. )
POST APARTMENT HOMES, L.P. )
)
Defendants. )

## DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

Defendants Post Properties, Inc., Post GP Holdings, Inc., and Post Apartment Homes, L.P. (collectively "Post"), by undersigned counsel, hereby file this Memorandum of Points and Authorities in Opposition to Plaintiff's Motion to Compel. Plaintiff's Motion to Compel is nothing other than a desperate attempt by Plaintiff to avoid its own responsibility for conducting proper discovery to prosecute and prove its case, and instead use the confidential materials created by Post's attorneys both in anticipation of litigation and after litigation commenced. Post has an unquestionable right to obtain protected legal advice and Plaintiff is unable to demonstrate a justifiable or substantial need to overcome these privileges. Plaintiff's allegations of convenience do not overcome the policies served by the work product and attorney-client privilege doctrines, and Plaintiff's Motion should be denied in its entirety.

### BACKGROUND

Plaintiff Equal Rights Center ("ERC") filed this Complaint on November 21, 2006, alleging that Post violated the design and construct requirements of the Fair Housing Act

("FHA") 42 U.S.C. §§ 3601-3619.  As a basis for its claims, ERC alleged that it "tested" numerous Post properties, found violations, and then extrapolated from those alleged violations, that Post had engaged in a pattern and practice of FHA violations.  ERC further asserted that it diverted resources and has otherwise had to counteract alleged discrimination by Post.

Despite these far-reaching allegations, during discovery it became clear that ERC has actually never visited, much less tested, a majority of the properties challenged by ERC's allegations.  Additionally, ERC has admitted that it cannot identify any individuals who have even been to a Post property (other than its own testers), much less been harmed by Post.  Indeed, ERC, with its limited local operations in the Washington, DC area, filed this suit and made sweeping allegations concerning properties across the country about which it has no information other than a street address.   Realizing the discovery ramifications of supporting such broad allegations, ERC now asks this Court to breach the protection provided to Post's confidential communications with its attorneys and afford ERC a short-cut to obtaining information in the hopes of  proving its case.

ERC's allegations, while sweeping in scope, have always rested on scant evidence.  ERC propounded discovery on September 14, 2007, serving Post with Plaintiff's First Set of Interrogatories and Second Request for Production of Documents.  In addition, ERC conducted a Rule 30(b)(6) deposition of Post on July 16 and 17, 2007.  In both ERC's written discovery requests and ERC's deposition questions, ERC asked Post to produce a wide array of documents.  Post offered to produce all non-privileged documents responsive to ERC's interrogatories and documents requests as they are kept in the normal course of business at Post's offices.  However, Post made a reasonable determination that communications between Post and its counsel are

privileged.  As is Post's federal right pursuant to Rule 26 of the Federal Rules of Civil

Procedure, Post refused to produce or speak to the privileged material.

The holes in ERC's allegations against Post's portfolio of properties are gaping.  ERC

alleges that 58 "Subject Properties" fail to comply with the FHA and ADA but does not base this

allegation on actual measurements or observations of the properties (other than the limited

testing activities).  ERC concedes that it has no such information.  Thus, in addition to written

discovery, ERC requested—and Post consented to—numerous site inspections of Post properties.

ERC's experts inspected Post Pentagon Row during the week of June 18, 2007, and Post Carlyle

Square during the week of June 25, 2007.  On July 10, 2007, ERC provided Post an extensive

inspection schedule that included inspection dates for fourteen different properties in five states

and the District of Columbia.  These inspections were set to take place on July 17-20, 23-26, and

30; August 1-3, 6-8, 9-10, 13-17, 20-23, and 27-30; September 10-14 and 23-27; and October 1-

4.  Post agreed to these inspection dates and began to prepare for them.  ERC's experts inspected

Post Briarcliff and a property formerly known as Post Oak during the week of July 16, 2007.

Thereafter, ERC informed Post that it was cancelling all future scheduled inspections.  ERC gave

no reason for the cancellation.  Yet, it does not appear to be a coincidence that these inspections

were halted after ERC's Rule 30(b)(6) deposition of Post.  Indeed, ERC cites the deposition of

Dayna Boone as the period when it became aware that Post had hired an attorney to assess the

compliance of the various properties.  Simply put, ERC seeks to get its inspection data for free.

After Post refused to disclose this confidential work product ERC recently reinitiated its

inspections, likely hedging against the possibility of such a windfall and recognizing that the discovery period, already extended once to accommodate ERC, will close in three months.[1]

ERC's motives are clear. ERC recognizes the need to gain actual knowledge of the nature of the properties that it alleges violate the FHA and ADA, and is conducting inspections of Post's properties. Additionally, in discussions between both parties' counsels that have taken place relating to ERC's discovery requests, ERC has informed Post that it is particularly concerned with obtaining reports prepared by Post's counsel, Theresa Kitay, Esq., which consist of compliance assessments of the various properties.[2] Post agreed to produce a privilege log as to these specific documents that were created by Post's attorney, knowing that ERC would file a motion to compel on these documents.

Post hired the law firm of Coughlin, Kitay & Edelstein, P.C. and Theresa Kitay on December 6, 2005. Ms. Kitay was hired "in connection with an accessibility analysis of existing projects in anticipation of potential litigation under the Americans with Disabilities Act and the Fair Housing Act."[3] *See* Declaration of Glen Smith, attached hereto as Exhibit A, ¶ 3. Thus, Ms. Kitay was hired as an attorney who could advise Post by reviewing compliance as well as

---

[1] ERC's experts inspected Post Massachusetts Avenue (DC) on November 26-28, 2007, Post Carlyle Condominiums (VA) on November 29, 2007 and Post Toscana (NY) on December 4-6, 2007. Additionally, ERC has advised Post that it intends to inspect Park at Phillips Place (NC) on January 8-10, 2008, Post Ballentyne (NC) on January 15-17, 2008, Post Oglethorpe (GA) on January 22-24, 2008, Post Biltmore (GA) on February 5-6, 2008, Post Peachtree Hills (GA) on February 6-8, 2008, Post Rocky Point (FL) on February 12-14, 2008, and Post Addison Circle (TX) on February 19-21, 2008.

[2] No other compliance reviews were discussed during the meet and confer. Surprisingly, ERC's Motion now mentions various other consultants employed or used by Post in the past. Documents related to these individuals were not discussed with ERC. During the meet and confer, the parties agreed to disagree about the release of the Kitay reports. The assertion of privilege on all other documents would take place on a rolling basis once ERC began to inspect the documents as kept in Post's offices. Hence, ERC was aware that Post would prepare a privilege log only for Ms. Kitay's report as discussed an e-mail from ERC dated November 9, 2007. For ERC to now state that Post has waived privilege over other documents not on that list is a troubling abuse of the meet and confer process.

[3] Ms. Kitay is no longer with this law firm, and now maintains a solo practice. *See* Declaration of Theresa L. Kitay, attached hereto as Exhibit B, ¶ 3.

recommending legal strategy and defense for litigation. Exhibit A., ¶ 6. Ms. Kitay was hired

after internal discussions at Post related to the series of lawsuits filed by ERC against developers

similar to Post. Exhibit A, ¶ 4. Post was aware that ERC had filed complaints against

competitor companies such as Archstone-Smith,[4] Bozzuto,[5] and AvalonBay,[6] and that such

complaints contained nothing specific that distinguished ERC's claims against one development

company from another (with the exception of actual property names). Exhibit A, ¶ 4. Given that

Post is in the same industry, Post reasonably assumed that it was likely that ERC would

eventually pursue claims against Post and undertook actions accordingly. *See* Exhibit A, ¶ 5. In

other words, Post believed that it was only a matter of time before ERC would file suit against

Post given that Post was a development company similar to the other companies against which

ERC had already filed suit. *See* Exhibit A, ¶ 5. Obviously, Post's reasonable assumption proved

true as ERC went on to file suit against Post and has since filed complaints against other

companies.

     In accordance with Ms. Kitay's engagement, she performed a legal analysis of various

compliance issues at Post's properties in light of the Fair Housing Act ("FHA") and Americans

With Disabilities Act ("ADA"). Contrary to the assertion of ERC, the compliance reviews are

not merely compilations of measurements (such as those performed by ERC's experts), but legal

analyses directed to help Post prepare for the litigation with Plaintiff, and Post's defense thereof.

Without waiving any privilege, the reviews consist of legal conclusions and recommendations

based on observations of Post's properties. *See* Declaration of Theresa Kitay, Esq., attached

---

[4] ERC filed a Complaint against Archstone-Smith on December 20, 2004. *See Equal Rights Center v. Archstone Smith Trust*, No. 1:04-cv-03975-AMD (D. Md.).

[5] ERC filed a Complaint against Bozzuto on September 15, 2005. *See Equal Rights Center v. Bozzuto & Assocs., Inc.*, No. 8:05-cv-02558-DKC (D. Md.).

[6] ERC filed a Complaint against AvalonBay on September 22, 2005. *See Equal Rights Center v. AvalonBay Communities, Inc.*, No. 8:05-cv-02626-AW  (D. Md.).

hereto as Exhibit B, ¶ 9. In performing this analysis, Ms. Kitay applied her knowledge of the

requirements of the FHA and ADA, interpretations on such issues as coverage of particular

elements in dwelling units and common areas, tolerances and accepted deviations from

dimensions set forth in "safe harbors", and her experience in litigating FHA and ADA matters to

determine what to look at and measure on site, including how to measure specific elements.

Exhibit B, ¶ 9.[7] Ms. Kitay's compliance reviews contain her judgments in evaluating which of

the information gathered to include in the report, the implications of any item noted in the report,

and recommendations made with regard to the possible challenges to the compliance of such

items. Exhibit B, ¶ 9. In short, the reports are primarily a record of Ms. Kitay's legal

impressions and opinions regarding the accessibility compliance of the properties as she

understands the interpretations of the applicable laws, as well as some recommendations based

on that understanding. Exhibit B, ¶ 9.

Because these compliance reviews are attorney work product and are protected by

attorney-client privilege, Post produced to ERC a privilege log identifying the compliance

reviews as such. ERC, however, now requests that this Court grant it a windfall, i.e., the

production of Ms. Kitay's confidential work product, which ERC unabashedly states would

allow it to forego its own discovery. ERC has been unequivocal in admitting that it seeks such

information to save it the time and expense of having to conduct inspections at the various

---

[7] Determining compliance with the FHA is not as simple as taking a few measurements with a tape measure. The FHA itself vaguely establishes what is required to make covered units accessible, by requiring the following elements: "accessible and usable" public areas; sufficiently wide doors; and "features of adaptive design" such as an "accessible route into and through the dwelling," placement of certain controls (e.g. light switches) "in accessible locations," reinforcements in walls for grab bars, and "usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space." 42 U.S.C. § 3604(f)(3)(C)(i)-(iii). In the words of Congress, these are "modest requirements" designed to "result[] in features which do not look unusual and will not add significant additional costs." H. Rep. No. 100-711 100th Cong., 2d Sess. 1998, *reprinted in* 1988 U.S.C.C.A.N. 2173, 2179 ("House Report"). Thus, the FHA sets out an imprecise mandate of accessibility and adaptability that is unlike, for example, a national building code, and cannot be easily determined by taking simple measurements.

properties that it has challenged as violating the FHA and ADA.  It is clear that ERC's broad

allegations of violations at 58 properties have become much more difficult for it to prove than it

anticipated when it filed its Complaint.  However, the fact that ERC bit off more than it can chew

is not adequate reason for the extraordinary relief of providing confidential attorney work

product in order to potentially help ERC to build its case.  ERC is not entitled to these privileged

compliance reviews and has failed to show any substantial need that could defeat Post's rightful

privilege.

## ARGUMENT

Ms. Kitay's compliance reviews ("compliance reviews") are protected from disclosure by

both work product and attorney-client privilege.  The compliance reviews are documents created

in anticipation of litigation and contain confidential information in the form of legal advice from

Ms. Kitay to Post.

## I.    THE ATTORNEY WORK PRODUCT PRIVILEGE PROTECTS THE COMPLIANCE REVIEWS FROM DISCLOSURE.

Under Federal Rule of Civil Procedure 26(b)(3)(A) and the work product privilege

doctrine, "a party may not discover documents and tangible things that are prepared in

anticipation of litigation or for trial by or for another party or its representative." *Fago v. M &

Mortgage Corp*, 242 F.R.D. 16, 18 (D.D.C. 2007) (citing Fed. R. Civ. P. 26).  According to this

Court, the purpose behind this rule is to promote "the adversary system by safeguarding the fruits

of an attorney's trial preparation from the opponent." *Id.* at 19.  In the adversarial system, it is

essential that "a lawyer work with a certain degree of privacy, free from unnecessary intrusion by

opposing parties and their counsel." *Willingham v. Ashcroft*, 228 F.R.D. 1, 3 (D.D.C. 2005).  It

is often the case that "an attorney preparing for trial must assemble much material that is outside

of the attorney-client privilege, such as witness statements, investigative reports, drafts of

pleadings, and trial memoranda" and those materials must be protected from opposing counsel, lest the opposing counsel receive a "windfall" in discovery. *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998) (quoting 2 Christopher B. Mueller & Laird C. Kirkpatric, *Federal Evidence 410* (2d ed. 1994)); *Fago*, 242 F.R.D. at 19. If the rule were otherwise, a non-level playing field would result "contrary to the protection of the adversary system." *Fago*, 242 F.R.D. at 19.

### A.    Post engaged the legal services of Ms. Kitay in anticipation of litigation.

In determining the applicability of the work product doctrine, the "testing question" is "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation," or in anticipation of litigation. *In re Sealed*, 146 F.3d at 884; *see also Fago*, 242 F.R.D. at 18 (asking whether the document "would have been created in essentially similar form irrespective of the litigation"). This Court has further held that "a party seeking to protect documents prepared in anticipation of litigation must make both a temporal and a motivational showing." *Fago*, 242 F.R.D. at 18; *see also Willingham*, 228 F.R.D. at 4 (holding that "motivation is key"). Hence, "at the time the document was prepared or obtained, there must have been at least 'a subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable.'" *Fago*, 242 F.R.D. at 18 (quoting *EEOC v. Lutheran Soc. Servs.*, 186 F.3d 959, 968 (D.C. Cir. 1999)); *see also In re Sealed*, 146 F.3d at 884.

Documents created in anticipation of litigation are protected by work product privilege even if a claim has not yet been filed. *See In re Sealed*, 146 F.3d at 886. Work product privilege will apply as long as "the client asked the lawyer to review a matter that the client feared could lead to litigation" and the lawyer with knowledge that litigation was likely, "prepared the documents in anticipation of litigation." *Id.* As the D.C. Circuit explains, "[i]t is

often prior to the emergence of specific claims that lawyers are best equipped either to help clients avoid litigation or to strengthen available defenses should litigation occur." *Id.* In sum, "[i]f lawyers had to wait for specific claims to arise before their writings could enjoy work-product protection, they would not likely risk taking notes about such matters or communicating in writing with colleagues, thus severely limiting their ability to advise clients effectively." *Id.*

In this case, Ms. Kitay's compliance reviews—both those created before and after Plaintiff filed suit against Post—were created in anticipation of litigation and therefore, are protected as attorney work product. Post meets both the temporal and motivational showing requirements. First, thirty-one compliance reviews were conducted or completed after ERC filed suit against Post, and thus, were obviously completed in anticipation of and as a result of the ongoing litigation. Second, at the time that the other sixteen compliance reviews were prepared, and at the time Post hired Ms. Kitay to conduct the compliance reviews, Post had a reasonable belief that litigation was likely to occur. As of December 6, 2005, the date Ms. Kitay was hired to conduct the compliance reviews, ERC had already filed suit against Archstone-Smith, Bozzuto, and AvalonBay. And, as Ms. Kitay conducted her reviews, but before ERC filed suit against Post, ERC filed suit against Equity Residential.[8] These suits against Post's peer developers led Post to reasonably believe and anticipate that ERC would file similar litigation against Post. The developers that had been sued by ERC with virtually identical Complaints were similar to Post in that they all own, operate, and/or develop large portfolios of multifamily housing throughout the United States, and there was nothing in the ERC Complaints that distinguished the developers from one another or from Post. ERC initiated a self-styled "series" of suits and sought wide publicity for its actions through press releases and newspaper coverage.

---

[8] ERC filed a Complaint against Equity Residential on April 27, 2006. *See Equal Rights Center v. Equity Residential*, No. 1:06-cv-01060-AMD (D. Md.).

It would be strange for ERC to allege that Post could not have made a reasonable inference from ERC's past actions that litigation was likely.

Accordingly, counsel was engaged and the compliance reviews were prepared and obtained because of the prospect of litigation with ERC or because of actual litigation with ERC; the compliance reviews would not have been prepared at all but for the prospect of litigation with ERC. In hiring Ms. Kitay as its attorney, Post took steps to prepare for this anticipated litigation. Post hired Ms. Kitay for the specific purpose and specific project of an "accessibility analysis" and ERC has no right to discover Post's privileged documents.

### B. Each entire compliance review is protected by work product, including the facts selectively chosen and recorded for each review.

In an attempt to get around Post's clear right to work product privilege for the compliance reviews, ERC argues that the work product doctrine does not allow Post to withhold underlying facts. This argument is without merit and without supportive case law from this Circuit. The law in this District is "[w]hen the work-product doctrine applies, its reach is broad." *General Electric Co. v. Johnson*, No. Civ.A.00-2855(JDB), 2006 WL 2616187, *12 (D.D.C. Sept. 12, 2006). "Even the factual portions of a document may be withheld, so long as the document as a whole was created in anticipation of litigation." *Id.* In effect, "a lawyer's factual selection reflects his focus; in deciding what to include and what to omit, the lawyer reveals his view of the case." *Director, Office of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1308 (D.C. Cir. 1997). The compilation of factual information by an attorney can easily reveal the mental impressions and litigation strategy of that attorney by indicating what information the attorney thought was important to gather. *See Fago v. M & T. Mortgage Corp.*, 238 F.R.D. 3, 8 (D.D.C. 2006) (holding that "two charts reflecting compilations of information"

10

that appeared to have been created in the course of the preparation of the litigation were

protected by the work product privilege).

In this case, any factual information included in the compliance reviews is protected by

the work product privilege. Similar to the protected compilations of information in *Fago*, any

factual information that was recorded by Ms. Kitay is so intertwined with Ms. Kitay's mental

impressions and litigation strategy that it cannot be separated out. Ms. Kitay's Declaration

explains:

> I made the same judgments in evaluating which of the information
> gathered to include in the report. I also made judgments as to the
> implications of any item noted in the report, and as to any
> recommendations made with regard to these items. In short, the
> reports are primarily a record of my impressions and opinions
> regarding the accessibility compliance of the properties as I
> understand the interpretations of the applicable laws, as well as
> some recommendations based on that understanding.

Exhibit B, ¶ 9. Accordingly, the factual selection in Ms. Kitay's compliance reviews reflects her

focus, and as the D.C. Circuit explained, "in deciding what to include and what to omit" in her

compliance reviews, Ms. Kitay reveals her view of the case and what information she determined

in her legal expertise was important to gather. *See Vinson & Elkins*, 124 F.3d at 1308.

### C.    ERC cannot show substantial need to overcome the protections of work product privilege.

Under Rule 26, work product privilege may be overcome only if the party seeking

discovery "shows that it has substantial need for the materials to prepare its case and cannot,

without undue hardship, obtain their substantial equivalent by other means." However, in the

D.C. Circuit, when the work product "reveals opinions, judgments, and thought processes of

counsel, it receive[s] some higher level of protection, and a party seeking discovery must show

extraordinary justification." *In re Sealed*, 676 F.2d 793, 809-10 (D.C. Cir. 1982); *see also*

*Willingham*, 228 F.R.D. at 3 (holding that the court must protect the "mental impressions, conclusions, opinions, or legal theories of an attorney" and that they "are entitled to special protection and require a stronger showing of necessity to justify release).

In this case, as explained above, the compliance reviews reveal Ms. Kitay's opinions and thought processes by way of how she chose to conduct the compliance review, what information she chose to gather, and how she chose to present this information to Post in the form of legal advice. Accordingly, ERC must provide an extraordinary justification for the discovery of the compliance reviews, and they have failed to assert anything greater than mere inconvenience.

ERC fails to meet that standard. ERC argues that it needs the compliance reviews for two reasons. First, ERC argues that the compliance reviews have documented conditions at Post's properties that have since been changed by Post and that these reviews may be the only evidence of the conditions of the properties pre-alteration. Second, ERC argues that for properties where no changes have been made, the discovery of the compliance reviews will greatly reduce ERC's costs to inspect each of the properties.

As to ERC's first argument, ERC has failed to explain how Post's privileged compliance reviews may be the only available evidence of conditions that existed at the properties prior to filing the Complaint. ERC has made this blanket statement without reviewing any development and construction files or site plans and maps that have been offered at Post's office since October 17, 2007, and without noticing any depositions of Post employees that may have knowledge of the changes Post has and has not made at its properties. With such little or no effort on the part of ERC to obtain this information by other means, the Court cannot find that ERC has a

substantial need for the legal analysis of Post's counsel.[9] *See, e.g., Tequila Centinela, S.A. DE*

*C.V. v. Bacardi & Co. Ltd.*, No. 04-02201 (RCL), 2007 WL 1876388, *3 (D.D.C. June 28, 2007)

(holding that party had not demonstrated substantial need because it had not yet attempted to

obtain the information by other means); *Chem-Nuclear Systems, Inc. v. Arivec Chemicals, Inc.*,

978 F. Supp. 1105, 1108 (N.D. Ga. 1997) ("If the other party has the ability to conduct its own

investigation of the underlying facts based on the information already provided then that party

has not shown lack of alternate source of information."). Post should not be tasked with saving

ERC from its own apathy during this discovery period.

Nor should Post be liable for ERC's extreme accusation of spoliation given that the

primary changes Post has made to its properties have been changes to enhance the properties'

accessibility. These changes do not amount to spoliation and instead have occurred as part of

Post's routine maintenance and improvement to its properties. Spoliation occurs "where a party

directly destroys or alters evidence with bad faith intent to deprive the opposing party of relevant

evidence." *Minter v. Prime Equipment Co.*, No. CIV-02-132-KEW, 2007 WL 2703093, *3

(E.D. Okla. Sept. 14, 2007); *see also Rice v. United States*, 917 F. Supp. 17 (D.D.C. 1996)

(holding that to constitute spoliation, "the circumstances of the [destruction] must manifest bad

faith"). Post's intention in altering its properties is to enhance accessibility or conduct routine

maintenance, not prejudice the ERC in its suit or act in bad faith. Exhibit A, ¶ 7. Considering

---

[9] Post does not dispute that in some cases, Post has changed its properties both as part of its routine maintenance and to enhance their accessibility by for example, altering parking lots and curbs, installing additional signage, and improving accessible outside paths at the properties. For the most part, any changes made by Post are limited to outside and common areas, and not to individual units. In contrast, the compliance reviews include Ms. Kitay's overarching review of various properties including the outside, common areas, and the interior of individual units. ERC should not be permitted to point to one or two changes made by Post and in turn be granted wholesale access to Ms. Kitay's legal analyses relating to unit interiors and other areas to which no changes were made. Where no changes have been made, ERC can clearly continue as it has done with its inspections. It strains the adversarial process to grant ERC access to privileged documents created in anticipation of litigation when ERC has the opportunity to do, and has in fact done in several cases, its own compliance reviews.

that ERC claims it is suing to increase accessibility in multifamily housing, complaining about alterations to a property that might enhance accessibility is a strange and faulty argument for this alleged public interest plaintiff.

Likewise, ERC's second argument that without the compliance reviews, ERC will be forced to continue to conduct "costly and time consuming" inspections is without merit and certainly does not show substantial need worthy of piercing the work product privilege. ERC has filed a lawsuit that involved over 58 properties in eight states and the District of Columbia. ERC chose to file a lawsuit of such magnitude and it cannot now complain that it does not have the time or resources to prosecute its case, nor can Post, the defendant, be held responsible for lessening ERC's burden. ERC is desperate to prove its case within the time limits of this extended discovery period. It is now realizing that the clock it ticking down and it may have bitten off more than it can chew. Yet, this miscalculation is not Post's burden to bear. *See National Union Fire Ins. Co. v. Murray Sheet Metal Co. Inc.*, 967 F.2d 980, 985 (4th Cir. 1992) (quoting Fed. R. Civ. P. 26, Advisory Committee Notes, 1970 amend.) ("[T]he Advisory Committee for the 1970 amendment that introduced the 'substantial need' requirement noted, among other things, that each side to litigation 'should be encouraged to prepare independently' and that 'one side should not automatically have the benefit of the detailed preparatory work of the other side.'").

Post has accommodated ERC at every request to inspect its properties.[10] It was ERC who inexplicably cancelled months worth of inspections on mid-July 2007 and is just now rescheduling them for January and February 2008. Indeed, Post has even agreed to cooperate with ERC's new schedule and allow inspections with less notice than what was in the parties'

---

[10] Post required limited conditions on the inspections in order to minimize the disturbance to the property and to protect the privacy of the residents.

original agreement. No substantial need or undue burden can be established where ERC has the opportunity to inspect Post's properties, review Post's development and construction documents, depose Post's employees, and ultimately determine compliance for itself.[11] Condoning the short cut that ERC seeks would have a chilling effect on the ability of Post to obtain advice from its counsel. The fact that such advice is relatively technical in nature and requires observations and measurements should not be used as a reason to violate attorney work product privilege.

## II.    THE ATTORNEY-CLIENT PRIVILEGE PROTECTS THE COMPLIANCE REVIEWS FROM DISCLOSURE.

In addition to work product privilege, the compliance reviews are protected from disclosure by attorney-client privilege. Attorney-client privilege "exists to encourage 'full and frank communication between attorneys and their clients.'" *Hicks v. Bush*, 452 F. Supp. 2d 88, 99 (D.D.C. 2006) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). The privilege covers and includes any "matter which the client would not wish divulged" and protects "'those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege.'" *Id.* at 100 (quoting *Fisher v. United States*, 425 U.S. 391 (1976)). The privilege applies to "communications made to an attorney in his [or her] capacity as legal advisor," and "'rests on the need for the advocate to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out.'" *Fago*, 238 F.R.D. at 11 (quoting *Upjohn*, 449 U.S. at 389). When the communication comes from the attorney to the client, the communication is protected if it is "based *in part at least* upon a confidential communication to the lawyer from the client." *In re Sealed*, 737 F.2d 94, 99 (D.C. Cir. 1984) (emphasis in original); *see also Fago*, 238 F.R.D. at 11. The principal difference between the

---

[11] The ERC certainly does not lack for legal support in pursing this matter, having retained the services of the Washington Lawyers Committee, the Jordan Burt law firm and Fried, Frank, Harris, Shriver & Jacobson LLP.

attorney-client privilege and the work-product doctrine, in terms of the protections each provides, is that the privilege cannot be overcome by a showing of need.

The compliance reviews in this case contain confidential information subject to the attorney-client privilege. They represent confidential communications between Post and its counsel, who was hired to review properties for FHA and ADA compliance. In so doing, Ms. Kitay, Post's advocate and attorney, knew all of Post's confidential reasons for seeking her representation. The compliance reviews were created in Mrs. Kitay's capacity as Post's legal advisor and the compilation contained in each review inherently includes Post's confidential communications as to how her representation and recommendations would aid and advise Post. The fact that Ms. Kitay's analysis must, by its very nature, include facts and figures, does not weaken the protection of this type of communication. Ms. Kitay's legal representation was an integral part of her engagement, and distinguished her from various other consultants hired by Post in the past. *See* Exhibit A, ¶ 6.

Incredibly, ERC has attempted to argue that Ms. Kitay did not perform legal analysis. *See* ERC Mot. at 17. Yet, even if the Court were to consider Ms. Kitay as an accessibility consultant instead of an attorney (which it should not), the compliance reviews are still protected by attorney-client privilege. "Attorney-client privilege can attach to reports of third parties made at the request of the attorney or the client where the purpose of the report was to put in usable form information obtained from the client." *Federal Trade Commission v. TRW, Inc.*, 628 F.2d 207, 212 (D.C. Cir. 1980). Examples of this form of attorney-client privilege include "an audit of the client prepared by an accountant at the attorney's request to aid in advising his client whether to file an amended tax return, *id.* (citing *United States v. Alverez*, 519 F.2d 1036, 1045-

46 (3d Cir. 1975)), and "a statement of the client's net worth prepared by an accountant at the attorney's request," *id.* (citing *United States v. Cote*, 456 F.2d 142, 144 (8th Cir. 1972)).

Here, Post's in-house legal counsel hired Ms. Kitay to analyze Post's possible exposure to suit related to allegations of violations of the FHA and ADA. *See* Exhibit A, ¶ 3. Post's legal counsel hired Ms. Kitay because of her legal expertise in compliance issues, and ability to put Post's information in a format which Post could use in its defense of this suit. Accordingly, the compliance reviews are protected by attorney-client privilege and ERC is not permitted to discover them.

## III.    POST HAS NOT WAIVED PRIVILEGE AS TO ANY OTHER COMPLIANCE REVIEWS, INSPECTION REPORTS, OR SURVEYS.

ERC has not only sought discovery of Ms. Kitay's compliance reviews, but also seeks disclosure of work conducted by other Post consultants, such as Bob Woodall, Paul Sheriff,[12] Gaila Barnett, Fred Collier, and Larry Perry. These individuals were identified at Post's 30(b)(6) deposition and ERC now argues that because documents created by these consultants were not included on Post's Kitay compliance review privilege log, that Post has waived its privilege regarding these consultants. Post has waived no such privilege.

Failure to log privileged documents, "does not necessarily trigger waiver of privilege as a sanction." *United States v. British American Tobacco (Investments) Ltd.*, 387 F.3d 884,  890 (D.C. Cir. 2004); *see also Tequila Centinela, S.A. DE C.V. v. Bacardi & Co. Ltd.*, No. 04-02201 (RCL), 2007 WL 1876388, *3 (D.D.C. June 28, 2007) ( holding that failure to include privileged communications on initial privilege log "does not warrant a waiver of attorney work product");

---

[12] Strangely, ERC compels the release of documents from Post's expert Paul Sheriff. As the Court is aware, Paul Sheriff provided expert reports (including "roll-thru" videos) concerning several of Post's properties as Exhibits attached to Post's Memorandum of Opposition to ERC's Motion for Preliminary Injunction and the other supplemental briefing in opposition to that Motion. Assuming that this request is due to a change in counsel by ERC since those materials were filed, Post will provide additional copies of the Sheriff videos to ERC, which were effective in defeating ERC's Motion for Preliminary Injunction.

*Wagener v. SBC Pension Benefit Plan-Non-Bargained Program*, No. 1:03-CV-00769 (RCL), 2007 WL 915209, *6 (D.D.C. Mar. 26, 2007) (holding that "if a party's pending objections apply to allegedly privileged documents, the party need not log the document until the court rules on its objections"). "[W]aiver of privilege is a serious sanction most suitable for cases of unjustified delay, inexcusable conduct, and bad faith." *Id.* at 891.

In this case, the extreme sanction of waiver is not warranted; Post has not acted in bad faith or engaged in dilatory tactics. Quite the contrary, as negotiated between counsel, the privilege log produced, which identified Ms. Kitay's compliance reviews, was a privilege log created specifically at the request of ERC so that ERC could file this Motion to Compel. During the meet and confer prior to the filing of this Motion, ERC and Post specifically agreed that Post would file a privilege log of the Kitay documents given ERC's extreme interest in these documents. The omission of other potentially privileged documents from the Kitay privilege log is not a waiver of the privilege. There are thousands of other documents that Post has offered to produce on a rolling basis and Post's internal review of such documents will lead to the assertion of privilege. ERC has not sought to review most of the documents that have been made available to it since October 17, 2007. ERC's attempt to now raise the fact that these consultants' reports, reviews, and surveys were not included on Ms. Kitay's privilege log as a waiver argument, amounts to a misrepresentation of the discussions between the parties leading up to this Motion. As agreed between counsel, Post will produce a privilege log identifying other privileged documents at the proper time in the course of this litigation, i.e., Post will produce a privilege log that reflects the privileged documents found within the greater mass of Post's documents as they are reviewed by ERC on a rolling basis.

IV.    **ERC'S "ADDITIONAL MOTION TO COMPEL ISSUE" IS WITHOUT MERIT AS POST HAS ALREADY PRODUCED AND MADE AVAILABLE TO ERC THE REQUESTED DOCUMENTS.**

ERC takes issues with Post's response to ERC's Document Request Nos. 6 and 7, which

are as follows:

> 6.      All documents relating or referring to any complaint, whether informal, administrative or judicial, made to or against you, or any multifamily apartment complex or dwelling in which you held any ownership interest, the subject of which was compliance with the design and construction requirements of Section 3604(f)(3)(c) of the FHA, or the ADA or any request for a reasonable accommodation from a tenant with a disability at any such property.
>
> 7.      The Complaint, Petition or Charge, Post's response to the Complaint, Petition or Charge, and all documents evidencing any settlement or final disposition of any administrative or judicial complaint, notice of violation, citation, or notification or whatever nature from or to any state, district, or municipal authority relating to any alleged violations by you or any statute, code or ordinance against Post since March 13, 1991, and relating to any issue of accessibility at any multifamily housing property owned, in whole or in part, directly or indirectly, or managed by you.

As to both of these Requests, Post objected based on the fact that Post's involvement with

complaints, whether formal or informal, not brought forward in this particular litigation is not

relevant to Plaintiff's claims and allegations in this litigation. *See, e.g., Blue v. Grannis*, No. CIV

S-05-1256, 2007 WL 2758025, * 2 (E.D. Cal. Sept. 21, 2007) (holding that plaintiff failed to

explain how past grievances and complaints against the defendant were "reasonably calculated to

lead to evidence admissible at trial").

Despite this objection, in response to these document requests and others, Post produced

to ERC all non-privileged documents related to any formal complaints and administrative

proceedings filed against Post. For example, Post produced documents related to a lawsuit based

on accessibility issues at the Addison Circle property as well as documents related to HUD

19

complaints and the conciliations agreements entered into as a result of the complaints. In addition, to the extent Post has received any informal complaints from tenants, those complaints would be contained in tenant files, which have been made available to ERC since October 17, 2007, though ERC has yet to review them. Accordingly, ERC's requested relief that "Post should be ordered to produce all complaints received related to accessibility" is pointless; Post has already produced and made available to ERC all non-privileged documents relating to such complaints.

## CONCLUSION

Based on the foregoing, Post respectfully requests that this Court deny ERC's Motion to Compel in its entirety. The compliance reports identified on Post's privilege log are classic attorney work product as well as attorney-client communications and deserve the full protection afforded by these privileges under the law.

Respectfully submitted,

HOLLAND & KNIGHT, LLP

 /s/ Christopher B. Hanback
Christopher B. Hanback (Bar # 232579)
Alan I. Baron (Bar. # 340273)
Rafe Petersen (Bar # 465542)
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C. 20006
(202) 955 3000 Phone
(202) 955 5564 Fax
E-mail: christopher.hanback@hklaw.com
E-mail: alan.baron@hklaw.com
E-mail:  rafe.petersen@hklaw.com

*Counsel for Post Properties, Inc., et al.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Memorandum in

Opposition to Plaintiff's Motion to Compel was served by electronic filing, this 17th day of

December, 2007, on the following:


Alyssa C. Lareau, Esq.
Fried, Frank, Harris, Shriver & Jacobson, LLP
1001 Pennsylvania Avenue, NW
Suite 800
Washington, DC 20004

Donald Lee Kahl, Esq.
Washington Lawyers' Committee for Civil Rights & Urban Affairs
11 Dupont Circle, NW
Suite 400
Washington, DC 20036

                                        /s/ Christopher B. Hanback
                                        Christopher B. Hanback

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EQUAL RIGHTS CENTER )<br><br>Plaintiff, )<br><br>vs. )<br><br>POST PROPERTIES, INC. )<br>POST GP HOLDINGS, INC. )<br>POST APARTMENT HOMES, L.P. )<br><br>Defendants. ) | Case. No. 1:06CV01991<br>Judge Richard J. Leon |

## ORDER

UPON CONSIDERATION OF Plaintiff's Motion to Compel Discovery, and any

opposition thereto, it is by the United States District Court for the District of Columbia, this _____

day of _____ 2007, hereby

ORDERED that Plaintiff's Motion to Compel Discovery is DENIED.  It is further

ORDERED that Defendants are awarded the costs and expenses they incurred in

obtaining this order.


_____
**JUDGE RICHARD J. LEON**


Copies provided to:

Alyssa C. Lareau, Esq.
Donald Lee Kahl, Esq.
Christopher B. Hanback, Esq.

# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EQUAL RIGHTS CENTER )
)
      Plaintiff, )
)
      vs. )
)
POST PROPERTIES, INC. )
POST GP HOLDINGS, INC. )
POST APARTMENT HOMES, L.P. )
)
      Defendants. )
)

Case No. 1:06CV01991
Judge Richard J. Leon

### DECLARATION OF GLEN SMITH

    I, Glen Smith, hereby swear and affirm the following:

    1.    I am over 18 years of age and have personal knowledge of the facts set forth herein, and if asked, could competently testify to the same.

    2.    I am an attorney licensed in the jurisdictions of New York, Maryland, Georgia, and the District of Columbia. I am Vice President, Legal Affairs at Post Properties, Inc., Post GP Holdings, Inc., and Post Apartment Homes, L.P. (collectively "Post").

    3.    I hired Ms. Theresa Kitay's law firm Coughlin, Kitay & Edelstein, P.C. to represent Post on December 6, 2005 "in connection with an accessibility analysis of existing projects in anticipation of potential litigation under the Americans with Disabilities Act ["ADA"] and the Fair Housing Act ["FHA"]." Ms. Kitay's engagement consisted of the specific project of analyzing Post's possible exposure to suit related to allegations of violations of the FHA and ADA

    4.    Ms. Kitay was hired after internal discussions at Post related to the series of lawsuits filed by the Equal Right Center ("ERC") against developers similar to Post. Post was

1

aware that ERC had filed complaints against Post's competitor companies Archstone-Smith, Bozzuto, and AvalonBay, and that such complaints contained nothing specific that distinguished ERC's claims against one development company from another (with the exception of actual property names).

5.    Given that Post is in the same industry, Post assumed that it was likely that ERC would eventually pursue claims against Post and undertook actions accordingly. In fact, Post believed that it was only a matter of time before ERC would file suit against Post given that Post was a development company similar to the other companies against which ERC had already filed suit.

6.    Accordingly, Post hired Ms. Kitay, an attorney who could advise Post by reviewing its compliance with the FHA and ADA and recommending a legal strategy and defense for litigation with ERC. Ms. Kitay's legal representation was an integral part of her engagement, and distinguished her from various other consultants hired by Post in the past.

7.    Prior to and since this litigation has been filed, Post has changed its properties both as part of its routine maintenance and to enhance their accessibility by for example, altering parking lots and curbs, installing additional signage, and improving accessible outside paths at the properties. For the most part, any changes made by Post are limited to outside and common areas, and not individual units. At no time has Post changed any of its properties in bad faith relevant to this litigation.

I solemnly affirm under the penalties of perjury that the contents of the foregoing Affidavit are true to the best of my knowledge, information and belief.

_17 December 2007_
Date

Glen Smith

2

# Exhibit B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| EQUAL RIGHTS CENTER | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Case. No. 1:06CV01991 |
| POST PROPERTIES, INC.<br>POST GP HOLDINGS, INC.<br>POST APARTMENT HOMES, L.P. | ) ) ) ) | Judge Richard J. Leon |
| Defendants. | ) ) ) | |

## DECLARATION OF THERESA L. KITAY

I, Theresa L. Kitay, hereby swear and affirm the following:

1.    I am over the age of 18 and a resident of the state of California. The information in this declaration is based on my personal knowledge and information.

2.    I am an attorney licensed in the states of Georgia and California. I have been a practicing attorney since 1987, beginning with a private litigation practice in Atlanta, Georgia. In 1991, I became a trial attorney with the United States Department of Housing and Urban Development, where I was responsible for HUD's enforcement of the Fair Housing Act throughout the Southeastern United States.

3.    In 1996, I left HUD and formed a private practice of law in Atlanta concentrating on the defense and preventative representation of Fair Housing Act claims brought against housing provider clients. That law firm, consisting of me and my law partner Kathelene Coughlin (and later Steven J. Edelstein), existed until February 1, 2006. At that time, I relocated to California, and began a solo practice of law.

1

4.      While partnered with Ms. Coughlin and Mr. Edelstein, I was a shareholder and officer in the Fair Housing Institute, a consulting firm whose primary work was in providing live training sessions for housing provider clients on fair housing and other civil rights issues. I never performed any reviews of specific properties for accessibility compliance under the auspices of the Fair Housing Institute.

5.      As of February 1, 2006, I resigned my position and surrendered my shares in the Fair Housing Institute, and have not been involved with that organization since that date. All professional work I have done since then is under the auspices of my law firm, Theresa L. Kitay, Attorney at Law.

6.      Since approximately 2000, I have been a shareholder and officer in FHIO, Inc. (Fair Housing Institute Inc.). The sole purpose of FHIO is to create and market online fair housing training programs to housing providers. I have not been actively involved in FHIO since early 2006, but what work I have performed for FHIO is not in the nature of legal services, and is specifically disclaimed as such on FHIO's website - www.fhio.net.

7.      I estimate that 80% of my law practice since 1996 has been in the specific concentration of the Fair Housing Act's design and construction requirements. This includes litigation defense, legal advice to sellers and buyers of properties, and legal advice on compliance to persons and entities undertaking new construction of multifamily housing. Along with traditional litigation tasks, this work involves evaluating the still developing changes in interpretations of the law, interpreting the various standards and codes involved in accessible design, advising clients on risk, exposure and liability issues, and applying all these legal judgments to physical conditions or designs of multifamily properties.

2

8.    In December 2005, Post Apartment Homes, L.P., already a legal client of mine, engaged me to conduct an accessibility analysis of its multifamily properties. The engagement was initially of my former law firm, Coughlin, Kitay & Edelstein, P.C., and was specifically in anticipation that Post might be sued by the ERC or a similar advocacy group just as other housing providers with properties in the Washington, DC area had recently been.

9.    Pursuant to this specific engagement (which carried over to me in my current solo practice as of February 1, 2006), I visited Post's properties, made observations, and prepared reviews of my conclusions and recommendations. In planning and carrying out my visits to the properties, I applied my knowledge of the law, its interpretations on such issues as coverage of particular elements in dwelling units and common areas and tolerance and accepted deviations from dimensions set forth in "safe harbors", and experience in litigating these matters to determine what to look at and measure on site, including how to measure specific elements. In addition, I made the same judgments in evaluating which of the information gathered to include in the review. I also made judgments as to the implications of any item noted in the review, and as to any recommendations made with regard to these items. In short, the reviews are primarily a record of my impressions and opinions regarding the accessibility compliance of the properties as I understand the interpretations of the applicable laws, as well as some recommendations based on that understanding.


I solemnly affirm under the penalties of perjury that the contents of the foregoing Declaration are true to the best of my knowledge, information and belief.


12/17/07
Date

Theresa L. Kitay

3