UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EQUAL RIGHTS CENTER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>POST PROPERTIES, INC., *et al*., )<br>)<br>Defendants. )<br>) | Case No. 1:06CV01991<br>Judge Richard J. Leon<br>Magistrate Judge Alan Kay |

**PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

Plaintiff the Equal Rights Center ("ERC"), by its attorneys, hereby files this Reply in Support of Plaintiff's Motion to Compel Defendants Post Properties, Inc., Post GP Holdings, Inc., and Post Apartment Homes, LP (collectively "Post") to give full and complete responses to certain pending written discovery requests. For the reasons set forth in the Motion, and for the further grounds described herein, the ERC urges the Court to grant its Motion.

Post's opposition misses the mark entirely. While Post strives to impugn the ERC's motives in seeking relief, and suggests that the ERC would somehow gain an unfair advantage if the sought-after facts are disclosed, such contentions are irrelevant. The two relevant questions here are (1) is the discovery relevant, and (2) if so, has Post established a basis for withholding it. As to the first question, the answer is an unqualified, yes. Post does not even pretend otherwise. Indeed, the objective accessibility conditions of Post properties at the time the Complaint was filed are the most relevant facts in this litigation. The answer to the second question is no. Post claims that the withheld discovery is privileged, yet it has failed to meet its burden of

establishing such privilege.[1] Moreover, even if a work product privilege applies, Post's destruction of evidence – by admittedly altering the accessibility conditions of the properties at issue – provides substantial need for overcoming the privilege.

At issue here are so-called "compliance reviews" of Post properties conducted by "fair housing" consultants, one of whom (Theresa Kitay) happens to be an attorney. In order to conduct these compliance reviews, the consultants must inspect the properties, taking photographs, videos and measurements in order to document the physical features of the residential units and the public and common use areas of the properties, such as walkways, parking spaces and hallways. In this case, Post claims that it retained consultants "in anticipation of litigation" who inspected the properties and advised Post as to certain alterations that should be made to "improve accessibility" for people with disabilities. Plainly, the consultants' objective measurements and observations of the properties informed the advice given and these facts – i.e., the physical property conditions – are highly relevant to this case.

Strangely, Post contends that the ERC should not be permitted to discover these facts because the ERC could perform its own inspections of these properties and obtain its own measurements. Of course, in making this assertion, Post ignores the fact that *Post admits that it altered the condition of the properties after their consultants inspected them. See* Mem. Opp'n at 13 n.9. As a result, the inspections that the ERC would conduct would be of the *altered* properties, not the condition of the properties at the time the Complaint was filed or at the time

---

[1] The burden is on Post to establish that the discovery sought by the ERC is privileged. *Cobell v. Norton*, 213 F.R.D. 69, 72 (D.D.C. 2003); *Hager v. Bluefield Regional Medical Center, Inc.*, 170 F.R.D. 70, 76 (D.D.C. 1997).

Post anticipated litigation. Post's position, therefore, has no merit. Post cannot properly withhold these facts.

Equally without foundation is Post's conclusory assertion that the objective, factual information is inextricably intertwined with a lawyer's analysis and opinions. Post provides *zero* evidentiary basis for this contention. Neither of Post's declarants makes such an assertion[2] and Post fails to submit the reports – in full (with exhibits and supporting documents) – to the Court for an independent assessment. Such "conclusory or ipse dixit assertions" are insufficient to meet Post's burden. *See Cobell*, 213 F.R.D. at 72 (*quoting Martin v. Valley Nat'l Bank of Ariz.*, 140 F.R.D. 291, 302 (S.D.N.Y.1991)).

In fact, the FHA/ADA requirements and safe harbors are extremely detailed about what to measure and how and it strains belief that Ms. Kitay's "mental impressions" can be ascertained simply by obtaining the measurements and photographs she took simply because she was familiar with the law's requirements. *See* Mem. Opp'n. at 6 ("In performing this analysis, Ms. Kitay applied her knowledge of the requirements of the FHA and ADA . . . tolerances and accepted deviations set forth in safe harbors . . ."). Whether or not the ERC and Post agree as to whether certain measurements constitute a violation of the FHA/ADA does not change the fact that Ms. Kitay and other consultants took measurements (presumably with a tape measure) and photographs or videos during their inspections. This underlying objective information is all that

---

[2]   Notably, in her declaration, Ms. Kitay makes no claim that she did not record objective measurements or otherwise document the conditions of the properties, nor does she claim – as Post asserts in its opposition – that such facts are "interwined" with her analysis and opinions. Kitay Dec. ¶ 9 (noting only that "the reviews are **primarily** a record of my impressions and opinions) (emphasis added).

the ERC seeks; it does not want Ms. Kitay's conclusions or interpretations as to what the data means. These objective data are properly discoverable.

Because Post has not met its initial burden of demonstrating privilege, at least with respect to the underlying objective data, the ERC is not required to show need or undue hardship to obtain the requested discovery. Yet, the ERC's need is clear, given Post's admitted property alterations. Post does not deny that it altered the properties and admits it made changes with knowledge of the complaint. In fact, according to Post, it anticipated being sued as early as December 2005. The underlying factual information from the pre-alteration reports of Post's consultants is the best evidence of the property conditions for purposes of establishing liability. Whether or not the Court credits Post's unsubstantiated assertion that the changes were made in good faith as part of "routine maintenance" is beside the point.

Finally, as to the compliance reviews conducted by Bob Woodall, Paul Sheriff,[3] Gaila Barnett, Fred Collier, and Larry Perry, Post's response is to avoid the issue of whether these additional reports are privileged by claiming, erroneously, that the ERC did not raise this issue before bringing its motion.[4] This response fits a pattern of Post delaying production of

---

[3]   Post's contentions regarding data from consultant Paul Sheriff are unwarranted. *See* Mem. Opp'n. at 17 n.12. The ERC is aware that videos of Paul Sheriff were provided as part of the ERC's motion for a preliminary injunction. If Post is representing that these videos represent the entirety of the reports compiled by Mr. Sheriff, then the ERC seeks no further information. However, if Mr. Sheriff collected other data or photographs that are not included in the videos, they should be produced.

[4]   Post's contention is flatly wrong. The ERC's initial letter of October 30, 2007 detailing the deficiencies in Post's discovery responses (attached as Exhibit E to the ERC's initial motion) states that "Post has testified that accessibility **experts** have surveyed its properties and created reports of **their** findings" (emphasis added). While the discussion during the meet and confer focused on Post's claims of privilege with regard to the Kitay reports, the ERC did not in any way limit its dispute to Ms. Kitay.

**Footnote continued**

responsive documents and then attempting to use the delay to thwart the ERC's discovery.[5] The bottom line is that Post has not asserted privilege with regard to these reports, and there is no basis for Post to continue withholding them. Indeed, Post itself draws a distinction between the Kitay reports and the other reports: "Ms. Kitay's legal representation was an integral part of her engagement, and distinguished her from various other consultants hired by Post in the past," *see* Mem. Opp'n. at 16; and "Post is entitled to hire consultants to assess exposure to litigation risk and does not have to release that information. In particular, the reports of Ms. Kitay contain the opinions, judgments and thought processes of an attorney hired by Post because of the prospect of litigation," *see* Ex. F attached to ERC's initial motion. Post does not contend that these

---

**Footnote continued from previous page**

> In fact, the ERC's follow up email of November 9, 2007, sent after the meet and confer states (attached hereto as Exhibit H) states: "You also stated that you will confer with your client regarding its ability to supplement [its responses] by providing the objective data and photographs behind expert surveys as well as who conducted those surveys" and "You also agreed to initially supplement your privilege log by identifying documents for which we have a clear conflict, specifically those relating to Interrogatory Nos. 6, 7, 12, and 13." There is no mention of a privilege log containing only the Kitay reports.

> Finally, Post's letter of November 16, 2007 (attached as Exhibit F to the ERC's initial motion), also sent after the meet and confer states: "As we have discussed, Post's counsel retained accessibility **consultants** to evaluate Post's properties in anticipation of litigation. Post is entitled to hire **consultants** to assess exposure to litigation risk and does not have to release that information. **In particular**, the reports of Ms. Kitay contain the opinions, judgments and thought processes of an attorney hired by Post because of the prospect of litigation." (emphasis added).

[5] Similarly, the ERC feels compelled to respond to Post's tired, unfounded refrain that the ERC somehow is taking a lazy approach to discovery. The ERC did not receive Post's letter confirming whether certain documents would be produced until November 16, 2007, and did not receive Post's privilege log until November 21, 2007, and it spent considerable time attempting to assess what Post was willing to produce. In addition, Post refused to produce the "thousands" of responsive documents located in Atlanta, Georgia or to begin a privilege review on any of these documents unless and until the ERC narrow its requests; something the ERC is not required to do. To this day, Post continues to withhold documents from the ERC pending a privilege review.

remaining consultant reports are privileged and the Court should order their immediate production.

I.  **The Compliance Reviews Are Not Protected By the Work Product Privilege**

   a.  **The Sixteen Pre-Complaint Reviews Were Not Created "In Anticipation of Litigation"**

As noted, it is Post's burden to establish any privilege ground for withholding responsive documents. Post first argues that all of the information contained in the Kitay reviews is protected by the work product privilege because the reviews were created in anticipation of litigation. The sixteen reports prepared prior to the filing of the complaint, however, do not fit as neatly into D.C. precedent regarding work product as Post would like to suggest. According to Post, the fact that the ERC had sued three other developers for FHA/ADA violations caused them to hire Ms. Kitay because "nothing specific that distinguished ERC's claims against one development company from another (with the exception of actual property names). *See* Mem. Opp'n. at 5.

The cases cited by Post do not provide such a broad definition of work product. Post cannot merely point to the fact that three other companies in its entire industry were sued by the ERC; it must point to some specific evidence making it objectively reasonable that Post itself was going to be sued. For example, Post cites to *In re Sealed Case*, 146 F.3d 881, 886 (D.C. Cir. 1998), where the Court determined that work undertaken by attorneys was reasonably and objectively prepared in anticipation of litigation because (1) there was a general intense focus in the community on campaign finance law violations, **and** (2) there was public criticism of the defendant's relationship with a foreign backer. Thus, the general focus in the community –like Post's claims of a general concern regarding the ERC's efforts in the industry – did not create the privilege on its own. There must be a specific focus on the company or individual attempting to

6

assert the privilege. *See Hertzberg v. Veneman*, 273 F. Supp. 2d 67, 75 (D.D.C. 2003) ("[T]his circuit has held that 'at the very least some articulable claim, likely to lead to litigation, must have arisen,' such that litigation was 'fairly foreseeable at the time' the materials were prepared") (*quoting Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 865 (D.C. Cir. 1980)).

While it is true that the three companies sued when Post hired Ms. Kitay were similar to the extent that the ERC's testing activities revealed that they had violated the law, that similarity does not make it objectively reasonable for another developer to have a specific fear of being sued. If that was the case, people who knowingly discriminate could shield themselves from discovery simply because they are aware that people who violate the law often get sued.

      b. **Post Has Not Met Its Burden in Establishing that the Information Contained in the Reports Is Protected**

Post implies that the ERC is seeking Ms. Kitay's interpretations or analysis of the information she gathered in order to invoke the protection of work product privilege. This is simply not true. The ERC repeatedly makes clear that it seeks the measurements, drawings, photographs or videos documenting the physical conditions of the property that are relevant to accessibility under the FHA and the ADA. The ERC also seeks the invoices from and retainer agreements with the consultants hired to perform such reviews. None of this information includes opinions or analysis. Post's attorneys now contend – without any evidentiary support whatsoever – that the objective data is intertwined with the analysis and opinion. But neither Ms. Kitay nor Post's general counsel make such a statement in their declarations. Moreover, even if the compliance reviews themselves could support such an argument, that would not automatically exclude from discovery the underlying data gathered in order to render those opinions. Hence, Post's conclusory assertion that all of this information resides solely in Ms.

Kitay's analysis does not meet its burden.[6] *See Cobell*, 213 F.R.D. at 72 ("conclusory or ipse dixit assertions" are insufficient to meet the burden).

### c. **Even Assuming That Post Has Met Its Burden, the Material Requested by the ERC is At Most Fact Work Product**

Post has also not met its burden to prove that the information it is withholding qualifies as work product because Post has not "provide[d] facts sufficient to support a judicial determination of the "fact" or "opinion" nature of the alleged work product. *In re PEPCO Employment Litigation*, Civ. A. No. 86-0603, 1992 WL 310781, *4 (D.D.C. Oct. 2, 1992).

Assuming however that the information sought qualifies as either type of work product, it is at most "fact" work product, which only requires a showing of "substantial need" and an "undue hardship" in obtaining the information from other sources in order to be discoverable. *Office of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1307 (D.C. Cir. 1997). Opinion work product, on the other hand, "which includes the mental impressions, conclusions, or legal theories of an attorney" is discoverable only upon a showing of extraordinary justification. *In re Sealed Case*, 676 F.2d 793, 811 (D.C. Cir. 1982). In most cases, "purely factual material embedded in attorney notes may not deserve the super-protection afforded to a lawyer's mental impressions." *See In re Sealed Case*, 124 F.3d 230, 236-37 (D.C. Cir. 1997). While it is true that "at some point . . . a lawyer's factual selection reflects his focus; in deciding what to include and what to omit, the lawyer reveals his view of the case," *Id.*, this case does not present "the degree of selection necessary to transform facts into opinions," *Director, Office of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1307-1308 (D.C. Cir. 1997).

---

6   Of course, even if the only record of the information is in Ms. Kitay's analysis, the ERC is willing to receive a redacted version of this analysis that simply shows the information it seeks.

As noted above, the FHA/ADA requirements and safe harbors are extremely detailed about what to measure and how, as Post concedes, and Ms. Kitay's "mental impressions" cannot be ascertained simply by obtaining the measurements and photographs/videos she took.[7] Clearly, Ms. Kitay did not know what the precise measurements would be prior to her actually using a tape measure to measure the items; thus her decision to measure specific areas does not reveal a determination as to the legal implications of the measurements.[8] Again, it is only this underlying objective information that the ERC seeks. Thus, if Post succeeds in meeting its

---

[7] The FHA is extremely clear as to how those involved in the design or construction process must build covered units so that they do not discriminate against people with disabilities:

> (i)   the public use and common use portions of such dwellings are readily accessible to and usable by handicapped persons;
>
> (ii)  all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by handicapped persons in wheelchairs; and
>
> (iii) all premises within such dwellings contain the following features of adaptive design: (I) an accessible route into and through the dwelling; (II) light switches, electrical outlets, thermostats, and other environmental controls in accessible locations; (III) reinforcements in bathroom walls to allow later installation of grab bars; and (IV) usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.

42 U.S.C. § 3604 (f)(3)(C) (2007). The FHA also explains that "compliance with the appropriate requirements of the American National Standard for buildings and facilities providing accessibility and usability for physically handicapped people (commonly cited as 'ANSI A117.1") suffices to satisfy the requirements . . . ." *Id.* § 3604 (f)(4). In addition, there are extensive explanations that have been published by HUD in the Federal Register that have more specifications, drawings, and suggestions for developers. *See, e.g.*, Final Fair Housing Accessibility Guidelines, 56 Fed. Reg. 9472 (March 6, 1991).

[8] Ms. Kitay's experience may lead her to advise Post that a particular number of inches makes the places explicitly outlined in the FHA "accessible." Indeed, it is in part the difference in what constitutes "accessible" that is at issue in this litigation. However, Ms. Kitay had to, as an initial matter, measure the areas that the FHA expressly indicates must be accessible, before she could make any analysis.

burden of establishing that the information is work product, it is clear that the information is fact – not opinion – work product, thus invoking the lesser "substantial need" and "undue hardship" test.

### d. **The ERC Has Demonstrated Both Substantial Need and Undue Hardship and Extraordinary Justification**

Post admits that it changed the accessibility condition of its properties with the knowledge or fear of this very lawsuit.  We leave for another day the question of whether this conduct amounts to evidence spoliation.  Regardless, for purposes of this motion, the fact that the properties have been altered means that the consultants' pre-alteration observations of the accessibility conditions of the properties is the best evidence of their condition for purposes of FHA and ADA liability.   The ERC cannot readily recreate the pre-alteration conditions nor should it be required to try.  The evidence exists and the ERC is entitled to it.  Even Post does not seriously contend that the ERC should inspect the properties – post-alteration – and then try to figure out through other discovery what alterations were made and why.  The fact is that Post's property alterations have prejudiced the ERC's ability to obtain directly the objective evidence of violations by inspecting the properties itself.[9]  Post's conduct creates the substantial need and undue hardship entitling the ERC to overcome any work product protections that might apply to the objective data compiled by Post's consultants.

It is true that the ERC does not possess knowledge of the full extent of the alterations undertaken by Post.  Rather than being a reason that the information should not be provided,

---

9   Post's assertions that the "accessibility improvements" it has made are limited in scope is again entitled to little weight and is of little utility in any event.  Notably, Post qualifies its assertion rendering it virtually meaningless.  *See* Mem. Opp'n.at 13 n.9.  ("**For the most part**, any changes made by Post are limited to outside and common areas, and not to individual units.") (emphasis added).

however, this fact further supports the ERC's need for the information, as the extent of the alterations is information uniquely possessed by Post.

Thus, under either the fact or opinion work product tests, the information should be disclosed as the ERC can show either substantial need and undue hardship or extraordinary justification.

II.     **The Compliance Reviews Are Not Protected by the Attorney-Client Privilege**

Post has simply not met the burden of establishing attorney-client privilege with regard to the information requested. First, the measurements taken were not "confidential" communications from Post to Ms. Kitay. Despite Post's contention to the contrary, the ERC is not seeking Post's "confidential reasons for seeking her representation" – though interestingly, Post put on display these "confidential reasons" in this motion: an apparent subjective fear of being sued due to the ERC's other lawsuits – and it is not seeking "Post's confidential communications as to how her representation and recommendations would aid and advise Post." *See* Mem. Opp'n. at 16.

Second, the information the ERC seeks – data collected by Ms. Kitay and other consultants – was not done while they were "acting solely in their professional legal capacity." *See In re PEPCO Employment Litigation*, 1992 WL 310781 at *1-2. While Post may be able to argue that Ms. Kitay was acting in a legal capacity when giving her conclusions and opinions in her report's analysis, it cannot plausibly argue that she was acting in a legal capacity when taking photographs or videos and recording measurements.

Third, Post has not provided any information whatsoever regarding whether or not Post took any steps to limit access to the information collected by Ms. Kitay, or whether Ms. Kitay's reports were circulated or reviewed by anyone other than Glen Smith, thus implying that the

privilege had been waived and that the documents were not prepared solely to request legal advice. *See id.*; *FTC v. TRW, Inc.*, 479 F. Supp. 160, 163 (D.D.C. 1979), *aff'd*, 628 F.2d 207, 212 n.5 (D.C. Cir. 1980).

Post had the burden of establishing all of these factors, and only **specific** factual assertions will satisfy the burden; Post's failure to satisfy its burden makes the supposedly privileged communication discoverable. *In re Sealed Case*, 737 F.2d at 99; *FTC v. TRW, Inc.*, 628 F.2d at 213; *United States v. Western Elec. Co.*, 132 F.R.D. at 3 & n.5.

### III. Post Has Not and Cannot Assert Privilege With Regard to the Other Compliance Reviews Conducted

As discussed above, the information contained in the compliance reviews conducted by Bob Woodall, Paul Sheriff, Gaila Barnett, Fred Collier, and Larry Perry is not privileged. Post has not asserted privilege with regard to these reports, and the reports must be disclosed. Further, were Post to assert any privilege with regard to this information, its arguments would be a lesser version of what it has presented in its opposition to this motion. The ERC properly raised this issue in connection with this Motion and Post refused to provide the requested discovery. *See* note 4, *infra.* The ERC should not be forced to refile a motion to compel with regard to this information because Post was confused as to what it should include in its privilege log.

### IV. Prior Accessibility Complaints

The ERC's motion initially sought all prior accessibility complaints that were responsive to Document Requests 6 and 7. In its Opposition, Post has represented that the documents already provided or offered to the ERC represent the only documents responsive to these requests. Based on this representation, the ERC withdraws this portion of its motion.

## **CONCLUSION**

For the reasons stated above, Plaintiff respectfully asks this Court to grant its Motion to Compel Discovery and order Post to provide the requested discovery.

Dated: December 26, 2007

Respectfully submitted,

/s/ Alyssa C. Lareau
Alyssa C. Lareau (DC Bar No. 494881)
Douglas W. Baruch (DC Bar No. 414354)
Fried, Frank, Harris, Shriver & Jacobson LLP
1001 Pennsylvania Avenue, N.W.
Suite 800
Washington, D.C.  20004-2505
Telephone No.:   202-639-7306
E-mail address:  Alyssa.Lareau@friedfrank.com
E-mail address:  Douglas.Baruch@friedfrank.com

Donald L. Kahl (DC Bar No. 489472)
Isabelle M. Thabault (DC Bar No. 318931)
Washington Lawyers' Committee
for Civil Rights and Urban Affairs
11 Dupont Circle
Suite 400
Washington, DC 20036
Telephone No.: 202-319-1000
E-mail address:  Don_Kahl@washlaw.org
E-mail address:  Isabelle_Thabault@washlaw.org

*Attorneys for Plaintiff*
*Equal Rights Center*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| EQUAL RIGHTS CENTER, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Case No. 1:06CV01991<br>Judge Richard J. Leon |
| POST PROPERTIES, INC., *et al.*, | ) ) | Magistrate Judge Alan Kay |
| Defendants. | ) ) ) | |

### **[PROPOSED] ORDER**

Upon consideration of Plaintiff Equal Rights Center's Motion to Compel Discovery, and any opposition thereto, and for good cause showing it is hereby

ORDERED that Plaintiff's Motion to Compel is GRANTED, and it is

FURTHER ORDERED that within seven days of this Order's entry Defendants shall serve full and complete responses to Interrogatory Nos. 6, 7, 8, 12, and 13 and Document Request No. 4, including the documents identified on Defendants' Privilege Log (Exhibit A), the supporting notes and materials relating to the documents on Defendants' Privilege Log, and all other compliance reviews, surveys and inspections of Post properties by any other Post consultant or expert.

Dated:_____      By:_____
                                          Honorable Alan Kay
                                          United States Magistrate Judge

# EXHIBIT H

**From:** Lareau, Alyssa
**Sent:** Fri 11/9/2007 1:03 PM
**To:** rafe.petersen@hklaw.com; 'libby.phelps@hklaw.com'
**Cc:** Raimondo, Katherine
**Subject:** Our conference call from yesterday

Rafe & Libby:

Thank you again for speaking with us yesterday regarding the ERC's concerns regarding Post's responses to our discovery. I think it was productive to speak in person to clarify the scope of our requests, and feel hopeful that the discussion will make it easier for your client to identify the documents and information we need.

To confirm, you plan to supplement your responses within the next week, and those responses will be signed under oath by your client. As to Interrogatory No. 1, you will provide the employers, job titles and, for Post employees, dates of employment for all individuals who assisted in answering the interrogatories and by specifying which individuals answered particular interrogatories. As to Interrogatory No. 4, you will provide the dates of employment for former employees since the list provided at Dayna Boone's deposition does not indicate when former employees left the company. As to Interrogatory No. 8, you agreed to supplement Post's response. You also agreed to initially supplement your privilege log by identifying documents for which we have a clear conflict, specifically those relating to Interrogatory Nos. 6, 7, 12, and 13.

As to Interrogatory No. 3, you will go back to your client to determine if additional information is available and supplement accordingly. You also stated that you will confer with your client regarding its ability to supplement Interrogatory No. 5, by providing information regarding the compensation paid by Post to acquire properties; Interrogatory Nos. 6, 7, 12, and 13, by providing the objective data and photographs behind expert surveys as well as who conducted those surveys; Interrogatory No. 11, by indicating whether or not such documents exist, including documents relating to post-construction repair and replacement, and producing them if they do exist; Document Request No. 5, by providing procurement documents after determining whether or not these exist at a corporate level; and Document Request No. 14, by providing any documents reflecting the discipline of any employee for compliance failure on accessibility issues.

You indicated that you will not supplement Document Request No. 16, relating to communications with vendors regarding indemnity or contribution, but instead will certify under oath that no such documentation exists. Finally, with regard to the other Document Requests, you will clarify Post's responses as requested in our October 30, 2007, letter.

We also discussed the possibility of scheduling two inspections starting the week of November 26. The two properties that we would like to do are Post Mass Ave (DC) and Post Carlyle Condos (Alexandria, VA). We appreciate your willingness to work with us to get these scheduled sooner rather than later, and are happy to work around your schedule as needed.

Finally, with respect to the production and review of Post's documents, we would like to review all of Post's construction/development files and corporate documents that are located in Atlanta as soon as possible. We are agreeable to not reviewing (and thus, not requiring you to pre-review) tenant files at this time, with the understanding that you are exploring other avenues of making particular information available (the identities of tenants with disabilities, and any complaints/requests relating to accessibility or reasonable accommodations), and that if no alternative source of this information is found, that the tenant files will be made available at another time.

If any of the above does not accurately summarize our meet and confer agreements, please let us know as soon as possible.

Feel free to call or email me if you have any questions.

Alyssa

---

ALYSSA C. LAREAU | FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
1001 Pennsylvania Avenue NW, Suite 800 | Washington, DC 20004-2505
Phone: 202-639-7306 | Fax: 202-639-7003
alyssa.lareau@friedfrank.com | www.friedfrank.com

12/26/2007