UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **EQUAL RIGHTS CENTER**, <br><br> Plaintiff, <br><br> v. <br><br> **POST PROPERTIES, INC.**, *et al*, <br><br> Defendants. | Civil Action No. 06-1991(RJL)(AK) |

**MEMORANDUM OPINION**[1]

Pending before the Court is Plaintiff's Motion to Compel Discovery [69], Defendants' Opposition [70] and Plaintiff's Reply [71].

I.  **Background**

On November 21, 2006, Plaintiff Equal Rights Center ("ERC") filed a Complaint alleging that Defendants (collectively "Post") engaged in "ongoing and systematic violations" of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et seq.* (Compl. ¶ 2.) Specifically, ERC alleges that Post violated these civil rights statutes in the "design, construction and/or operation of covered multifamily dwellings, including residential complexes" in various states and the District of Columbia. (*Id.*) ERC, a non-profit organizations focusing on civil rights issues, asserts that it "tested" twenty-seven Post properties and discovered FHA and ADA violations in the properties' construction

---

[1] United States District Judge Richard J. Leon referred this matter to the undersigned Magistrate Judge for non-dispositive motions, pursuant to Local Civil Rule 72.2(a). (*See* Minute Order dated 10/29/07.)

and design. (Compl.¶¶ 7, 18, 21.)

ERC served its First Set of Interrogatories and Second Request to Produce Documents on September 14, 2007. (Pl.'s Mem. Supp. Mot. Compel ("Pl.'s Mem.") [69] at 10.) Interrogatories Nos. 6-8, 12 and 13 and Document Request No. 4 relate to compliance reviews of Post properties performed by accessibility experts. (*Id*. at 11.) Post argued that the compliance reviews were protected by the attorney-client and work product privileges, and produced a privilege log in lieu of responsive documents. (Def.'s Opp'n [70] at 6. *See also* Privilege Log [69-2].) Post also asserted these privileges, as well as an objection on relevance grounds, to Document Requests Nos. 6 and 7, which seek information about prior accessibility complaints filed against Post. (Pl.'s Mem. at 18.) After attempting to resolve the matter without judicial intervention, ERC brought the instant motion for an order compelling Post to answer Interrogatories Nos. 6-8 and 12-13 and provide responsive documents to Document Requests Nos. 4, 6 and 7.

**II.     Discussion**

In general, a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). The scope of discovery under Rule 26 is broad; "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. If a party withholds otherwise discoverable material by claiming that it is privileged or should be protected as trial-preparation material, "the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other

parties to assess the claim." FED. R. CIV. P. 26(b)(5)(A).

    A.    <u>Compliance Reviews</u>

Interrogatories Nos. 6-8, 12 and 13 and Document Request No. 4 seek information and documents regarding compliance reviews of various Post properties. (Pl.'s Mem. at 11.) ERC asserts that since it filed its Complaint in 2006, Post conducted these compliance reviews and "[b]ased on those compliance reviews, Post has either completed alternations of the units and buildings (in an apparent attempt to remedy or conceal the violations) or is in the process of making such alterations." (*Id*. at 5.) According to Post's privilege log, Theresa Kitay conducted forty-seven of these compliance reviews. (Privilege Log [69-2].) Post retained Ms. Kitay, and her law firm, on December 6, 2005 "in connection with an accessibility analysis of existing projects in anticipation of potential litigation under the Americans with Disabilities Act and the Fair Housing Act." (Def.'s Opp'n at 70.) ERC also seeks work performed by five other consultants who Post retained to determine compliance at its properties. (Pl.'s Mem. at 8.) These individuals have not been identified as attorneys and the documents that they created were not included in Post's privilege log. (*Id*.; Def.'s Opp'n at 17.) Post objects to disclosure of the compliance reviews that Ms. Kitay and the other consultants conducted based on the work product and attorney-client privileges.

The work product privilege protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." FED. R. CIV. P. 26(b)(3)(A). Trial preparation materials are discoverable, however, "if: (i) they are otherwise

discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Id*. The purpose of the work product doctrine "is the promotion of the adversary system by safeguarding the fruits of an attorney's trial preparations from the opponent." *Fago v. M & T Mortgage Corp.*, 242 F.R.D. 16, 19 (D.D.C. 2007). *See also United States v. Adlam*, 68 F.3d 1495, 1501 (2d Cir. 1995) ("The purpose of the doctrine is to establish a zone of privacy for strategic litigation planning and to prevent one party from piggybacking on the adversary's preparation.").

ERC argues that the work product privilege does not protect Ms. Kitay's compliance reviews for two reasons. First, ERC asserts that "several of Ms. Kitay's accessibility reports were prepared prior to the filing of the Complaint in this case" and therefore "cannot have been prepared 'in anticipation of litigation." (Pl.'s Mem. at 12-13.) Second, ERC argues that "the work product doctrine *does not* permit Post to withhold underlying facts," such as "measurements, photograhs, and evidence of the conditions at the properties, and the alterations made there." (*Id*. at 13 (emphasis in original).) Finally, ERC points out that the work product privilege is not absolute, and asserts that it may obtain these materials upon a showing of substantial need. (*Id*. at 14.)

    1.  *"In Anticipation of Litigation"*

The phrase "in anticipation of litigation" has both temporal and motivational components. *Fago*, 242 F.R.D. at 18. First, at the time she prepared the document, the attorney "must at least have had a subjective belief that litigation was a real possibility, and that belief must have been

objectively reasonable." *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998). Second, the party claiming the privilege must demonstrate that "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Senate of P.R. v. Dep't of Justice*, 823 F.2d 574, 587 n.42 (D.C. Cir. 1987). Although "need not be imminent or certain in order to satisfy the anticipation-of-litigation prong of the" work product doctrine, the D.C. Circuit "has held that 'at the very least some articulable claim, likely to lead to litigation, must have arisen,' such that litigation was 'fairly foreseeable at the time' the materials were prepared." *Hertzberg v. Veneman*, 273 F.Supp.2d 67, 75 (D.D.C. 2003) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 865)).

In *United States v. Adlman*, 134 F.3d 1194 (2d Cir. 1998), the Second Circuit addressed the applicability of the work product doctrine, and specifically the "in anticipation of litigation" prong. *Adlman* involved a company called Sequa Corporation that contemplated merging two of its subsidiaries but was concerned that the merger would be challenged by the IRS. *Id*. at 1195. At the request of the company's Vice President of Taxes, an accountant prepared a Memorandum detailing the tax implications of the merger. *Id*. During an ensuing audit, the IRS issued a summons for the Memorandum, which Sequa withheld on the basis of the work product privilege. *Id*. The Second Circuit remanded the issue of the privilege's applicability to the District Court with the following instructions:

> If the district court concludes that substantially the same Memorandum would have been prepared in any event-as part of the ordinary course of business of undertaking the restructuring-then the court should conclude the Memorandum was not prepared because of the expected litigation and should adhere to its prior ruling denying the protection of the Rule.

>On the other hand, if the court finds the Memorandum would not have been prepared but for Sequa's anticipation of litigation with the IRS over the losses generated by the restructuring, then judgment should be entered in favor of Sequa.

*Id*. at 1204. Therefore, the Court concluded, the applicability of the work product privilege "will turn on whether [the Memorandum] (or substantially the same document) would have been prepared irrespective of the anticipated litigation and therefore was not prepared because of it." *Id*. at 1205.

Ms. Kitay prepared sixteen compliance reviews before ERC filed its Complaint in this case. (Def.'s Opp'n at 9.) Post argues that at the time she conducted these reviews, Post had a reasonable belief that litigation was likely to occur because ERC filed similar lawsuits against four other housing developers.[2] (*Id*.) Specifically, Post asserts:

>These suits against Post's peer developers led Post to reasonably believe and anticipate that ERC would file similar litigation against Post. The developers that had been sued by ERC with virtually identical Complaints were similar to Post in that they all own, operate, and/or develop large portfolios of multifamily housing throughout the United States, and there was nothing in the ERC Complaints that distinguished the developers from one another or from Post. ERC initiated a self-styled "series" of suits and sought wide publicity for its actions through press releases and newspaper coverage.

(*Id*.) Accordingly, Post took steps to prepare for the anticipated litigation with ERC, including hiring Ms. Kitay to conduct an accessibility analysis of its properties. (*Id*. at 10.)

While Post could not have been certain that ERC would file suit against it, the fact that ERC had filed suit against four other housing developers and sought media attention for this "series" of lawsuits supports a finding that Post had a subjective and objectively reasonable

---

[2] ERC filed complaints against Archstone-Smith, Bozzuto and AvalonBay before Post retained Ms. Kittay and ERC filed a complaint against Equity Residential while Ms. Kitay was in the process of conducting the compliance reviews. (Def.'s Opp'n at 5 n.4-6, 9 n.8.)

6

belief that litigation was a real possibility. Moreover, there is no evidence that Post would have hired Ms. Kitay to prepare the compliance reviews as part of the ordinary course of its business. Therefore this Court finds that the compliance reviews conducted by Ms. Kitay or other consultants that Post retained meet the "in anticipation of litigation" prong of the work product doctrine.

###### 2. *Underlying Facts*

The reach of the work product privilege is broad; "[e]ven factual portions of documents may be withheld, so long as the document as a whole was created in anticipation of litigation." *General Elec. Co. v. Johnson*, No. 00-2855, 2006 WL 2616187, at *12 (D.D.C. Sep. 12, 2006). *See also Tax Analysts v. I.R.S.*, 117 F.3d 607, 621 (D.C. Cir. 1997) (holding that "[a]ny part of a [document] prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work product doctrine"). Moreover, the work product privilege protect both "documents and tangible things." FED. R. CIV. P. 26(b)(3)(A). Therefore the privilege encompasses any factual material contained in the compliance reviews, as well as any photographs, measurements, and other evidence that were taken during those reviews.

###### 3. *Substantial Need*

As stated above, a party may obtain trial preparation materials if it demonstrates that "it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." FED. R. CIV. P. 26(b)(3)(A). Regarding the burden on the party seeking discovery, the D.C. Circuit has held:

> To the extent that the work product contains relevant, nonprivileged facts . . . the party seeking discovery [must] show "adequate reasons" why the work product should be subject to discovery. However, to the extent work product reveals the opinions, judgments, and thought processes of counsel, it receives some higher level of protection, and a party seeking discovery must show extraordinary justification.

*In re Sealed Case*, 676 F.2d 793, 809 (D.C. Cir. 1982). ERC analyzes the need for disclosure under the "adequate reasons" standard. (Pl.'s Mem. at 14.) Post, on the other hand, asserts that ERC must demonstrate an "extraordinary justification" for disclosure because "the compliance reviews reveal Ms. Kitay's opinions and thought processes by way of how she chose to conduct the compliance review, what information she chose to gather, and how she chose to present this information to Post in the form of legal advice." (Def.'s Opp'n at 12. *See also* Decl. of Theresa L. Kitay [70-4] ¶ 9 (noting that she exercised judgment "in evaluating which of the information gathered to include in the review").) Based on Ms. Kitay's Declaration and ERC's failure to justify application of the "adequate reasons" standard, the Court will evaluate the existence of substantial need under the "extraordinary justification" standard.

ERC asserts that "the need for disclosure is clear" because "Post is in the process of altering the Subject Properties." (Pl.'s Mem. at 14.) ERC further asserts that "[t]he data collected by Post and its consultants regarding the condition of the properties, to the extent that they document non-compliance with the FHA and ADA, will greatly reduce the burden and costs to the litigants to inspect each of these properties again." (*Id*. at 15.) Even if the Court accepts these arguments, and finds that Post's alleged alteration of its properties and the costs of investigation constitute an "extraordinary justification" for disclosure, ERC would still fall short of meeting its burden. Rule 26 requires that a party show "substantial need for the materials"

8

*and* that it cannot "without undue hardship, obtain their substantial equivalent by other means." FED. R. CIV. P. 26(b)(3)(A). As Post points out, ERC has not reviewed "any development and construction files or site plans and maps that have been offered at Post's office since October 17, 2007" and has not "noticed any depositions of Post employees that may have knowledge of the changes Post has and has not made at its properties." (Def.'s Opp'n at 12.)

Because ERC has failed to meet its burden for obtaining trial preparation materials, the Court will not compel Post to produce any additional information or documents regarding the compliance reviews conducted by Ms. Kittay or the other consultants.[3] Additionally, having found that these materials are protected by the work product doctrine, the Court need not analyze whether they are also protected by the attorney-client privilege.

B.   Accessibility Complaints

Document Requests Nos. 6 and 7 seek documents relating to complaints against Post for violations of the Fair Housing Act or the Americans with Disabilities Act. (Pl.'s Ex. D [69-5] at

---

[3] ERC asserts that to the extent Post is withholding documents on the basis of privilege, "Post was obligated to interpose that objection *and* to identify the withheld document in a privilege log." (Pl.'s Mem. at 12.) ERC bases this argument on Rule 26(b)(5)(A)(ii), which states that a party that withholds a document by claiming that it is privileged or protected as trial preparation material must "describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Post produced a privilege log for the compliance reviews conducted by Ms. Kittay but not for those conducted by the other five consultants. Therefore, ERC argues, "Post should be deemed to have waived or abandoned any privilege protections for such documents or discovery." (Pl.'s Mem. at 12.)

This Circuit has noted that failure to include a document in a privilege log "does not necessarily trigger waiver of the privilege as a sanction." *United States v. British Am. Tobacco (Invs.) Ltd.*, 387 F.3d 884, 890 (D.C. Cir. 2004). The court in *British American Tobacco* further recognized that "waiver of privilege is a serious sanction most suitable for cases of unjustified delay, inexcusable conduct, and bad faith." *Id.* at 891 (quoting *United States v. Phillip Morris Inc.*, 347 F.3d 951, 954 (D.C. Cir. 2003). The Court finds no evidence of delay, inexcusable conduct, or bad faith on the part of Post that would justify waiver of the claimed privileges and therefore will not hold that the privileges were waived.

16-17.) Post objected on the basis of relevance, but produced all non-privileged responsive documents. (Def.'s Opp'n at 19.) Post asserts that the documents are protected by the attorney-client and work product privileges but does not, either in its responses to ERC's document requests or in its Opposition to ERC's Motion to Compel, explain how these documents are privileged.

If a party invokes a privilege to prevent disclosure of otherwise discoverable material, the party must describe the documents "in a manner that . . . will enable other parties to assess the claim." FED. R. CIV. P. 26(b)(5)(A)(ii). It is inadequate for a party to assert a general claim of privilege in response to a discovery request. *Obiajulu v. City of Rochester, Dep't of Law*, 166 F.R.D. 293, 295 (W.D.N.Y. 1996). Post's assertion of the attorney-client and work product privileges in response to Document Requests Nos. 6 and 7 is inadequate and falls below the standard set by Rule 26(b)(5) because it did not enable ERC to evaluate whether the privileges apply. However, the Court is reluctant to order Post to produce these documents in the event that the documents Post withheld are truly privileged. Instead, the Court will order Post to produce a privilege log to allow ERC to respond to Post's privilege claims. If, after reviewing the privilege log, ERC believes that there are documents that Post is improperly withholding on the basis of privilege, ERC may bring a renewed motion to compel.

### III.   Conclusion

For the foregoing reasons, the Court finds that Plaintiff's Motion to Compel Discovery should be denied with respect to the compliance reviews and denied without prejudice with respect to the accessibility complaints. The Court will issue an Order consistent with this

Memorandum Opinion.

Dated: January 24, 2008

/s/
ALAN KAY
UNITED STATES MAGISTRATE JUDGE