IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| EQUAL RIGHTS CENTER )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>POST PROPERTIES, INC. )<br>POST GP HOLDINGS, INC. )<br>POST APARTMENT HOMES, L.P. )<br>)<br>Defendants. )<br>) | Case. No. 1:06CV01991<br>Judge Richard J. Leon |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS AND DEPOSITION TESTIMONY**

Defendants Post Properties, Inc., Post GP Holdings, Inc., and Post Apartment Homes, L.P. (collectively "Post") hereby file this Reply in Support of their Motion to Compel Production of Documents and Deposition Testimony ("Motion") against Plaintiff the Equal Rights Center ("ERC").

Despite ERC's contentions, Post has not engaged in "abusive litigation tactics" or created a "red herring" for the Court. Post has moved to compel two categories of information which go to the heart of ERC's Complaint and the alleged injury ERC has asserted to allow it to pursue this lawsuit at all. In justifying its refusal to allow Post to investigate this matter fully, ERC ignores the broad standard for determining what discovery is permissible under Rule 26 and the Court-approved Protective Order that addresses ERC's confidentiality concerns. There is no doubt that Post is entitled to discover what basis ERC has – and had at the time it filed its Complaint – for making such broad sweeping allegations against Post, especially when even ERC acknowledges

that it was not aware of a single person with disabilities claiming discrimination at a Post property upon the filing of this action.

## ARGUMENT

Relevance under Rule 26 of the Federal Rules of Civil Procedure is broadly construed. *Meijer, Inc. v. Warner Chilcott Holdings Co., III, Ltd.*, 245 F.R.D. 26, 29 (D.D.C. 2007); *see also Alexander v. F.B.I.*, 194 F.R.D. 316, 325 (D.D.C. 2000) ("a request for discovery should be considered relevant if there is *any possibility* that the information sought may be relevant to the subject matter of the action" (emphasis added)). Relevant information includes information that forms the bases of a plaintiff's claims as well as information that supports a defendant's defense to those claims. *See* Rule 26(b)(1). Accordingly, a defendant is entitled to discover fully information that is reasonably calculated to shed light on the "factual basis" underlying a plaintiff's claims. *See Fairchild v. Liberty Independent School District*, 466 F. Supp. 2d 817, 826 (E.D. Tex. 2006); *see also Roebling v. Andersen*, 257 F.2d 615, 620 (D.C. Cir. 1958) (quoting *Hickman v. Taylor*, 329 U.S. 495 (1947)) ("No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case."). Certainly, the two categories of information at issue in Post's Motion meet this standard, and Post's Motion should be granted.

> I.   **Post's Requests For Information Related To The Basis Of ERC's Complaint, Including ERC's Testing, Methodologies, And Ongoing Investigations, Are Relevant And Discoverable.**

Post has moved for information regarding ERC's testing and methodologies so it can fully understand the factual basis for the allegations which will be tried. In opposition, ERC argues that ERC's testing and related methodologies are irrelevant to the subject matter of this action.

2

Yet, ERC's testing of Post and the methodologies employed in those Post tests, along with methodologies potentially employed in other tests, form the very basis of ERC's Complaint.

When asked in interrogatories by Post to "state all facts and identify all documents that you claim support the allegations set forth in the Complaint," ERC answered by referring to its "Testing Files," "Floor Plan Analysis Files," and "Time slips summary."[1] *See* Ex. 1 to Post's Motion, ERC's Supp. Interrog. Resp. 6. As a result, Post has sought information regarding those testing files, analysis files, and methodologies. To challenge the factual basis for the suit, Post has pursued information to determine if ERC's testing during any specific property test shifted, changed, or differed from any other related methodology implemented by ERC. (Motion at 4-5). That information goes to the validity of the testing and the soundness of ERC's claim, and thus is clearly relevant.

Additionally, ERC now claims that the methodology as it is related to Post's properties has already been disclosed to Post. (ERC Opp. at 6, n. 1.) Even if the Post methodology was all that mattered, Post disagrees that a full description of ERC's methodologies regarding Post has been disclosed. ERC cites testimony from two witnesses who discussed in general some aspects of the methodology. (ERC Opp. at 6.) However, ERC ignores the numerous times it precluded the testimony that is being compelled. (See Motion at 6.) ERC is not entitled to pick and choose who will testify on certain topics. Post is permitted to question witnesses about their personal knowledge as it sees fit, not as ERC decides to unilaterally limit discovery.

---

[1] ERC also referred to "General ledger extracts," "Post Properties SEC filings (10K and 10Q) from 3/13/91 to present," and "Property files produced by Post." Ostensibly, the General ledger extracts relate to ERC's damages, while the SEC filings include information on the date each property was constructed. Thus, these documents do not support the merits of ERC's claims as do the Testing Files, Floor Plan Analysis Files, and Time slips summary. The Property files produced by Post cannot form the basis of ERC's Complaint in that ERC did not have these files until discovery began.

Even if ERC has disclosed the particular methodology intended to be utilized as to Post to the best of its ability through the line of questioning ERC cites, in order to truly evaluate ERC's testing methodology for the testing of Post properties, Post must have access to ERC's methodologies in general. A comparison of ERC's general methodologies with those employed with respect to Post is relevant to whether ERC had a valid factual basis for its Complaint.[2]

The fact that ERC claims to have produced all documents and information related to accessible design and construction testing methodologies as related to Post misses the point. (ERC Opp. at 6.) Post is entitled to discover information related to ERC's general testing methodologies because these methodologies are relevant to both the basis of ERC's claims and Post's ability to attack that basis. This showing of relevance is sufficient under the broad Rule 26 standards.

Similarly, Post's requests—in the form of deposition questions—related to ERC's ongoing investigations are relevant to Post's ability to attack ERC's claims and defend this case. ERC's ongoing investigations relate both to ERC's lack of standing to pursue this case as well as ERC's claim of damages. First, ERC's unilateral choice to pursue at least nine different multifamily housing developers in a self-styled "series" of Complaints is relevant to whether ERC has suffered an injury-in-fact or actually diverted any resources to anything other than litigation sufficient to confer standing.[3] Second, ERC's ongoing investigations are relevant to ERC's claims for damages because if the motive behind ERC's investigations is litigation to obtain settlements, then ERC would be hard pressed to claim any real damages or injury related

---

[2] It is undisputed that some of ERC's methodologies were required to be approved by the United States Department of Housing and Urban Development ("HUD") in order for ERC to receive grant funding, *see, e.g.*, Ex. 1 to ERC's Opp., Dec. of Donald L. Kahl ¶ 12, but it is unclear—due to ERC's failure to produce complete relevant documents—which, if any, of its methodologies have actually been approved by HUD. This fact is relevant to Post so that Post can compare ERC's methodologies with respect to testing of Post with those that have been approved – or not approved – by HUD.

[3] *See* ERC's November 22, 2006 press release, *available at* http://equalrightscenter.org/releases/pr_2006_11_22.php.

to this suit. Additionally, Post is not interested in the actual names of the companies under investigation but instead seeks information regarding the types of investigations undertaken and the methodologies used in those investigations as relevant to Post's ability to compare ERC's actions with regard to other investigations to its actions with regard to Post.[4]

ERC further opposes Post's Motion by contending that its claims will be re-shaped during expert discovery. In so contending, ERC categorizes the information sought by Post as "pre-Complaint" information irrelevant to the litigation, and takes issue with the time Post has spent on discovery related to this pre-Complaint information, including ERC's accessible design and construction tests of Post's properties, ERC's testers who participated in tests of Post's properties, and ERC's methodologies for such tests.[5] (ERC Opp. at 2-3.) ERC alleges that its claim will be supported exclusively by evidence from ERC's "post-Complaint" inspections of Post's properties which will be disclosed for the first time on June 16, 2008, when expert reports are exchanged. (ERC Opp. at 2.)

This admission is startling. ERC cannot disclose the factual basis for its Complaint through expert reports served nineteen months after initiation of the lawsuit. The adequacy of ERC's Complaint and factual basis for the filing of that Complaint was frozen on the date the Complaint was filed – November 21, 2006. Even if permissible, although its experts have been inspecting properties for ten months throughout fact discovery and ERC referenced its experts in

---

[4] Post is aware that the Court has ruled that "information about ERC's investigations of companies other than Post is not relevant;" however, again, Post is not seeking company names but general information related to the types of investigations ERC is pursuing and the methodologies used in those investigations to compare the approaches taken in those investigations to that taken against Post. *See Equal Rights Center v. Post Properties, Inc.*, 246 F.R.D. 29, 33 (D.D.C. 2007).

[5] ERC also argues that Post's probing of ERC's factual basis for its Complaint is irrelevant because "the sufficiency of those allegations was resolved when Post's Motion to Dismiss was denied." (ERC Opp. at 2.) This argument is without merit as Post's Motion to Dismiss was based on ERC's lack of standing and the fact that the vast majority of properties subject to this suit were built outside the statute of limitations period. The Court's denial of the Motion, without a written Opinion, has no effect on Post's ability to pursue discovery related to merits of ERC's claims.

5

its interrogatory response, ERC never supplemented its interrogatory response with specifics regarding alleged new factual bases for the Complaint as identified by ERC's experts.

Though ERC may disagree with Post's strategy and defense of this case, ERC is not entitled to determine relevance for Post or to shape the scope of Post's discovery based on that determination. While a plaintiff may assume certain things about how a defendant intends to use information at trial, the plaintiff's assumptions "do not bear on the relevance of the information for purposes of discovery." *Meijer*, 245 F.R.D. at 31. In other words, the plaintiff's "assessment of the fruitfulness of [the defendant's] analysis is not relevant" to the question of whether the discovery sought is relevant. *Id.* Thus, ERC's attempt to preclude Post from discovery related to pre-Complaint issues just because ERC intends to disclose expert related information gathered from post-Complaint inspections is inappropriate and unsupportable. Post is clearly entitled to full discovery on both pre-Complaint and post-Complaint issues as long as those issues are reasonably calculated to relate to the basis for ERC's allegations or Post's defenses – which the sought information clearly is.

> **II.    ERC Cannot Rely On Its Claims Of Confidentiality To Preclude Proper Discovery.**

ERC further claims that the compelled information should be denied because its testing methodologies are trade secrets and thus protected from disclosure. ERC argues that its testing methodologies are secret, they are not disclosed outside of the organization except for in reports to HUD, and the value of ERC's testing methodology derives form the fact that they are kept confidential. (ERC Opp. at 8-9.)

This argument is unfounded given that trade secrets can be disclosed and discovered especially when a protective order is in place. Case law recognizes that "there is no absolute privilege for trade secrets and similar confidential information," and " if relevancy and need are

shown, the trade secrets should be disclosed." *Centurion Industries, Inc. v. Warren Steurer & Associates*, 665 F.2d 323, 325-326 (10th Cir. 1981) (quoting *Federal Open Market Committee v. Merrill*, 443 U.S. 340, 362 (1979)). ERC makes this argument despite the Protective Order in this case, the sole purpose of which was to protect the parties' confidential information from public disclosure.[6]

In fact, ERC's testing methodology cannot meet the test for trade secrets in the District of Columbia. First, the testing methodologies are not secret in that they are admittedly disclosed to HUD, a federal agency that evaluates these methodologies and approves them for the purpose of providing grants funded by tax dollars.[7] The testing methodologies are also disclosed to numerous testers, who are just contract workers for ERC. Second, the testing methodologies do not derive "actual or potential economic value, from not being generally know." *Catalyst & Chemical Servs, Inc. v. Global Ground Support*, 350 F. Supp. 2d 1, 8 (D.D.C. 2004). In testing Post properties, ERC derives no independent economic value from the use of its testing methodologies, with the exception of the litigation costs and settlement dollars ERC seeks to extract from those it sues. As a result, public policy cannot support protecting as a trade secret a methodology for which the only value derives from the ability to manufacture litigation.

ERC also argues that information related to its ongoing investigations constitute trade secrets. Again, ERC asserts that the information is valuable to ERC insofar as it is kept confidential. (ERC Opp. at 9.) Even more so than the testing methodologies, the only possible value ERC could derive from its ongoing investigations, is the money it could potentially receive in settlements from lawsuits that ERC unilaterally opts to initiate. This is not a trade secret

---

[6] Throughout the discovery process, Post continually made available for inspection confidential materials in reliance on the Protective Order.
[7] Pointedly, the deposition transcript citations that ERC referred to in it Opposition, *see* ERC Opp. at 6, as descriptions of ERC's testing methodology were not designated as confidential by ERC.

intended to be protected under the law, and it should not be precluded from disclosure in this case.[8]

### III. Post's Requests For Information Related To ERC's Funding Before, During, and After 2006 Are Relevant And Discoverable.

Although ERC does not dispute the relevance of its grant funding information to its claim for damages for the period beginning in March 1, 2006 to the present, ERC contends any information related to ERC grant funding prior to 2006 is irrelevant. ERC's argument is based on its assertion that it is only seeking damages from the period March 1, 2006, to the present and that it is not using any testing of Post that occurred prior to 2006 as a basis for its allegations. Interestingly, this is a new argument introduced by ERC in their Supplemental Interrogatory Responses dated April 25, 2008, just five days before the close of discovery.[9] Nevertheless, ERC cannot use this argument to preclude relevant pre-2006 discovery.

Discovery related to a plaintiff's damages is relevant under Rule 26, even where a plaintiff has not put a matter directly at issue or claimed a specific loss. *See Tavoulareas v. Piro*, 93 F.R.D. 11, 21 (D.D.C. 1981). In addition, "artificial restrictions" on discovery, such as time limitations, "should be rejected." *King v. E.R. Hutton & Co., Inc.*, 117 F.R.D. 2, 7 (D.D.C. 1987); *see also Flora v. Hamilton*, 81 F.R.D. 576, (M.D.N.C. 1978) (rejecting, on the basis of the liberal discovery standard, plaintiff's argument that information sought was not relevant because it related to an event that occurred some fifteen or sixteen years prior to plaintiff's claim). In *King*, the Court overruled the defendant's objections to the production of documents

---

[8] ERC also points out that counsel for Post represents other multifamily housing developers. This fact is irrelevant to whether ERC's investigations constitute a trade secret and further irrelevant to whether the investigations should be disclosed pursuant to this Court's Protective Order, which counsel for Post will uphold. ERC has chosen to file multiple open and active lawsuits against developers within the same general time frame, and the fact that these cases are all at different stages of litigation with different defense counsels does not protect ERC from having to comply with proper discovery in this case.

[9] No such limitation on ERC's injury is included in the Complaint, nor has ERC given any independent reason as to why March 1, 2006 is the starting point for ERC's alleged diversion of resources.

pertaining to events that occurred before and after certain dates, reasoning that the date limitations did not necessarily determine whether particular documents were relevant. *Id.*

Similarly, in this case, multiple reasons exist as to why documents pertaining to ERC's funding before 2006 are relevant. For example, documents which bear a date prior to March 1, 2006, may relate to or explain funding that will be received by ERC in the future. In addition, ERC's primary claim for damages is diversion of resources. Even if ERC is claiming that is did not divert any resources to Post before March 1, 2006, Post is entitled to see how ERC allocated funding in past years so that it can compare those allocations to ERC's claims of diversion of resources in 2006. ERC itself admits that its damages calculations will relate back in time. In describing its calculation for diversion of resources, ERC stated, "[a]dditionally, ERC will compare projected allocations of funds for the relevant time period with actual allocations and expenditures during that said same time period." *See* Ex. 8 to ERC's Opp., Answer No. 12. To compare projected allocations for a period beginning in 2006, ERC must, by definition, refer to projections created prior to this period.

Further, the HUD documents relating to grant funding articulated methodologies and scope of work, which again will provide information relating to how methodologies were deviated from or altered. Accordingly, Post is entitled to documents related to ERC's funding as well as attempts to seek funding unsuccessfully prior to the period dictated by ERC as March 1, 2006 to the present.

### IV. ERC Must Produce Complete And Non-Redacted Files Related To HUD Funding and Internal Emails and Memoranda.

On April 25, 2008, ERC produced additional materials and less-redacted materials in response to Post's requests related to HUD funding.[10] ERC, however, still has not produced any information related to a majority of the grants listed as grants received from January 1, 2004 through March 31, 2008 on ERC's Supplemental Interrogatory Answers. *See* Ex. 8 to ERC's Opp., Supplemental Resp. No. 17. In particular, ERC has not produced any requested documents related to grants received from the following sources: HUD 011; Public Welfare Foundation dated October 2004, October 2005, October 2006, November 2006, and November 2007; and Eugene & Agnes Meyer Foundation. ERC has produced documents only related to HUD 075 and HUD 074 and even those documents are not complete.

With regard to HUD grant number 075, issued in 2003 to 2004, ERC produced in redacted form their quarterly reports with redacted attachments as well as the Fair Housing Initiatives Program/Grant Recipient Progress Review. Thus, as to Post's specific requests, ERC has still not produced applications related to the 075 grant, fully non-redacted quarterly reports, and other communications between ERC and HUD related to the 075 grant.

With regard to HUD grant number 074, issued in 2005 to 2006, ERC has now produced application materials, communications between ERC and HUD, and redacted versions of ERC's quarterly reports with redacted attachments. As to Post's specific requests, ERC has not produced non-redacted versions of these quarterly reports.

---

[10] Following this production on April 25, 2008, ERC made several representations in its Opposition as to documents that do not exist or documents of which ERC is unaware, including monthly reports to HUD and documentation received from HUD relating to funding that was denied. Post obviously does not seek documents that do not exist, but, as explained in Post's Motion, ERC's witnesses have testified to the existence of both of these types of documents. And ERC does not attest that it sought pertinent information from other sources within its control such as the Washington Lawyers Committee, its auditor or other entities who may have the information to produce.

As to communications with HUD, ERC asserts that Post's requests only cover reports and communications "related to ERCs testing, investigation, and inspections of Post." (ERC Opp. at 11.) However, taken as a whole, Post's interrogatories and documents requests are not so narrow. For instances, Post's Interrogatory No. 16 requests " documents filed with, or funding determination received from, the United States Department of Housing and Urban Development ("HUD") or any other federal, state, or local government agency or official **relating to fair housing or disabilities issues**" (emphasis added). *See* Ex. 8 attached to ERC's Opp., Pl.'s Second Supplemental Resp. to Defs.' First Set of Interrogs. There is, thus, no limiting language such that the communications must be related solely to Post, nor does relevance under Rule 26 require such limiting language.

ERC argues that it has "only redacted information where it bears no relation to Post or the type of testing undertaken at Post properties." (ERC Opp. at 12.) Yet, a review of the redacted documents show that ERC continues to redact information that is seemingly relevant to Post, including, for example, information related to ERC's referral process, recruitment of testers who use wheelchairs, intake and investigation of housing discrimination based on disability, assisting persons in requesting reasonable accommodations, ERC's current or pending grants, contracts or other financial agreements, and ERC's referral of complaints to HUD related to inaccessible design and construction of multifamily dwellings.

ERC claims in its Opposition that certain categories, which have been redacted from ERC's quarterly reports, are irrelevant because (1) ERC has referred no specific victims of Post's discrimination to HUD, (2) the redacted portion of a topic related to training does not contain a description of the training received by testers, (3) ERC never provided assistance to persons with disabilities in making requests for reasonable accommodations at Post properties, and (4) ERC

did not file any design and construction complaints with HUD with respect to Post. (ERC Opp. at 12-13.) Although each of ERC's responses are helpful admissions, ERC is not entitled to selectively redact relevant and responsive material from its documents. And for the reasons described above, ERC is similarly not entitled to redact the attachments to these reports based on the sole rationale that these materials reveal ERC's testing methodologies.

As for the redactions in ERC's internal emails and memoranda, ERC argues that these redactions are justified because they relate to ongoing investigations or other developers tested by ERC. For the reasons stated above, this information is relevant to Post's defenses in this case. This relevance if further demonstrated by the fact that ERC's employees through email were discussing different developers in the same sentences of multiple emails.

Again, it is not ERC's decision to redact documents on grounds of relevancy as long as Post can relate that requested material to the subject matter of the case. The question of relevance is for the Court to decide as the case proceeds to trial. If the document is responsive, it should be produced in its entirety so Post can understand the context and scope of the entire document.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion to Compel.

Respectfully submitted,

HOLLAND & KNIGHT LLP


/s/ Lynn E. Calkins
Christopher B. Hanback (Bar # 232579)
Lynn E. Calkins (Bar # 445854)
Rafe Petersen (Bar # 465542)
Elizabeth Phelps (Bar # 502026)
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C. 20006
(202) 955 3000 Phone
(202) 955 5564 Fax
E-mail: christopher.hanback@hklaw.com
E-mail: lynn.calkins@hklaw.com
E-mail: rafe.petersen@hklaw.com
E-mail: libby.phelps@hklaw.com

*Counsel for Post Properties, Inc., et al.*

13

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served via the Court's electronic filing system this 19th day of May, 2008, on the following:

Alyssa C. Lareau, Esq.
Fried, Frank, Harris, Shriver & Jacobson, LLP
1001 Pennsylvania Avenue, NW
Suite 800
Washington, DC 20004

          /s/ Lynn E. Calkins
          Lynn E. Calkins

# 5335352_v3