IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EQUAL RIGHTS CENTER )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>POST PROPERTIES, INC. )<br>POST GP HOLDINGS, INC. )<br>POST APARTMENT HOMES, L.P. )<br>)<br>Defendants. )<br>) | Case. No. 1:06CV01991<br>Judge Richard J. Leon |

### DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION IN LIMINE TO EXCLUDE EVIDENCE REGARDING PLAINTIFF'S UNTIMELY DAMAGES ASSESSMENT PRODUCED AFTER THE CLOSE OF FACT DISCOVERY

Defendants Post Properties, Inc., Post GP Holdings, Inc., and Post Apartment Homes, L.P. (collectively "Post") hereby file this Reply in Support of their Motion In Limine to Exclude Evidence Regarding Plaintiff's Untimely Damages Assessment Produced After the Close of Fact Discovery ("Motion").

Despite ERC's attempt to blame Post throughout its Opposition, it is ERC who made the strategic error by playing games with an alleged nine million dollar damages assessment. Either ERC evaded providing adequate discovery responses when it had an obligation to do so or ERC concocted this newly disclosed assessment for the first time after the close of fact discovery in an attempt to address its lack of evidence regarding any damage to maintain this action against Post.

It is unclear which game ERC played because ERC takes two conflicting positions in its Opposition. On the one hand, ERC claims that its August 1, 2008 damages assessment is not new or supplemental because ERC has claimed such a damage "from the outset of this litigation." (Opposition at 6.) On the other hand, ERC admits that the "August 1, 2008

calculation of its frustration of mission damages did not even exist prior to mid-April, [2008]," and that "[t]he August 1, 2008 calculation worksheet produced at ERC10026-27 was produced immediately after it was created." (*Id.* at 8.)  What is clear from these assertions is that, even if in hindsight ERC has convinced itself that its Complaint supports its new damages analysis, that analysis never existed until long after the Complaint was filed, and Post never could have learned of the information contained in the August 1, 2008 calculation until ERC belatedly decided to put a dollar value on it, three months after the close of fact discovery.

In either situation, the law and federal rules are plain.  By failing to disclose timely the information at issue without substantial justification and to great prejudice to Post, ERC waived its right to use that information as evidence in support of any motion, at any hearing, or at trial.

## ARGUMENT

### A.   ERC has no substantial justification for its non-disclosure of a new nine million dollar damages claim until months after the close of fact discovery.

In its Opposition, ERC stated that it would not even attempt to justify its untimely disclosure. (Opposition at 12.)  Instead, ERC defends its material omission by contending that it has sought damages to remedy the alleged frustration of mission in the future since the initiation of the lawsuit and that Post failed to ask about it.  Neither assertion is true.

First, ERC contends that Post should have known that ERC was seeking multi-millions of dollars from Post because ERC asserted "frustration of mission" in its Complaint.  In fact, the Complaint demonstrates that ERC never asserted a claim for damages – or even injury – related to the future remedial steps now serving as the basis of ERC's nine million dollar claim.[1]  In pertinent part, ERC alleged:

---

[1] Although documents ERC10026-27 were marked confidential by ERC, during the meet and confer between counsel prior to Post's filing of this Motion, counsel for ERC confirmed that the nine million dollar figure itself was not confidential.

2

> As a result of POST's actions described above, the ERC <u>has been</u> directly and substantially <u>injured</u> in that it <u>has been frustrated</u> in its mission to eradicate discrimination in housing, and in carrying out the programs and services that it provides, including encouraging integrated living patterns, educating the public about fair housing rights and requirements, educating and working with industry groups on fair housing compliance, providing counseling services to persons either looking for housing or affected by discriminatory housing practices, and eliminating discriminatory housing practices.

(Complaint ¶ 43, emphasis added; *cf.* Opposition at 5-6.) ERC's only allegation refers to the injury and frustration that has already occurred as a result of the alleged past discrimination – not the future remediation efforts ERC would seek to undertake.

Similarly, nowhere did ERC ever allege that it sought compensatory damages for past or future frustration of mission separate and apart from its alleged diversion of resources. Instead, ERC repeatedly linked frustration of mission and diversion of resources together. (Motion at 8.) As neither the Complaint nor the discovery record reflects any indication that ERC was seeking a separate monetary sum for the alleged frustration of its mission, Post's numerous questions regarding "how" ERC's mission was frustrated as opposed to "how much" were wholly consistent with ERC's assertions until August 2008. Thus, even if the law permits this type of compensatory damage, ERC never disclosed until August 2008 that it was seeking any such damages in this case.

Despite ERC's assertion that Post failed to seek the information now at issue, Post's written discovery requests included at least one document request and two interrogatories to which information regarding the August 1, 2008 assessment and supporting materials would have been directly responsive. ERC chose to avoid providing complete responses.

Document Request No. 19 expressly required ERC to produce "all documents supporting your claim for damages in this action." There is no doubt that, at a minimum, the April 2008

3

emails relied on as the sole documentary support for the nine million dollar assessment were in existence during fact discovery and yet were not produced. (Motion, Exhibit J.) As the excuse provided for not producing those emails until now, ERC claims that it could not provide the documents until it quantified its future frustration of mission damages claim. (Opposition at 7.) According to ERC, this quantification did not occur until August 1, 2008, three months after the close of fact discovery and twenty-one months after ERC filed the Complaint and supposedly alleged a frustration of mission injury based on this heretofore nonexistent quantification. Even if the final quantification did not occur until August 1, 2008, ERC cannot avoid the fact that the only documents represented as support for the quantification, and thus responsive to Document Request No. 19, were available and in ERC's possession during the discovery period. In fact, Documents ERC09976 through ERC09979 produced to Post on August 1, 2008 are emails dated April 15, 2008, which were admittedly created when Donald Kahl, one of ERC's 30(b)(6) witnesses, was preparing for his deposition and yet were not produced.[2] (*See* Opposition at 8.)

In response to Post's Interrogatory No. 6, ERC was required to "state all facts and identify all documents you claim support the allegations set forth in the Complaint." In its Opposition, ERC repeatedly acknowledges that "frustration of mission" was *alleged* in the Complaint. (*See, e.g.,* Opposition at 1, 5, 6.) Irrespective of that acknowledgement, as a post-hoc rationalization for not providing the information at issue in response to Interrogatory No. 6, ERC asserts that the interrogatory was overbroad and that it chose to self-limit its answer by only providing "all facts

---

[2] ERC's argument that it could not have produced ERC's calculation for the nine million dollars in damages (ERC10026-27) in response to Document Request No. 19 because it did not exist during the discovery period and ERC was not obligated to otherwise create such a document is a red-herring. ERC cites to *Alexander v. FBI*, 194 F.R.D. 305 (D.D.C. 2000), for support that it could not have produced documents that did not exist and it had no obligation to create documents for Post. This case is distinguishable and inapposite the case at hand. In *Alexander*, the requesting party moved to compel the opposing party to create a list or document that was not already in the opposing party's possession. *Id.* at 310. Here, Post has never requested that ERC create a document for Post. Instead, ERC was obligated to supplement its interrogatory answers and documents requests in a timely manner and failed to do so. The supporting documents should have been produced in response to the document request and the information contained in ERC10026-27 should have been included in a timely interrogatory response.

4

that supported its allegations *of discrimination* in the Complaint." (Opposition at 7, emphasis added.) ERC, however, never asserted such an objection when it responded to the interrogatory and never disclosed until now that it chose to self-limit the interrogatory in that manner. (Motion, Exhibit D.) Instead, ERC represented to Post and this Court that it was providing a full and complete response, a response upon which Post reasonably relied and to which ERC is limited.[3] (*See* Motion at 2.) ERC's contention that Post needed to ask specifically for "a calculation of damages or supporting evidence for such a calculation" in order to derive the information at issue is unsupportable. (Opposition at 7.) If it was alleged in the Complaint, as ERC contends, it was obligated to provide the information in response to Interrogatory No. 6.

ERC also provides no justification whatsoever as to why it did not identify any individuals with knowledge regarding ERC's frustration of mission damages assessment in response to Interrogatory No. 5, which sought all individuals with knowledge. ERC disclosed two people who allegedly had information regarding ERC's damages. Post deposed those two individuals, and they knew nothing about damages based on frustration of mission separate and distinct from the diversion of resources damages stated. (Motion at 3.) Obviously, the individuals listed on the emails had personal knowledge, but were not identified; apparently, Donald Kahl had personal information which was intentionally not disclosed during fact discovery on privilege grounds, but he too was not disclosed in response to Interrogatory No. 5. Surely, there are other individuals who have knowledge regarding ERC's historical expenditures, but, again, no such individuals were ever disclosed.

---

[3] Rule 33(b)(4) makes clear that "[t]he grounds for objecting to an interrogatory must be stated with specificity" and that "[a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." *See also* Advisory Committee Notes to 1993 Amendments noting that "Paragraph (4) is added to make clear that objections must be specifically justified, and that unstated or untimely objection ordinarily are waived." Here, ERC provides no explanation of a cause to warrant an excuse for its failure.

5

As a further excuse for why it did not produce material information relating to ERC's untimely damages assessment, ERC argues that it was Post's own failure to ask Mr. Kahl specific questions related to ERC's frustration of mission damages at his 30(b)(6) deposition on May 30, 2008. ERC first cites to Post's Amended Notice of 30(b)(6) Deposition of Equal Rights Center; however, consistent with ERC's representation regarding its frustration of mission injury as a non-economic injury, a careful reading of Topic 5 of this Amended Notice reveals that Post noticed the topic of "a detailed description of *how* ERC's mission was frustrated" (emphasis added). Post fully vetted that question in numerous depositions and in the deposition of Mr. Kahl. Despite ERC's current spin of the Amended Notice, Post did not actually notice "how much" ERC's mission was frustrated because such a quantification had never before been produced, referred to, or even alleged in the Complaint.

In any event, ERC cannot use Post's 30(b)(6) Amended Notice or deposition as a shield protecting it from its obligation to timely supplement Post's discovery requests. By not asking Mr. Kahl a particular question, which would have supposedly elicited the new nine million dollar assessment after fact discovery closed, and instead limiting the deposition to the scope of damages already identified, Post did not save ERC from its disclosure obligations. In fact, ERC's claim that Post could have asked Mr. Kahl specific questions regarding frustration of mission and would have received answers in line with ERC's August 1, 2008 disclosure is inconsistent with ERC's recitation of the timeline for when this information was available. Rule 30(b)(6) requires a witness to testify about "information known or reasonably known to the organization." Yet, ERC admits that the August 1, 2008 calculation worksheet (ERC10026-27) was produced immediately after it was prepared, which was well after the May 30, 2008 Rule 30(b)(6) deposition of Mr. Kahl. Hence, even if Post had asked Mr. Kahl the magic questions

which would have elicited information on ERC's frustration of mission damages, Post still would not have received the information now at issue.

Furthermore, Mr. Kahl is not an expert witness, was not disclosed as an expert, and cannot make up a damages analysis after fact discovery to testify about it at trial and somehow expect that Post would guess that he did so. Post asked questions regarding frustration of mission of the witnesses identified with knowledge about frustration of mission throughout fact discovery. These fact witnesses knew nothing about the ERC's nine million dollar damages assessment, and, in view of the discovery record at the close of discovery, it is unreasonable to assume that Post was on notice, but chose not to ask any questions, as to a multi-million dollar quantification of ERC's frustration of mission just because Post included a 30(b)(6) topic that mentioned frustration of mission in a manner consistent with how that alleged injury was presented by ERC throughout the case.[4]

The only reasonable reading of this situation is that ERC, recognizing its own failure or inability to substantiate the damages claim disclosed during the fact discovery period as was articulated in the report of Post's expert on damages, decided to manufacture an additional damages calculation in an attempt to demonstrate an injury sufficient to pursue Post in this litigation. ERC's August 1, 2008 supplemental disclosure is unmistakably untimely under the Rules. ERC has made no attempt to show substantial justification for its untimeliness, and this supplemental disclosure should be excluded from all future proceedings and motions in this litigation.

---

[4] ERC argues that the testimony of Bruce Kahn, one of ERC' 30(b)(6) witnesses, put Post on notice as to ERC's quantified frustration of mission claim. (Opposition at 9.) The testimony cited by ERC, however, actually furthers Post's position that before August 1, 2008, ERC equated its frustration of mission damages with its diversion of resources damages. As ERC explains, Mr. Kahn was responding to a question on diversion of resources when he referred to ERC's frustration of mission in terms of counteraction that may continue in the future. (Opposition at 9.) "Counteraction" is a term used in ERC's Complaint to describe its diversion of resources. (Complaint, ¶ 44.)

### B. Post is prejudiced by this untimely disclosure, and a further deposition of Donald Kahl will not cure that prejudice.

In addition to its failure to demonstrate substantial justification, ERC has also failed to show how the use of a supplemental nine million dollars damages claim disclosed three months after the close of fact discovery is harmless to Post. ERC attempts to characterize preclusion, the sanction sought by Post, as "severe" and disproportional. (Opposition at 12.) Yet, preclusion is the exact consequence for failure to supplement provided for by Rule 37(c). Under the circumstances, it is neither severe nor disproportional; it is merely the rule, and Post is respectfully requesting that the Court apply it. If preclusion is not ordered, Post will suffer undue prejudice given that fact discovery has closed, and Post no longer has the opportunity to depose witnesses or submit written discovery requests on this issue.

The case citations in ERC's Opposition do not support its arguments of severity or lack of harm in this particular case. ERC cites *Bonds v. District of Columbia*, 93 F.3d 801 (D.C. Cir. 1996), to say that sanctions should be proportional. In *Bonds*, the district court's preclusion order, which was overruled by the D.C. Circuit, actually denied the defendant a right to a trial on the merits. *Id.* at 804. In contrast, the exclusion sought by Post is not a "litigation-ending sanction;" instead, exclusion of ERC's untimely damages claim is warranted, proportional, and just. *See id.* at 808. ERC may still present its case on the merits and, if successful, potentially recover the damages it disclosed during the discovery period.

ERC's citation to *Walls v. Paulson*, 250 F.R.D. 48 (D.D.C. 2008), is equally distinguishable from this case. In *Walls*, the defendant requested full dismissal as a sanction for the plaintiff's failure to supplement interrogatory answers and document requests. Finding that the defendant had indeed violated its discovery obligations, the Court instead ordered sanctions in the forms of attorney's fees and exclusion of evidence that had not otherwise been produced to

8

the defendant. *Id.* at 54. These are the exact sanctions that would be appropriate in this case and are consistent with Rule 37, that is, exclusion of evidence that was not otherwise disclosed in a timely manner during the fact discovery period.

ERC similarly cannot support its argument that Post was not harmed by ERC's untimely supplemental disclosure. In so arguing, ERC asserts that Post has adequate opportunity to take discovery on this issue before dispositive motions are due. ERC seems to forget, however, that fact discovery is closed, and the Federal Rules do not explicitly provide Post an avenue for reopening fact discovery. In this way, ERC's citation to *Flynn v. Dick Corp.*, No. 03-1718 (AK), 2008 WL 2791685 (D.D.C. July 21, 2008), to support its claim that its untimely disclosure is harmless is unavailing. The issue in *Flynn* related to material submitted with the plaintiff's summary judgment motion. *Id.* at *2-3. The Court ruled specifically pursuant to Fed. R. Civ. P. 56(f) that such submission was harmless because the defendant could have moved to take additional discovery. *Id.* There is no such Rule governing ERC's untimely disclosure here. And, Post would be even further prejudiced if forced to wait until ERC submits this damages claim at summary judgment, at which time ERC seemingly suggests that Post could then move for an opportunity to take additional depositions, a motion which is in the Court's discretion to deny.

Even if the Court were to allow a reopening of fact discovery, what ERC has offered—a potential further deposition of Mr. Kahl—will not cure the prejudice Post would suffer if ERC is allowed to use its nine million dollar damages claim in future motions and proceedings in this case. First, ERC's counsel has refused to acknowledge that Mr. Kahl would be the sole trial witness on the issue of frustration of mission damages. Second, Mr. Kahl was ERC's attorney until February 2008. Post has run into numerous roadblocks in its attempts to elicit information

regarding ERC's damages from Mr. Kahl in prior depositions because of asserted claims of privilege. Post has received no indication from ERC that Mr. Kahl's testimony would not be similarly limited in this additional proposed deposition or how ERC proposes to rectify its prior assertion of privilege to preclude this discovery, including ERC's refusal to allow discovery into damages information previously gathered by Mr. Kahl. Third, Post has already asked Mr. Kahl questions regarding frustration of mission damages, and Mr. Kahl did not disclose the nine million dollar damages claim. Nor did he testify as to the information gathered to support the August 1, 2008 calculation. Allowing Mr. Kahl, and Mr. Kahl alone, to now opine on a damages calculation that was not created until after the close of discovery is in opposition to the Federal Rules. Finally and most importantly, while learning what Mr. Kahl would say at trial would certainly be valuable if he were permitted to testify on this issue, Post would need to be permitted a full opportunity to challenge Mr. Kahl's calculation, including depositions of other individuals and documents relating to the historical costs and prior expenses incurred by ERC to remediate discrimination in similar situations – none of which has been produced to date.[5] As a result, ERC's offer to allow a further deposition of Mr. Kahl is a woeful attempt to cure the extreme prejudice ERC has caused.[6]

---

[5] The only possible cure to this prejudice, which still would not wholly rectify this situation, is an unlimited reopening of fact discovery for Post to investigate fully this damages issue as well as an extension of the expert affirmative report deadline for Post alone, along with an order that ERC must pay all attorneys fees and costs involved in this Motion and in the discovery. In other words, Post must be allowed not only to depose Mr. Kahl, but to depose any other witness that Post believes has information related to the nine million dollar claim and calculation. In addition, Post must be able to serve written discovery on ERC, including document requests that would bring out documentation relating to the calculation. Lastly, Post must have the opportunity to retain an expert to opine on the validity and substance of ERC's claim.

[6] ERC's reference to a "(belated)" meet and confer is yet another example of the games ERC has chosen to play in this litigation. Pursuant to Local Rule 7, Post conferred by telephone with ERC on Monday, August 11, 2008, and filed this Motion on Wednesday, August 13, 2008. ERC's apparent reference is to ERC's refusal to respond to Post's letter or telephone attempts in advance of a prior filing, which was withdrawn by Post once ERC finally decided to return Post's attempts. For some unknown reason, ERC still felt it necessary to raise the issue even though there can be no doubt that the parties fully complied with Local Rule 7 prior to the filing of this Motion.

If there is anything severe about the issue subject to this Motion, it is the severe prejudice that Post would suffer if ERC is allowed to introduce any evidence of Mr. Kahl's untimely nine million dollar damages assessment in this case.

## CONCLUSION

Based on the foregoing, Post respectfully requests that the Court grant its Motion In Limine and preclude ERC from using any evidence regarding ERC's new nine million dollar damages assessment disclosed on August 1, 2008 in any motions, at any hearings, or at trial in this case.

Respectfully submitted,

HOLLAND & KNIGHT LLP


/s/ Lynn E. Calkins
Christopher B. Hanback (Bar # 232579)
Lynn E. Calkins (Bar # 445854)
Rafe Petersen (Bar # 465542)
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C. 20006
(202) 955 3000 Phone
(202) 955 5564 Fax
E-mail: christopher.hanback@hklaw.com
E-mail: lynn.calkins@hklaw.com
E-mail: rafe.petersen@hklaw.com
*Counsel for Post Properties, Inc., et al.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Reply in Support of Defendants' Motion in Limine were served via the Court's ECF system, this 29th day of August, 2008, on the following:

Alyssa C. Lareau, Esq.
Fried, Frank, Harris, Shriver & Jacobson, LLP
1001 Pennsylvania Avenue, NW
Suite 800
Washington, DC 20004

                                          /s/ Lynn E. Calkins
                                          Lynn E. Calkins

# 5567434_v4