UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EQUAL RIGHTS CENTER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>POST PROPERTIES, INC. and POST GP )<br>HOLDINGS, INC. and POST )<br>APARTMENTS HOMES, L.P., )<br>)<br>Defendants, )<br>)<br>and )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Movant. ) | Civil Case No. 06cv1991 (RJL) |

**MEMORANDUM OPINION**
(September 28, 2009) [#121, #123]

The plaintiff, Equal Rights Center ("ERC"), claims the defendants (collectively, "Post") have designed, constructed, and operated residential complexes in a manner making them inaccessible for persons with disabilities in violation of the Fair Housing Act ("FHA") and the Americans with Disabilities Act ("ADA"). Before this Court is Post's Motion for Summary Judgment and ERC's Motion for Partial Summary Judgment. Having reviewed the pleadings and the entire record, the Court concludes that ERC lacks the necessary standing to bring this action and therefore GRANTS Post's motion and DENIES ERC's motion.

## BACKGROUND[1]

Post owns and manages fifty-nine apartment communities, with more than 21,000 apartment units located in five states and the District of Columbia. (Mem. of Points and Auth. in Support of Def.s' Mot. for Summ. J. [Dkt. #121] ("Def.s' Mot.") (filed under seal) at 1.) ERC is a comprehensive civil rights organization dedicated to, among other causes, fair housing opportunities for everyone. (Mem. of Points and Auth. in Support of Pl.'s Opp'n to Def.s' Mot. for Summ. J. ("Pl.'s Opp'n") (filed under seal, notice at Dkt. #141) at 4.) In its complaint, filed in November 2006, ERC alleged that Post designed, constructed, and operated its complexes in a manner making them inaccessible to persons with disabilities in violation of the Fair Housing Act, 42 U.S.C. §§ 3601, *et seq.*, and Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181, *et seq.* (Compl. [Dkt. #1-3] ¶ 2.) Not surprisingly, Post strongly disagrees, contending instead "its properties are accessible to and usable by persons with disabilities," (Def.'s Mot. at 15), and that its alleged failure to comply with the FHA's "safe harbor" provisions does not establish otherwise, (*id.* at 3).

On January 29, 2007, prior to the commencement of discovery in this case, Post filed a Motion to Dismiss and a Motion for Partial Summary Judgment. (Mot. to Dismiss [Dkt. #10]; Mot. for Partial Summ. J. [Dkt. #11].) In its motions, Post alleged, among

---

[1] For additional background, see this Court's opinion denying ERC's Motion for a Preliminary Injunction, *Equal Rights Center v. Post Properties, Inc.*, 522 F. Supp. 2d 1 (D.D.C. 2007).

other things, that ERC lacked standing. While these motions were pending, ERC filed a Motion for a Preliminary Injunction on April 18, 2007, seeking an order prohibiting Post from selling a portion of its units until this litigation was resolved. (Mot. for Prelim. Inj. [Dkt. #27] at 1.) The Court denied Post's motion to dismiss in June 2007.[2] (Minute Order, 06/14/07.) The following month it denied ERC's motion for a preliminary injunction on July 25, 2007. *Equal Rights Center v. Post Properties, Inc.*, 522 F. Supp. 2d 1, 6 (D.D.C. 2007).

## ANALYSIS

A plaintiff's standing to bring a suit is a "threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). ERC, as the party invoking this Court's jurisdiction, has the burden to prove standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Generally plaintiffs must establish both constitutional and prudential standing requirements. Constitutional standing under Article III "requires, at the 'irreducible constitutional minimum,' that the litigant has suffered a concrete and

---

[2]Although this Court, in denying Post's earlier motion to dismiss, concluded ERC pled facts sufficient to establish organizational standing, on December 17, 2008, after the completion of discovery, Post filed the instant Motion for Summary Judgment, contending therein that ERC's complaint must be dismissed because ERC was not able to establish the necessary injury resulting from Post's conduct necessary to establish constitutional standing for the organization. (Def.s' Mot. at 17–29.) For the reasons set forth in the opinion, the Court agrees. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378 (1982) (affirming a denial of a motion to dismiss on standing grounds, but noting that the district court should dismiss the complaint if the plaintiffs could not "make more definite the allegations of the complaint"); *Fair Employment Council of Greater Washington, Inc. v. BMC Mktg. Corp*, 28 F. 3d 1268, 1277 (D.C. Cir. 1994) (stating that "[a]s this case proceeds, the [plaintiff] will have to provide support for its claim" that it suffered injury as a result of the defendant's actions).

particularized injury that is actual or imminent, traceable to the challenged act, and redressable by this [C]ourt." *Abigail Alliance for Better Access to Developmental Drugs v. Eschenbach*, 469 F.3d 129, 132 (D.C. Cir. 2006) (quoting *Lujan*, 504 U.S. at 560) (internal citation omitted). Prudential standing requirements are "not exhaustively defined," but they "encompass[] the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004) (internal quotation omitted).

Despite the general requirements of prudential standing, however, plaintiffs alleging violations of the FHA need not establish prudential standing. The Supreme Court has stated that "Congress intended standing under [the FHA's enforcement provision] to extend to the full limits of Art. III." *Havens*, 455 U.S. at 372 (internal quotation omitted). Courts, therefore, "lack the authority to create prudential barriers to standing in suits brought under that section." *Id.* Therefore, for purposes of its FHA action, ERC need only establish constitutional standing.

As an organization, ERC can establish constitutional standing either "on its own behalf, or on behalf of its members." *Abigail Alliance for Better Access to Developmental Drugs*, 469 F.3d at 132 (internal citations omitted). However, since ERC

does not claim it has standing on behalf of its members, (Pl.'s Opp'n at 21–29), the Court will focus exclusively on ERC's standing as an organizational plaintiff.

Organizational plaintiffs can establish they suffered injury in fact traceable to the defendant's conduct if a defendant's actions "perceptibly impaired" the organization's activities. *Havens*, 455 U.S. at 379. Thus, in *Havens*, the Supreme Court held that an organizational plaintiff that assisted minorities in gaining equal access to housing established standing to challenge a real estate company's "steering" away of minority renters. *Id.* The Court held that if, as alleged, the organization was required "to devote significant resources to identify and counteract" the company's discrimination, the defendant's steering practices had "perceptibly impaired [the plaintiff's] ability to provide counseling and referral services . . . , [and] there can be no question that the organization suffered injury in fact." *Id.*; *see also Abigail Alliance for Better Access to Developmental Drugs*, 469 F.3d at 133.

Based on *Havens*, our Circuit Court has found an organizational plaintiff had standing to challenge a defendant's discriminatory housing advertisements because the advertisements required the plaintiff to increase its "education and counseling . . . to identify and inform minorities, steered away from defendants' complexes by the challenged ads, that defendants' housing is by law open to all." *Spann v. Colonial Village, Inc.*, 899 F.2d 24, 28–29 (D.C. Cir. 1990). Additionally, "[e]ducational programs might complementarily be necessary to rebut any public impression the advertisements

might generate that racial discrimination in housing is permissible." *Id.* Likewise, our Circuit Court held another organizational plaintiff providing counseling services had standing to challenge a defendant's discriminatory actions that "might increase the number of people in need of counseling [and] . . . may have reduced the effectiveness of any given level of outreach efforts." *Fair Employment Council of Greater Washington, Inc.*, 28 F. 3d at 1276. Additionally, in *Humane Society v. U.S. Postal Service*, one of my colleagues found that the Humane Society had established standing to challenge a decision of the postal service on the basis that the Humane Society was injured by the decision because it created "the need to care for animals on an emergency basis." 609 F. Supp. 2d 85, 91 (D.D.C. 2009).

Organizational plaintiffs, however, will not be able to establish the injury necessary for constitutional standing when it consists merely of the impact on its activities caused by their willful diversion of their resources in response to the defendants' conduct. As our Circuit has explained:

> The [*Havens*] Court did not base standing on the diversion of resources from one program to another, but rather on the alleged injury that the *defendants' actions themselves* had inflicted upon the organization's programs. To be sure, the Court did mention the "drain on the organization's resources." Yet this drain apparently sprang from the organization's need to "counteract" the defendants' assuredly illegal practices, and thus was simply another manifestation of the injury that those practices had inflicted . . . .

*Fair Employment Council of Greater Washington*, 28 F.3d at 1277 (emphasis added). "The mere fact that an organization redirects some of its resources to litigation and legal

counseling in response to actions or inactions of another party is insufficient to impart standing upon the organization." *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1434 (D.C. Cir. 1995) (quoted in parenthetical, quoted citation omitted).

In fact, our Circuit Court "explicitly reject[ed] [a plaintiff's] suggestion that the mere expense of testing [a defendant] constitutes 'injury in fact' fairly traceable to [the defendant's] conduct." *Fair Employment Council of Greater Washington*, 28 F.3d at 1276. Any injury from such testing is not traceable to the defendant's conduct, but "*self-inflicted*; it results not from any actions taken by [the defendant], but rather from the [plaintiff's] *own budgetary choices.*" *Id.* (emphasis added).

While ERC broadly alleges Post's actions "directly interfered with the ERC's existing counseling, education, and advocacy programs and activities," (Pl.'s Opp'n at 25), discovery has revealed that any injury ERC suffered was due to its own decision to investigate Post. (*See* Pl.'s Statement of Undisputed Facts [Dkt. # 123-10] ¶ 113 (noting that Ezinwanne Hawkins and Rebecca Crootof "testified that *because of [their] work on the Post investigation*, [they were] unable to" perform various ERC activities).) Indeed, ERC essentially concedes its sole injury occurred as the result of its decision to investigate Post. In that regard, it specifically noted that it "was forced to expend time, resources, and personnel to conduct a more in-depth nationwide investigation of Post, in order to identify the extent and effect of Post's illegal practices so that it could tailor its counseling, education, and advocacy efforts to effectively combat the problem." (*Id.*)

7

Notwithstanding these points raised by Post, ERC argues it has still established constitutional standing because its investigation of Post was not *necessarily* in anticipation of litigation. In that regard, the Executive Director of ERC testified that testing is not a "tool to create litigation," but a tool to "identify whether discriminatory conduct exists" and "the extent of the problem." (Decl. of Donald Khal (filed under seal), ¶¶ 9–10.) ERC then uses the information obtained in the investigation to determine whether litigation, or other action, is the best manner in which to combat the discrimination. (*Id.* ¶ 10.)

In making this argument, however, ERC presumes that any injury beyond litigation expenses is sufficient to establish organizational standing. It is not. ERC still needs to establish that the injuries it suffered were *not* due to a self-inflicted diversion of resources. "[Q]uintessentially . . . strategic choice[s]," of course, are not limited to litigation expenses. *See Nat'l Treasury Employees Union*, 929 F. Supp. at 489. For example, organizational plaintiffs cannot establish injury that is fairly traceable to defendants' conduct merely by deciding to "devote resources to identify and counteract misinformation," *Am. Farm Bureau v. U.S. EPA*, 121 F. Supp. 2d 84, 100 (D.D.C. 2000), by negotiating payments with a defendant, *Long Term Care Pharm. Alliance v. UnitedHealth Group, Inc.*, 498 F. Supp. 2d 187, 189–90, 191–92 (D.D.C. 2007), or by choosing to redirect lobbying efforts, *Nat'l Treasury Employees Union*, 929 F. Supp. 2d at 489.

Regardless of whether ERC's investigation was an inherently pre-litigation exercise, the record is clear that ERC *chose* to redirect its resources to investigate Post's allegedly discriminatory practices. ERC has thus not suffered an injury, to date, traceable to Post's conduct within the meaning of Article III. *See id.* Indeed, "[w]ere an association able to gain standing merely by choosing to fight a policy that is contrary to its mission, the courthouse door would be open to all associations." *Long Term Care Pharm. Alliance*, 498 F. Supp. at 192. As ERC has failed to establish the irreducible constitutional minimum standing requirements, ERC lacks standing to bring both its FHA and its ADA claims. As a result, this Court will GRANT Post's Motion for Summary Judgment and DENY ERC's Motion for Partial Summary Judgment. An Order consistent with this Memorandum Opinion is attached.

*[signature]*
RICHARD J. LEON
United States District Judge